**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera, Esq. (SBN 192390)
Jason Y. Chao, Esq. (SBN 250735)
Raymond E. Brown (SBN 164819)
650 Town Center Drive
Suite 100
Costa Mesa, CA 92626
T: 714-384-6600 / F: 714-384-6601
eaguilera@aguileragroup.com
jchao@aguileragroup.com
rbrown@aguileragroup.com

Attorneys for Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE BRANCH**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation<br><br>Plaintiff,<br><br>v.<br><br>KAUFMAN & BROAD MONTEREY BAY, INC., a California Corporation, K&B BAKEWELL SEASIDE VENTURE, LLC, a California Limited Liability Company, and KB SOUTH BAY, INC., a California Corporation, and DOES 1 through 10 inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 5:13-cv-04745 EJD-PSG<br>Hon. Edward J. Davila<br><br>**PLAINTIFF TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Magistrate Judge Paul S. Grewal<br><br>Date: December 5, 2014<br>Time: 9:00 am<br>Courtroom: 4, 5th Floor<br><br>Complaint Filed: October 11, 2013<br>Counterclaim Filed: November 20, 2013 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on December 5, 2014 in the above-entitled court, at 9:00 a.m. or as soon thereafter as it may be heard, plaintiff/counter-defendant Travelers Property Casualty Company of America ("Travelers") will and hereby does move for partial summary judgment in its favor against

defendants/counter-claimants Kaufman & Broad Monterey Bay, Inc., K&B Bakewell Seaside Venture, LLC, and KB Home South Bay, Inc. (collectively "KB") pursuant to Rule 56 of the Federal Rules of Civil Procedure regarding the causes of action for declaratory relief and breach of contract in the complaint filed by Travelers as well as the causes of action for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing in the counterclaim filed by KB.

Specifically, Travelers will move for partial summary judgment on the following issues:

1. Travelers is entitled to a declaration that it has the right to appoint counsel of its choosing.
2. Travelers is entitled to a declaration that KB has no right to independent counsel in the underlying action.
3. Travelers is entitled to a declaration that it has no obligation to pay fees and costs incurred in the defense of KB after the date KB refused to accept Collinsworth, Specht & Calkins as defense counsel appointed by Travelers on May 20, 2014.
4. Travelers is entitled to a declaration that it has no obligation to pay any defense fees and costs incurred in the defense of KB after the date the homeowners' claims arising out of the work of Travelers' named insured was settled on October 16, 2014.
5. Travelers is entitled to a judgment as a matter of law as to its cause of action for breach of contract because KB breached the insurance policies by refusing to accept Collinsworth, Specht & Calkins as defense counsel appointed by Travelers.
6. Travelers is entitled to a judgment as a matter of law as to KB's cause of action for breach of contract because Travelers fulfilled all requirements under the insurance policies prior to KB's breaches of said policies.
7. Travelers is entitled to judgment as a matter of law as to KB's cause of action for breach of the covenant of good faith and fair dealing in its entirety because Travelers fulfilled all requirements under the insurance policies until KB's breaches of said policies, Travelers did not act unreasonably, and KB cannot establish damages.

The motion will be made on the grounds that no genuine issue exists as to any facts material to the above-referenced issues and that the undisputed facts establish that Travelers is entitled to judgment as a matter of law.

The motion will be based upon this notice; the memorandum of points and authorities attached hereto; the attached declarations of Angela Martin, Richard Carrillo, and Pamela Colouris and the exhibits attached thereto; the request for judicial notice (RJN); all pleadings and records filed in this action; and any other evidence presented at the time of the hearing of the motion.

/ / /

/ / /

/ / /

Dated: November 3, 2014

**THE AGUILERA LAW GROUP, APLC**

*/s/ Raymond E. Brown*

A. ERIC AGUILERA, ESQ.
JASON Y. CHAO, ESQ.
RAYMOND E. BROWN, ESQ.
Attorneys for Plaintiff/Counter-Defendant
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

**TABLE OF CONTENTS**

I. INTRODUCTION…………………………………………………………………..…1

II. STATEMENT OF FACTS……………………………………………………………1

A. THE NORCRAFT POLICIES………………………………………………………..1

B. THE DAVIS AND KB'S TENDER……………………………………………………2

C. THE JIANG AND CHO TENDERS AND CONSOLIDATION WITH THE DAVIS ACTION……………………………………………………………………………….3

D. TRAVELERS' APPOINTMENT OF THE CLAPP MORONEY FIRM AND KB'S REFUSAL……………………………………………………………………………..4

E. APPOINTMENT OF THE COLLINSWORTH FIRM AND KB'S OBJECTION…….5

F. PAYMENT OF KB'S DEFENSE FEES AND COSTS AND SETTLEMENT OF NORCRAFT CLAIMS…………………………………………………………..6

III. SUMMARY JUDGMENT MUST BE GRANTED WHERE NO GENUINE ISSUE EXISTS AS TO ANY MATERIAL FACT…………………………………………….6

IV. PRIOR ORDERS ON THESE SAME ISSUES BETWEEN THE SAME PARTIES CREATE THE PRESUMPTION KB IS NOT ENTITLED TO INDEPENDENT COUNSEL AND CANNOT ESTABLISH A CLAIM FOR BAD FAITH………………..7

V. TRAVELERS IS ENTITLED TO APPOINT COUNSEL OF ITS CHOOSING…………9

A. THE POLICIES PROVIDE TRAVELERS WITH THE RIGHT TO CONTROL THE DEFENSE IF ITS INSURED………………………………………………………….9

B. TRAVELERS HAS NOT FORFEITED ITS RIHGT TO CONTROL THE DEFENSE OF KB…………………………………………………………………………..10

1. California Law Abhors a Forfeiture…………………………………………….11

2. Filing Declaratory Relief Actions as to Independent Counsel is Not Bad Faith……11

3. Travelers Did Not Delay is Accepting KB's Defense…………………………..11

4. Travelers' Cannot Forfeit its Right Under the Policies Based on Alleged Violation of the Fair Claims Settlement Practices Regulations………………………………13

C. TRAVELERS HAS THE RIGHT TO UNITLATERALLY APPOINT COUNSEL OF ITS CHOICE……………………………………………………………………14

D. TRAVELERS APPOINTMENT OF COUNSEL DID NOT WAIVE THE RIGHTS IT FULFILLED ITS OBLIGATION TO PROVIDE KB WITH A FULL AND COMPLETE DEFENSE……………………………………………………………...14

1. Any Alleged Conflict of the Clapp Firm Cannot be Imputed to Travelers…………15

2. Travelers Offered a Full, Complete and Conflict Free Defense………………….....16

VI. TRAVELERS IS NOT REQUIRED TO PROVIDE INDEPENDENT COUNSEL………16

A. AN INSURED IS ENTITLED TO INDEPDENT COUNSEL ONLY IN LIMITED CIRCUMSTANCES……………………………………………………………….16

B. THE EXISTENCE OF OTHER SUITS BETWEEN KB AND TRAVELERS IS IRRELEVANT ……………………………………………………………………….17

C. TRAVELERS' DEFENSE AND SETTLEMENT OR NORCRAFT CLAIMS CREATE NO CONFLICT AND TERMINATE ANY FUTURE DUTY TO DEFEND KB……17

D. TRAVELERS APPOINTMENT OF THE CLAPP FIRM DID NOT CREATE A CONFLICT OF INTEREST………………………………………………………….20

VII. TRAVELERS IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS AND KB HOMES CAUSES OF ACTION FOR BREACH OF CONTRACT……………………...21

A. TRAVELERS HAD A CLEAR RIGHT TO APPOINT COUNSEL TO DEFEND KB……………………………………………………………………………………….21

B. KB'S REFUSAL TO ACCEPT APPOINTED COUNSEL CONSTITUTES A BREACH OF THE POLICIES………………………………………………………..21

C. TRAVELERS PERFORMED ALL OF ITS OBLIGATIONS UNDER THE POLICIES…………………………………………………………………………….22

D. KB FORFEITED THE RIGHT TO BENEFITS UNDER THE POLICIES BY REFUSING TO ALLOW TRAVELERS TO PROVIDE A DEFENSE………………23

VIII. TRAVELERS IS ENTITLED TO PARTIAL SUMMARY JUDGMENT REGARDING KB'S BREACH OF CONTRACT AND BAD FAITH CLAIMS ………………………..24

A. KB LACKS EVIDENCE TO ESTABLISH THAT IT SUSTAINED DAMAGES…..24
B. TRAVELERS CANNOT BREACH THE IMPLIED CONENANT OF GOOD FAITH AND FAIR DEALING WHERE IT HAS NOT BREACHED THE CONTRACT…...25
C. TRAVELERS CONDUCT WAS NOT “UNREASONABLE”……………………….26

TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 157 (1970)....7

*Alkow v. State Bar of Cal.*
38 Cal. 2d 257, 263 (1952....15

*Allstate Ins. Co. v. King*
252 Cal.App.2d 698 (1967)....22

*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 831....25

*American States Ins. Co. v Pioneer Elec. Co.*
85 F. Supp. 2d 1337, 1343 (S.D. Fla. 2000)....23,25

*Barney v. Aetna Casualty & Surety Co.*
185 Cal.App.3d 966 (1986)....19

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 555 (2007)....13

*Blanchard v. State Farm Fire & Casualty Co.*
2 Cal.App.4th 345 (1991)....17

*Boudreaux v. Swift Transp. Co., Inc.*
402 F3d 536, 544 (5th Cir. 2005)....7

*Bramalea California, Inc. v. Reliable Interiors, Inc.*
119 Cal.App.4th 468, 473 (2004)....25

*Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997)....20

*Cal. Shoppers Inc. v. Royal Globe Ins. Co.*
175 Cal. App. 3d 1, 38 (1985)....12

*California Dairies, Inc. v. RSUI Indem. Co.*
462 Fed. Appx. 722 (9th Cir. 2011)....14

*Campbell v. Allstate Ins. Co.*
60 Cal.2d at 305-307 (1963)....24

*Carma Developers (Calif.), Inc. v. Marathon Develop. Calif., Inc.*
2 Cal.4th 342, 371–376 (1992) ........................................ 26
*Celotex Corp. v. Catrett*
477 U.S. 317, 323 (1986)........................................ 6
*Ceresino v. Fire Ins. Exchange*
(1989) 215 Cal.App.3rd 814, 823........................................ 25
*Columbia Cas. Co. v. Gordon Trucking, Inc*.
758 F.Supp.2d 909, 918 (N.D. Cal. 2010)........................................ 10
*Comunale v. Traders & Gen. Ins. Co.*
(1958) 50 Cal.2d 654, 659 ........................................ 27
*Cray Communications, Inc. v. Novatel Computer Systems, Inc.*
33 F3d 390, 394 (4th Cir. 1994)........................................ 7
*Devereaux v. Abbey*
263 F3d 1070, 1076 (9th Cir. 2001) ........................................ 7
*Diamond Heights Homeowners Assn. v. National American Ins. Co*.
227 Cal.App.3d 563, 578 (1991)........................................ 9
*Dynamic Concepts v. Truck Exchange*
61 Cal. App. 4th 999, 1010 ........................................ 12
*Federal Ins. Co. v. MBL, Inc.*
219 Cal.App.4th 29, 41-42 (2013)........................................ 17,19
*Foley v. Interactive Data Corp.*
47 Cal.3d 654, 690 (1988) ........................................ 26
*Forecast Home, Inc. v. Steadfast Ins. Co.*
181 Cal. App. 4th 1466, 1483 (2010) ........................................ 9
*Fortyune v. Amer. Multi-Cinema, Inc.*
364 F.3d 1075, 1080 (9th Cir. 2004) ........................................ 7
*Handy v. First Interstate Bank*
13 Cal. App. 912, 924-925........................................ 12

*Houck Construction, Inc. v. Zurich Specialties London Ltd.*
2007 WL 1739711 (C.D. Cal. 2007) .......... 12
*Houston General Ins. Co, supra*, 108 Cal. App. at 964 .......... 14
*Hurvitz v. St. Paul Fire & Marine Ins. Co.*
109 Cal. App. 4th 918 (2003) .......... 20
*Legacy Partners, Inc. v. Clarendon American Ins. Co.*
2010 U.S. Dist. LEXIS 36966 (S.D. Cal. 2010) .......... 14
*Lies v. Farrell Lines, Inc.*
641 F.2d 765, 769 (9th Cir. 1981) .......... 7
*Love v. Fire Ins. Exch*
221 Cal. App. 3rd 1136, 1151 (1990) .......... 27
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 587 (1986) .......... 7, 8
*Meadowbrook, Inc. v. Tower Ins. Co., Inc.*
559 N.W. 2d 411, 417 (Minn. 1997) .......... 20
*Minich v. Allstate Ins. Co.*
193 Cal.App.4th 477, 493 (2011) .......... 26
*Mirabito v. Liccardo*
4 Cal.App.4th 41, 45–46 (1992) .......... 16
*Montrose Chemical Corp. v. Superior Court*
6 Cal.4th 287, 295 (1993) .......... 20
*Moradi-Shalal v. Fireman's Fund Ins. Co.*
46 Cal.3d 287 (1988) .......... 13
*New Hampshire Ins. Co. v. Ridout Roofing Co.*
(1998) 68 Cal.App.4th 495, 504-505 .......... 20,26
*New Plumbing Contractors, Inc. v. Edwards, Sooy & Byron*
99 Cal. App. 4th 799, 802, (2002) .......... 20

*Novak v. Low, Ball & Lynch*
77 Cal. App. 4th 278, 285, 91 Cal. Rptr. 2d 453, 458 (1999) ........ 20

*Nw. Title Sec. Co. v. Flack*
6 Cal.App.3d 134, 140-141 (1970) ........ 24

*Olson v. State Farm Fire & Cas. Co.*
97 F.3d 1460 (1996) ........ 19

*Perez-Encinas v. AmeriUs Life Ins. Co.*
468 F. Supp. 2d 1127, 1139 (N.D. Cal. 2006) ........ 27

*Purefoy v. Pac. Auto. Indem. Exch.*
5 Cal.2d 81 (1935) ........ 24

*Rattan v. United States Auto. Ass'n*
84 Cal. App. 4th 715 (2000) ........ 14

*Reichert v. General Ins. Co.*
68 Cal.2d 822, 830 (1968) ........ 25

*Reynolds v Maramorosch*
208 Misc. 626, 144 N.Y.S.2d 900, 904 (Sup 1955) ........ 23,24

*Ringler Associates Inc., v. Maryland*
(2000) 80 Cal.App.4th 1165, 1188 ........ 25

*Ross v. Creel Printing & Publ'g Co.*
100 Cal.App.4th 736, 746, (2002); ........ 16

*Roussos v Allstate Ins. Co.*
104 Md. App. 80, 655 A.2d 40, 45 (1995) ........ 24

*San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.*
82 Cal.App.4th 1230, 1241 (2000) ........ 25

*San Jose Production Credit Association v. Old Republic Life Ins. Co.*
(9th Cir. 1984) 723 F.2d 700, 703-704 ........ 27

*Spindle v. Chubb/Pacific Indem. Group*
89 Cal.App.3d 706,714 (1979) ........ 9

*Third Story Music, Inc. v. Waits*
(1995) 41 Cal.App.4th 798, 808 .......... 26
*Ticor Title Ins. Co. v. Employers Ins. of Wausau*
40 Cal.App.4th 1699, 1707 (1995) .......... 9
*Travelers Property Casualty Co v Centex Homes,* ("Centex I") No. 10-02757 CRB
2011 U.S. Dist. LEXIS 36128 (N.D. Cal. Apr. 1, 2011) .......... 10, 14
*Truck Ins. Exch. v. Unigard Ins. Co.*
79 Cal.App.4th 966, 981(2000) .......... 22
*United States Fidelity & Guaranty Co v. Superior Court* (1988) 204 Cal. App. 3d 1513 .......... 12
*W.D. O'Morrow v. Borad*
27 Cal.2d 794, 800 (1946) .......... 11
*Waller v. Truck Ins. Exch., Inc.*
11 Cal.4th 1, 18, 36 (1995) .......... 9, 26
*Western Polymer Technology, Inc. v. Reliance Ins. Co.*
32 Cal.App.4th 14, 22 (1995) .......... 19
*Widener University v Fred S. James & Co., Inc.*
371 Pa. Super. 79, 537 A.2d 8239, 833 (1988) .......... 23,25
*Wright v. Farmers Auto. Inter-Insurance Exchange*
39 Cal.App.2d 70 (1940) .......... 22

**Statutes**

California Civil Code § 2860(b) .......... 17
California Code Civil Procedure § 1909 .......... 7
California Evidence Code § 604 .......... 9
Fed. R. Civ. Proc. 56(c)(1)(B) .......... 7
Fed. R. Civ. P. 56 (a), (b), (d) .......... 7

**Rules**

Cal. Rules Prof. Con., Rule 1-100 .......... 15

**Treatises**

Croskey, Heeseman & Imre, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group, 2014) ........ 26

**Regulations**

California Code of Regulations title 10, § 2695.7(b), ........ 14

California Fair Claims Settlement Practices Regulations (10 C.C.R. § 2695.1 ........ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In the past two years, KB has taken the contradictory position that it is entitled to a defense as an additional insured under commercial general liability policies issued by Travelers, yet is not bound by the terms and conditions of those same policies. Essentially, KB contends that Travelers must defend KB, but Travelers has no right to control that defense or appoint counsel – despite the wealth of California law and policy language to the contrary.

KB attempts to avoid Travelers' right to appoint counsel by claiming an entitlement to independent counsel, however, KB has failed to allege the existence of any conflicts between Travelers and KB sufficient to create such an entitlement. KBs' inability to identify a single fact evidencing a legally recognizable conflict between Travelers and KB establishes its inability to prove its claimed entitlement to independent counsel. As a result, Travelers is entitled to a declaration that KB has no such right.

Since it is clear that Travelers was well within its rights under the insurance policies to appoint defense counsel, KB's refusal of said counsel constituted a breach of KB's obligations under the policies. Moreover, KB forfeited its right to benefits under the policy through this breach. Most telling, KB has failed to establish any conduct by Travelers that can be deemed unreasonable as a matter of law. Finally, KB's only alleged damages in this matter are the fees it has chosen not to pay or submit to other insurers for payment, i.e. manufactured damages. For these reasons, Travelers is entitled to judgment as a matter of law on its cause of action for breach of contract, as well as KB's causes of action for breach of contract and breach of the covenant of good faith and fair dealing.

### II. STATEMENT OF FACTS

#### A. THE NORCRAFT POLICIES

Travelers issued 10 consecutive commercial general liability policies to Norcraft Companies/Norcraft Holdings, L.P. (the "Policies")[1]. (Colouris Decl., ¶4, Ex. A and B.) Each of the Policies expressly provides Travelers with the right to control the defense of its insured, stating "We will have the right and duty to defend the insured against any "suit" seeking those damages." (Colouris Ex. A and B.) Additionally, pursuant to the additional insured endorsement, another organization may be deemed an additional insured if there is a "written agreement, executed prior to loss, to name" that entity as an

[1] The Norcraft Policies are numbered as follows: TC2J-GLSA-118D0207-TIL-02 (eff. 12/31/02-03) and TC2J-GLSA-118D2170-TIL (eff. 12/31/03-12). (Colouris Decl. ¶4, Ex. A and B.)

additional insured, but only for "property damage" arising out of the Named Insured's work for that business entity. (Colouris Decl., ¶10, Ex. B.) Finally, the Policies require that an insured, cooperate with Travelers "in the investigation or settlement of the claim or defense against the 'suit'; and . . . Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." (Colouris Ex. A and B.)

**B. THE DAVIS ACTION AND KB'S TENDER**

On February 8, 2012, 17 homeowners within The Bluff at Seaside Highlands and The Cove at Seaside Highlands developments (the "Project") filed a civil action entitled *Davis, et al. v. Kaufman & Broad Monterey Bay, Inc., et al.*, Monterey County Superior Court, Case No. M116168 (the "Davis" action) alleging various construction defects to their homes. (RJN Ex. A.) On July 6, 2012, KB, through its counsel, Glaspy & Glaspy ("Glaspy Firm"), tendered its defense and indemnity as an additional insured under the Policies to Travelers, providing a copy of the homeowner complaint, a homeowners matrix, and certificates of insurance and additional insured endorsement forms. (Colouris Decl. ¶5, Ex. C.)

On July 20, 2012, Pamela Colouris, the Senior Technical Specialist assigned by Travelers to KB's tender, reviewed the tender documents and sent written acknowledgement. Ms. Colouris explained that Travelers needed additional information and requested copies of any contract between KB and Norcraft and information regarding the existence of any wrap policy for the project in order to complete Travelers' investigation. (Colouris Decl. ¶6, Ex. D.) The Glaspy Firm did not respond to the request.

On October 29, 2012, after receiving no response to her request, Ms. Colouris emailed the Glaspy Firm, informing her that she still had not received any subcontracts. (Colouris Decl. ¶7-8, Ex. E.) That day, the Glaspy Firm provided Ms. Colouris with copies of the Norcraft subcontract requiring KB to be added as an additional insured under the Norcraft Policies and invoice ledgers related to Norcraft's work on the Davis homes. (Colouris Decl. ¶9, Ex. E and F.)

Ms. Colouris reviewed this information and issued a letter on November 7, 2012 stating "Travelers will defend KB subject to this coverage letter and the terms and conditions and defense of the referenced policy." (Colouris Decl. ¶10-11, Ex. G.) The letter also explained that Travelers' agreement to defend KB was expressly subject to reservations included within the "Commercial General Liability Coverage Form CG 001 10/01 and the additional insured endorsement" of the Policies. (Colouris Ex G.) The letter

requested information regarding KB's tender of its claim to other insurers that may owe additional insured coverage and that "Travelers reserves the right to appoint counsel of its choosing to represent KB in the referenced matter." (Colouris Ex. G.)

Meanwhile, on July 6, 2012, KB tendered its defense and indemnity to State Farm General Insurance Company ("State Farm") as an additional insured under policies issued to American Electrical Services, Inc. (Martin Ex. D.) On September 4, 2012, State Farm agreed to provide a defense to KB (Martin Ex. E.) After agreeing to defend KB, both State Farm and Travelers began paying defense fees and costs incurred by the Glaspy Firm on behalf of KB. (Colouris Decl. ¶14, Ex. I; Martin Ex. H, McAlister Depo. 15:22-16:1.)

### C. THE JIANG AND CHO TENDERS AND CONSOLIDATION WITH THE DAVIS ACTION

While the Davis Action was pending, two other matters related to different homes in the Projects arose. First, on February 6, 2013, the Glaspy Firm tendered KB's defense and indemnity against a Notice of Claim served by a single homeowner, Diane Jiang, to Travelers as an additional insured under the Policies. (Colouris Decl. ¶18, Ex. J.) On February 19, 2013, Ms. Colouris requested the Norcraft subcontract evidencing Norcraft's work on the Jiang home and insurance requirements from Ms. Glaspy. (Colouris Decl. ¶20, Ex. K.) The Glaspy Firm did not provide additional information until May 31, 2013. (Colouris Decl. ¶27, Ex. O.) However, because the SB800 Notice related to the Jiang claim did not describe any damages alleged related to cabinets, i.e. the work of Norcraft, that same day, Ms. Colouris requested that KB withdraw its tender. (Colouris Decl. ¶28, Ex. Q.)

Over a month later, on July 8, 2013, the Glaspy Firm provided Travelers with a copy of the complaint filed by Ms. Jiang, styled *Diana Jiang v. KB, et al*, Monterey County Superior Court, Case no. M122670, which alleged damages related to cabinet work. (Colouris Decl. ¶29, Ex. R and S.) In response, Ms. Colouris contacted Ms. Jennifer Wilhelmi of Clapp, Moroney, Bellagamba, Vucinch, Beeman & Scheley ("Clapp Firm") to run a conflict check to determine if the Clapp Firm could represent KB in the Jiang Action. (Colouris Decl. ¶29, Ex. T.) On July 8, 2013, Ms. Wilhelmi confirmed that the Clapp Firm did not have any conflicts. Travelers issued a letter to KB agreeing to defend KB in the Jiang Action, subject to a reservation of rights, and retained the Clapp Firm to defend KB. (Colouris Decl. ¶31, Ex. U.) The Jiang Action was eventually consolidated with the Davis Action on or about November 22, 2013. (Colouris Decl. ¶34, Ex X.)

Also on February 6, 2013, the Glaspy firm tendered KB's defense against a Notice of Claim related to eleven different homes in the Projects as a separate claim (the "Cho" action). (Colouris Decl. ¶21, Ex. R.) Ms. Colouris was also assigned this tender, and on February 18, 2013, requested copies of the Norcraft subcontract related to these homes. (Colouris Decl. ¶21-22.) The Glaspy Firm again failed to provide the requested information, until May 31, 2013, when Ms. Colouris made a second request. (Colouris Decl. ¶32, Ex. P.) It was at this time the Glaspy Firm informed Ms. Colouris the Cho homes would be added to Davis. (Colouris Decl. ¶32, Ex. P.) On August 27, 2013, a First Amended Complaint was filed in Davis adding the Cho homes. (Colouris Decl. ¶33, Ex. V.)

### D. TRAVELERS' APPOINTMENT OF THE CLAPP MORONEY FIRM AND KB'S REFUSAL

Travelers exercised its right to appoint counsel to defend KB on May 1, 2013. (Colouris Decl. ¶24.) That day, Ms. Colouris contacted Ms. Wilhelmi and requested that she provide a conflicts check as to the Davis Action. (Colouris Decl. ¶24, Ex. M.) Ms. Wilhelmi confirmed that the Clapp Firm had no conflicts. (Colouris Ex. M.) On May 8, 2013, Travelers retained that firm to represent KB and informed KB of the retention. (Colouris Decl. ¶26, Ex. N.)

It was not until June 5, 2013, that KB responded to the May 8, 2013 retention of the Clapp Firm, when Menter & Witkin, a firm representing KB, demanded additional information related to Travelers' retention of the Clapp Firm in Davis and a second matter entitled *Cha v. KB Coastal, Inc.* The letter demanded a list of all cases in which Travelers retained the Clapp Firm within the last five years, the results of conflicts checks, and litigation/billing guidelines. (Colouris Decl. ¶35, Ex. Y.) The letter asserted: "if Travelers and/or Ms. Wilhelmi can demonstrate to KB's satisfaction that Ms. Wilhelmi is qualified and competent to represent a residential developer in construction defect matters and is conflict-free and Travelers confirms in writing to KB that it will provide KB with a full and complete (100%) defense of these actions through their final conclusion, KB will further consider the Wilhelmi association." (Colouris Ex. BB.) The letter did not provide any reason other than a "delay" and KB's unspecified "concerns" about the Clapp Firm for demanding the additional information. (Colouris Ex. Y.)

That same day, Menter & Witkin wrote directly to Ms. Wilhelmi regarding the *Cha, et al. v. KB Coastal, Inc.* matter noting KB's suspicion that the Clapp Firm may have one or more conflicts and requesting information regarding that firm's prior representations. (Martin Ex. J, Wilhelmi Depo. Ex. 513.) This letter was not copied to Travelers. Further, Ms. Wilhelmi did not discuss the additional

demand with Travelers. (Martin Ex. I, Wilhelmi Depo. 173:11-14; 174:5-11; P. Colouris Decl. ¶36.)

Over the next three months, Ms. Wilhelmi and Menter & Witkin corresponded regarding the Clapp Firm qualifications and "potential conflicts" related to other litigation, including *Maxion, et al. v. KB South Bay, Inc.*, Contra Costa County Superior Court, Case No C11-00893 and *Aldrich v. KB*, Monterey Superior Court Case No M94490. (TRV Ex. I, Wilhelmi Depo. 212:20-213:6; 254:8-255:6.) Ms. Wilhelmi did not recall any discussions with Travelers regarding this exchange with Menter & Witkin. (TRV Ex. I, Wilhelmi Depo. 263:12-20; 264:25-265:25.)

**E. APPOINTMENT OF THE COLLINSWORTH FIRM AND KB'S OBJECTION**

It was not until February 21, 2014, that Ms. Wilhelmi informed Travelers that the Clapp Firm was unable to represent KB due to the fact that D.H. Smith Company, a former client of the Clapp Firm, was named as a cross-defendant in the Davis Action. (Colouris Decl. ¶37, Ex. Z and AA.) Ms. Wilhelmi did not raise the *Maxion* or *Aldrich* case, or her communications with Menter & Witkin. Ms. Colouris acknowledged Ms. Wilhelmi's letter and stated Travelers would retain new counsel for KB. (Colouris Decl. 37, Ex. AA.)

In less than a week, Ms. Colouris contacted Scott Calkins on February 25, 2014, asking that he run a conflicts check to determine if Collinsworth Specht & Calkins, LLP ("Collinsworth Firm") could represent KB in the Davis Action. (Colouris ¶38, Ex. BB.) Mr. Calkins requested a copy of the Cross-Complaint, which Ms. Colouris provided. (Colouris Decl. ¶39, Ex. BB.) Mr. Calkins then confirmed his firm had no conflicts; so Travelers retained the Collinsworth Firm to represent KB in the Davis Action. (Colouris Decl. ¶39, BB.)[2] On March 26, 2014, Ms. Colouris sent a letter informing KB its defense was transferred to the Collinsworth Firm, effective February 26, 2014. (Colouris Ex. CC.)

On March 25, 2014, Mark Collinsworth notified KB that the Collinsworth Firm had been retained to represent KB in the Davis Action. (Martin Ex. L.) On May 20, 2014, KB's coverage counsel, Menter & Witkin and Newmeyer & Dillion, met with the Collinsworth Firm to discuss KB's alleged concerns regarding coverage litigation between Travelers and KB. (Martin Ex. K and M, Collinsworth Depo. 110-113, Ex. 7.) By this date, the Collinsworth Firm had already provided KB with a firm resume. (Martin Ex. N, Calkins Depo. 34:16-35:18, 37:4-13.) It was during this meeting KB requested the Collinsworth

[2] As of this date, the Jiang Action, Cho Tender and Davis Action are all one lawsuit – the Davis Action.

withdraw its proposed association based solely on unrelated litigation to which the Collinsworth Firm is not party. (Martin Ex. K, Collinsworth Depo. 139:23 -140:13.) Neither KB nor the Glaspy Firm made any further request for additional information from the Collinsworth Firm or identified any other work by the Collinsworth Firm for other developers or subcontractors that would result in a conflict of interest in the Davis Action. (Martin Ex. N, Calkins Depo. 35:10-12.)

### F. PAYMENT OF KB'S DEFENSE FEES AND COSTS AND SETTLEMENT OF NORCRAFT CLAIMS

Throughout the Davis Action, both Travelers and State Farm paid defense fees and costs incurred to defend KB based on the Glaspy Firm allocations. Under the Policies, Travelers paid $32,764.03 in defense fees and costs incurred between July 6, 2012 and May 8, 2013. (Colouris Ex. I and X.) After receiving notice of the Clapp Firm's stated conflict, Travelers issued additional payments to the Glaspy Firm for fees incurred between May 8, 2013 and February 26, 2014. (Colouris Ex. I.)

Since accepting KB's defense, State Farm has continued to pay all defense fees and costs allocated by the Glaspy Firm. (Martin Ex. H, McAlister Depo. 15:8-11.) On October 16, 2014, the homeowners and Norcraft entered into a settlement agreement releasing all claims in the Davis Action related to Norcraft's work. (Carrillo Decl. ¶4, Ex. A.) The settlement agreement further fully released all derivative liability of KB potentially arising from Norcraft's work.

## III. <u>SUMMARY JUDGMENT MUST BE GRANTED WHERE NO GENUINE ISSUE EXISTS AS TO ANY MATERIAL FACT</u>

A party can move for summary judgment either by proving that it has a complete defense or by showing that the nonmoving party cannot meet its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential of that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

Fed. R. Civ. Proc. 56(c)(1)(B) recognizes that a party need not always point to specific materials in the record: "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(c)(1)(B). Accordingly, "the Celotex 'showing'

can be made by pointing out through argument—the absence of evidence to support plaintiff's claim." *Devereaux v. Abbey*, 263 F3d 1070, 1076 (9th Cir. 2001) (en banc) (internal quotes omitted); see also *Boudreaux v. Swift Transp. Co., Inc.*, 402 F3d 536, 544 (5th Cir. 2005); *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F3d 390, 394 (4th Cir. 1994).

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the moving party demonstrates no genuine issue exists as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. Amer. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The court may grant summary judgment on any claim or discrete elements of claims. Fed. R. Civ. P. 56 (a), (b), (d); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 (9th Cir. 1981).

To demonstrate a genuine issue, the opposing party "must do more than simply show that there is mere metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., supra* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587.

## IV. PRIOR ORDERS ON THESE SAME ISSUES BETWEEN THE SAME PARTIES CREATE THE PRESUMPTION KB IS NOT ENTITLED TO INDEPENDENT COUNSEL AND CANNOT ESTABLISH A CLAIM FOR BAD FAITH

Although the traditional burden of summary judgment falls upon Travelers as the moving party, Travelers' position is supported by the presumptions that (1) it is entitled to control the defense, including by appointing counsel of its choosing; (2) there are no conflicts entitling KB to independent counsel; (3) the alleged conflicts of the Clapp Firm are not imputed to Travelers; and (4) Travelers did not breach either the Policies or the implied covenant of good faith and fair dealing. Pursuant to Cal. Code Civ. Proc. § 1909, prior judicial orders of a California or Federal Court create a disputable presumption:

> Other judicial orders of a Court or Judge of this State, or of the United States, create a disputable presumption, according to the matter directly determined, between the same parties and their representatives and successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity.

Thus, where there are prior orders issued by a court between KB and Travelers related to the rights and obligations of those parties, a presumption that those prior determinations are correct exist. First, the prior orders of the Central District of California in both *Travelers Property v KB Coastal*, Central Dist. Case

No. CV12-2473 DSF (JCx), Dkt. No. 65 (RJN Ex. B.) and *Travelers Property v KB Coastal,* Central Dist. Case No. CV12-7198 DSF (JCx), Dkt. No. 41 (RJN Ex. C.) clearly create a presumption. In both cases, KB claimed that Travelers was not entitled to appoint counsel of its choosing and conflicts existed between Travelers and KB – the same parties involved in this action, who are acting under the same title and in the same capacity (i.e., insurer and additional insured) – and that those conflicts entitled KB to independent counsel. The court in both actions issued rulings rejecting KB's claims and finding that KB was not entitled to independent counsel. *Id.*

More recently, in *Fidelity and Guaranty Insurance Company and Travelers Property Casualty Company of America . v. KB Coastal, Inc., et al.,* Cent. Dist. Case No. 5:13-cv-00946-JAK-DTB, Dkt. No. 55 (RJN Ex. D), the court not only addressed claims by KB that it was entitled to independent counsel; but also whether (1) the appointment of the counsel with a conflict of interest entitled KB to independent counsel; and (2) whether Travelers had breached insurance policies and covenant of good faith and fair dealing by unknowingly appointing conflicted counsel. In that case, the court held not only was the conflict of the Clapp Firm insufficient to entitle KB to independent counsel, but Travelers' appointment of the Clapp Firm, a firm with a separate conflict with KB of which Travelers was not aware, is not a breach of the covenant of good faith and fair dealing. (RJN Ex. D, p 10-11.) The court reiterated this ruling twice in the court's denial of KB's motion for reconsideration (RJN Ex. E) and the court's order clarifying issues at trial stating that:

> "the prior order . . . concluded that KB failed to show a genuine issue of material fact as to its claim for breach of the covenant of good faith and fair dealing. Thus there was no evidence of bad faith by Travelers through the designation of the Clapp Moroney firm as counsel for KB." (RJN Ex. F, p 2)

Thus, these issues were "directly determined, between the same parties … litigating for the same thing under the same title and in the same capacity" and there is a rebuttable presumption that: (1) Travelers is entitled to control the defense, including the right to appoint counsel; (2) no conflict of interest exists between KB and Travelers entitling KB to independent counsel; and (3) the appointment of counsel with a conflict unknown to Travelers is not a breach of the covenant of good faith and fair dealing. The effect of these presumption are "to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." Cal.

Evid. Code § 604; Fed. Rules of Evid., Rule 302. As set forth more fully below, KB has failed to set forth any evidence that could possibly rebut that presumption.

## V. TRAVELERS IS ENTITLED TO APPOINT COUNSEL OF ITS CHOOSING

For all of the reasons set forth below Travelers is in fact entitled to control KB's defense, including by appointing counsel. As a result of this simple fact, ***all*** of KB's claims fail.

### A. THE POLICIES PROVIDE TRAVELERS WITH THE RIGHT TO CONTROL THE DEFENSE OF ITS INSUREDS

Insurance policies are contracts and, as such, are subject to the statutory rules of contract interpretation. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). In the present case, the policies provide: "We will have the right and duty to defend any 'suit' seeking those damages." (Colouris Ex. B.) The express terms of the policies thus vest Travelers with authority to control KB's defense. *Forecast Home, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466, 1483 (2010). Indeed, California courts have held that "a provision in a policy which requires the insured to permit the insurer's lawyer to defend claims against the insured amounts to a consent in advance by the insured to employment of an attorney by the insurer to defend such claims." *Houston General Ins. Co. v. Sup. Ct.*, 108 Cal. App. 3d 958, 964 (1980). As the *Forecast* court further explained:

> Forecast could have required its subcontractors to obtain insurance policies listing Forecast as a named insured but this likely would have increased the cost of the subcontracts and the overall bid price, jeopardizing Forecast's chances to gain the development contract. Presumably the parties took all this into consideration in deciding what course to follow. Under these circumstances, ***public policy does not allow a reviewing court to interfere and change the bargain the parties reached merely because certain recognizable risks come to pass."*** *Id*. (emphasis added).

Moreover, California courts have long recognized that an insurer has a right under its policy to control the defense. *Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal.App.4th 1699, 1707 (1995); *Diamond Heights Homeowners Assn. v. National American Ins. Co.*, 227 Cal.App.3d 563, 578 (1991); *Spindle v. Chubb/Pacific Indem. Group*, 89 Cal.App.3d 706,714 (1979).

California courts protect an insurer's right to control the defense because it encourages insureds to quickly tender defense to their insurer and discourages insureds from exercising any control of the defense after tender. *Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F.Supp.2d 909, 918 (N.D. Cal. 2010). Since the insurer has the absolute right to control the defense, it also has the right to select the legal counsel to defend an insured. *Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop*, 2005 U.S. Dist. LEXIS

20485 at 20-21 (E.D. Cal. 2005); *Travelers Property Casualty Co. v. Centex Homes*, ("Centex I") No. 10-02757 CRB, 2011 U.S. Dist. LEXIS 36128 (N.D. Cal. Apr. 1, 2011) (The right to control the defense generally includes the right to select defense counsel.) (RJN Ex. G.).

In *Carolina Casualty*, *supra*, a dispute arose between an insurer and an insured over who had the right to select the legal counsel to represent the insured in a malpractice action. *Id*. at 1. Holding that the express terms of the contract and California law "affords an insurer the right to control the defense," the court found the right to control the defense includes the right to select defense counsel, reasoning that "[a] contrary rule would be inconsistent with the insurer's right to control the defense and would place the insurer in the untenable position of being financially liable, but powerless to ensure the claim is properly defended." *Id*. at 20-22. Consequently, the court determined the insurer was entitled to a declaratory judgment that the insurer who agreed to provide a defense had the right to control the defense and select defense counsel. *Id*. at 23

### B. TRAVELERS HAS NOT FORFEITED ITS RIGHT TO CONTROL THE DEFENSE OF KB

It is clear the Policies provide Travelers with the right to control the defense. However, KB seeks to avoid this reality by claiming that Travelers has forfeited the right to control KB's defense. In a request for all facts supporting that claim, however, KB merely stated:

- Travelers "is engaging in a bad faith scheme to escape and undermine its duty to defend" by suing KB in various coverage actions within federal courts wherein KB believes it is entitled to independent counsel and Travelers forfeited its right to control the defense;
- Travelers failed to provide KB with an immediate, full, complete, and conflict-free defense in the underlying actions;
- "one of the counsel hand-picked by Travelers, Clapp Moroney, was ethically barred from representing KB due to an actual conflict of interest at the time it was retained by the Travelers" based on Clapp Moroney's representation of a subcontractor in *Maxion, et al. v. KB South Bay, Inc.*, Contra Costa County Superior Court Case No. C11-00893 and its prior representation of Norcraft in *Aldrich v. KB*, Monterey County Superior Court, Case No. M94490; and
- "At the very least, KB had good cause to be suspicious of where [appointed counsel's] allegiance lies, especially considering [appointed counsel's] long history of representing subcontractors against KB." (Martin Ex. A.)

KB's conclusory allegations are clearly insufficient to establish Travelers' forfeiture of its right to control KB's defense and are actually directly contradicted by the facts of this case and California law. Thus, Travelers clearly retained its right to control the defense, including by appointing counsel.

**1. California Law Abhors a Forfeiture**

As an initial matter, California law abhors a forfeiture and does not permit such a finding absent a factual finding that an insurer acted wrongfully and in bad faith. In *Chase v. Blue Cross of California,* 42 Cal.App.4th 1142 (1996), the California court of appeal defined "forfeiture" as follows: "A deprivation or destruction of a right in consequence of the non-performance of some obligation or condition. (Black's Law Dict. (6th ed. 1990) p. 650.)" *Chase v. Blue Cross of California*, 42 Cal.App.4th at 1149. "Forfeitures, however, are not favored; hence, a contract and conditions in a contract, will, if possible be construed to avoid forfeiture. (Citations.) This is particularly true of insurance contracts." *W.D. O'Morrow v. Borad*, 27 Cal.2d 794, 800 (1946). Accordingly, such a forfeiture can only be forced upon an insurer in the most dire of circumstances. *Ibid*. As the court explained in *Chase*, an insurer may lose a contractual right based on the doctrine of forfeiture ***only when it breaches the duty of good faith and fair dealing by "engaging in bad faith conduct designed to mislead the insured."*** *Chase, supra*, at 1149 (emphasis added). Absent such a showing of bad faith, an insured is not entitled to use the doctrine of forfeiture to eliminate an insurer's rights under an insurance contract. *Ibid.* Thus, a waiver of Travelers' right to control the defense can only occur when Travelers has acted in bad faith.

**2. Filing Declaratory Relief Actions as to Independent Counsel is Not Bad Faith**

KB's contention that by filing declaratory relief actions to determine Travelers' right to control the defense of its additional insureds is a waiver of that same right is absurd. Instead, this is activity protected by the litigation privilege. Further, California courts have held that:

> "Prompt filing of a declaratory relief action, is an appropriate procedure for determining the application of the *Cumis* principles in a given case. Once the obligation of the insurer to provide *Cumis* counsel is placed in issue by such an action, the insurer's duty can often promptly be adduced through summary judgment or a full trial of the declaratory relief action with its statutory calendar preference." *United States Fidelity & Guaranty Co v. Superior Court*, 204 Cal. App. 3d 1513, 1526 (1988).

Travelers' filing of litigation to determine its right to control the defense of an insured when it arises is actually encouraged by the law – not an example of unreasonable conduct or a waiver of Travelers' rights. See *Handy v. First Interstate Bank*, 13 Cal. App. 912, 924-925 (Absent agreement, judicial determination of an insurer's duty to defend and the existence of a conflict of interest is appropriate as a foundational issue prior to determination fees issues or allocation.).

**3. Travelers Did Not Delay in Accepting KB's Defense**

Second, KB contends Travelers failed to provide an immediate and full defense of the Davis Action because it "delayed" in accepting KB's tender, however, the evidence establishes that Travelers made no such delay. As set forth above, Travelers accepted the tender of defense in the Davis Action within four months of the initial tender, and just nine days after KB provided the subcontract required to form the additional insured obligation to KB. (Colouris Decl. ¶¶5-11, Ex. C, E and G.) That pattern was repeated in regards to the Jiang and Cho tenders as well. Defense of the Jiang Action was accepted the same day evidence of cabinet allegations was provided. (Decl. ¶¶29-30, Ex. R and T.) In regards to the Cho tender, KB failed to respond to Travelers' request for information until it informed Travelers that the Cho homes would be joined with the Davis Action which Travelers was already defending. (Colouris Decl. ¶32, Ex. P.)

As an initial matter, no case has ever held that mere delay may result in forfeiture, and this argument therefore fails, Moreover, the law is clear these facts cannot constitute delay; rather, Travelers provided an immediate defense. See *Cal. Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 38 (1985) (an insurer must reasonably investigate to determine if a duty to defend exists); *Houck Construction, Inc. v. Zurich Specialties London Ltd.*, 2007 WL 1739711 (C.D. Cal. 2007) (An insured that cannot provide evidence that any delay resulted in injury is thus unable to maintain a claim for breach of contract or bad faith based on an insurer's alleged failure to timely or adequately defend, even in the face of an insurer's over-12-month delay in providing a defense); *Dynamic Concepts v. Truck Exchange*, 61 Cal. App. 4th 999, 1010 ("insurers are entitled to a reasonable period of time to analyze a situation requiring a coverage decision"); see also, *Travelers Property Casualty Co v Centex Homes*, ("*Centex II*"), RJN Ex. H, p. 16 (holding Travelers fulfilled its duty to provide an "immediate defense" by accepting the defense within 5 months and appointing counsel within a year). Any alleged delay was caused by the Glaspy Firm's failure to provide Travelers with the necessary documentation to establish KB's role as an additional insured under the Policies, i.e. a written agreement requiring Norcraft to have KB listed as an additional insured.

Clearly KB and the Glaspy Firm were aware of the "alleged" delays caused by their slow provision of the requested additional information, which was within their possession. However, neither KB nor the Glaspy Firm made ***any complaint whatsoever regarding any claimed delay*** while that investigation into the Davis Action was ongoing, only ***after Travelers appointed other counsel to defend KB***. Thus, it is clear that Travelers' timing in accepting the tenders was not the problem – the problem was that KB

needed to find any excuse necessary to prevent Travelers' chosen counsel from taking over the case.

**4. Travelers' Cannot Forfeit its Rights Under the Policies Based on Alleged Violation of the Fair Claims Settlement Practices Regulations.**

It should be noted that contrary to KB's assertions in its counterclaim, the California Fair Claims Settlement Practices Regulations (10 C.C.R. § 2695.1, et seq.) does not apply to tenders of defense of third-party lawsuits. The title of the section itself makes clear that ***it applies only to the prompt settlement of claims***. The specific code section is entitled "Standards for Prompt, Fair and Equitable Settlements." Additionally, ***the entire article*** of the insurance regulations is entitled "Fair Claims Settlement Practices Regulations." No settlement practices are at issue in KB's tender of the Davis Action. As such, these regulations have no application here and cannot possibly support KB's claims.

Further, the Fair Claims Settlement Practices Regulations (Sec. 2695.2) define "proof of claim" as "any evidence or documentation in the possession of the insurer . . . that provides any evidence of the claim and that reasonably supports the magnitude or the amount of the claimed loss." 10 C.C.R. § 2695.2(s). KB's tender clearly is not a proof of claim, as it has already been held that a complaint in a third-party lawsuit does not constitute "evidence of a claimed loss," nor does it set forth specific damage amounts. See *Centex II*, *supra*, RJN Ex. H, at p. 25. Rather, it merely consists of general allegations. "A complaint serves only to provide 'fair notice of what the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). More importantly, California courts have consistently held that violation of the Fair Claims Settlement Practices Regulations Act cannot support a private right of action, only the insurance commissioner is authorized to enforce the statute. *Moradi-Shalal v. Fireman's Fund Ins. Co*., 46 Cal.3d 287 (1988).

Moreover, as recently as July 2014, the Central District made it clear that "KB Home's reference to 10 C.C.R. §2695.7 (b) is also unpersuasive . . . California courts have made clear that, 'neither the [California] Insurance Code nor regulations adopted under its authority provide a private right of action[citation]. Thus, any particular violation of the regulations does not require a finding of unreasonable conduct." *Fidelity and Guaranty Insurance Company, et al. v. KB Home Coastal, Inc., et al, supra*, RJN Ex. D, at p. 13-14.] (citing *Rattan v. United States Auto. Ass'n*, 84 Cal. App. 4th 715 (2000).); See also *Legacy Partners, Inc. v. Clarendon American Ins. Co.*, 2010 U.S. Dist. LEXIS 36966 (S.D. Cal. 2010) ("Plaintiff also argues that the Defendant's failure to deny coverage within forty days of a notice of claim as required by California Code of Regulations title 10, § 2695.7(b), bars denial. Plaintiff

cites no support for this proposition and the court is unable to locate any."); *California Dairies, Inc. v. RSUI Indem. Co.*, 462 Fed.Appx. 722 (9th Cir. 2011) (failure to cite exclusion violating 2695.7(b)(1) does not waive an insurer's right to rely on such exclusion absent evidence of express intent to waive). Thus, even if the Act was relevant to Travelers' handling of KB's tender, KB could not rely upon it to establish that Travelers breached the contract or waived its right to control the defense. *Centex II, supra*, RJN Ex. H at p. 25 ("In any event, regardless of whether Centex's tender constitutes a notice of legal action or a proof of claim, the regulations are not dispositive. They do not provide that a delay exceeding forty days constitutes evidence of bad faith on the part of the insurer.").

**C. TRAVELERS HAS THE RIGHT TO UNITLATERALLY APPOINT COUNSEL OF ITS CHOICE**

The fact that Travelers chose to exercise its right to appoint counsel after permitting the Glaspy Firm to defend KB was in no way a waiver of its right to appoint counsel. As noted above, the right to control the defense includes the right to select defense counsel. *Centex I, supra,* No. 10-02757 CRB, 2011 U.S. Dist. LEXIS 36128, RJN Ex. G. Neither the Policies nor California law require an insurer to have specific reasons in order to exercise this right. To the contrary, when the insurer provides a defense, the insured has no right to interfere with the insurer's control of the defense. *Safeco Ins. Co*., *supra*, 71 Cal.App.4th at 787. An insurer may lose a contractual right based on the doctrine of forfeiture ***only when it breaches the duty of good faith and fair dealing by "engaging in bad faith conduct designed to mislead the insured."*** *Chase, supra*, at 1149 (emphasis added). In fact, not only is Travelers entitled to control the defense of KB, but KB has also ***consented*** in advance to such control under the terms of the policy. See, *Houston General Ins. Co, supra*, 108 Cal. App. at 964. In effect, by refusing to allow Travelers to select counsel to defend the Davis Action, KB is disavowing its prior consent which relieves Travelers of its obligation to defend based on the promise to cooperate. That Travelers has chosen to exercise its contractual right to appoint counsel is not a waiver of its contractual right to appoint counsel, especially given Travelers' reservation of this right.

**D. TRAVELERS' APPOINTMENT OF COUNSEL DID NTO WAIVE ITS RIGHTS, IT FULFILLED ITS OBLIGATIONS TO PROVIDE KB WITH A FULL AND COMPELTE DEFENSE**

As an initial matter, no California law supports KB's position that the unknowing appointment of potentially conflicted counsel can waive Travelers' right to control KB's defense. This is because it is simply not the case, and this argument must fail. Moreover, even if such an argument had any basis in law,

it would still fail in this instance for the reasons set forth below.

**1. Any Alleged Conflict of the Clapp Firm Cannot be Imputed to Travelers**

KB further alleges that Travelers waived its right to appoint counsel because it failed to provide "an immediate, full, complete, and conflict-free defense." That argument fails, as Travelers did in fact offer such a defense to KB. As detailed above, Travelers timely accepted KB's tenders of defense and then fully defended KB by paying all defense fees and costs demanded by KB that were incurred from the date of tender through the appointment of the Collinsworth Firm. (Colouris Decl. ¶11, 14, 34, and 40.) Subsequent to defending KB through the Glaspy Firm, Travelers appointed the Clapp Firm to take over the full and complete defense of KB. (Colouris Decl. ¶26.) KB has taken the position that because the Clapp Firm had an alleged conflict of interest, Travelers now has a conflict with KB. This is not the case.

It is well-settled law in California that an attorney's violation of its ethical requirements may not be imputed to non-attorneys. Cal. Rules Prof. Con., Rule 1-100 ("The following rules are intended to regulate professional conduct of members of the State Bar"); *Alkow v. State Bar of Cal*., 38 Cal. 2d 257, 263 (1952) ("***One who is licensed to practice as an attorney in this state*** must conform to the professional standards in whatever capacity he may be acting in a particular matter") (emphasis added).

"Moreover, a violation of the rules of Professional Conduct do not give rise to a cause of action for damages. These rules are not intended to create new civil causes of action." Cal. Rules Prof. Con., Rule 1-100. "There is no independent cause of action for the breach of a disciplinary rule. While the rules may provide standards of conduct for attorneys, they do not alone support a claim for damages." *Ross v. Creel Printing & Publ'g Co*., 100 Cal.App.4th 736, 746 (2002); *Mirabito v. Liccardo*, 4 Cal.App.4th 41, 45–46 (1992). As such, Travelers cannot be punished for any ethical violation by the Clapp Firm and therefore cannot thereby have lost its right to control the defense.

In this instance, Travelers took every precaution to provide KB with a conflict-free defense. Prior to retaining Clapp, Travelers specifically requested that Jennifer Wilhelmi run a conflicts check. (Colouris Ex M.) As Ms. Wilhelmi testified at her deposition, the Clapp Firm ran a conflict check. (Martin Ex. I, Wilhelmi Depo. 48:3-5; 48:24 -49:7.) Based on this conflict check, Ms. Wilhelmi informed Ms. Colouris that it had no conflicts of interest. (Martin Ex. I, Wilhelmi Depo. 109:10-110:10; Ex. M.) Neither Ms. Wilhelmi, nor anyone within the Clapp Firm informed Travelers that a conflict existed when it was retained.

As noted above, and most recently clarified on October 23, 2014, by another Federal court applying California law held that where there is no evidence Travelers knew of the conflict at the time of retention, there is equally no evidence Travelers' conduct was done 'unreasonably and in bad faith' as required to establish a claim of bad faith – the only basis on which Travelers could forfeit its rights. "Travelers' lack of diligence in ensuring that appointed counsel was conflict-free does not establish, without more, that it acted in bad faith." (RJN Ex D, p.11) Thus, Travelers has not forfeited its right to appoint counsel.

**2. Travelers Offered a Full, Complete and Conflict Free Defense**

Further, upon notification of the Clapp Firm conflict, Travelers took immediate steps to replace the Clapp Firm. On February 26, 2014, a mere five days after receiving notice of the Clapp Firm's conflict, Travelers requested a conflict check from the Collinsworth Firm. (Colouris Decl. ¶38, Ex. BB.) The Collinsworth Firm ran a conflict check and Scott Calkins confirmed his office had no conflicts of interest. Travelers then retained the Collinsworth Firm to provide a full and complete defense of KB; and issued further payment to the Glaspy Firm for additional fees incurred from the date the Clapp firm was retained through the date of the Collinsworth Firm retention. (Colouris Decl. ¶40.)

KB was offered a full, complete, and conflict-free defense from Travelers under the Policies. See *Dynamic Concepts*, *supra*, at 1010 ("Truck did not breach any legal obligation to defend Dynamic when it offered to fully defend at its own expense through appointed counsel"). KB, however, refused to authorize the Collinsworth Firm to defend it the Davis Action. (Colouris Ex. DD.) Thus, Travelers did not solely offer KB "conflicted counsel."

**VI. TRAVELERS IS NOT REQUIRED TO PROVIDE INDEPENDENT COUNSEL**

KB has also taken the position that it is entitled to independent counsel because of the alleged conflicts of interest between Travelers and KB. However, KB has failed to produce evidence of any actual conflict of interest that would entitle it to independent counsel under California law.

**A. AN INSURED IS ENTITLED TO INDEPENDENT COUNSEL ONLY IN LIMITED CIRCUMSTANCES**

The right to independent counsel, codified as Cal. Civ. Code § 2860, is extremely limited, as the statute limits conflicts justifying independent counsel to those situations where (1) an insurer reserves its rights on a disputed issue the resolution of which could determine whether the insurer's policy covers the claim and (2) the outcome of that issue can actually be controlled by counsel in the underlying action. Cal. Civ. Code § 2860(b); see also *Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 41-42 (2013).

Indeed, courts "repeatedly recognize a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights. There must also be evidence that 'the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying] claim.' " *Gafcon*, *supra*, 98 Cal.App.4th at 1421; *Blanchard v. State Farm Fire & Casualty Co.*, 2 Cal.App.4th 345 (1991). Thus, "there is no entitlement to independent counsel where the coverage issue is 'independent of, or extrinsic to, the issues in the underlying action … Stated otherwise, 'where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel.' " *Id*. at 1422.

The court's recent decision in *Federal Insurance* confirms that the limitations on the right to independent counsel set forth within these cases are still very much the standard. In that case, numerous insurers of MBL, a supplier of dry cleaning products, filed suit after MBL demanded the appointment of independent counsel. *Federal Ins. Co., supra*, 219 Cal.App.4th at 29. Some of the conflicts claimed by MBL were the insurers had pollution policy exclusions; and that the insurers defended parties adverse to MBL. *Id*. at 44-47. The insurers denied the existence of any conflicts entitling MBL to independent counsel and the Court agreed, granting the insurers' motions for summary judgment. The Appellate Court agreed, finding that the insurers did not make reservations relating to the pollution exclusion, and MBL could not manufacture conflicts where no reservation existed. *Id*. at 44-45. As to damages occurring outside of the policy period, the Court held "it is clear where the coverage issue in question relates only to the timing of damages, there is no conflict under § 2860." *Id*. at 47.

Thus, a right to independent counsel does not exist any time there are any conflicts at all between insurer and insured. It exists ***only when those conflicts could determine coverage for claims in the underlying litigation and counsel appointed by the insurer could act to direct the outcome*** of the conflicts. Matters that are extraneous to coverage and/or the outcome of coverage issues that cannot be controlled by defense counsel in the underlying case do not trigger a right to independent counsel. See *James 3 Corp., supra*, 91 Cal.App.4th at 1108 ("Attorney control of the outcome of a coverage dispute involves insurance coverage, i.e., whether a certain risk or peril is covered under a policy. Furthermore, the coverage dispute must be one that will be litigated in the underlying action.") KB's position falls precisely into the categories which do not entitle it to independent counsel.

### B. THE EXISTENCE OF OTHER SUITS BETWEEN KB AND TRAVELERS IS IRRELEVANT

As explained above, multiple courts have already explained that litigation of Travelers' right to control the defense of KB, including the right to appoint counsel has no bearing on the alignment of KB's and Travelers' interests in defending the underlying action. The identical argument was addressed ***and rejected*** in *Travelers Property Casualty Co v KB Coastal*, Central Dist. case No. CV12-7198 DSF (JCx), Dkt. No. 41, wherein the Court explained "that the mere fact that a lawsuit exists between the insurer and the insured [does not mean] that the insured is entitled to independent counsel. . . Nowhere does Truck Ins. endorse the proposition that a mere suit by an insurer against an insured triggers a right to independent counsel for the insured in all circumstances." *Ibid*. Further, as discussed above, California courts actually encourage insurers to litigate the issue of independent counsel. See *United States Fidelity & Guaranty Co., supra,* 204 Cal.App.3d at 1526.

Were this Court to hold that coverage lawsuits trigger a right to independent counsel, then anytime an insured wanted independent counsel, it could simply file a declaratory relief action on the issue regardless of its merit. That is not a credible interpretation of the rules for appointment of independent counsel, and this Court, like others before it, should reject such a circular argument

### C. TRAVELERS' DEFENSE AND SETTLEMENT OF NORCRAFT CLAIMS CREATE NO CONFLICT AND TERMINATE ANY FUTURE DUTY TO DEFEND KB

An insurer has no obligation to pay for the prosecution of a cross-complaint, however. As a result, Travelers need not prosecute any cross-complaints of KB and Travelers has no control over KB's cross-complaint. *James 3 Corp., supra*, 91 Cal.App.4th at 1104 ("Truck is contractually obligated to provide the insureds with a defense. However, there is nothing in the policy that contractually obligates Truck to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints."); *Barney v. Aetna Casualty & Surety Co.*, 185 Cal.App.3d 966 (1986) ("Aetna had no duty under the policy to file a cross-complaint on [the insured's] behalf, for nothing in the policy provisions imposes upon the insurer the duty to prosecute claims of the insured against third parties"). Counsel appointed to defend KB is not defending the cross-complaint against the Subcontractors.

Moreover, the mere fact Travelers insures both KB and subcontractors cannot by itself create a conflict of interest that would warrant the appointment of independent counsel. See *Olson v. State Farm Fire & Cas. Co.*, 97 F.3d 1460 (1996) ("*O'Morrow* has never been cited for the proposition that independent counsel must be provided whenever an insurance company represents policyholders on opposite sides of a lawsuit … it has been cited only for the general proposition that counsel must be provided *once a conflict*

*develops* and not whenever two policyholders clash.") (emphasis added).

The situation is not one where Travelers is insuring both sides of the litigation, i.e., plaintiff and defendant. Rather, Travelers only insures KB for derivative liability arising out of the work of the subcontractors. Thus, KB and the subcontractors are on the same side, seeking to minimize their liability vis-à-vis the plaintiffs. *Federal Ins. Co., supra,* 219 Cal.App.4th 35 (finding insurers' representation of insureds against whom MBL, another insured, cross-complained did not give rise to a conflict of interest). KB is seeking indemnity from the subcontractors based on allegations arising from their work. (RJN Ex. I.) Because Norcraft's liability to KB is dependent on KB's liability to plaintiffs, Travelers has every incentive to minimize KB's liability since that will also minimize Norcraft's liability to KB. In other words, despite KB's cross-complaint, Travelers and KB are on the same team defending against the same underlying claims

It is equally clear that any settlement of claims against subcontractor cross-defendants also fails to establish a conflict of interest. In all instances, ***Travelers has the absolute right to control the settlement of the claims***. See, *Western Polymer Technology, Inc. v. Reliance Ins. Co.*, 32 Cal.App.4th 14, 22 (1995) (Neither the section 2860 nor case law suggests that independent counsel's control of the insured's defense extends to preventing the insurer from exercising its contractual right to settle a claim. "If the Legislature intended the section to have such an effect, i.e., to abridge the insurer's contractual right to settle, it would have used appropriate language"); *Novak v. Low, Ball & Lynch*, 77 Cal.App.4th 278, 285 (1999) (Independent counsel's control of the insured's defense, that control does not extend to preventing the insurer from exercising its contractual right to settle claims"); *New Plumbing Contractors, Inc. v. Edwards, Sooy & Byron*, 99 Cal. App. 4th 799, 802, (2002) (Under a policy provision giving an insurance company discretion to settle, the insurer is "entitled to control settlement negotiations without interference from the insured."). Indeed, an insurer may even settle a claim "without consulting" the insured and "over its objection" if the insured is so informed. *New Plumbing*, *supra*, 99 Cal. App. 4th at 802; *New Hampshire Ins. Co. v. Ridout Roofing Co.*, 68 Cal. App. 4th 495, 505 (1998) ("The exercise of such an express grant cannot, in our view, be limited by the implied covenant of good faith and fair dealing"). The insurer may settle the claims even where there is some effect on the insured. See *Hurvitz v. St. Paul Fire & Marine Ins. Co.*, 109 Cal. App. 4th 918 (2003) (finding insurer had unfettered right to settle claim even where settlement of frivolous claim prevented future malicious prosecution claim by insured). Thus, the law is clear Travelers has the unfettered right to settle the claims at issue and this argument cannot support

a conflict justifying independent counsel.

Moreover, "The defense duty arises upon tender of potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993). The duty to defend "may be extinguished earlier, if it is shown that no claim can in fact be covered." *Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997). In fact, applying this type of logic, courts have held that "even though the insurer agreed to defend the entire claim against the insured, its duty extended only to those claims arguably covered by the policy. Once the insurer settled and paid those claims, it had completely performed its contractual duty." *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W. 2d 411, 417 (Minn. 1997).

As noted above, the Norcraft Policies only provide coverage for KB to the extent that its liability "arises out of the work" of Norcraft. All claims arising out of Norcraft's work were released on October 16, 2014. (Carrillo Decl.¶4, Ex. A.) Thus, as Travelers has settled claims arising out of the work of its named insured, the basis of KB's coverage under the Norcraft Policies no longer exists. Travelers' settlement does not create a conflict of interest, rather it is the fulfillment of its contractual duty to defend KB. See *Fidelity and Guaranty Ins. Co. v. KB Home Coastal, Inc., supra,* RJN Ex. F, fn. 2 (Settlement agreement resolved claims against KB, thus there was no further potential for liability requiring a defense.)

### D. TRAVELERS APPOINTMENT OF THE CLAPP FIRM DID NOT CREATE A CONFLICT OF INTEREST

Finally, KB claims entitlement to independent counsel because it alleges the Clapp firm had ethical conflicts. As the court noted in Afsari v. Centex Homes, Alameda County Superior Court case No. RG11593529, even if KB's allegations were true, "the remedy would have been to restrict the scope of his representation or perhaps even replace him with new counsel, not to provide independent counsel at Travelers' expense." (RJN Ex. J, p. 4.) The District Court in *Fidelity and Guaranty Insurance Company v. KB Home Coastal, Inc., et al., supra,* RJN Ex. D ("FGIC v. KB"), explained:

> [A] conflict of interest [giving rise to a right to independent counsel] arises when 'an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel . . . retained by the insurer for the defense of the claim.' Cal. Civ. Code § 2860(b); see *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* 162 Cal.App.3d 358 (1984).
>
> * * *
>
> This case is different. Here, the conflict of interest did not arise because of the adverse interests of the insurer and the insured. Under those circumstances, any counsel appointed by the insured would have a conflict. Here, in contrast, the conflict of interest was the result of [appointed counsel's] representation of a party with interests adverse to

> those of KB Home in an entirely separate action. This conflict of interest, unlike the kind described in *Cumis*, may have been remedied by Travelers' appointment of different counsel.
>
> * * *
>
> KB Home cites no authority in support of the proposition that in circumstances other than ones in which the alleged conflict cannot be remedied by different counsel it is entitled to independent counsel as defined by *Cumis*. Thus, this doctrine does not apply…

(RJN Ex. D, p. 6.) Thus, any alleged conflicts of the Clapp firm are irrelevant to the independent counsel analysis.

## VII. TRAVELERS IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS AND KB HOME'S CAUSES OF ACTION FOR BREACH OF CONTRACT

Next, since Travelers maintained the right to control the defense and appoint counsel to defend KB, and KB refused that counsel while continuing to demand the benefits of the Policies, Travelers is entitled to judgment as to its breach of contract cause of action as well as KB's breach.

### A. TRAVLERS HAD A CLEAR RIGHT TO APPOINT COUNSEL TO DEFEND KB

The case law cited above clearly establishes Travelers had an absolute right to control KB's defense. The policy language further confirms that right, stating that Travelers shall "have the right and duty to defend the insured against any 'suit' seeking those damages." (Colouris Ex. B.) They further provide that KB must "cooperate with and, when requested, assist [Travelers] in…[t]aking other reasonable steps to help us investigate or settle a claim or 'suit' or defend any insured against a 'suit'" and "Assist [Travelers], upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." (Colouris Ex. B.)

Thus, (1) Travelers had the right to control the defense of KB, (2) that right to control included the right to choose legal counsel that will provide a defense to KB, and (3) KB was required to cooperate with Travelers in allowing Travelers to provide that defense through counsel of its choosing as well as providing assistance to Travelers in pursuing claims against other insurance carriers.

### B. KB'S REFUSAL TO ACCEPT APPOINTED COUNSEL CONSTITUTES A BREACH OF THE POLICIES

As the California Supreme Court stated in *Valladao v. Fireman's Fund Indem. Co.,* 13 Cal.2d 322 (1939), a duty to cooperate binds the insured to the exercise of good faith, and "there is unquestionably a breach of the policy if the insured's failure to cooperate concerns a material matter and substantially affects the insurer's rights." *Id*. at 328-329. Since *Valladao*, the courts have consistently held that an insured's failure to comply with the policy's cooperation clause constitutes a breach of the insurance contract. *Hall*

*v. Travelers Ins. Cos*., 15 Cal.App.3d 304, 308-309 (1971). An insured must comply with each separate duty contained in the policy's cooperation clause upon the insurer's request, and the violation of any duty therein may result in prejudice to the insurer. See also *Allstate Ins. Co. v. King*, 252 Cal.App.2d 698 (1967); *Wright v. Farmers Auto. Inter-Insurance Exchange*, 39 Cal.App.2d 70 (1940).

An insurer is ordinarily released from its contract by an insured's refusal to permit the insurer to make a defense. See *Valladao*, *supra*, 13 Cal.2d. at 328-329. Upon tender, the insurer is invested with "complete control and direction of the defense," such that where an insured breaches the cooperation clause, the insurer's performance under the policy – i.e., its duty to defend and indemnify – is excused if the insured substantially prejudices its ability to provide a defense. *Truck Ins. Exch. v. Unigard Ins. Co*., 79 Cal.App.4th 966, 981(2000) (emphasis in original), citing *Campbell v. Allstate Ins. Co*., 60 Cal.2d 303, 305-307 (1963); *Northwestern Title Security Co. v. Flack*, 6 Cal.App.3d 134, 140-142 (1970).

In that regard, Judge Breyer held in Centex I that "prejudice inherently existed when Defendant refused Plaintiff's choice of counsel." Centex I, *supra*. The Court explained:

> "[U]nder these facts, . . . Defendant's failure to cooperate 'could not have been more stark.' See *Twin City*, 433 F.3d at 375 . . . Defendant refused to turn over defenses in the Allie and Agles Actions to Plaintiff's appointed counsel, and also prevented those firms from associating into either action. (Evidentiary citations omitted.) Therefore, Defendant substantially prejudiced Plaintiff, which relieves Plaintiff of its duties to defend and indemnify Defendant in the Allie and Agles Actions." *Ibid*.

Various state courts further have agreed that an insured's refusal to allow the insurer to defend will deny the insured any benefits under the policy. *Ibid*.; *Reynolds v. Maramorosch*, 208 Misc. 626, 144 N.Y.S.2d 900, 904 (Sup 1955). See also *Widener University v. Fred S. James & Co., Inc*., 371 Pa.Super. 79, 537 A.2d 8239, 833 (1988) (holding that insurer absolved of any further liability pursuant to its duty to defend after insured refused defense counsel that insurer provided).

Furthermore, numerous federal courts applying state law have held that coverage is automatically lost if the insured breaches its duty to cooperate by refusing to allow the insurer to provide it with a defense. e.g., *Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest,* 168 Fed.Appx. 850, 852-53 (9th Cir. 2006) (California law); *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C*., 433 F.3d 365, 374-75 (4th Cir. 2005) (South Carolina law); *American States Ins. Co. v. Pioneer Elec. Co*., 85 F.Supp.2d 1337, 1343 (S.D. Fla. 2000).

### C. TRAVELERS PERFORMED ALL OF ITS OBLIGATIONS UNDER THE POLICIES

Travelers performed all duties owed pursuant to the insurance contracts until KB's breach. Travelers timely acknowledged the tenders and began investigating. Then, upon receipt of documents triggering Travelers' duty to defend KB under the Norcraft Policies Travelers accepted the defense of KB. (Colouris Decl.¶10-11, 29.) Finally, Travelers fulfilled its defense obligations by paying defense fees incurred on behalf of KB through the Glaspy Firm and then appointing counsel to defend KB – first, through the Clapp Firm, and then through the Collinsworth Firm after notice of the alleged conflict. (Colouris Decl. ¶38-39.) Thus, Travelers fulfilled all requirements under the policies prior to KB's breach.

### D. KB FOREFIETED THE RIGHT TO BENEFITS UNDER THE POLICIES BY REFUSING TO ALLOW TRAVELERS TO PROVIDE A DEFENSE

KB's refusal to accept the defense provided by Travelers through the Collinsworth Firm has prejudiced Travelers and excused performance by Travelers of its own obligations under the policies. Prejudice is established where it "naturally, inherently and necessarily exist[s]." *Nw. Title Sec. Co. v. Flack*, 6 Cal.App.3d 134, 140-141 (1970), citing *Valladao, supra* at 333-334. In *Flack*, the court noted that the California Supreme Court had previously held in two separate cases (*Valladao, supra*, and *Purefoy v. Pac. Auto. Indem. Exch.*, 5 Cal.2d 81 (1935)) that a finding of prejudice before the underlying case was resolved is not contrary to the requirement that an insured's failure to cooperate must substantially prejudice the insurer, because "under the facts [in those two cases] prejudice was established [by the nature of the failure to cooperate] and … a [specific] showing of prejudice was not required." *Flack¸ supra* at 141, citing *Campbell v. Allstate Ins. Co.*, 60 Cal.2d, 303 306 (1963).

Consistent with this, upon tender, the insurer becomes invested with "*complete control and direction* of the defense," such that where an insured breaches the cooperation clause, the insurer's performance under the policy – *i.e.*, its duty to defend and indemnify – is excused if the insured substantially prejudices its ability to provide a defense. *Truck Insurance Exchange, supra* at 981 (emphasis in original), citing *Campbell, supra* at 305-307. As the Court of Appeal explained in *Truck Ins. Exch., supra*:

> [A] condition of a policy requiring the cooperation and assistance of the assured in opposing a claim or an action lodged against him by an injured [party] is material to the risk and of the utmost importance in a practical sense. ***Without such cooperation and assistance, the insurer is <u>severely handicapped</u> and may in some instances be absolutely precluded from advancing any defense***.

*Id.* at 975-976, citing *Valladao, supra* at 328-329 (emphasis added). Further, courts have held that there is no need to analyze whether the trier of fact would have found for the insured but for the insured's failure to cooperate. *Cybernet Ventures, supra*, 168 Fed. Apx at 852. The rejection of counsel appointed by the

insurer in and of itself constitutes substantial prejudice to the insurer excusing the insurer from any obligation to provide a defense or indemnity. *Id.*; *Twin City*, *supra*, 433 F.3d at 374-375; Centex I, *supra*, No. 10-02757 CRB, 2011 U.S. Dist. LEXIS 36128 at *11 (internal citations omitted).

Other courts are in accord, holding that if an insurance company offers the insured a defense that the insured refuses, the insured will be found in breach of the insurance contract. Therefore, an insured's refusal to allow the insurer to defend will deny the insured any benefits under the policy. *Roussos v Allstate Ins. Co.*, 104 Md.App. 80, 655 A.2d 40, 45 (1995) [Because insured wrongfully refused to be represented by the counsel chosen by the insurer, her actions "negated Allstate's obligations to pay for any judgment rendered against her"]; see also, *Reynolds v Maramorosch*, 208 Misc. 626, 144 N.Y.S.2d 900, 904 (Sup 1955); *Widener University v Fred S. James & Co., Inc.*, 371 Pa.Super. 79, 537 A.2d 8239, 833 (1988) [Insurer absolved of liability pursuant to duty to defend after insured refused defense counsel insurer provided]; *Am. States Ins. Co. v Pioneer Elec. Co.*, 85 F.Supp.2d 1337, 1343 (S.D. FL 2000).

Here, KB refused to cooperate with Travelers so that Travelers could defend it. As a result, Travelers is excused from providing KB with any further defense.

## VIII. TRAVELERS IS ENTITELD TO PARTIAL SUMMARY JUDGMENT REGARDING KB'S BREACH OF CONTRACT AND BAD FAITH CLAIMS

### A. KB LACKS EVIDENCE TO ESTABLISH THT IT SUSTAINED DAMGES

Proving damages is an essential element to successfully proving a cause of action for a breach of the duty to defend. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal.App.4th 468, 473 (2004). Contractual damages are the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which, in the ordinary course of things, would be likely to result therefrom. *Amato v. Mercury Casualty Co.*, 53 Cal.App.4th 825, 831 (1997). The general measure of damages for breach of the duty to defend an insured consists of "the costs and attorney fees expended by the insured defending the underlying action." *Emerald Bay Communities v. Golden Eagle Insurance Corp.*, 130 Cal.App.4th 1078, 1093 (2005).

An insured is entitled to only one full defense. See *San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.*, 82 Cal.App.4th 1230, 1241 (2000). Thus, an insured fully defended by one insurer does not have damages to assert against a non-defending insurer; rather, it is the defending insurer who maintains the right to sue the non-defending insurers for sharing and/or contribution. *Ibid.* Where one of several potential insurers provides a defense, another insurer's alleged failure to defend does not damage the

insured – the failure to defend does not "enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuit." *Ringler Associates, Inc., v. Maryland*, 80 Cal.App.4th 1165, 1188 (2000). As such, a failure to defend pursuant to one policy is of no consequence to the insured where a defense is being provided under another policy. *Ceresino, supra* at 823.

Here, State Farm and Travelers are providing KB with a defense. (Colouris Ex. I and X.) State Farm testified that it is currently paying 1/3 of the defense fees and costs invoiced because that is the amount allocated by KB. (Martin Ex. H, McAlister Depo. 15:22-16:1.) Prior to Travelers' acceptance of KB's tender, State Farm was allocated 100% of defense fees and costs. (Martin Ex. F.) The only reason the amount was reduced was based on KB informing State Farm that (1) another insurance carrier is participating in the defense; and (2) KB has only demanded it pay a limited share. (Martin Ex. H, McAlister Depo. 15:22-16:1; 26:11-15.) State Farm has testified it has and will pay the amounts demanded by KB. Thus, the only shortfall in KB's defense fees is due to its own allocations – not Travelers' non-existent breach.

**B. TRAVELERS CANNOT BREACH THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WHERE IT HAS NOT BREACHED THE CONTRACT**

"The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 690 (1988); *Carma Developers (Calif.), Inc. v. Marathon Develop. Calif., Inc.*, 2 Cal.4th 342, 371–376 (1992). In short, if the insurer did not breach the policy, it did not breach the implied covenant. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995) ["The conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is [firmly] rooted" (brackets in original; internal quotes omitted]; *Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011) [where insurer granted judgment on insured's breach of contract claim, bad faith claim must also fail.]; Croskey, Heeseman & Imre, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group, 2014), § 12:45.

Further, an insurer cannot be held in bad faith for exercising a right expressly granted in an insurance policy. *New Hampshire Ins. Co. v. Ridout Roofing Co.*, 68 Cal.App.4th 495, 504-505 (1998). Courts have found no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. Where the contract is unambiguous, the express language is to govern and no obligation can be implied which would result in the obliteration of a

right expressly given under a contract. *Third Story Music, Inc. v. Waits*, 41 Cal.App.4th 798, 808 (1995).

KB's breach of the implied covenant of good faith and fair dealing claim fails for this reason. Travelers fully performed pursuant to the policies until KB breached the contract, and therefore Travelers did not breach the contract. Since the insurer's obligations under the implied covenant do not extend beyond the purposes and objectives of the insurance contract, KB cannot recover on a claim for bad faith.

**C. TRAVELERS' CONDUCT WAS NOT "UNREASONABLE"**

"In order to establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must show that benefits were denied and that the reason for the denial was unreasonable or without proper cause." *Perez-Encinas v. AmeriUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1139 (N.D. Cal. 2006); See also *Love v. Fire Ins. Exch.*, 221 Cal. App. 3rd 1136, 1151 (1990). "A defendant is entitled to summary judgment if it can show that there was a genuine dispute that the denial could be termed reasonable." *Perez-Encinas, supra*. For KB to establish its claim for bad faith, in addition to establishing that Travelers denied benefits, it must also prove any such denial was unreasonable. Given the undisputed facts of this case, KB cannot establish Travelers' acts were unreasonable.

Although KB contends Travelers acted in bad faith, it is clear from the above that Travelers accepted KB's defense within just days of obtaining the necessary information. Moreover, even if KB could establish a delay by Travelers (which it cannot), "mere delay" does not support a claim for bad faith as a matter of law. See *San Jose Production Credit Association v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703-704 (9th Cir. 1984) ("Thus, Old Republic's refusal to defend, without more, amounted only to a breach of contract, not a breach of the implied covenant"); *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 659 (1958) ("Where there is no opportunity to compromise the claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs."). Further, to the extent KB claims Travelers committed bad faith by appointing 'conflicted' counsel, it is clear that Travelers was not aware of the conflict and immediately appointed new counsel upon learning of the conflict. If anything, this evidences Travelers' diligent commitment to acting in good faith. Although KB contends Travelers acted in bad faith, it is clear from the above that Travelers accepted KB's defense within just days of obtaining the necessary information. Thus, KB's claim fails.

Dated: November 3, 2014

**THE AGUILERA LAW GROUP, APLC**

*/s/ Raymond E. Brown*

A. ERIC AGUILERA, ESQ.
JASON Y. CHAO, ESQ.
RAYMOND E. BROWN, ESQ.
Attorneys for Plaintiff/Counter-Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA