NEWMEYER & DILLION LLP
JOHN A. O'HARA, CBN 122377
John.Ohara@ndlf.com
MICHAEL J. STUDENKA, CBN 204956
Michael.Studenka@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
SUSANNAH M. EICHELE, CBN 265190
Susannah.Eichele@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Defendants and Counterclaimants
KB HOME SOUTH BAY INC., KAUFMAN AND BROAD-MONTEREY BAY, INC., and K & B BAKEWELL SEASIDE VENTURE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,

Plaintiff,

vs.

KAUFMAN & BROAD MONTEREY BAY, INC., a California corporation, K&B BAKEWELL SEASIDE VENTURE, LLC, a California Limited Liability Company, and KB HOME SOUTH BAY, INC., a California Corporation and DOES 1 through 10, inclusive,

Defendants.

AND RELATED COUNTERCLAIM.

CASE NO.: CV 13-04745 EJD (PSGx)

**DEFENDANTS' AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Declarations of Scott Diaz, Gene M. Witkin, Mary Kay Glaspy, Quynh C. Lee, and C. Kendie Schlecht; Appendix of Exhibits filed concurrently herewith]*

**DATE: December 5, 2014**
**TIME: 9:00 a.m.**
**CTRM: 4 (5th Floor)**

FILE DATE: October 11, 2013
TRIAL DATE SET: April 14, 2015



NEWMEYER & DILLION LLP

## TABLE OF CONTENTS

Page

1. INTRODUCTION ..... 1
2. STATEMENT OF FACTS ..... 2
   - A. The Underlying Construction Defect Action ..... 2
   - B. The Norcraft Policies ..... 3
   - C. The Tender And Acceptance ..... 6
   - D. Improper Attempts To Replace KB's Counsel, Glaspy & Glaspy, With Travelers' Unilaterally Selected And Ethically Conflicted Counsel ..... 8
     - (1) The Clapp Moroney Assignment And Conflict Of Interest ..... 8
   - E. Travelers' Withdrawal From KB's Defense ..... 12
3. LEGAL ARGUMENT ..... 12
   - A. KB Is Entitled To Summary Judgment On The Issues Presented ..... 12
   - B. KB Is Entitled To A Defense Under The Norcraft Policies ..... 13
   - C. Travelers Failed To Provide KB With An Immediate Defense ..... 13
   - D. Travelers Failed To Provide KB With A Complete Defense ..... 15
   - E. Travelers Failed To Provide KB With A Conflict-Free Defense ..... 19
4. AN INSURER WHO BREACHES THE DUTY TO DEFEND FORFEITS ANY RIGHT IT MAY HAVE HAD TO CONTROL THE DEFENSE AND WAIVES THE RIGHT TO CLAIM THAT THE REFUSAL TO ACCEPT CONFLICTED COUNSEL IS A BREACH OF THE DUTY TO COOPERATE OR THAT PAYMENTS MADE TO COUNSEL ARE VOLUNTARY PAYMENTS ..... 21
5. TRAVELERS' CLAIM FOR UNJUST REIMBURSEMENT MUST BE DISMISSED ..... 23
6. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 12

*City of Philadelphia v. Am. Nat. Fire Ins. Co.*, 97 F. App'x 374 (3d Cir. 2004) .......... 19

*City of Philadelphia v. Am. Nat'l Fire Ins. Co.*, No. CIV.A. 00-2806, 2002 WL 59333 (E.D. Pa. Jan. 14, 2002) .......... 19

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. 2008) .......... 12

*Employers Ins. of Wausau v. Cal. Water Service Co.*, No. C-06-03002 RMW, 2008 WL 3916096 (N.D. Cal. Aug. 25, 2008) .......... 19

*Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328 (9th Cir. 1997) .......... 12

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 480 F. Supp. 2d 1167 (N.D. Cal. 2007) .......... 15

*Lakeland Vill. Homeowners Ass'n. v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887 (E.D. Cal. 2010) .......... 12, 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 12

**State Cases**

*Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 70 Cal. Rptr. 2d 118 (1997) .......... 13, 15

*Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 230 Cal. Rptr. 215 (1986) .......... 17

*County of Sonoma v. Superior Court*, 190 Cal. App. 4th 1312, 118 Cal. Rptr. 3d 915 .......... 23

*Flatt v. Superior Court*, 9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994) .......... 21

*Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, (1998) 18 Cal.4th 857 .......... 15

*Gray v. Zurich Inc. Co.*, 65 Cal. 2d 263, 54 Cal. Rptr. 104 (1966) .......... 15

*Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (1992) .......... 22

NEWMEYER & DILLION LLP

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Hamilton v. Maryland Cas. Co.*,
27 Cal. 4th 718, 117 Cal. Rptr. 2d 318 (2002)....................22

*Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.*,
33 Cal. App. 3d 26, 108 Cal. Rptr. 737 (1973)....................22

*Home Indem. Co. v. Leo L. Davis, Inc.*,
79 Cal. App. 3d 863, 145 Cal. Rptr. 158 (1978)....................16, 22

*Pour de Bebe, Inc. v. Guess? Inc.*,
112 Cal. App. 4th 810, 5 Cal. Rptr. 3d 442 (2003)....................21

*Ivy v. Pacific Auto. Ins. Co.*,
156 Cal. App. 2d 652, 320 P.2d 140 (1958)....................17

*Jeffry v. Pounds*,
67 Cal. App. 3d 6, 136 Cal. Rptr. 373 (1977)....................21

*Montrose Chemical Corp. v. Superior Court*,
6 Cal. 4th 287, 24 Cal. Rptr. 2d 467 (1993)....................14, 15, 17

*Novak v. Low, Ball & Lynch*,
77 Cal. App. 4th 278, 91 Cal. Rptr. 2d 453 (1999)....................17, 18

*Pardee Constr. Co. v. Ins. Co. of the West*,
77 Cal. App. 4th 1340, 92 Cal. Rptr. 2d 443 (2000)....................15

*Rothrock v. Ohio Farmers Ins. Co.*,
233 Cal. App. 2d 616, 43 Cal. Rptr. 716 (1965)....................17

San Diego Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,
162 Cal. App. 3d 358, 208 Cal. Rptr. 494 (1984)....................19

*Security Officers Serv., Inc. v. State Comp. Ins. Fund*,
17 Cal. App. 4th 887, 21 Cal. Rptr. 2d 653 (1993)....................17

*Stalberg v. W. Title Ins. Co.*,
230 Cal. App. 3d 1223, 282 Cal. Rptr. 43 (1991)....................22

*State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*,
72 Cal. App. 4th 1422, 86 Cal. Rptr. 2d 20 (1999)....................21

*Terzian v. California Cas Indem. Exch.*,
42 Cal. App. 3d 942, 117 Cal. Rptr. 284 (1974)....................17, 18

*Truck Ins. Exch. v. Unigard Ins. Co*,
79 Cal. App. 4th 966, 94 Cal. Rptr. 2d 516 (2000)....................16

*Western Polymer Tech., Inc. v. Reliance Ins. Co.*,
32 Cal. App. 4th 14, 38 Cal. Rptr. 2d 78 (1995)....................17



NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES
(continued)

Page

**Federal Rules**

Fed. R. Civ. P. 56(a) ....................12

FRCP 56(e)(1)....................2

**Other Authorities**

14 Couch on Ins. §199:17 (3d ed. 1997)....................19

NEWMEYER & DILLION LLP

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 5, 2014 at 9:00 a.m. in Courtroom 4 of the above-captioned court, located at 280 South 1st Street, San Jose, California, Defendants and Counterclaimants KB Home South Bay Inc., Kaufman and Broad-Monterey Bay, Inc., and K & B Bakewell Seaside Venture, LLC (collectively, "KB") will move this Court for partial summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56(a) and Northern District of California Local Rules 7-2 and 56-1 that Plaintiff Travelers Property Casualty Company of America ("Travelers") breached its duty to provide KB with an immediate, complete, and conflict-free defense in the underlying construction defect action entitled *Davis, et al. v. Kaufman & Broad Monterey Bay, Inc., et al.*, Monterey County Superior Court Case No. M116168 ("*Davis* Action"). The issues to be adjudicated are:

**Noticed Issue No. 1**:

Travelers breached the insurance contract by breaching its duty to provide KB with an immediate defense of the *Davis* Action.

**Noticed Issue No. 2**:

Travelers breached the insurance contract by breaching its duty to provide KB with a complete defense of the *Davis* Action.

**Noticed Issue No. 3**:

Travelers breached the insurance contract by breaching its duty to provide KB with a conflict-free defense of the *Davis* Action.

**Noticed Issue No. 4**:

Travelers' duty to defend KB in the *Davis* Action was triggered no later than the end of July of 2012.

**Noticed Issue No. 5**:

Travelers breached its duty to defend KB in the *Davis* Action by waiting until November 7, 2012 to acknowledge its duty to defend KB in the *Davis* Action.

**Noticed Issue No. 6**:

When Travelers breached its duty to defend, it forfeited any right it may have had to



NEWMEYER & DILLION LLP

control KB's defense of the *Davis* Action and waived its right to argue that KB breached any duty to cooperate or made voluntary payments.

**Noticed Issue No. 7**

KB is entitled to summary judgment on Travelers' claim for unjust enrichment because an insurer's right to equitable reimbursement does not accrue until the insurer's duty to defend is discharged, either by completion of the underlying lawsuit or a determination that there is no potential for coverage on any claim asserted in the underlying action.

This motion will be based upon this Notice of Motion and Motion for Partial Summary Judgment, the Memorandum of Points and Authorities, the Declarations of Scott Diaz, Gene M. Witkin, Mary Kay Glaspy, Quynh C. Lee, and C. Kendie Schlecht in support thereof, the Request for Judicial Notice, all evidence filed in support of this motion, all pleadings, documents and records on file herein, and on such other further evidence and argument as may be presented at the time of the hearing of this motion.

KB's Reservation of Rights Under FRCP 56(e)(1)

Due to the availability witnesses, the parties are still in the process of completing expert witness depositions. KB reserves its rights to seek leave to supplement its moving papers based upon expert testimony currently being elicited, pursuant to Federal Rules of Civil Procedure, Rule 56(e)(1).

Dated: November 3, 2014

NEWMEYER & DILLION LLP

By: */s/ C. Kendie Schlecht*
John A. O'Hara
Michael J. Studenka
C. Kendie Schlecht
Attorneys for Defendants and Counterclaimants KB HOME SOUTH BAY INC., KAUFMAN AND BROAD-MONTEREY BAY, INC., and K & B BAKEWELL SEASIDE VENTURE, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION.

KB's Counterclaim states causes of action against Travelers for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. Dkt. 8-3. KB seeks an adjudication that Travelers breached its contractual obligations to KB as an insured under policies issued to one of KB's cabinet subcontractors, Norcraft Companies, LLC aka Norcraft Companies L.P. ("Norcraft") in one or all of the following ways and based upon the undisputed facts:

- Travelers breached its duty to defend KB in the *Davis* Action by failing to provide an immediate defense. Travelers had all the information it needed to determine that there was a potential for coverage under the Norcraft policies as of July 6, 2012, yet waited another four months until November 7, 2012 to even acknowledge its duty to defend.
- Travelers breached its duty to defend KB in the *Davis* Action by failing to provide KB a complete defense. In its reservation of rights letter, Travelers placed improper and extensive limitations upon its defense of KB, none of which are authorized by the terms of the Norcraft policies and all of which go beyond the policy terms. Travelers then entered in a secretly negotiated settlement agreement with plaintiffs' counsel in the *Davis* Action and then withdrew its defense of KB without ever providing KB a complete defense and leaving KB to absorb substantial unpaid balances on defense fees and costs, all of which are continuing to accrue as the *Davis* Action is ongoing.
- Travelers breached its duty to defend KB in the *Davis* Action by failing to provide KB with a conflict-free defense by appointing panel counsel to defend KB who suffered from disqualifying ethical conflicts of interest.

In addition, Travelers seeks a declaration that:

- Travelers' duty to defend KB in the *Davis* Action was triggered no later than the end of July of 2012 because Travelers had all the information it needed to determine that there was a potential for coverage under the Norcraft policies as of July 6, 2012.
- Travelers breached its duty to defend KB in the *Davis* Action by waiting until November 7, 2012 to acknowledge its duty to defend KB, even though Travelers had all the

information it needed to determine that there was a potential for coverage under the Norcraft policies as of July 6, 2012.

- As a matter of law, and based upon the undisputed facts, when Travelers breached its duty to defend, it forfeited any right it may have had to control KB's defense of the *Davis* Action and waived its right to argue that KB breached any duty to cooperate or made voluntary payments.

Here, the undisputed facts discussed below will show that there were at least three ways that Travelers breached its duty to defend KB. However, it is not necessary for KB to establish each and every event of breach. Any single event of breach is sufficient to trigger a forfeiture of any right Travelers may have had to control KB's defense in the *Davis* Action. Also, any single event of breach is sufficient to preclude Travelers from asserting in this action that KB breached any duty to cooperate by objecting to ethically conflicted counsel, or that KB made any voluntary payments under the terms of the Norcraft policies. Lastly, because the *Davis* Action is still pending in the Monterey County Superior Court, Travelers' fourth cause of action for unjust enrichment/equitable reimbursement has not yet accrued as a matter of law and must be dismissed. For these reasons, it is appropriate for the Court to grant KB's motion for partial summary judgment.

## 2. <u>STATEMENT OF FACTS.</u>

### A. <u>The Underlying Construction Defect Action.</u>

Between 2003 and 2005, KB was involved in the development and construction of residential projects referred to as "The Cove" and "The Bluffs" (the "Projects") located in the City of Seaside, County of Monterey, California. On February 8, 2012, the owners of 17 homes in the Projects filed their construction defect complaint in the underlying *Davis* Action.[1] In the

[1] The *Davis* Action was later consolidated with an action entitled *Jiang v. KB Home, et al.*, Monterey County Superior Court Case No. M122670 ("*Jiang* Action"). The *Jiang* Action was also tendered to Travelers prior to its consolidation with *Davis.* In addition, the *Jiang* Action plaintiffs filed a First Amended Complaint adding homes to the *Davis* Action that were originally part of a Notice of Claim which was referred to and tendered to Travelers originally as "Notice of Claim Against KB Home, Seaside (Sung-Ik Cho, et al. – homes in Seaside, CA 93955)" ("Cho/Seaside"). Currently, claims originally tendered under the *Jiang* Action and the Cho/Seaside Notice of Claim have all been consolidated under the *Davis* Action as the lead



NEWMEYER & DILLION LLP

*Davis* Complaint, the homeowners allege, among other things, that cabinet defects resulted in damage to the homes and their component parts. Ex. 13, *Davis* Complaint, ¶ 13.

On September 10, 2013, KB filed a cross-complaint against subcontractors whose work was implicated in the *Davis* Action, including Norcraft. KB asserted causes of action for equitable and comparative indemnity, breach of contract, express contractual indemnity, breach of contract re insurance, negligence, and declaratory relief. Ex. 14, *Davis* Cross-Complaint.

### B. **The Norcraft Policies.**

There are at least nine policies issued to Norcraft which insure KB. Travelers alleges in its Complaint that "TRAVELERS acknowledged receipt of KB HOME's tender and sent correspondence to KB HOME advising it that subject to a reservation of rights, TRAVELERS accepted KB HOME's tender under the Norcraft Policies and agreed to defend KB HOME in the Davis Action as an additional insured under the Norcraft Policies." Dkt. 1, ¶ 17. The "Norcraft Policies" are defined to include all nine policies identified in Paragraph 8 of the Complaint. Dkt. 1, ¶ 8.

Of particular relevance to this Motion are three additional insured endorsements. The first is Additional Insured – Owners, Lessees or Contractors (Form B), form CG 20 10 11 85 specifically naming "K.B. Homes South Bay its affiliates and subsidiaries" as an insured under Norcraft policy number TC2J-GLSA-118D2170-TIL-03 (for the 2003-04 policy year). The endorsement states:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

Ex. 24, Declaration of Pamela Colouris dated June 8, 2012 ("Colouris 6/8/12 Decl."), ¶ 4; Ex. 26, 03-04 Policy at TRPD-000394; *see also* Declaration of C. Kendie Schlecht ("Schlecht Decl."), ¶ 13, Ex. 35, 03-04 Policy at ST PAUL 0001037.

---

action. Declaration of Mary Kay Glaspy, ¶ 2. This fact, however, is not relevant for purposes of KB's motion, but will be relevant at trial as to the total defense fees and costs incurred for defense of the consolidated *Davis* Action.



NEWMEYER & DILLION LLP

The second is a blanket additional insured endorsement form which reads in pertinent part:

> 1. WHO IS AN INSURED – (Section II) is amended to include as an insured the person or organization (called "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but:
>
> a) Only with respect to liability because of "bodily injury" or "property damage" arising out of "your work" for that additional insured performed by you or for you; and
>
> b) Subject to any limitations in the written contract regarding the scope of the additional insured status. . .

Ex. 25, 02-03 Policy at TRPD-000059; Ex. 26, 03-04 Policy at TRPD-000257; Ex. 27, 04-05 Policy at TRPD-000451; Ex. 28, 05-06 Policy at TRPD-000633; Ex. 29, 06-07 Policy at ST PAUL0001446; Ex. 30, 07-08 Policy at ST PAUL0001602; Ex. 31, 08-09 Policy at ST PAUL0001764; Ex. 32, 09-10 Policy at ST PAUL0001911; Ex. 33, 10-11 Policy at ST PAUL0002041; Ex. 34, 11-12 Policy at ST PAUL0002175..

The third endorsement is another blanket additional insured endorsement form, Form CG D2 46 08 05, found in later policy years, specifically the 06-07 through 11-12 policy years. That endorsement states:

> 1. WHO IS AN INSURED – (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
> a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
>
> b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies.

Ex. 29, 06-07 Policy at ST PAUL0001449-50; Ex. 30, 07-08 Policy at ST PAUL0001605-06; Ex. 31, 08-09 Policy at ST PAUL0001767-68; Ex. 32, 09-10 Policy at ST PAUL0001918-19; Ex. 33, 10-11 Policy at ST PAUL0002050-51; Ex. 34, 11-12 Policy at ST PAUL0002185-86.

The coverage granted in each of the Norcraft policies is substantially similar and provides coverage for "property damage" arising out of an occurrence that takes place in the coverage

territory and that occurs during the policy period. Ex. 25, 02-03 Policy at TRPD-000015; Ex. 26, 03-04 Policy at TRPD-000212; Ex. 27, 04-05 Policy at TRPD-000414; Ex. 28, 05-06 Policy at TRPD-000594; Ex. 29, 06-07 Policy at ST PAUL0001409; Ex. 30, 07-08 Policy at ST PAUL0001567; Ex. 31, 08-09 Policy at ST PAUL0001723; Ex. 32, 09-10 Policy at ST PAUL0001876; Ex. 33, 10-11 Policy at ST PAUL0002004; Ex. 34, 11-12 Policy at ST PAUL2137. The policies define property damage as:

> a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or;
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Ex. 25, 02-03 Policy at TRPD-000025; Ex. 26, 03-04 Policy at TRPD-000222; Ex. 27, 04-05 Policy at TRPD-000428; Ex. 28, 05-06 Policy at TRPD-000608; Ex. 29, 06-07 Policy at ST PAUL0001423; Ex. 30, 07-08 Policy at ST PAUL0001581; Ex. 31, 08-09 Policy at ST PAUL0001737; Ex. 32, 09-10 Policy at ST PAUL0001890; Ex. 33, 10-11 Policy at ST PAUL0002018; Ex. 34, 11-12 Policy at ST PAUL0002151.

KB is an insured under each of the Norcraft policies pursuant to one or more of the additional insured endorsements discussed above. With respect to the two blanket additional insured endorsements which require a written contract requiring insurance in order to trigger coverage, Travelers has been in possession of the Norcraft subcontracts for the Projects since at least August 25, 2011, well before KB ever tendered defense of the *Davis* Action on July 6, 2012. Ex. 36, Declaration of Patricia Dlugokenski dated August 25, 2011, ¶¶ 3-4 and Exs. A and B thereto at page 12 of 88 (KB 004362) and page 12 of 55 of 88 (KB 001327) ("Dlugokenski 8/25/11 Decl."). In her declaration, Ms. Dlugokenski goes so far as to identify the specific paragraphs in the Norcraft subcontracts which require that Norcraft name KB as an additional insured on its policies. *Id.*

Moreover, Travelers does not dispute that Norcraft performed work at the homes at issue in the *Davis* Action. Indeed, Travelers has been defending Norcraft in the *Davis* Action, presumably under the same Norcraft policies at issue in this litigation. Declaration of Mary Kay

Glaspy ("Glaspy Decl."), ¶ 12 and Ex. 22, Emails with Norcraft counsel.

### C. **The Tender And Acceptance.**

Travelers provides the following recitation of undisputed facts in response to interrogatories propounded by KB:

> KB HOME[2] entered into two subcontracts with Norcraft Companies, Inc. identifying its scope of work as supplying and installing cabinets at homes located in The Cove at Seaside Highlands and The Bluff at Seaside Heights, dated January 22, 2003 and February 5, 2003, respectively.
>
> On February 8, 2012, homeowners of the homes in The Cove at Seaside Heights and The Bluff at Seaside Highlands developments filed a complaint in the state court action styled *John & Christine Davis, et al. v. Kaufman & Broad Monterey Bay, Inc.* Monterey County Superior Court, case no. M116168, naming KB HOME as a Defendant. The Complaint alleges that the homeowners suffered property damage due to construction defects allegedly arising out of, or were related to, a variety of scopes of work – not solely limited to the supply and installation of cabinets. . . .
>
> On July 7, 2012,[3] Mary K. Glaspy of Glaspy & Glaspy, Inc. tendered the defense and indemnity of KB Home South Bay, Inc., Kaufman & Broad Monterey Bay, Inc. and K&B Bakewell Venture, LLC against the claims made in the DAVIS ACTION to Responding Party as an additional [sic] under commercial general liability policies issued to Norcraft Companies, Inc.
>
> Responding Party accepted KB HOME's tender as an additional insured under commercial general liability policy number TC2J-GLSA-118D2170-TIL-11 (eff. 11/1/11-12) issued to Norcraft Companies in a letter dated November 7, 2012. Within the November 7, 2012 letter, Responding Party agreed to "defend KB Home . . . as an additional insured under the above policy effective 11/01/11 to 11/01/12. We will defend KB Home subject to a full reservation of rights." Commercial general liability policy number TC2J-GLSA-118D2170-TIL-11 (eff. 11/1/11-12) contained Additional Insured Endorsement form CG D1 44 01 96 and Blanket Additional Insured Endorsement form CG D2 46 05 08 that provide that an additional insured is only provided coverage with respect to liability arising out of the work of the named insured.

Ex. 38, Travelers' Response to Interrogatory No. 8.[4]

---

[2] "KB HOME" is defined in the interrogatories as "Defendants Kaufman & Broad Monterey Bay, Inc., K & B Bakewell Seaside Venture, LLC, and KB Home South Bay Inc., and their agents, representatives, employees, officers and directors, third-party administrators, investigators." Ex. 37, First Set of Interrogatories from KB Home South Bay Inc. to Travelers, 5:5-8.

[3] The tender letter is actually dated July 6, 2012, but that discrepancy is irrelevant for purposes of this Motion.

[4] To date, the carriers for three subcontractors have to date acknowledged their obligation to



NEWMEYER & DILLION LLP

Also undisputed is the fact that KB's tender letter to Travelers of July 6, 2012 also enclosed the *Davis* Complaint (which contained allegations of damages resulting from cabinet defects), the homeowner matrix (which showed home construction/close of escrow dates between 2003 and 2005), and additional insured documentation. Glaspy Decl., ¶ 4, Ex. 15, 7/6/12 Tender Letter. In response to the tender, Travelers assigned two adjusters to handle the claim: Debbie Taylor was assigned to handle the named insured tender (Norcraft's tender to Travelers) and Pamela Colouris was assigned the handle the additional insured tender (KB's tender to Travelers). On July 19, 2012, Ms. Taylor emailed KB's defense counsel in the *Davis* Action, Glaspy & Glaspy, and requested documents, including a copy of the Norcraft subcontract. Ex. 16, 7/19/12 Email. Glaspy & Glaspy forwarded the subcontract and other documents to Ms. Taylor on July 20, 2012. Ex. 16, 7/20/12 Email. However, as set forth above, the fact that the initial tender letter did not enclose the Norcraft subcontracts is irrelevant because Travelers cannot dispute that it was already in possession of the Norcraft subcontracts for the Projects well before KB ever tendered the *Davis* Action. Ex. 36, Dlugokenski 8/25/11 Decl.[5]

There is no contact by Ms. Colouris from July 20, 2012 until over three months later on October 29, 2012 when she emailed Glaspy & Glaspy again asking for the subcontracts which were already in Travelers' possession. Glaspy Decl., ¶ 6, Ex. 17, 10/29/12 Email. Glaspy & Glaspy immediately responded the same day, forwarding the subcontracts (*id.)*, which as discussed above, had previously been sent to Ms. Taylor on July 20, 2012 and were already in Travelers' possession as a result of the previously litigated *Aldrich* Action.

After delaying over four months after KB's tender, on November 7, 2012, Travelers sent correspondence to KB advising it that, subject to a reservation of rights, Travelers accepted KB's

---

defend KB in the *Davis* Action: (1) Travelers who issued a policy to Norcraft; (2) Travelers who issued a policy to countertop subcontractor Duracite, Inc. ("Duracite"); and (3) State Farm who issued a policy to electrical subcontractor American Electrical Services. Glaspy Decl., ¶ 13. Although Travelers has acknowledged its obligation to defend KB under two separate policies, this coverage action involves only the parties' disputes related to KB's tender to Travelers under the Norcraft polices.

[5] Travelers has admitted that the *Aldrich* Action and *Davis* Action involve the same residential projects and that Norcraft was a party in both the *Aldrich* Action and the *Davis* Action. Ex. 40, Travelers' Response to Request for Admission Nos. 8, 11, 12.



NEWMEYER & DILLION LLP

tender and agreed to defend KB. Ex. 18, RoR Letter. Ms. Colouris noted in her claim notes that the subcontracts "include requirements which are sufficient to trigger AI [additional insured] coverage under the blanket AI endorsements found on multiple policies. As such, AI coverage is afforded to KB Home under the policies." Ex. 39, Claim Notes at ST PAUL0000006.

**D. <u>Improper Attempts To Replace KB's Counsel, Glaspy & Glaspy, With Travelers' Unilaterally Selected And Ethically Conflicted Counsel.</u>**

Over a year after the *Davis* Action had been filed, ten months after KB tendered its defense to Travelers, and six months after Travelers belatedly acknowledged its defense obligation, on May 8, 2013, Travelers suddenly decided to replace KB's defense counsel, Glaspy & Glaspy, with defense counsel of Travelers' own choosing. Ms. Colouris initially attempted to justify Travelers' decision to replace Glaspy & Glaspy by claiming that Glaspy & Glaspy had mishandled the defense of the *Davis* Action. Under cross-examination, however, Ms. Colouris admitted that her motive for the replacement was that she was unhappy with the pace of Glaspy & Glaspy's pursuit of additional insured coverage from other carriers.[6] Ex. 41, Deposition of Pamela Colouris, 206:2 to 208:16. On May 8, 2013, Travelers informed KB that it was appointing Jennifer Wilhelmi of Clapp, Moroney, Bellagamba, Vuchinich, Beeman & Scheley ("Clapp Moroney") to defend KB in the *Davis* Action. Ex. 20, 5/8/13 Letter.

**(1) <u>The Clapp Moroney Assignment And Conflict Of Interest.</u>**

**a. <u>The *Maxion* Conflict.</u>**

After Travelers first breached its duty to provide KB with an immediate, full, and complete defense by unreasonably delaying over four months to acknowledge its defense obligation, Travelers then compounded that breach by attempting to appoint counsel impaired by a disqualifying conflict of interest. At the time that Travelers retained Clapp Moroney to be KB's counsel in the *Davis* Action, Clapp Moroney was already counsel of record for a subcontractor directly adverse to KB in another construction defect action entitled *Maxion, et al. v. KB Home*

[6] To date, neither Ms. Colouris, Clapp Moroney, nor anyone else employed by Travelers or by counsel appointed/hired by Travelers have been able to get any other insurance carriers to defend KB. Glaspy Decl., ¶ 13.



NEWMEYER & DILLION LLP

*South Bay Inc.*, Contra Costa County Superior Court Case No. C11-00893 (the "*Maxion* Action"). Clapp Moroney's disqualifying conflict of interest is documented through the following chronological timeline:

| **Date** | **Event** |
|---|---|
| 2/8/12 | *Davis* Action: Plaintiffs in the *Davis* Action file the Complaint naming as defendants Kaufman & Broad Monterey Bay, Inc.; K&B Bakewell Seaside Venture LLC; **KB Home South Bay, Inc.**; The Bakewell Company of Monterey, LLC; and The Bakewell Company. Ex. 13, *Davis* Complaint. |
| 3/5/12 | *Maxion* Action: Kaufman and Broad South-Bay, Inc. and **KB Home South Bay, Inc.** (collectively, "KB entities") file a First Amended Cross-Complaint in the *Maxion* Action against various subcontractors. Declaration of Scott Diaz ("Diaz Decl."), ¶¶ 2-3, Ex. 1, *Maxion* First Amended Cross-Complaint. |
| 5/4/12 | *Maxion* Action: The KB entities name a subcontractor, American Electrical Services, Inc. ("AES"), as Roe 12 to the *Maxion* Action cross-complaint. Diaz Decl., ¶ 4, Ex. 2, *Maxion* Second Roe Amendment. |
| 9/18/12 | *Maxion* Action: L. Theodore Scheley III of Clapp Moroney files a Notice of Appearance for AES in the *Maxion* Action. As such, as of September 18, 2012, Clapp Moroney is counsel for AES, a subcontractor being sued by KB in the *Maxion* Action. Diaz Decl., ¶ 5, Ex. 3, *Maxion* Notice of Appearance. |
| 11/7/12 | *Davis* Action: Pamela Colouris, Travelers' adjuster in the *Davis* Action, issues a reservation of rights letter acknowledging Travelers' duty to defend KB in the *Davis* Action. Glaspy Decl., ¶ 7, Ex. 18, *Davis* RoR Letter. |
| 12/18/12 | *Davis* Action: Glaspy & Glaspy, KB's defense counsel in the *Davis* Action, provides Ms. Colouris with the pre-trial litigation budget and the insurance matrix. Glaspy Decl., ¶ 8, Ex. 19, 12/18/12 Letter. The insurance matrix identifies every subcontractor and subcontractor's carrier to whom KB tendered its defense of the *Davis* Action, including Norcraft, American Electrical Services, and DH Smith. Even though KB had not yet filed its cross-complaint in the *Davis* Action, as of this date, Travelers had the identities of the subcontractors who worked on the Projects in the *Davis* Action so that a proper conflicts check could be run as to all current and potential parties to the *Davis* Action. |
| 5/1/13 | *Davis* Action: Pamela Colouris emails Jennifer Wilhelmi of Clapp Moroney, telling her "[t]his is another Norcraft claim," sending her the *Davis* Action Complaint, and asking her to run a conflicts check. Schlecht Decl., ¶ 20, Ex. 42, 5/1/13 Email. |
| 5/1/13 | *Davis* Action: Ms. Wilhelmi responds, "[w]e have run the conflict report ***on the complaint***. Please be advised that there is no conflict in our representation of Kaufman & Broad Monterey Bay, Inc. We are unaware of a cross-complaint. At this time there are no subcontractors named in the cross-complaint and no Doe Amendment has been filed. We will run a further conflict report once we receive the names of the subcontractors." Schlecht Decl., ¶ 20, Ex. 42, 5/1/13 Email (emphasis added). Ms. Wilhelmi conveniently and conspicuously omits any reference to being conflict-free for the other KB entities named in the *Davis* |



NEWMEYER & DILLION LLP

| | |
|---|---|
| | Action, including **KB Home South Bay, Inc.**, the same company to which it is adverse in the *Maxion* Action. |
| 5/8/13 | *Davis* Action: Travelers advises KB that it is appointing Jennifer Wilhelmi of Clapp, Moroney to defend KB in the *Davis* Action. Glaspy Decl., ¶ 9, Ex. 20, 5/8/13 Letter. |
| 5/29/13 | One of KB's coverage counsel, Gene Witkin, learned from KB's attorneys that Clapp Moroney was indeed representing a subcontractor adverse to KB in the *Maxion* Action. Declaration of Gene Witkin ("Witkin Decl.), ¶¶ 2-3. |
| 6/5/13 | Upon learning of Clapp Moroney's conflict of interest, Mr. Witkin notifies Clapp Moroney that KB had discovered Clapp Moroney's conflict with subcontractors involved in the *Maxion* Action and advises it that it does not have KB's consent to appear on KB's behalf. Witkin Decl., ¶ 4, Ex. 7, 6/5/13 Letter. By this time, Clapp Moroney had been appointed by Travelers to defend KB in two other construction defect actions: (1) *Collins v. KB Home Coastal, Inc.*, Riverside County Superior Court Case No. RIC 1208538 (currently involved in a federal coverage action entitled *Fidelity & Guaranty Insurance Company, Travelers Property Casualty Company of America v. KB Home Coastal, Inc., et al.*, United States District Court for the Central District of California Case No. EDCV13-946 JAK); and (2) *Cha v. KB Home Coastal Inc.*, Orange County Superior Court Case No. 30-2012-00606699-CU-CD-CXC (currently involving in a federal coverage action entitled *St. Paul Mercury Insurance Company, Travelers Property Casualty Company of America v. KB Home Coastal, Inc.*, United States District Court for the Central District of California Case No. SACV13-01639 CJC). Schlecht Decl., ¶ 21, Ex. 43, *Collins* Coverage Action Complaint at ¶¶ 19-22; Schlecht Decl., ¶ 22, Ex. 44, *Cha* Coverage Action Complaint at 19-23. |
| 6/5/13 | Also on the same day, another attorney from Mr. Witkin's firm writes a letter to Travelers advising Travelers that its delay in providing KB with a defense may have divested it of the right to control that defense. "That said, if Travelers and/or Ms. Wilhelmi can demonstrate to KB Home's satisfaction that Ms. Wilhelmi is qualified and competent to represent a residential developer in construction defect matters **and is conflict-free** and Travelers confirms in writing to KB Home that it will provide KB Home with a full and complete (100%) defense of these actions through their final conclusion, KB Home will further consider the Wilhelmi association." Travelers did not respond to this letter or provide the requested information. Declaration of Quynh Lee, ¶ 2, Ex. 12, 6/5/13 Letter (emphasis added). |
| 6/19/13 | Ms. Wilhelmi responds to Mr. Witkin's letter denying the existence of a conflict of interest. Witkin Decl, ¶ 5, Ex. 8, 6/19/13 Letter. |
| 6/26/13 | Mr. Witkin again writes Clapp Moroney, pointing out that while Clapp Moroney stated that AES settled the *Maxion* Action, there is no record of a dismissal. Witkin Decl., ¶ 6, Ex. 9, 6/26/13 Letter. |
| 7/25/13 | Ms. Wilhelmi responds, again insisting that AES settled the *Maxion* Action, but acknowledging that AES had not been dismissed from KB's cross-complaint. Witkin Decl., ¶ 7, Ex. 10, 7/25/13 Letter. |
| 8/13/13 | Mr. Witkin again reminds Clapp Moroney that it is still representing a client |



NEWMEYER & DILLION LLP

| | |
|---|---|
| | directly adverse to KB in the *Maxion* Action, and asks Clapp Moroney to forward any correspondence between its office and Travelers regarding the *Maxion* Action. Clapp Moroney does not provide the requested correspondence. Witkin Decl., ¶ 8, Ex. 11, 8/13/13 Letter. |
| 9/19/13 | The settlement agreement between AES and KB in the *Maxion* Action becomes fully executed. Diaz Decl., ¶ 7, Ex. 5, *Maxion* Settlement Agreement. |
| 9/20/13 | AES is dismissed from the *Maxion* Action. Diaz Decl., ¶ 8, Ex. 6, *Maxion* Dismissal. |

The above timeline establishes that Clapp Moroney was counsel for AES, a subcontractor directly adverse to KB in the *Maxion* Action, from at least September 18, 2012 through September 20, 2013. Clapp Moroney was not "hypothetically" or "potentially" conflicted from being KB's attorney. Clapp Moroney was *actually impaired by a disqualifying conflict.* Travelers cannot dispute that on December 18, 2012, KB's counsel, Glaspy & Glaspy, provided Travelers with a list identifying all subcontractors that worked the Projects in the *Davis* Action. As of that date, both Travelers and Clapp Moroney could have run a proper conflicts check as to all current and potential parties to the *Davis* Action. They did not. Instead, not only did Travelers fail to take its insured out of harm's way by proposing alternative competent, conflict-free counsel, but it sued KB for objecting to Travelers' appointment of conflicted counsel.

**b. <u>The *Aldrich* Conflict.</u>**

In addition, Clapp Moroney was counsel of record for Norcraft and was directly adverse to KB in a construction defect action entitled *Aldrich v. KB Home*, Monterey County Superior Court Case No. M94490 (the "*Aldrich* Action"). Ex. 40, Travelers' Response to Request for Admission No. 13; Glaspy Decl., ¶ 15, Ex. 23, *Aldrich* Action Cross-Complaint. The *Davis* Action involves homes in the very same residential communities that were at issue in the *Aldrich* Action. Ex. 40, Travelers' Response to Request for Admission Nos. 8, 11, 12. In fact, Travelers' failure to defend KB in the *Aldrich* Action was litigated before this Court a few years ago in an action entitled *Kaufman & Broad Monterey Bay and KB Home South Bay Inc. v. Travelers Property Casualty Company of America*, United States District Court for the Northern District of California Case No. 5:10-cv-02856-EJD. Ex. 45, *Aldrich* Action Coverage Complaint. Clapp Moroney was hopelessly conflicted by virtue of being Norcraft's attorneys in the *Aldrich* Action



NEWMEYER & DILLION LLP

and then attempting to be KB's attorneys in the *Davis* Action, when both actions involve homes located in the very same Projects and the scope and quality of Norcraft's work at the Projects would be directly at issue in the *Davis* Action.

**E. Travelers' Withdrawal From KB's Defense.**

On October 20, 2014, Travelers withdrew from KB's defense of the *Davis* Action under the Norcraft policies. Glaspy Decl., ¶ 10, Ex. 21, 10/20/14 Letter. Travelers withdrew its defense based upon a secretly negotiated settlement agreement between Travelers' coverage counsel and plaintiffs' counsel in the *Davis* Action. Excluded from the settlement discussions were KB, KB's counsel, Norcraft, Norcraft's counsel, and even Travelers own adjusters. *See* Glaspy Decl., ¶ 11, Ex. 22, Email String and Settlement Agreement; Ex. 46, Email String between Travelers' counsel and *Davis* Action plaintiffs' counsel. Travelers withdrew from KB's defense without ever providing a complete defense to KB, leaving KB to absorb substantial unpaid balances on defense fees and costs incurred by KB's defense counsel. Glaspy Decl., ¶ 13.

**3. LEGAL ARGUMENT.**

**A. KB Is Entitled To Summary Judgment On The Issues Presented.**

Summary judgment is proper if "there is no genuine dispute as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his or her pleading." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986). A mere scintilla of evidence is not sufficient to defeat a properly supported motion for summary judgment. *Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997). It is not enough to simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In addition, an insurer's duty to defend, and the breach of that duty, are appropriate issues for partial summary judgment. *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1247 n.2, 1254 (N.D. Cal. 2008) (granting insured's motion for partial summary judgment on issue of insurer's duty to defend, and breach of its duty to defend); *see also Lakeland Vill. Homeowners Ass'n. v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 894 (E.D. Cal.



NEWMEYER & DILLION LLP

2010) (granting motion for partial summary judgment on issue of insurer's duty to defend).

In such instances, "an insured moving for summary judgment need only show the existence of a potential for coverage, i.e., that the underlying claim may fall within the policy coverage. Whereas, an insurer moving for summary judgment must establish the absence of any potential for coverage, i.e., that the underlying complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Lakeland Vill. Homeowners Ass'n.*, 727 F. Supp. 2d at 890 (internal marks and citations omitted). Any doubt as to whether the underlying complaint gives rise to a duty to defend must be resolved in the insured's favor. *Id.*

**B. KB Is Entitled To A Defense Under The Norcraft Policies.**

Travelers does not dispute that KB is entitled to a defense under the Norcraft policies based upon the claims asserted in the *Davis* Action and pursuant to the additional insured endorsements. Travelers' own claim notes provide:

> The named insured [Norcraft] worked on both of the projects involved in the case, though apparently, not all of the homes. The complaint specifically alleges cabinet defects.
>
> The contracts include insurance requirements which are sufficient to trigger AI coverage under the blanket AI endorsements found on multiple policies. As such, AI coverage is afforded to KB Home under the policies.

Ex. 39, Claim Notes at ST PAUL0000006 (11/7/12 entry).

As such, the parties agree that Travelers' duty to defend has been triggered, the only question is *when*. KB asserts that Travelers' duty to defend was triggered as of the date of tender on July 6, 2012. KB further asserts that, following that date, Travelers has repeatedly and continuously breached its duty to defend KB by failing to provide an immediate, complete, and conflict-free defense, thereby forfeiting any rights it may have had to control the defense and waiving any right to assert that KB breached a duty to cooperate or made voluntary payments.

**C. Travelers Failed To Provide KB With An Immediate Defense.**

The insurer must provide an immediate, full and complete defense against an entire lawsuit, even when only one of the claims in a complaint raises a potential for coverage. *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 70, 70 Cal. Rptr. 2d 118 (1997). California law



NEWMEYER & DILLION LLP

is clear that an insurer's duty to defend is triggered when the allegations of a complaint assert a mere potential for covered damages and that coverage is triggered based on a "conceivable theory [that] raise[s] a single issue which could bring it within the policy coverage." *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300, 24 Cal. Rptr. 2d 467 (1993) (emphasis omitted). As Travelers' claim notes establish, the complaint "specifically alleges cabinet defects." Travelers was provided a copy of the complaint with the tender letter. Glaspy Decl., ¶ 4, Ex. 15, 7/6/12 Tender Letter.

The question then becomes when Travelers had any reason to believe that its insured worked on the homes involved in the *Davis* Action, and that KB was an insured under the Norcraft policies. The answer is, no later than July 6, 2012. As discussed above, because of the previous *Aldrich* coverage litigation before this Court, Travelers had the relevant Norcraft subcontracts at least as of August 25, 2011 (nearly a year before KB tendered defense of the *Davis* Action) when Travelers submitted a copy of both subcontracts to this Court via the Dlugokenski 8/25/11 Declaration.[7] As such, Travelers cannot dispute that it knew, as of July 6, 2012, that Norcraft performed work at the Projects, which Projects are identified in the subcontracts and were the subject of litigation in both the *Aldrich* and *Davis* Actions. Ex. 40, Travelers' Response to Request for Admission Nos. 8, 11, 12.

Those subcontracts also establish that KB is an insured pursuant to the blanket additional insured endorsements in the Norcraft policies. Indeed, Travelers' adjuster in the *Aldrich* Action pointed out in her declaration that the insurance requirements are specified in Paragraph 13 of the subcontracts. Ex. 36, Dlugokenski 8/25/11 Declaration, ¶¶ 3-4. More importantly, with respect to the 03-04 Norcraft policy, the existence of a subcontract was not even required to establish KB's status as an insured because KB Home South Bay was specifically named as an insured

[7] In addition to the Dlugokenski 8/25/11 Declaration, on July 18, 2012, the Court issued a written finding in the *Aldrich* Action that "[o]n or about January 22, 2003, and February 5, 2003, KB Home and Norcraft entered into subcontracts to furnish, deliver and install cabinets at certain homes within two housing developments in Monterey, California. [Citation omitted.] The subcontracts required Norcraft to name KB Home as an additional insured under its commercial general liability policies." *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. 5:10-CV-2856 EJD, 2012 U.S. Dist. LEXIS 100005, at *4-5 (C.D. Cal. Jul. 18, 2012).



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

under that policy. Ex. 26, 03-04 Policy at TRPD-000394; *see also* Schlecht Decl., ¶ 13, Ex. 35, 03-04 Policy at ST PAUL 0001037.

Travelers had all the information it needed to establish "a mere potential for covered damages" as of July 6, 2012. Therefore, Travelers' failure to acknowledge its duty to defend for four months, until November 7, 2012, is unreasonable as a matter of law, and is a material breach of the Norcraft policies. An insurer's duty to defend arises whenever an insurer ascertains facts that give rise to the possibility or the potential of liability to indemnify. *Gray v. Zurich Inc. Co.*, 65 Cal. 2d 263, 276-77, 54 Cal. Rptr. 104 (1966). This duty must be assessed at the very outset of a case. *Pardee Constr. Co. v. Ins. Co. of the West*, 77 Cal. App. 4th 1340, 1350, 92 Cal. Rptr. 2d 443 (2000). Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf. *See Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th at 295-96. In addition, "[d]elay [in communication by an insurer] through silence is particularly inappropriate in the insurance context, given the overarching principle that an insurer owes its insured a fiduciary duty to disclose relevant matters arising from their relationship." *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada,* 480 F. Supp. 2d 1167, 1180 (N.D. Cal. 2007) (citation omitted).

The undisputed facts establish that Travelers breached its duty to provide KB with an immediate defense, which was triggered on July 6, 2012, by waiting until November 7, 2012 to even acknowledge its duty to defend.

### D. <u>Travelers Failed To Provide KB With A Complete Defense.</u>

"[T]o defend meaningfully, [the insurer] must defend immediately, and to defend immediately, it must defend entirely." *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 60, 70 Cal. Rptr. 2d 118 (1997).

> "The duty to defend is 'a continuing one, arising on *tender of defense* and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is no potential for coverage . . . .'" (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 869 [77 Cal.Rptr.2d 107, 959 P.2d 265, italics added, original italics omitted.) Phrased somewhat differently, "'[t]he duty to defend arises when the insured *tenders defense* of the third party lawsuit to the insurer.'" (*Id.* at p. 886, italics added.) The "temporal limits of the insurer's duty to defend

> [fall] between tender of the defense and conclusion of the action." (*Ibid.* italics omitted.)"

*Truck Ins. Exch. v. Unigard Ins. Co*, 79 Cal. App. 4th 966, 976, 94 Cal. Rptr. 2d 516 (2000) (*quoting Foster-Gardner, Inc.*, 18 Cal. 4th at 857, 886). As soon as KB tendered its defense to Travelers in the *Davis* Action, Travelers had a duty to provide an immediate, full, and complete defense lasting until the lawsuit is completed. A temporary defense obviously is not a "complete" defense. *See Home Indem. Co. v. Leo L. Davis, Inc.*, 79 Cal. App. 3d 863, 872, 145 Cal. Rptr. 158 (1978) (providing "a courtesy defense" is a breach of the duty to defend). Travelers breached its duty to defend by offering KB less than a complete defense in two ways.

First, in its reservation of rights letter, following a discussion of quoted policy provisions, Travelers included extensive limitations upon its duty to defense, none of which are authorized by the terms of the Norcraft policies and all of which go beyond the policy terms. Specifically, Travelers states:

> Travelers reserves the right to amend or supplement this reservation of rights letter. Travelers reserves the right to issue a declination of coverage in the reference matter should it determine that coverage does not apply to the assert claims. Travelers reserves the right to withdraw from the defense should it issue a declination of coverage.
>
> . . . Travelers may seek contribution from KB Home for those uncovered claims in connection with settlements, or satisfaction of judgments obtained against KB Home.

Ex. 18, RoR Letter at TRV 0003578.

Second, Travelers entered into a secretly negotiated settlement agreement with plaintiffs' counsel in the *Davis* Action, excluding KB, KB's defense counsel (Mary Kay Glaspy), Norcraft, Norcraft's defense counsel (Karren Freedman), Travelers' named insured adjuster for Norcraft (Debbie Taylor), and Travelers' additional insured adjuster for KB (Pamela Colouris) from the process. *See* Glaspy Decl., ¶ 11, Ex. 22, Email String and Settlement Agreement; Ex. 46, Email String between Travelers' counsel and *Davis* Action plaintiffs' counsel. Travelers then withdrew its defense of the *Davis* Action based upon the secret settlement. *Id.* It did so without ever providing KB a complete defense and leaving KB to absorb substantial unpaid balances on defense fees and costs incurred by KB's defense counsel. Glaspy Decl., ¶ 14. Neither has



NEWMEYER & DILLION LLP

Travelers or any party to the *Davis* Action obtained a determination of good faith settlement from the trial court in *Davis*. Glaspy Decl., ¶ 11. As such, KB may still face potential claims for equitable contribution or comparative indemnity arising out of the work of Norcraft.

Insurance carriers do not have the absolute right to settle claims without their insured's consent. An insurer cannot protect its own interests first while damaging the interests of the insured, thereby denying the insured the benefits afforded by, and frustrating the purpose of, the insurance policy. *Western Polymer Tech., Inc. v. Reliance Ins. Co.,* 32 Cal. App. 4th 14, 24, 38 Cal. Rptr. 2d 78 (1995); *Ivy v. Pacific Auto. Ins. Co.*, 156 Cal. App. 2d 652, 661-63, 320 P.2d 140 (1958); *Rothrock v. Ohio Farmers Ins. Co.*, 233 Cal. App. 2d 616, 623, 43 Cal. Rptr. 716 (1965); *Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 977, 230 Cal. Rptr. 215 (1986); *Security Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal. App. 4th 887, 21 Cal. Rptr. 2d 653 (1993). An insurer has a duty not to use its claim settlement power in a way that it knows would injure the insured's rights. *Barney*, 185 Cal. App. 3d at 978. "In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy." *Id.* at 977 (citing *Terzian v. California Cas Indem. Exch.*, 42 Cal. App. 3d 942, 950, 117 Cal. Rptr. 284 (1974). As the *Barney* court duly noted:

> An insured reasonably expects that the insurer, in using the authority granted under the policy, will not knowingly effect a settlement which works to the detriment of the insured. The insured can hardly be said to have received any benefit from the policy of insurance if that benefit is totally voided by a countervailing detriment imposed upon him by the insurer without his consent.

*Barney*, 185 Cal. App. 3d at 977.

Further, one of the most important benefits of an insurance policy is the assurance that the insurer will provide a defense to protect the insured from liability. Moreover, it is well established that an insurer cannot parse claims, dividing those that are at least potentially covered from those that are not. *See Montrose Chemical Corp.,* 6 Cal. 4th at 295. As a corollary, an insurer cannot settle only a portion of the claims being asserted against the insured so as to abandon the insured to defend itself against the remaining claims. *See Novak v. Low, Ball & Lynch*, 77 Cal. App. 4th 278, 284-85, 91 Cal. Rptr. 2d 453 (1999); *Ivy,* 156 Cal. App. 2d at 661-



NEWMEYER & DILLION LLP

63; 6-82 California Torts (Bender 2013) § 82.20[2][b][iv].

In *Novak*, a lawsuit was filed against the insured arising out of a construction project. *Novak*, 77 Cal. App. 4th at 280-81. The insured tendered the suit to the insurer, who accepted under a reservation of rights, claiming that only two of the five causes of action were covered. *Id.* The insured was represented by independent counsel as well as counsel appointed by the insurer. Then, unbeknownst to the insured or its independent counsel, the insurer-appointed counsel engaged in secret negotiations with the plaintiff, which only settled the covered claims and left the insured to defend itself with respect to the uncovered claims. *Id.* at 282. Just like Travelers, the insurer withdrew from the defense, claiming that all of its coverage obligations ended because of that partial settlement, even though the plaintiff continued to prosecute the non-covered claims against the insured. *Id.* at 281. In response, the insured sued both the insurer and the attorney appointed by the insurer. *Id.* at 280-81.

Both the insurer and its counsel asserted that they had no duty to the insured. *Id.* at 281. However, the *Novak* court ***rejected*** this argument. *Id.* at 281, 285. In reaching this conclusion, the *Novak* court focused on the harm suffered by the insured because of that partial settlement, even if the insurer otherwise had a right to settle a claim against the insured.

> [S]ettlement negotiations *are* a critical stage of any proceeding. Novak [i.e., the insured] and his attorney were not apprised of these negotiations and thus had no opportunity to impact settlement through the exchange of information or otherwise or to protect Novak's interests in light of the proposed dismissal of the first two causes of action. For example, Novak could have attempted to finish discovery prior to settlement, effect a global settlement of the entire action or seek declaratory relief as to whether Acceptance [i.e., the insurer] could withdraw its defense upon a partial settlement.

*Id.* at 285 (emphasis omitted).

Not only does Travelers secretly settle only the covered claim, even worse, Travelers does not give KB any warning or take any steps to avoid prejudice to KB before withdrawing from its defense. Certainly, that is what happened here. Glaspy Decl., ¶¶ 11, 14. Clearly, the law cannot be read to allow an insurance carrier to pull the rug out from under its insured without warning. Travelers' improper limitations in its reservation of rights letter and its subsequent actions to



NEWMEYER & DILLION LLP

secretly settle with the *Davis* Action plaintiffs in order to cut off its defense obligations to KB is undisputed evidence of Travelers' calculated plan to offer KB only a temporary and limited defense, not a complete defense. Its actions constitute a breach of its duty to provide KB with a complete defense pursuant to the Norcraft policies.

**E. Travelers Failed To Provide KB With A Conflict-Free Defense.**

The following principle is directly applicable to the facts of this case and must be applied to every insurer's duty to defend:

> An insurer must provide a full defense by competent counsel as part of its duty to defend. The duty is breached where an insurer furnishes defense counsel whose ability to represent the insured is impaired by a disqualifying conflict of interest. Where there is a disqualifying conflict of interest, the insured is generally allowed to hire independent counsel at the insurer's expense.

*Employers Ins. of Wausau v. Cal. Water Service Co.*, No. C-06-03002 RMW, 2008 WL 3916096, at *4 (N.D. Cal. Aug. 25, 2008) (citing *San Diego Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 375, 208 Cal. Rptr. 494 (1984)). "Accordingly, when a conflict of interest develops, an insured's duty to cooperate with the insurer does not require the insured to surrender control of his or her defense, and permits the insured to obtain separate counsel." 14 Couch on Ins. §199:17 (3d ed. 1997); *see also Rector, Wardens & Vestryman of St. Peter's Church in City of Philadelphia v. Am. Nat'l Fire Ins. Co.*, No. CIV.A. 00-2806, 2002 WL 59333, at *9-10 (E.D. Pa. Jan. 14, 2002) *aff'd sub nom. Rector, Wardens & Vestrymen of St. Peter's Church in City of Philadelphia v. Am. Nat. Fire Ins. Co.*, 97 F. App'x 374 (3d Cir. 2004) (insurers breached their duty to defend by, among other things, failing to provide conflict-free counsel and relinquish control of the defense).

It cannot be disputed that Travelers' duty to defend encompasses an obligation to provide KB with a conflict-free defense. Travelers and its panel counsel admitted this obligation to KB. Richard Carrillo, Travelers' Western Regional Manager, has testified in other coverage litigation:

> Q. . . . In your experience as the western regional manager, would you agree that Travelers should not assign panel counsel that is conflicted from representing the additional insured to be defended?
>
> A. Travelers would never assign a claim to a firm panel, non-panel,

NEWMEYER & DILLION LLP

> conflict counsel, preferred counsel, regular panel that has any type of a conflict in representing the insured or the additional insured.

Ex. 47, Deposition of Richard Carrillo, 164:7-14. Similarly, Marie Ciechanowski, a Severity Unit Manager at Travelers has testified:

> Q. Would you agree that an insured is not obligated to accept counsel appointed by Travelers if that counsel has a conflict?
>
> Mr. Aguilera: Objection. Call for legal conclusion, lacks foundation.
>
> The Witness: Well, if the -- the -- we wouldn't hire an attorney if they had a conflict.

Ex. 48, Deposition of Marie Ciechanowski, 17:13:19; *see also id.* at 18:1-8, 23:3-4. Indeed, Travelers' understanding of its unwavering duty to provide conflict-free counsel is confirmed all the way down to the adjuster level. Debbi Payne, an additional insured adjuster, testified:

> Q. . . . It is your understanding that the additional insured is entitled to conflict-free counsel?
>
> A. Yes.

Ex. 49, Deposition of Debbi Payne, 166:17-20; *see also id.* at 12:11-20. Lastly, Travelers' panel counsel, unilaterally appointed by Travelers to defend KB in 30-35 construction defect matters, has testified:

> Q. Do you agree that in order to satisfy a duty to defend, an additional insurer must provide the builder with a full, complete, immediate and conflict-free defense?
>
> Mr. Noon: Objection. Vague, ambiguous, overbroad. Uh, go ahead and answer generally.
>
> The Witness: Uh, I think there's cases out there that would say that, yes.

Ex. 50, Deposition of Mark Collinsworth, 14:4-11; *see also id.* at 14:13 to 15:16; 21:13 to 22:12.

It also cannot be disputed that Clapp Moroney was impaired by a disqualifying conflict of interest when it was appointed by Travelers to represent KB (specifically, KB Home South Bay Inc.) in the *Davis* Action while it was still counsel for AES, a subcontractor directly adverse to KB Home South Bay Inc. in the *Maxion* Action. *See* Discussion at Section 2.D.(1)(a) above.

Without the informed written consent of each client, a lawyer may not: (a) represent a



NEWMEYER & DILLION LLP

client (subcontractor) in a matter and at the same time in a separate matter represent another client (KB) whose interests in the first matter is adverse to the client (subcontractor) in the first matter (Cal. Rules of Prof. Conduct, Rule 3-310 (C)(3)); or (b) represent a current client (subcontractor/KB) against another current client (subcontractor/KB). *Flatt v. Superior Court*, 9 Cal. 4th 275, 284-86, 36 Cal. Rptr. 2d 537 (1994). Absent each client's informed written consent, joint/dual representation of clients whose interests actually conflict is prohibited and the lawyer is disqualified. The rule of disqualification in such cases is "*per se* or 'automatic.'" *Id.* at 284. Simultaneous representation of parties with conflicting interests impairs each client's legitimate expectation of undivided loyalty from the attorney. This is so even where the clients' matters are separate from each other and have nothing in common. *Flatt*, 9 Cal. 4th at 285 ("Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's *sense of loyalty* is askew."); *see also Pour Le Bebe , Inc. v. Guess? Inc.*, 112 Cal. App. 4th 810, 822, 5 Cal. Rptr. 3d 442 (2003). The prohibition is designed to maintain public confidence in the legal profession by assuring existing clients that they will have the undivided loyalty of their lawyers throughout the representation. *Jeffry v. Pounds*, 67 Cal. App. 3d 6, 9-11, 136 Cal. Rptr. 373 (1977). Further, settlement of a matter on behalf of a pre-existing client does not cure the conflict and avoid disqualification. *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1431, 86 Cal. Rptr. 2d 20 (1999).

Travelers breached its obligations under the Norcraft policies to provide KB with a conflict-free defense when it tried to force actually conflicted counsel upon KB.

**4. AN INSURER WHO BREACHES THE DUTY TO DEFEND FORFEITS ANY RIGHT IT MAY HAVE HAD TO CONTROL THE DEFENSE AND WAIVES THE RIGHT TO CLAIM THAT THE REFUSAL TO ACCEPT CONFLICTED COUNSEL IS A BREACH OF THE DUTY TO COOPERATE OR THAT PAYMENTS MADE TO COUNSEL ARE VOLUNTARY PAYMENTS.**

When an insurer breaches its duty to provide an immediate, complete, and conflict-free defense, it relinquishes any right that it had to control the defense of the insured, to claim that the



NEWMEYER & DILLION LLP

insured is not cooperating by refusing to accept the insurer's panel counsel, or to claim that the insured has made voluntary payments to its own counsel. Failure to provide an immediate and complete defense is a breach of an insurer's duty to defend and waives its right to control the defense. *Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.*, 33 Cal. App. 3d 26, 35, 108 Cal. Rptr. 737 (1973). This, in turn, excuses the insured's performance under the policy, including the duty to cooperate and any restriction against voluntary payments. *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 728, 117 Cal. Rptr. 2d 318 (2002).

In *Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 282 Cal. Rptr. 43 (1991), the insurer breached its duty to defend in two distinct ways. First, it paid for only half of the defense when it should have paid for the full defense. *Id.* at 1228-29. Second, after trial, the insurer refused to pay for new counsel to handle the appeal. *Id.* at 1229. As a result of the breach of the duty to defend, the court held that the insurer "gave up" its right to control the defense. *Id.* at 1233.

In *Home Indem. Co. v. Leo L. Davis, Inc.*, 79 Cal. App. 3d 863, 145 Cal. Rptr. 158 (1978), an insurer argued that it should not be liable for its insured's defense fees and costs after the insurer appointed counsel. The court disagreed, noting that the insurer "initially denied both coverage and defense" to the insured, the insurer advised the insured that it would provide a so-called "courtesy defense," while continuing to deny any obligation to defend and after the insured had already retained counsel. *Id.* at 872. The court held that an insured is ***not*** "obligated to content himself with the courtesy defense offered by an insurer who persistently maintained a position adverse to his interests." *Id.*; *see also Grube v. Daun*, 173 Wis. 2d 30, 76, 496 N.W.2d 106 (1992) ("Refusing to defend is a breach of the insurer's obligation under the contract" and, as a result, "the insured is not bound to his contractual duty to allow the insurer to control the defense."), *citing* Restatement (Second) of Contracts, § 237, comment (a) (1979). The rulings in these insurance cases are consistent with hornbook contract law which holds that when a party fails to perform under a contract requiring immediate performance, the other party's obligations are discharged. "Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties



NEWMEYER & DILLION LLP

to render performance." Restatement (Second) of Contracts, § 253 (1981).

Travelers breached its duty to defend KB in several ways. It failed to provide KB an immediate defense because it had all the information it needed to determine that there was a potential for coverage under the Norcraft policies as of July 6, 2012, yet waited another four months until November 7, 2012 to even acknowledge its duty to defend. It failed to provide KB a complete defense by improperly limiting KB's defense and entering into secret settlement negotiations for the purpose of terminating its defense obligation to KB. It failed to provide KB a conflict-free defense by appointing panel counsel to defend KB who suffered from disqualifying conflicts of interest. Any single breach is sufficient to trigger a forfeiture of any right Travelers may have had to control KB's defense. Here, the undisputed facts show that there were multiple and repeated breaches.

## 5. TRAVELERS' CLAIM FOR UNJUST REIMBURSEMENT MUST BE DISMISSED.

Travelers' fourth case of action for unjust enrichment states:

> When Travelers agreed to participate in Defendant KB HOME's defense, it reserved its right to seek reimbursement from Defendant KB HOME of any payments made in defense of claims that are not potentially covered under the applicable insurance policies. TRAVELERS' insurance policies require that it defend and indemnify only those claims covered under its policies. To the extent that TRAVELERS pays fees or costs incurred by or on behalf of Defendant KB HOME in connection with the Davis Action, which fees or costs are incurred in defense of claims not potentially covered under Norcraft Policies, Defendant KB HOME will have been unjustly enriched by such payments.

Dkt. 1, ¶¶ 35-36. Travelers also asserts that it has a quasi-contractual right of reimbursement. *Id.* at ¶ 37. While Travelers labels its cause of action as one for "unjust enrichment," it is substantively indistinguishable from a claim for "equitable reimbursement." *County of Sonoma v. Superior Court*, 190 Cal. App. 4th 1312, 1326 n.11, 118 Cal. Rptr. 3d 915 ("It is the 'gravamen of the plaintiff's cause of action' that matters, 'regardless of the title attached to the cause of action or the remedy sought. . . '" [citation omitted].)

A recent ruling from the District Court for the Central District of California succinctly analyzes the failures of Traveler's claim for unjust enrichment/equitable reimbursement:



NEWMEYER & DILLION LLP

> Under California law, an insurer's right of equitable reimbursement sounds in quasi-contract when the insurer's duty to defend attaches to a "mixed" claim – i.e., where the underlying suit involves both losses that are potentially covered and losses that have no potential for coverage. *Buss v. Superior Court*, 16 Cal. 4th 35, 49,P.2d 766, 775 (Cal. 1997). In such circumstances, California law imposes a temporary, "prophylactic" duty on the insurer to defend against the entire action, subject to later reimbursement for defense costs incurred in defense of the uncovered losses. *Id.* at 50-51. This equitable right to reimbursement is a right of restitution against the insured who is "unjustly enriched" by the insurer's defense of the uncovered loss. *Id.* at 51.
>
> . . .
>
> [T]he right of equitable reimbursement operates retrospectively. The requirements that an insurer agree to defend the action "in its entirety" and that the insurer has "paid" (past tense) are "premised on a 'defend now seek reimbursement later' theory." *State v. Pac. Indem. Co.*, 63 Cal.App.4th 1535, 1549, 75 Cal.Rptr.2d 69, 78 (Cal. Ct. App. 1998). It is only after the insurer has defended the action in its entirety (or obtained a determination that it owes no duty to defend any portion of the underlying action), that equitable reimbursement allows the insurer to "obtain reimbursement of defense costs which, in *hindsight*, it never owed." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 657, 31 Cal. Rptr. 3d 147, 115 P.3d 460, 468 (Cal. 2005) (emphasis added). By its nature, that sort of "hindsight" is only available once the duty to defend terminates upon completion of the underlying action or a determination that the insurer owes no duty to defend at all.
>
> The reason California limits the cause of action for equitable reimbursement to retrospective claims for restitution is simple: until the underlying action is complete or the duty to defend is otherwise terminated, it is impossible to know the extent to which the insured has been unjustly enriched. So long as the duty to defend continues, the injury to the insurer is inherently incomplete, and the cause of action does not accrue.

*St. Paul Fire and Marine Ins. Co. v. Centex Homes*, No. ED CV14-01216 AB (JCx), 2014 U.S. District LEXIS 145882, at *14-16 (C.D. Cal. Oct. 7, 2014). Nowhere in Travelers' complaint does it allege that its duty to defend the *Davis* Action has been discharged. The *Davis* Action is ongoing and Travelers' wrongful withdrawal of its defense as of October 20, 2014 without paying outstanding defense fees and costs for the *Davis* Action has left KB to absorb substantial unpaid balances for its defense. Glaspy Decl., ¶ 14. As such, KB is entitled to summary judgment in its favor on Travelers' claim for unjust enrichment/equitable reimbursement.



NEWMEYER & DILLION LLP

## 6. CONCLUSION.

The undisputed facts show that Travelers has continuously and repeatedly breached its contractual obligations under the Norcraft policies to provide KB with an immediate, complete, and conflict-free defense of the *Davis* Action. KB has been damaged by Travelers' actions in that Travelers' withdrawal from KB's defense has left KB with a currently outstanding balance for defense fees and costs of over $50,000, which costs will continue to accrue as the *Davis* Action is still ongoing. As such, KB is entitled to summary judgment on its claim for breach of contract against Travelers. In addition, applicable law holds that by breaching its duty to defend KB, Travelers has forfeited any right to control the *Davis* Action defense, has forfeited its right to argue that KB breached a duty to cooperate under the Norcraft policies, and has forfeited its right to argue that KB made any voluntary payments under the Norcraft policies, and KB is entitled to partial summary judgment on those issues. Lastly, Travelers' claim for unjust enrichment is substantively indistinguishable from an insurer's claim for equitable reimbursement and must be dismissed because it has not yet accrued. For the foregoing reasons, KB respectfully requests that the Court grant its motion for partial summary judgment in its entirety.

Dated: November 3, 2014

NEWMEYER & DILLION LLP

By: */s/ C. Kendie Schlecht*
John A. O'Hara
Michael J. Studenka
C. Kendie Schlecht
Susannah M. Eichele
Attorneys for Defendants and Counterclaimants KB HOME SOUTH BAY INC., KAUFMAN AND BROAD-MONTEREY BAY, INC., and K & B BAKEWELL SEASIDE VENTURE, LLC

NEWMEYER & DILLION LLP

# CERTIFICATE OF SERVICE

*Travelers Prop. Cas. Co. of America v. Kaufman & Broad Monterey Bay, Inc., et al.*
USDC Northern District Case No. CV 13-04745 EJD (PSGx)

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

I, Joanne Kenney, declare:

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 895 Dove Street, 5th Floor, Newport Beach, California 92660. On November 3, 2014, I served a copy of the within document(s):

**DEFENDANTS' AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

☒ (BY CM/ECF SYSTEM – VIA NOTICE OF ELECTRONIC FILING ("NEF") I certify that on the date referenced above, I electronically transmitted the document(s) listed for submission to the United States District Court Northern District, using the ECF System required for filing and transmission of Electronic Notices to the ECF registrants/recipients registered with the United States District Court Northern District at the e-mail address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Newport Beach, California addressed as set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| A. Eric Aguilera, Esq. | Tel: (714) 384-6600 |
| Kari M. Myron, Esq. | Fax: (714) 384-6601 |
| Jason Chao, Esq. | Email: eaguilera@aguileragroup.com |
| Angela Martin, Esq. | Email: kmyron@aguileragroup.com |
| THE AGUILERA LAW GROUP, APLC | Email: jchao@aguileragroup.com |
| 650 Town Center Drive, Ste. 100 | Email: amartin@aguileragroup.com |
| Costa Mesa, CA 92626 | |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 3 2014, at Newport Beach, California.

*/s/ Joanne Kenney*
Joanne Kenney