NEWMEYER & DILLION LLP
JOHN A. O'HARA, CBN 122377
John.Ohara@ndlf.com
MICHAEL J. STUDENKA, CBN 204956
Michael.Studenka@ndlf.com
C. KENDIE SCHLECHT, CBN 190978
Kendie.Schlecht@ndlf.com
SUSANNAH M. EICHELE, CBN 265190
Susannah.Eichele@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Defendants and Counterclaimants
KB HOME SOUTH BAY INC., KAUFMAN AND BROAD-MONTEREY BAY, INC., and K & B BAKEWELL SEASIDE VENTURE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,

Plaintiff,

vs.

KAUFMAN & BROAD MONTEREY BAY, INC., a California corporation, K&B BAKEWELL SEASIDE VENTURE, LLC, a California Limited Liability Company, and KB HOME SOUTH BAY, INC., a California Corporation and DOES 1 through 10, inclusive,

Defendants.

AND RELATED COUNTERCLAIM.

CASE NO.: CV 13-04745 EJD (PSGx)

**DEFENDANTS' AND COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**DATE: December 5, 2014**
**TIME: 9:00 a.m.**
**CTRM: 4 (5th Floor)**

FILE DATE: October 11, 2013
TRIAL DATE SET: April 14, 2015

Defendants KB Home South Bay Inc., Kaufman and Broad-Monterey Bay, Inc., and K & B Bakewell Seaside Venture, LLC (collectively, "KB") submit the following opposition to the Motion for Partial Summary Judgment by Plaintiff Travelers Property Casualty Company of America ("Travelers"):



NEWMEYER & DILLION LLP

## TABLE OF CONTENTS


Page

1. PREFATORY STATEMENT ..... 2
2. GENUINE ISSUES OF MATERIAL FACT AND LAW EXIST AS TO EACH OF THE ISSUES LISTED IN TRAVELERS' NOTICE OF MOTION ..... 2
3. STATEMENT OF FACTS ..... 5
4. TRAVELERS IS NOT ENTITLED TO PRESUMPTIONS ..... 5
5. AN INSURER WHO BREACHES THE DUTY TO DEFEND FORFEITS ANY RIGHT IT MAY HAVE HAD TO CONTROL THE DEFENSE AND WAIVES THE RIGHT TO CLAIM THAT THE REFUSAL TO ACCEPT CONFLICTED COUNSEL IS A BREACH OF THE DUTY TO COOPERATE OR THAT PAYMENTS MADE TO COUNSEL ARE VOLUNTARY PAYMENTS ..... 7
   - A. Travelers Breached Its Duty To Defend By Appointing Conflicted Counsel ..... 9
     - (1) Clapp Moroney Was Ethically Conflicted ..... 10
     - (2) Collinsworth Was Ethically Conflicted ..... 12
   - B. Travelers Breached Its Duty To Defend By Failing To Provide KB With A Complete Defense ..... 15
   - C. Travelers Breached Its Duty to Defend By Failing To Provide KB With An Immediate Defense ..... 15
6. THE ALLEGED SETTLEMENT BETWEEN TRAVELERS AND PLAINTIFFS' COUNSEL IN THE DAVIS ACTION IS STILL UNDER CHALLENGE ..... 16
7. SUBSTANTIAL ISSUES EXIST REGARDING TRAVELERS' BAD FAITH ..... 17
8. EVIDENTIARY OBJECTIONS (FED. R. CIV. PRO. 56(E) ..... 20
   - A. Travelers' Request for Judicial Notice ..... 20
   - B. Declaration of Pamela Colouris: Paragraph 13 and Exhibit H ..... 20
   - C. Declaration of Pamela Colouris: Paragraph 25 and Exhibit M ..... 20
   - D. Declaration of Pamela Colouris: Paragraph 31 and Exhibit U ..... 21
   - E. Declaration of Pamela Colouris: Paragraph 39 ..... 21
9. CONCLUSION ..... 21


NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES


Page

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 17

*Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026 (9th Cir. 2001) .......... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 17

*Rector, Wardens & Vestryman of St. Peter's Church in City of Philadelphia v. Am. Nat. Fire Ins. Co.*, 97 F. App'x 374 (3d Cir. 2004) .......... 4

*Rector, Wardens & Vestryman of St. Peter's Church in City of Philadelphia v. Am. Nat'l Fire Ins. Co.*, No. CIV.A. 00-2806, 2002 WL 59333 (E.D. Pa. Jan. 14, 2002) .......... 4, 9

*Employers Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-03002 RMW, 2008 WL 3916096 (N.D. Cal. Aug. 25, 2008) .......... 4, 9

*Helus v. Equitable Life Assur. Soc'y of U.S.*, 309 F. Supp. 2d 1170 (N.D. Cal. 2004) .......... 16

*In re Campbell*, 35 F. Supp. 100 (S.D. Cal. 1940) .......... 6

*Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. 5:10-CV-2856 EJD, 2012 WL 2945932 (N.D. Cal. Jul. 18, 2012) .......... 7

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .......... 20

*Orange County Plastering Co., Inc. v. Am. Home Assurance Co.*, No. CV 11-06364 DDP (FMOx), 2011 WL 5117766 (C.D. Cal. Oct. 28, 2011) .......... 18

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014) .......... 4, 17

*St. Paul Fire and Marine Ins. Co. v. Weiner*, 606 F.2d 864 (9th Cir. 1979) .......... 2

*Travelers Property v. Centex Homes*, No. C 10-02757 CRB, 2011 WL 1225982 (N.D. Cal. Apr. 1, 2011) .......... 2

*350 W. Ash Urban Home, Inc. v. Everest Indem. Ins. Co.*, No. 13-cv-18-W BGS, 2014 WL 1660661 (S.D. Cal. Apr. 22, 2014) .......... 5

**State Cases**

*Aquila, Inc. v. Superior Court*, 148 Cal. App. 4th 556, 55 Cal. Rptr. 3d 803 (2007) .......... 20

*Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 212 Cal. Rptr. 151 (1985) .......... 11, 16

*Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) .......... 19




NEWMEYER & DILLION LLP

## TABLE OF AUTHORITIES
## (continued)


Page

*California Shoppers, Inc. v. Royal Globe Ins. Co.*,
175 Cal. App. 3d 1, 221 Cal. Rptr. 171 (1985) ..... 12

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371, 272 Cal. Rptr. 387 (1990) ..... 19

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*,
2 Cal. 4th 342, 6 Cal. Rptr. 2d 467 (1992) ..... 19

*Egan v. Mutual of Omaha Ins. Co.*,
24 Cal. 3d 809, 169 Cal. Rptr. 691 (1979) ..... 18

*Flatt v. Superior Court*,
9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994) ..... 14

*Grube v. Daun*,
173 Wis. 2d 30, 496 N.W.2d 106 (1992) ..... 8

*Hamilton v. Maryland Cas. Co.*,
27 Cal. 4th 718, 117 Cal. Rptr. 2d 318 (2002) ..... 3, 8

*Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.*,
33 Cal. App. 3d 26, 108 Cal. Rptr. 737 (1973) ..... 3, 8

*Home Indem. Co. v. Leo L. Davis, Inc.*,
79 Cal. App. 3d 863, 145 Cal. Rptr. 158 (1978) ..... 8,

*Pur Le Bebe, Inc. v. Guess? Inc.*,
112 Cal. App. 4th 810, 5 Cal. Rptr. 3d 442 (2003) ..... 14, 15

*Jeffry v. Pounds*,
67 Cal. App. 3d 6, 136 Cal. Rptr. 373 (1977) ..... 15

*Love v. Fire Ins. Exch.*,
221 Cal. App. 3d 1136, 271 Cal. Rptr. 246 (1990) ..... 20

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
69 Cal. App. 4th 223, 18 Cal. Rptr. 2d 425 (1999) ..... 14

*Qualified Patients Ass'n v. City of Anaheim*,
187 Cal. App. 4th 734, 115 Cal. Rptr. 3d 89 (2010) ..... 5

*San Diego Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
162 Cal. App. 3d 358, 208 Cal. Rptr. 494 (1984) ..... 9

*Schwartz v. State Farm Fire & Cas. Co.*,
88 Cal. App. 4th 1329, 106 Cal. Rptr. 2d 523 (2001) ..... 19

*Stalberg v. W. Title Ins. Co.*,
230 Cal. App. 3d 1223, 282 Cal. Rptr. 43 (1991) ..... 8

*State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*,
72 Cal. App. 4th 1422, 86 Cal. Rptr. 2d 20 (1999) ..... 15

*Sterling v. Title Ins. & Trust Co.*,
53 Cal. App. 2d 736, 128 P.2d 31 (1942) ..... 12

*Wilson v. 21st Century Ins. Co.*,
42 Cal. 4th 713, 68 Cal. Rptr. 3d 746 (2007) ..... 18


NEWMEYER & DILLION LLP

# TABLE OF AUTHORITIES
(continued)

Page

**State Statutes**

Cal. Civ. Code § 19 .......... 12

Cal. Code Civ. Proc. § 664.7 .......... 16

**Federal Rules**

Fed. R. Civ. P. 56(e) .......... 17

Fed. R. Evid. 401, 402, 403 .......... 20

Fed. R. Evid. 602 .......... 20

Fed. R. Evid. 701, 704 .......... 20

Fed. R. Evid. 801, 802 .......... 20

**Other Authorities**

14 Couch on Ins. §199:17 (3d ed. 1997) .......... 9

NEWMEYER & DILLION LLP

## 1. PREFATORY STATEMENT.

In light of the Court's recent Orders (Dkts. 77, 84), KB assumes that Travelers has waived the right to seek any relief requested past the 25th page of text in its motion for partial summary judgment. Dkt. 52. Accordingly, KB will not address legal or factual arguments discussed past the 13th page of Travelers' memorandum of points and authorities.

## 2. GENUINE ISSUES OF MATERIAL FACT AND LAW EXIST AS TO EACH OF THE ISSUES LISTED IN TRAVELERS' NOTICE OF MOTION.

Travelers' notice of motion seeks partial summary judgment on seven issues. The undisputed facts and applicable law are against Travelers and will defeat summary judgment on each of the issues noticed by Travelers, for the following reasons:

1. With respect the underlying construction defect case entitled, *Davis, et al. v. Kaufman & Broad Monterey Bay, Inc., et al.*, Monterey County Superior Court Case No. M116168 ("*Davis*" Action), Travelers is not entitled to a declaration that it has the right to appoint counsel of its choosing because the undisputed facts show that: (a) Travelers breached its duty to provide an immediate defense, which was triggered on July 6, 2012, by waiting until November 7, 2012 to acknowledge its duty to defend (Dkt. 54, at 13:25 to 15:19); (b) Travelers breached its duty to provide a complete defense by improperly limiting its defense of KB, and Travelers abused its claim settlement power by entering into a secret settlement of only a portion of the claims for the purpose of cutting-off its duty to defend and abandoning its insured (Dkt. 54, at 15:20 to 18:28); and (c) Travelers breached its duty to provide a conflict-free defense because its appointed counsel, Clapp, Moroney, Bellagamba, Vuchinich, Beeman & Scheley ("Clapp Moroney"), suffered from potential, actual, and disqualifying conflicts of interest which were never disclosed to KB and never waived by KB. "An insured is entitled to a conflict-free defense." *Travelers Property v. Centex Homes*, No. C 10-02757 CRB, 2011 WL 1225982, *8 (N.D. Cal. Apr. 1, 2011); *St. Paul Fire and Marine Ins. Co. v. Weiner*, 606 F.2d 864, 870 (9th Cir. 1979) ("Under California law, an insurer must provide individual counsel for the parties where there is a potential conflict of interest.").

2. Travelers is not entitled to a declaration that KB has no right to independent



NEWMEYER & DILLION LLP

counsel of its choosing for the same reasons stated in paragraph 1 above. Given Travelers' multiple breaches of its duty to defend, Travelers has forfeited any right it may have had to control KB's defense and KB is entitled to independent counsel of its choosing.

3. Travelers is not entitled to a declaration that is has no obligation to pay fees and costs incurred by KB after Travelers appointed Collinsworth, Specht & Calkins ("Collinsworth") as counsel for KB on May 20, 2014 because Travelers breached the insurance contract by not providing KB with an immediate, complete, and conflict-free defense of the *Davis* Action; each of these breaches occurred before Travelers ever appointed Collinsworth. Failure to provide an immediate, complete, and conflict-free defense is a breach of an insurer's duty to defend and waives its right to control the defense. *Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.*, 33 Cal. App. 3d 26, 35, 108 Cal. Rptr. 737 (1973). This, in turn, excuses the insured's performance under the policy, including the duty to cooperate and any restriction against voluntary payments. *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 728, 117 Cal. Rptr. 2d 318 (2002). In addition, Collinsworth also suffers from debilitating conflicts of interest due to its direct, non-tripartite, attorney-client relationship with Travelers as Travelers' monitoring counsel.

4. Travelers is not entitled to a declaration that it has no obligation to pay for KB's defense following a purported settlement with the *Davis* Action homeowners on October 16, 2014 because material factual disputes exist regarding the enforceability and validity of the settlement, as well as questions regarding whether the settlement fully released KB from all claims arising out of the work of Travelers' insured, Norcraft Companies/Norcraft Holdings, L.P. ("Norcraft"). For example, there are factual issues regarding whether the settlement agreement, which was not signed by a single homeowner, is valid. KB is challenging Travelers' application for determination of good faith settlement in the underlying *Davis* Action, which motion to contest will likely not be decided upon before oral argument of this motion.[1]

[1] Given that KB is challenging the settlement between Travelers and the homeowners' counsel in the *Davis* Action and the dispute will not be decided before opposition briefing is due, pursuant to Federal Rules of Civil Procedure, Rule 56(d), KB requests that the Court issue an appropriate order, including but not limited to, denying Travelers' motion, deferring ruling, or allowing KB additional time to obtain affidavits, declarations, or take discovery. Declaration of John O'Hara ("O'Hara Decl.), ¶ 2; Declaration of Mary Kay Glaspy ("Glaspy Decl.), ¶¶ 2-3.

5. Travelers is not entitled to judgment as a matter of law on its cause of action for breach of contract because the undisputed facts show that Travelers breached the insurance contracts and breached its duty to provide KB with an immediate, complete, and conflict-free defense. KB did not breach any of its obligations under the insurance contracts. An insured does not breach any duty to cooperate in an insurance policy by objecting to the appointment of ethically conflicted counsel. To the contrary, an insurer who appoints conflicted counsel has breached its duty to defend. *Employers Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-03002 RMW, 2008 WL 3916096, at *4 (N.D. Cal. Aug. 25, 2008); *see also Rector, Wardens & Vestryman of St. Peter's Church in City of Philadelphia v. Am. Nat'l Fire Ins. Co.*, No. CIV.A. 00-2806, 2002 WL 59333, at *9-10 (E.D. Pa. Jan. 14, 2002) *aff'd sub nom. Rector, Wardens & Vestrymen of St. Peter's Church in City of Philadelphia v. Am. Nat. Fire Ins. Co.*, 97 F. App'x 374 (3d Cir. 2004) (insurers breached their duty to defend by, among other things, failing to provide conflict-free counsel and relinquish control of the defense).

6. Travelers is not entitled to judgment as a matter of law as to KB's cause of action for breach of contract for the same reasons set forth in paragraphs 1 and 5 above. The undisputed facts show that Travelers did not fulfill its obligations under the Norcraft insurance policies.

7. Travelers is not entitled to judgment as a matter of law as to KB's cause of action for breach of the covenant of good faith and fair dealing because: (a) Travelers breached its duty to defend KB; (b) whether Travelers unreasonably denied KB its policy benefits is by definition an issue of fact for the jury to determine (*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 824 (9th Cir. 2014) ("Whether an insurer's denial of a claim is unreasonable is dependent upon the facts in each case. The issue remains a question of fact unless only one inference can be drawn from the evidence.")); (c) KB has suffered damages in the form of unpaid defense fees and costs due to Traveler's failure to defend (Dkt. 54-3, Glaspy Decl., ¶ 13); and (d) even assuming KB has not suffered contractual damages, under California, an insurer can be liable for breaching the implied covenant of good faith and fair dealing even in the absence of a breach of contract. *350 W. Ash Urban Home, Inc. v. Everest Indem. Ins. Co.*, No. 13-cv-18-W BGS, 2014 WL 1660661, at *5-6 (S.D. Cal. Apr. 22, 2014).

## 3. STATEMENT OF FACTS.

To avoid unnecessary duplication and repetition to the Court, KB incorporates by reference, as if set forth in full herein, its Statement of Facts contained in its cross-motion for partial summary judgment. Dkt. 54, at 2:18 to 12:13.

## 4. TRAVELERS IS NOT ENTITLED TO PRESUMPTIONS.

Travelers latches onto the language of Code of Civil Procedure section 1909 to assert that Travelers is entitled to a presumption in its favor on the issues of independent counsel, ethical conflicts, and bad faith based upon rulings in different cases, involving different projects, and different policies issued to different subcontractors. This is patently incorrect as identical issues were not decided in the other cases nor was there a final judgment on the merits.

Section 1909 is part of a series of Code of Civil Procedure sections codifying the related doctrines of res judicata and "law of the case." Applicability is extremely limited. With respect to section 1909, "the prior decision is the law of the case ***only in so far as the facts are the same***." *In re Campbell*, 35 F. Supp. 100, 101 (S.D. Cal. 1940) (emphasis added) (the principle of the "law of the case" does not apply if the prior decision was made on the evidence, and the evidence in the second hearing is different, the prior decision being the law of the case only in so far as the facts are the same). The rulings in other cases cited by Travelers have no presumptive effect here; the facts were different and there were no final judgments on the merits.

Travelers relies so heavily on two orders from other federal district courts that it is as if Travelers expects this Court to defer to them. Dkt 52, at 7:27 to 8:7. However, federal orders have no binding effect and certainly should not affect this Court's independent review. *See, e.g., Qualified Patients Ass'n v. City of Anaheim*, 187 Cal. App. 4th 734, 764, 115 Cal. Rptr. 3d 89 (2010) ("decisions of the lower federal courts are not binding precedent . . ., particularly on issues of state law"). Further, neither of the orders hold that KB was not entitled to independent counsel. These orders denied anti-SLAPP motions brought by KB, simply finding that Travelers had shown its claim had at least minimal merit. Dkt. 52-1, Ex. B at 2 and Ex. C at 2. A review of the orders shows that whether KB was entitled to independent counsel was not "directly determined." In Exhibit B, the court states only that "Travelers has shown some chance of



NEWMEYER & DILLION LLP

success on the merits on the attorney-choice/control of the litigation aspect of its claims." Dkt. 52-1, Ex. B at 3. In Exhibit C, the court expressly acknowledged that KB's argument could "eventually be found meritorious." Dkt. 52-1, Ex. C, at 2. It is preposterous to claim that these orders directly determined the independent counsel issue in Travelers' favor.

For the same reason, it is equally preposterous for Travelers to argue a collateral estoppel effect of another order granting in part and denying in part Traveler's motion for partial summary judgment in another case pending in the Central District of California. Dkt. 52-1, Ex. D. That case involved a different tender under a different policy to a different subcontractor regarding a different construction defect action alleging different construction defects at different homes. Travelers cites that order merely for the proposition that the court in that matter found that KB failed to show a genuine issue of material fact for its bad faith claim. Dkt. 52, at 8:19-20. Further, Travelers fails to point out that KB disputes the Court's finding on multiple grounds, including lack of notice in the motion for partial summary judgment, failure to apply the proper legal standard for insurance bad faith, and the failure to consider the totality of circumstances of Travelers' bad faith actions. Travelers makes no showing of any correlation between the facts of that case and the facts of this case. Indeed, the only factual correlations between the two cases work against Travelers. Travelers conspicuously fails to quote portions of that order, which if given collateral estoppel effect, would dispositively find that Travelers breached its duty to defend KB by appointing Clapp Moroney as KB's counsel:

> "[B]ecause Clapp Moroney was representing AES in the [M]Axion [sic] Action when it was designated by Travelers as counsel for KB Home in the Collins Action, the firm had a conflict and could not represent KB Home without receiving a written waiver from KB Home.
>
> . . .
>
> No more persuasive is the argument advanced by Travelers during the June 30 hearing that it was the sole responsibility of Clapp Moroney to determine if it had a conflict. From this premise Travelers argued that determination whether it fulfilled its obligation under the policies to provide adequate counsel to KB Home is not affected by an incomplete or inadequate conflict check by Clapp Moroney. This makes little sense. If this position were correct, it would mean that a client would have waived its right to avoid representation by counsel with a conflict without signing a



NEWMEYER & DILLION LLP

> knowing, written waive as required by Rule 3-310(C) ("[a] member shall not, without the informed written consent of each client . . . (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.") Indeed, Travelers' position would also result in a waiver by AES without any showing that it had been advised of, or had reason to know, that Clapp Moroney would be representing KB Home in the Collins Action. These outcomes are particularly inappropriate where the insurer has made the selection of counsel, while the insured-client not only played no role in the selection, but objected to the insurer's choice . . .
>
> Furthermore, there is evidence that Travelers neither encouraged nor required its designated counsel to conduct a thorough conflicts check.

Dkt. 52-1, Ex. D, at 8-9. Moreover, the orders upon which Travelers relies can only be judicially noticed as to their existence, not the findings within. *See* KB's Evidentiary Objections below.

Travelers also consciously omits reference to another order, issued by this Court, which has the most direct factual correlation to this case (*Aldrich v. KB Home*, Monterey County Superior Court Case No. M94490 (the "*Aldrich* Action")). The *Aldrich* Action involved homes in the very same residential communities that are at issue in the underlying *Davis* Action, and made allegations of construction defects arising out of Norcraft's work. Dkt 55, Ex. 40 (Travelers' Response to RFA Nos. 8, 11, 12, 13); Dkt. 54-3 (Glaspy Decl., ¶ 15). On July 18, 2012, the Court issued a written finding in the *Aldrich* Action that "[o]n or about January 22, 2003, and February 5, 2003, KB Home and Norcraft entered into subcontracts to furnish, deliver and install cabinets at certain homes within two housing developments in Monterey, California. [Citation omitted.] The subcontracts required Norcraft to name KB Home as an additional insured under its commercial general liability policies." *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. 5:10-CV-2856 EJD, 2012 WL 2945932, at *1 (N.D. Cal. Jul. 18, 2012). If anything, KB is entitled to a presumption that Travelers was in possession of the Norcraft subcontracts as of the date that KB tendered its defense of the *Davis* Action on July 6, 2012.

**5. <u>AN INSURER WHO BREACHES THE DUTY TO DEFEND FORFEITS ANY RIGHT IT MAY HAVE HAD TO CONTROL THE DEFENSE AND WAIVES THE RIGHT TO CLAIM THAT THE REFUSAL TO ACCEPT CONFLICTED</u>**

Newmeyer & Dillion LLP

**COUNSEL IS A BREACH OF THE DUTY TO COOPERATE OR THAT PAYMENTS MADE TO COUNSEL ARE VOLUNTARY PAYMENTS.**

When an insurer breaches its duty to provide an immediate, complete, and conflict-free defense, it relinquishes any right that it had to control the defense of the insured, to claim that the insured is not cooperating by refusing to accept the insurer's panel counsel, or to claim that the insured has made voluntary payments to its own counsel. Failure to provide an immediate and complete defense is a breach of an insurer's duty to defend and waives its right to control the defense. *Hartford*, 33 Cal. App. 3d at 35. This, in turn, excuses the insured's performance under the policy, including the duty to cooperate and any restriction against voluntary payments. *Hamilton*, 27 Cal. 4th at 728.

In *Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 282 Cal. Rptr. 43 (1991), the insurer breached its duty to defend, first, by paying for only half of the defense when it should have paid for the full defense, and second, by refusing to pay for new counsel to handle the appeal. *Id.* at 1228-29. As a result, the court held that the insurer "gave up" its right to control the defense. *Id.* at 1233. In *Home Indem. Co. v. Leo L. Davis, Inc.*, 79 Cal. App. 3d 863, 145 Cal. Rptr. 158 (1978), an insurer argued that it should not be liable for its insured's defense fees and costs after the insurer appointed counsel. The court disagreed, noting that the insurer "initially denied both coverage and defense" to the insured, the insurer advised the insured that it would provide a so-called "courtesy defense," while continuing to deny any obligation to defend and after the insured had already retained counsel. *Id.* at 872. The court held that an insured is ***not*** "obligated to content himself with the courtesy defense offered by an insurer who persistently maintained a position adverse to his interests." *Id.*; *see also Grube v. Daun*, 173 Wis. 2d 30, 76, 496 N.W.2d 106 (1992) ("Refusing to defend is a breach of the insurer's obligation under the contract" and, as a result, "the insured is not bound to his contractual duty to allow the insurer to control the defense."), *citing* Restatement (Second) of Contracts, § 237, comment (a) (1979). The rulings in these insurance cases are consistent with hornbook contract law which holds that when a party fails to perform under a contract requiring immediate performance, the other party's obligations are discharged. "Where performances are to be exchanged under an exchange of

NEWMEYER & DILLION LLP

promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance." Restatement (Second) of Contracts, § 253 (1981).

Travelers breached its duty to defend KB in several ways. It failed to provide KB a conflict-free defense by appointing panel counsel to defend KB who suffered from disqualifying conflicts of interest. It failed to provide KB a complete defense by improperly limiting KB's defense and entering into secret settlement negotiations for the purpose of terminating its defense obligation to KB. It failed to provide KB an immediate defense because it had all the information it needed to determine that there was a potential for coverage under the Norcraft policies as of July 6, 2012, yet waited another four months until November 7, 2012 to even acknowledge its duty to defend. Any single breach is sufficient to trigger a forfeiture of any right Travelers may have had to control KB's defense. Here, there were multiple and repeated breaches.

### A. Travelers Breached Its Duty To Defend By Appointing Conflicted Counsel.

The following principle is directly applicable to the facts of this case and must be applied to every insurer's duty to defend:

> An insurer must provide a full defense by competent counsel as part of its duty to defend. The duty is breached where an insurer furnishes defense counsel whose ability to represent the insured is impaired by a disqualifying conflict of interest. Where there is a disqualifying conflict of interest, the insured is generally allowed to hire independent counsel at the insurer's expense.

*Employers Ins. of Wausau,* 2008 WL 3916096, at *4 (citing *San Diego Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 375, 208 Cal. Rptr. 494 (1984)). "Accordingly, when a conflict of interest develops, an insured's duty to cooperate with the insurer does not require the insured to surrender control of his or her defense, and permits the insured to obtain separate counsel." 14 Couch on Ins. §199:17 (3d ed. 1997); *see also Rector*, 2002 WL 59333, at *9-10 (insurers breached their duty to defend by, among other things, failing to provide conflict-free counsel and relinquish control of the defense).

It cannot be disputed that Travelers' duty to defend encompasses an obligation to provide KB with a conflict-free defense. Travelers and its panel counsel admitted this obligation to KB. Richard Carrillo, Travelers' Western Regional Manager, has testified in other coverage litigation:

NEWMEYER & DILLION LLP

> Q. . . . In your experience as the western regional manager, would you agree that Travelers should not assign panel counsel that is conflicted from representing the additional insured to be defended?
>
> A. Travelers would never assign a claim to a firm panel, non-panel, conflict counsel, preferred counsel, regular panel that has any type of a conflict in representing the insured or the additional insured.

Dkt. 55, Ex. 47, Deposition of Richard Carrillo, 164:7-14. Similarly, Marie Ciechanowski, a Severity Unit Manager at Travelers has testified:

> Q. Would you agree that an insured is not obligated to accept counsel appointed by Travelers if that counsel has a conflict?
>
> Mr. Aguilera: Objection. Call for legal conclusion, lacks foundation.
>
> The Witness: Well, if the -- the -- we wouldn't hire an attorney if they had a conflict.

Dkt. 55, Ex. 48, Deposition of Marie Ciechanowski, 17:13:19; *see also id.* at 18:1-8, 23:3-4. Indeed, Travelers' understanding of its unwavering duty to provide conflict-free counsel is confirmed all the way down to the adjuster level. Debbi Payne, an adjuster, testified:

> Q. . . . It is your understanding that the additional insured is entitled to conflict-free counsel?
>
> A. Yes.

Dkt. 55, Ex. 49, Deposition of Debbi Payne, 166:17-20; *see also id.* at 12:11-20. Lastly, Travelers' panel counsel, unilaterally appointed by Travelers to defend KB in 30-35 construction defect matters, has testified:

> Q. Do you agree that in order to satisfy a duty to defend, an additional insurer must provide the builder with a full, complete, immediate and conflict-free defense?
>
> Mr. Noon: Objection. Vague, ambiguous, overbroad. Uh, go ahead and answer generally.
>
> The Witness: Uh, I think there's cases out there that would say that, yes.

Dkt. 55, Ex. 50, Deposition of Mark Collinsworth, 14:4-11; *see also id.* at 14:13 to 15:16; 21:13 to 22:12.

**(1) <u>Clapp Moroney Was Ethically Conflicted.</u>**

As set forth in a detailed timeline in KB's Motion for Partial Summary Judgment, it also

NEWMEYER & DILLION LLP

cannot be disputed that Clapp Moroney was impaired by a disqualifying conflict of interest when it was appointed by Travelers to represent KB (specifically, KB Home South Bay Inc.) in the *Davis* Action while it was still counsel for AES, a subcontractor directly adverse to KB Home South Bay Inc. in the *Maxion* Action. Clapp Moroney was also conflicted from being KB's attorney by virtue of its representation of Norcraft in the *Aldrich* Action. Dkt. 54, at 8:23 to 12:3; *see also* O'Hara Decl., Ex. 2, Peck Expert Report, at 4-7 (¶¶ 1.4-1.31).

Even Travelers' own expert, Carol Langford, admitted in deposition that Clapp Moroney was hopelessly and incurably conflicted when it was appointed to defend KB in the *Davis* Action. O'Hara Decl., ¶ 4, Ex. 2, Carol Langford Depo., 91:22 to 94:2. In its reservation of rights letter, Travelers agreed to defend all KB entities sued in the *Davis* Action, including KB Home South Bay Inc. Dkt. 58, Ex. G at TRV 0003 2. In her deposition, Ms. Langford was asked whether Clapp Moroney could represent KB in the *Davis* Action before it had concluded its representation of American Electrical Services adverse to KB in the *Maxion* Action. Ms. Langford answered, "I think that would be problematic." O'Hara Decl., Ex. 2, Carol Langford Depo., 91:22 to 92:18.

Moreover, Clapp Moroney's improper conduct with respect to the conflicts is imputed to Travelers by the law of agency even assuming, as Travelers protests, it was somehow not aware of the improper conduct. Travelers admits that it has a duty to provide KB with a conflict-free defense, yet it wholly abdicated this responsibility to Clapp Moroney. Because Travelers chose to assign and delegate its responsibility to provide conflict-free counsel to Clapp Moroney, Clapp Moroney became Travelers' agent for this limited purpose. Clapp Moroney's failure to perform a proper conflict check and its repeated wrongful denials of the existence of a conflict are imputed to Travelers. *See* Paul W. Vapnek, Mark L. Tuft, Ellen R. Peck, Justice Howard B. Wiener (Ret.), California Practice Guide: Professional Responsibility, Ch. 3-A, § 3:5 (Agency Relationship) ("An attorney is the client's agent on matters for which the attorney is employed, so that the client may be bound by the attorney's acts."); *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 403, 212 Cal. Rptr. 151 (1985) (client bound by acts of attorney within scope of attorney's authority); *see also* 9th Circuit Manual of Model Civil Jury Instructions No. 4.2 ("Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors,

NEWMEYER & DILLION LLP

or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.'); 9th Circuit Manual of Model Civil Jury Instructions No. 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."). KB does not contend that Clapp Moroney is Travelers' agent for all purposes; however, where Travelers has an independent duty to provide KB with a conflict-free defense and expressly delegated its separate and independent duty to provide that conflict-free defense to a third party (in this case, Clapp Moroney), Travelers is liable for its agent's failure to carry out Travelers' duty, whether or not that agent happens to be a law firm.

Lastly, even if Clapp Moroney was not Travelers' agent for this limited purpose, the totality of facts and circumstances show that Travelers was on inquiry notice and should have investigated further the potential conflicts of interest. *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 37, 221 Cal. Rptr. 171 (1985) ("the law will charge a party with notice of all those facts which he might have ascertained had he diligently pursued the requisite inquiry"). *See also* Cal. Civ. Code § 19 (defining constructive notice); *Sterling v. Title Ins. & Trust Co.*, 53 Cal. App. 2d 736, 748-49, 128 P.2d 31 (1942) (citing cases in which parties are charged with constructive notice because their situations impose a duty to pursue the inquiry suggested). At minimum, Travelers cannot dispute that it knew that the *Davis* Action involved the same residential projects as the *Aldrich* Action. It knew Norcraft was a subcontractor that worked on homes at the very same residential projects. It retained Clapp Moroney to defend Norcraft in the *Aldrich* Action. Dkt. 54, at 11:18-12:3. It retained Clapp Moroney to defend KB in the *Davis* Action. Travelers also cannot dispute that KB's attorneys objected to Clapp Moroney's assignment in the *Davis* Action and asked for assurances that Clapp Moroney was conflict free. Dkt. 58, at ¶ 35 and Ex. Y thereto. Given the totality of circumstances, Travelers was on constructive notice that there were questions regarding Clapp Moroney's ethical conflicts and should have inquired further. The undisputed facts show that Travelers did no such thing.

**(2) <u>Collinsworth Was Ethically Conflicted.</u>**

When Travelers appointed Collinsworth to be KB's attorney in place of Clapp Moroney,

Newmeyer & Dillion LLP

effective February 26, 2014, Collinsworth was already acting as Travelers' monitoring counsel and had already formed an attorney-client relationship with Travelers independent of any tripartite relationship. Specifically, Collinsworth has been assigned by Travelers to defend KB in approximately 30 to 35 construction defect cases. KB has never allowed Collinsworth to represent it in any of those cases, so a tripartite relationship between KB, Collinsworth, and Travelers was never created. However, in each of those cases, Collinsworth nevertheless performed monitoring work for Travelers, such as reviewing pleadings, monitoring dockets, figuring out the status of cases, and reporting back to Travelers. Collinsworth billed Travelers for that work. In each successive assignment by Travelers, Collinsworth never disclosed its monitoring work for Travelers to KB. O'Hara Decl., Ex. 3, Mark Collinsworth Depo., 21:13 to 22:20, 28:4 to 30:25; O'Hara Decl., Ex. 1, Peck Expert Report, at 19-21 (¶¶ 4.5-5); O'Hara Decl., Ex. 4, Ellen Peck Depo., 77:16 to 85:7.

In addition, Collinsworth is Travelers' monitoring counsel in the *Davis* Action. KB has served responses to interrogatories which outline the specific conflicts suffered by Collinsworth, as follows:

> . . . KB is informed and believes that on or after September 2013, the firm of Collinsworth, Specht, Calkins & Giampaoli, LLP ("Collinsworth Firm") entered into a direct, non-tripartite, attorney-client relationship with Travelers. Specifically, in a letter dated September 4, 2013 from KB's V.P. and Assistant General Counsel, David B. Simons, to Scott D. Calkins of the Collinsworth Firm, the firm was notified that it was not authorized to be KB's legal representative. In that letter, the Collinsworth Firm was asked to provide a firm resume with references, attorney profiles, lists of cases that have been pending within the last five years where it had defended a residential construction developer, general contractor, designer, or subcontractor in construction defect litigation (as well as a brief summary and references of client contacts for each of those cases), and proof of existence and amount of errors and omissions insurance. The Collinsworth Firm was further asked to provide a list of all contractors and subcontractors that the Collinsworth Firm currently represents that have involvement in residential construction as well as a brief description of the nature of such representations. KB also requested the same information relative to any insurers that the Collinsworth Firm represents or receives referrals from. . . .
>
> The requested information was not received from the Colllinsworth Firm. However, the Collinsworth Firm nevertheless continued to work for Travelers as Travelers' "monitoring counsel," continued to



NEWMEYER & DILLION LLP

> bill Travelers and be paid by Travelers for its work monitoring construction defect lawsuits involving KB, and prepared and sent status reports directly to Travelers regarding KB's construction defect lawsuits, including the DAVIS ACTION. None of this work was authorized by KB or for KB's benefit, but was authorized by Travelers for Travelers' benefit. . . .

O'Hara Decl., Ex. 5, KB's Response to Interrogatory No. 21, 6:25 to 7:25. As succinctly stated in the expert report of Ellen Peck:

> By reason of its retention by Travelers, its performance of legal service to Travelers; submission of its invoices to Travelers and Travelers payment of Collinsworth's billings for legal services in the Davis action, Collinsworth formed an individual attorney-client relationship with Travelers in the Davis action as monitoring counsel. In this situation, the expectation is that Collinsworth owes its fidelity to Travelers not KB.

O'Hara Decl., Ex. 1, Peck Expert Report, at p. 20 (¶ 4.12) (citing *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 233-34, 18 Cal. Rptr. 2d 425 (1999)). At minimum, significant issues of material fact exist concerning ethical conflicts suffered by Collinsworth, which must be decided by the fact finder.

Without the informed written consent of each client, a lawyer may not: (a) represent a client (subcontractor) in a matter and at the same time in a separate matter represent another client (KB) whose interests in the first matter is adverse to the client (subcontractor) in the first matter (Cal. Rules of Prof. Conduct, Rule 3-310 (C)(3)); or (b) represent a current client (subcontractor/KB) against another current client (subcontractor/KB). *Flatt v. Superior Court*, 9 Cal. 4th 275, 284-86, 36 Cal. Rptr. 2d 537 (1994). Absent each client's informed written consent, joint/dual representation of clients whose interests actually conflict is prohibited and the lawyer is disqualified. The rule of disqualification in such cases is "*per se* or 'automatic.'" *Id.* at 284. Simultaneous representation of parties with conflicting interests impairs each client's legitimate expectation of undivided loyalty from the attorney. This is so even where the clients' matters are separate from each other and have nothing in common. *Flatt*, 9 Cal. 4th at 285 ("Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's *sense of loyalty* is askew."); *see also Pour Le Bebe , Inc. v. Guess? Inc.*, 112 Cal. App. 4th 810, 822, 5

Newmeyer & Dillion LLP

Cal. Rptr. 3d 442 (2003). The prohibition is designed to maintain public confidence in the legal profession by assuring existing clients that they will have the undivided loyalty of their lawyers throughout the representation. *Jeffry v. Pounds*, 67 Cal. App. 3d 6, 9-11, 136 Cal. Rptr. 373 (1977). Further, settlement of a matter on behalf of a pre-existing client does not cure the conflict and avoid disqualification. *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1431, 86 Cal. Rptr. 2d 20 (1999). Travelers breached its obligations under the Norcraft policies to provide KB with a conflict-free defense when it tried to force Clapp Moroney and Collinsworth upon KB.

**B. Travelers Breached Its Duty To Defend By Failing To Provide KB With A Complete Defense.**

To avoid duplicative briefing, KB incorporates by reference as if set forth in full herein its legal and factual arguments found in KB's Motion for Partial Summary Judgment, Section 3.D. entitled "Travelers Failed To Provide KB With A Complete Defense." Dkt. 54, at 15:20 to 18:25 (all contained within the first 25 pages of text).

**C. Travelers Breached Its Duty to Defend By Failing To Provide KB With An Immediate Defense.**

To avoid duplicative briefing, KB incorporates by reference as if set forth in full herein its legal and factual arguments found in KB's Motion for Partial Summary Judgment, Section 3.D. entitled "Travelers Failed To Provide KB With An Immediate Defense." Dkt. 54, at 13:25 to 15:19 (all contained within the first 25 pages of text).

Travelers did not need the contracts between Norcraft and KB with respect to its tender under Norcraft policy number TC2J-GLSA-118D2170-TIL-03 ("03-04 Policy") because that policy contained a 2010 1185 Endorsement listing KB Home South Bay as a *named insured*. *See* Dkt. 55-5, Ex. 15 (KB tendered under the 03-04 Policy) and Ex. 35 (2010 1185 Endorsement under 03-04 Policy). That endorsement does not require a subcontract to trigger coverage. Travelers' duty to defend under the 03-04 Policy was immediately triggered upon tender.

Travelers argues that it cannot forfeit its rights based on violations of the Fair Claims Settlement Practices Regulations (10 C.C.R. § 2695.1). Travelers gives too much weight to its



NEWMEYER & DILLION LLP

own violations. KB does not claim that Travelers forfeited its rights solely because Travelers violated the statute. Rather, Travelers' violation of the statutory provisions are one factor to consider in the totality of circumstances which constitute Traveler's bad faith. *See Helus v. Equitable Life Assur. Soc'y of U.S.*, 309 F. Supp. 2d 1170, 1176 (N.D. Cal. 2004) (recognizing that violations of California insurance regulations are not dispositive but are "one factor that the jury *may* consider in determining whether an insurance company acted in bad faith").

## 6. THE ALLEGED SETTLEMENT BETWEEN TRAVELERS AND PLAINTIFFS' COUNSEL IN THE *DAVIS* ACTION IS STILL UNDER CHALLENGE.

Travelers asserts it settled the homeowners' claims arising out of the work of Travelers' named insured on October 16, 2014. However, there are significant factual issues regarding the validity of that agreement. The Release Agreement is not signed by a single homeowner; it is signed only by homeowners' counsel. While Travelers may argue that California Code of Civil Procedure section 664.7 allows the homeowners' counsel to unilaterally bind their clients in a settlement agreement and release each homeowner's claims, section 664.7 applies only "if parties to a pending construction defect action stipulate personally or, where a party's contribution is paid on its behalf pursuant to a policy of insurance . . . " Cal. Civ. Proc. Code § 664.7. As such, section 664.7 excuses Norcraft from having to sign the settlement agreement because Norcraft's carrier, Travelers, is funding the settlement. It does not excuse the homeowners from signing the settlement. As was stated by the California Supreme Court:

> [T]he law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment ***he has no implied or ostensible authority to bind his client to a compromise[d] settlement of pending litigation*** . . . .

*Blanton*, 38 Cal. 3d at 404 (emphasis added).

Here, the Release Agreement borders on the bizarre. The two entities it purports to release, Norcraft and KB, are not even parties to the agreement. Travelers did not even notify KB in advance that it was discussing settlement and gave KB no opportunity to have input regarding terms that would protect KB's interests. Glaspy Decl., ¶¶ 2-3. The Release Agreement was negotiated by coverage counsel for Travelers, not counsel for Norcraft, and is signed by



NEWMEYER & DILLION LLP

Travelers, not Norcraft. While counsel for the *Davis* Action plaintiffs represents that he had authority to enter into the agreement, that is hardly sufficient to establish that the agreement is binding on any plaintiff. Any *Davis* Action plaintiff could defeat the Release Agreement by asserting that counsel did not have authority to sign it. Indeed, while the Release Agreement contains a so-called Certification of Authority from homeowners' counsel, Milstein & Adelman LLP, that certification provides no certainty or peace of mind to KB where the Release Agreement fails to attach any document signed by the homeowners granting such authority.

The deficiencies with the Release Agreement are being challenged by KB in a motion to contest the alleged good faith settlement between Travelers and the homeowners' attorneys. Glaspy Decl., ¶¶ 2-3. Because the validity of the Release Agreement will still be under challenge at the time this motion is heard, KB requests that the Court provide appropriate relief pursuant to Federal Rules of Civil Procedure, Rule 56(d), including denying Travelers' motion on this issue.

**7. <u>SUBSTANTIAL ISSUES EXIST REGARDING TRAVELERS' BAD FAITH.</u>**

As the moving party, Travelers bears the initial burden to demonstrate the lack of a genuine issue of material fact. *See Pyramid*, 752 F.3d at 818 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (reversing California Central District Court's order granting summary judgment on bad faith claim where some evidence existed from which jury could draw more than one inference concerning insurer's conduct). A court may grant summary judgment only if the motion and supporting materials – including facts considered undisputed – show that the movant is entitled to it. Fed. R. Civ. P. 56(e). An issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). An inference is justifiable if it is rational or reasonable – it does not need to be the most likely or most persuasive inference. *Pyramid,* 752 F.3d at 818.

In coverage disputes involving breach of the implied covenant of good faith and fair dealing, "whether an insurer's denial of a claim is *unreasonable* is dependent upon the *facts* in each case. The issue remains a question of fact unless only one inference may be drawn from the evidence." *Pyramid Technologies, Inc.*, 752 F.3d at 824. Further, an insurer must reasonably

investigate a claim to determine if a duty to defend exists. "To protect its insured's contractual interest in security and peace of mind, 'it is essential that an insurer fully inquire into possible bases that might support the insured's claim' before denying it." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721, 68 Cal. Rptr. 3d 746 (2007), citing *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 819, 169 Cal. Rptr. 691 (1979). Unreasonable delays in claim handling can support a finding of bad faith. *Orange County Plastering Co., Inc. v. Am. Home Assurance Co.*, No. CV 11-06364 DDP (FMOx), 2011 WL 5117766, at *2 (C.D. Cal. Oct. 28, 2011). The ultimate test of whether a delay in claim handling constitutes bad faith is whether the delay was unreasonable. Of particular note, the *Wilson* court opined, "we find potentially misleading the statements in some decisions that under the genuine dispute rule bad faith cannot be established where the insurer's withholding of benefits 'is reasonable or is based on a legitimate dispute as to the insurer's liability.'" *Wilson,* 42 Cal. 4th at 724 n.7. In the insurance bad faith context, a dispute is not "legitimate" unless it is founded on a basis that is reasonable under all the circumstances. *Id.*

KB's expert witness, Charles Henderson, is a claims handling expert with 40 years of claims handling experience, including the handling of construction defect claims in California for 28 years. Mr. Henderson has reviewed the facts related to Travelers' handling of KB's tender in the *Davis* Action and opines that Travelers' claims handling practices were deficient and inconsistent with generally accepted claims handling practices and procedures. For example:

- Travelers possessed sufficient information on or about July 6, 2012 (and had the ability to obtain further information that it deemed necessary) to determine that there was a possibility of coverage to KB; by waiting until November 8, 2012, Travelers breached its duty to provide an immediate defense to KB;
- Travelers improperly concluded that Glaspy was not adequately pursuing other additional insurers and used improper conclusion as a pretext for refusing to continue to pay Glaspy's fees; there is no evidence that Glaspy did not reasonably and properly pursue additional insured coverage;
- Travelers may have breached again when it appointed Clapp Moroney because Clapp Moroney was not conflict-free and Travelers knew or should have known this; Travelers may have breached again when it assigned Collinsworth after Clapp Moroney withdrew because Travelers knew or should have known that Collinsworth had a conflict;
- Travelers insisted in *Davis* and other cases that it had an unfettered right to control the defense without regard to the implied covenant of good faith and fair dealing and without regard to the interests of KB and without regard to the fact



NEWMEYER & DILLION LLP

that it had breached its duty to defend KB;

- Travelers failed to pay defense costs reasonably incurred by KB's counsel in *Davis* even when it knew or was made aware that Clapp Moroney and Collinsworth were conflicted; and
- Travelers engaged in a pattern and practice of unreasonable conduct against KB by filing lawsuits against KB whenever KB makes a legitimate tender of defense, attempting to intimidate KB into not tendering, and taking untenable positions in the litigation, among other things.

O'Hara Decl., Ex. 6, Charles Henderson Expert Report, at 24-25.

Travelers' actions, taken together, constitute unreasonable denial of policy benefits to KB. KB has been damaged in the form of unpaid defense fees and costs (Dkt. 54-3, at ¶ 14) and attorney's fees incurred in this coverage action to pursue its policy benefits. Travelers to this day continues its fight to deny KB its policy benefits. A policyholder can recover reasonable attorneys' fees that the policyholder incurs to hire a lawyer to recover policy benefits. *Brandt v. Superior Court*, 37 Cal. 3d 813, 818 (1985) (when an insurer's tortious conduct compels the insured to retain an attorney to obtain the benefits due, attorneys' fees are an economic loss). To date, KB has incurred $308,594.05 in attorneys' fees and costs in an effort to obtain a defense of the *Davis* Action from Travelers. O'Hara Decl., ¶ 9.

Lastly, even assuming arguendo that the Court grants partial summary judgment as to KB's breach of contract claim, it is well-established that a breach of the implied covenant of good faith is a breach of the contract (*Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393, 272 Cal. Rptr. 387 (1990)), and that breach of a specific contract provision is not a prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 & n.12, 6 Cal. Rptr. 2d 467 (1992); *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329, 1339, 106 Cal. Rptr. 2d 523 (2001). Were it otherwise, the covenant would have no practical meaning. Nor is it necessary that the party's conduct be dishonest. The covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive. *Carma Developers*, 2 Cal. 4th at 373. Thus, when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts



NEWMEYER & DILLION LLP

legitimately payable, and numerous other tactics may breach the implied covenant because it frustrates the insured's primary right to receive the benefits of his contract. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153, 271 Cal. Rptr. 246 (1990).

**8. EVIDENTIARY OBJECTIONS (FED. R. CIV. PRO. 56(E).**

**A. Travelers' Request for Judicial Notice.**

KB objects to Exhibits B-H and J. Judicial notice can only establish that the orders from other courts exist, not the truth of the matters asserted in the documents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Exhibits B-H and J are irrelevant, as they concern different cases with different facts. Only *relevant* material may be noticed. *Aquila, Inc. v. Superior Court*, 148 Cal. App. 4th 556, 569, 55 Cal. Rptr. 3d 803 (2007); Fed. R. Evid. 401, 402.

**B. Declaration of Pamela Colouris: Paragraph 13 and Exhibit H.**

> On December 18, 2012, Ms. Glaspy sent a letter to my attention acknowledging that Travelers had agreed to defend KB Home and that 'Absent any agreement reached independently by the carriers, the defense costs will be split evenly amongst the carriers on a per subcontractor basis.' A true, full, and correct copy of Ms. Glaspy's letter is attached and incorporated herein as Exhibit H.

Testimony mischaracterizes Exhibit H. The letter also states that Ms. Glaspy sent the Pre-Trial Litigation Budget and the Insurance Matrix listing the carriers that had been tendered to, as requested by Colouris. Fed. R. Evid. 403, 602, 1002. Testimony and Exhibit H is hearsay. Fed. R. Evid. 801, 802. Danger of prejudice outweighs any probative value. Fed. R. Evid. 403, 704.

**C. Declaration of Pamela Colouris: Paragraph 25 and Exhibit M.**

> That same day, and again on May 8, 2013, Ms. Wilhelmi replied to my request for a conflict check stating that the Clapp Firm did not have any conflicts of interest.

Testimony and Exhibit M is hearsay. Fed. R. Evid. 801, 802. Testimony is vague as to the term "conflicts of interest." Fed. R. Evid. 701 (Travelers is relying on the testimony to establish that Ms. Wilhelmi had no ethical conflicts). Lacks personal knowledge. Fed. R. Evid. 602, 801, 802; *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). Improper conclusory opinion masquerading as fact. Fed. R. Evid. 602, 701, 702, 704. Danger of prejudice outweighs any probative value. Fed. R. Evid. 403, 704.



NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

**D. Declaration of Pamela Colouris: Paragraph 31 and Exhibit U.**

> Ms. Wilhelmi confirmed that the Clapp Firm did not have any conflicts …

KB incorporates by reference as if set forth in full herein the evidentiary objections stated in Section 8.C. above.

**E. Declaration of Pamela Colouris: Paragraph 39.**

> That same day, Mr. Calkins informed me by email that the Collinsworth Firm had no conflicts and Travelers retained his firm that day.

KB incorporates by reference as if set forth in full herein the evidentiary objections stated in Section 8.C. above.

## 9. CONCLUSION.

Travelers has failed to meet its burden of establishing no genuine issues of material fact. There are numerous disputed material facts regarding whether, when, and how Travelers breached its duty to defend KB; how Travelers unreasonably deprived KB of its benefits under the Norcraft policies; and how KB has been damaged. Travelers' motion should be denied in its entirety.

Dated: November 17, 2014

NEWMEYER & DILLION LLP

By: */s/ C. Kendie Schlecht*
John A. O'Hara
Michael J. Studenka
C. Kendie Schlecht
Attorneys for Defendants/Counterclaimants

NEWMEYER & DILLION LLP

## CERTIFICATE OF SERVICE

*Travelers Prop. Cas. Co. of America v. Kaufman & Broad Monterey Bay, Inc., et al.*
USDC Northern District Case No. CV 13-04745 EJD (PSGx)

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

I, Dee Novoa, declare:

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 895 Dove Street, 5th Floor, Newport Beach, California 92660. On November 17, 2014, I served a copy of the within document(s):

**DEFENDANTS' AND COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

☒ (BY CM/ECF SYSTEM – VIA NOTICE OF ELECTRONIC FILING ("NEF") I certify that on the date referenced above, I electronically transmitted the document(s) listed for submission to the United States District Court Northern District, using the ECF System required for filing and transmission of Electronic Notices to the ECF registrants/recipients registered with the United States District Court Northern District at the e-mail address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Newport Beach, California addressed as set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| A. Eric Aguilera, Esq. | Tel: (714) 384-6600 |
| Kari M. Myron, Esq. | Fax: (714) 384-6601 |
| Jason Chao, Esq. | Email: eaguilera@aguileragroup.com |
| Angela Martin, Esq. | Email: kmyron@aguileragroup.com |
| THE AGUILERA LAW GROUP, APLC | Email: jchao@aguileragroup.com |
| 650 Town Center Drive, Ste. 100 | Email: amartin@aguileragroup.com |
| Costa Mesa, CA 92626 | |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 17 2014, at Newport Beach, California.

*/s/ Dee Novoa*
Dee Novoa