**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera, Esq. (SBN 192390)
Raymond E. Brown, Esq. (SBN 164819)
Jason Y. Chao, Esq. (SBN 250735)
650 Town Center Drive
Suite 100
Costa Mesa, CA 92626
T: 714-384-6600 / F: 714-384-6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
jchao@aguileargaroup.com

Attorneys for Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE BRANCH**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation<br><br>Plaintiff,<br><br>v.<br><br>KAUFMAN & BROAD MONTEREY BAY, INC., a California corporation, K&B BAKEWELL SEASIDE VENTURE, LLC, a California limited liability company, and KB HOME SOUTH BAY, INC., a California corporation, and DOES 1 through 10 inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 5:13-cv-04745 EJD-PSG<br>Hon. Edward J. Davila<br><br>**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY**<br><br>Magistrate Judge Paul S. Grewal<br><br>Date: December 5, 2014<br>Time: 9:00 am<br>Courtroom: 4, 5th Floor<br><br>Complaint Filed: October 11, 2013<br>Counterclaim Filed: November 20, 2013 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Plaintiff/Counter-defendant Travelers Property Casualty Company of America ("Travelers") hereby opposes Defendants/Counterclaimants Kaufman & Broad Monterey, Bay, K&B Bakewell Seaside Venture, LLC, and KB Home South Bay, Inc.'s (collectively "KB") motion for partial summary judgment as follows:

**TABLE OF CONTENTS**

**I. INTRODUCTION**............................................................3

**II. STATEMENT OF FACTS** .......... 4
**A. THE NORCRAFT POLICIES** .......... 4
**B. THE UNDERLYING CONSTRUCTION DEFECT ACTION** .......... 6
**C. KB'S TENDER AND TRAVELERS' ACCEPTANCE** .......... 6
**D. APPOINTMENT OF THE CLAPP FIRM** .......... 7
**E. APPOINTMENT OF THE COLLINSWORTH FIRM** .......... 8
**F. TRAVELERS PROVIDES A COMPLETE DEFENSE TO KB AND SETTLES THE CLAIMS** .......... 9
**III. KB IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE KB HAS FAILED TO ESTABLISH ALL ELEMENTS ENTITLING IT TO A JUDGMENT IN ITS FAVOR** .......... 9
**IV. PRIOR RULING BETWEEN TRAVELERS AND KB ESTABLISH THAT TRAVELERS DID NOT BREACH THE INSURANCE POLICY THROUGH DELAY** .......... 10
**V. TRAVELERS FULFILLED ITS OBLIGATIONS UNDER THE INSURANCE POLICIES** 11
**A. TRAVELERS DID NOT DELAY IN PROVIDING A DEFENSE** .......... 11
**1. No Duty to Defend Was Triggered Before Pamela Colouris Could Determine Whether Coverage Existed** .......... 11
**2. A Four Month Investigation Is Not a Breach as A Matter of Law** .......... 14
**B. TRAVELERS RESERVATION OF RIGHTS LETTER WAS PROPER** .......... 15
**C. THE SETTLEMENT OF CLAIMS AGAINST NORCRAFT WAS PROPER** .......... 16
**D. TRAVELERS PROPERLY APPOINTED COUNSEL** .......... 18
**1. Travelers Cannot Have Breached the Contract Because It Was Unaware of Any Clapp Moroney Conflict** .......... 18
**2. Travelers Immediately Remedied the Conflict Upon Notice** .......... 19
**VI. TRAVELERS DID NOT WAIVE ANY OF ITS RIGHTS UNDER THE POLICIES** .......... 20
**VII. TRAVELERS DUTY TO DEFEND KB TERMINATED WHEN ALL CLAIMS AGAINST KB POTENTIALLY ARISING OUT OF NORCRAFT'S WORK WERE RELEASED, THUS ENTITLING TRAVELERS TO REIMBURSMENT** .......... 23
**VIII. KB'S REQUEST FOR LEAVE TO SUPPLEMENT ITS PAPERS SHOULD BE DENIED** 25
**IX. CONCLUSION** .......... 25

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Alex Robertson Co v. Imperial Cas. & Indem. Co.,* 8 Cal. App. 4th 338, 343-44 (2001) .......... 13
*Alkow v. State Bar of Cal*., 38 Cal. 2d 257, 263 (1952) .......... 20
*American International Specialty Lines Ins. Co. v. Continental Casualty Insurance Company*, 142 Cal.App.4th 1342, 1370 (2006) .......... 26
*American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1356, 24 Cal. Rptr 2d 106 .......... 17
*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986) .......... 12
*Blue Ridge Ins. Co. v. Jacobsen,* 25 Cal.4th 489, 497-498 (2001) .......... 17
*Bowie v. Home Ins. Co.,* 923 F.2d 705, 709 (9th Cir. 1991) .......... 13
*Buss v. Superior Court*, 16 Cal.4th 35 (1997) .......... 18, 23, 25
*Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) .......... 11
*Carlton v. St. Paul Mercury Ins. Co.,* 30 Cal. App. 4th 1450 (1994) .......... 17
*Ceresino v. Fires Insurance Exchange,* 215 Cal.App.3d 814, 823 (1989) .......... 25
*Comunale v. Traders & Gen. Ins. Co.,* 50 Cal.2d 654, 659 (1958) .......... 23

*Downey Venture v. LMI Insurance Co.*, 66 Cal.App.4th 478, 507 (1998)....26
*Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co.*, 33 Cal.App.3d 26, 45 (1973)....22
*Horace Mann Ins. Co. v. Barbara B.*, 61 Cal.App.4th 158, 164 (1998)....16
*Houck Construction, Inc. v. Zurich Specialties London Ltd*., 2007 WL 1739711 (C.D. Cal. 2007) ....16
*Hurvitz v. St. Paul Fire & Marine Ins. Co.*, 109 Cal. App. 4th 918 (2003)....18
*Liberty Mutual Ins. Co. v. Superior Court*, 58 Cal.App.4th 617, 623 (1997)....26
*Love v. Fire Ins. Exch.*, 221 Cal. App. 3rd 1136, 1151 (1990) ....23
*Masson v. New Yorker Magazine. Inc.*, 111 S.Ct. 2419, 2435 (1991)....12
*Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W. 2d 411, 417 (Minn. 1997) ....19
*Mirabito v. Liccardo*, 4 Cal.App.4th 41, 45–46 (1992). ....21
*Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295-296 (1993)....26
*Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993)....18
*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc*., 182 F.3d 157, 160 (2nd Cir. 1999) ....12
*New Hampshire Ins. Co. v. Ridout Roofing Co.*, 68 Cal. App. 4th 495, 505 (1998)....18
*New Plumbing Contractors, Inc. v. Edwards, Sooy & Byron*, 99 Cal. App. 4th 799, 802, (2002)....18
*Novak v. Low, Ball & Lynch*, 77 Cal.App.4th 278 (1999) ....19
*Perez-Encinas v. AmeriUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1139 (N.D. Cal. 2006) ....23
*Ringler Associates Inc., v. Maryland*, (2000) 80 Cal.App.4th 1165, 1188....25
*Ringler Associates, Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1192 (2000)....26
*Ross v. Creel Printing & Publ'g Co*., 100 Cal.App.4th 736, 746, (2002)....21
*San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co*.,82 Cal.App.4th 1230, 1241 (2000)....24, 25
*San Jose Production Credit Association v. Old Republic Life Ins. Co.*, (9th Cir. 1984) 723 F.2d 700, 703-704 ....23
*Schrillo Co. v. Hartford Accident & Indemnity Co.*, 181 Cal. App. 3d 766, 773(1986)....15
*Scottsdale Insurance Company v. MV Transportation*, 36 Cal.4th 643 (2005)....26
*State Farm Mut. Auto Ins. Co. v. Federal Ins. Co.*, 872 Cal. App. 4th 1422, 1435 (1999)....21
*Travelers Property Cas. Co of America v. Centex Homes*, United States District Court, Case No. 11-3638-SC (N.D. Cal. April 8, 2013) ....14
*Truck Ins. Exchange v. Superior Court*, 51 Cal.App.4th 985, 994, 59 Cal. Rptr 2d 529 (1996)....17
*Underwriters at Lloyd's of London v. American Safety Ins. Services, Inc.*, 702 F.Supp.2d 1169, 1173-74 (C.D. Cal. 2010) ....13, 16
*W.D. O'Morrow v. Borad*, 27 Cal.2d 794, 800 (1946)....22
*Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal.App.4th 1236, 1241(1992) ....14

**Statutes**

California Civil Code §2860 (f) ....20
California Code Civil Procedure § 1909 ....12
California Evidence Code § 604 ....13
Fed. R. Civ. Proc. 56 ....12

**Rules**

Cal. Rules Prof. Con., Rule 1-100 ....21
Fed. R. Civ. Proc. 56(c) ....12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

KB's Motion for Partial Summary Judgment is based on the presumption that a claims adjuster must

be clairvoyant in order to properly handle a claim. KB claims that Travelers breached the insurance policies because the adjuster handling KB's tender (1) failed to apply an expired insurance policy; (2) was not able to instantly sort through hundreds of other claim files to locate documents that KB's tendering counsel had in its possession; and (3) failed to act as an attorney and conduct a conflicts check for panel counsel. According to KB, Travelers must go beyond the terms and conditions of its policies and have knowledge and control over the actions of third parties – including KB –in order to fulfill its duty to defend. This newly invented "standard" is illogical and not supported by the law.

KB's motion fails to establish how, ***contrary to law and statute,*** Travelers' lack of information results in a breach of the insurance policies. First, as a matter of law, Travelers did in fact provide KB with a full, complete, and immediate defense in the underlying construction defect action. Any alleged delay in providing a defense was based purely on KB's failure to timely provide information or its wrongful refusal to accept a conflict-free defense. Second, mere delay cannot result in a forfeiture of Travelers' right to control the defense of KB or preclude Travelers from asserting its own breach of contract cause of action. Finally, the settlement of all derivative liability of KB potentially arising from Norcraft's work extinguished any duty to defend that Travelers owed KB, so said settlement cannot be a breach of that same duty. Thus, the Court must deny KB's motion as it cannot, as a matter of law, establish it is entitled to judgment on these facts.

## II. STATEMENT OF FACTS

### A. THE NORCRAFT POLICIES

The relevant facts of this case are simple. Travelers issued 10 separate commercial general liability policies to Norcraft Companies/Norcraft Holdings, L.P. ("Policies") (Colouris Decl. ¶4, Ex. A-B.) Each of the Policies expressly provides that Travelers "[W]ill pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Travelers] will have the right and duty to defend any "suit" seeking those damages." (Colouris Ex. A-B.) However, the Policies only apply to "property damage" that "occurs during the policy period." (Colouris Ex. A-B.) Most importantly for KB, the Policies contain various additional insured endorsements providing coverage to an additional insured for liability arising out of the named insured's work.

Policy no. TC2J-GLSA-118D2170-TIL (eff. 10/21/03 – 10/21/04) (2003 Policy) utilizes two different additional insured endorsements. The first is the Other Additional Insureds endorsement form CG

D1 44 01 96 that provides:

> 1. WHO IS AN INSURED (SECTION II) is amended to include as an insured any person or organization (called hereafter "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but:
>    a. Only with respect to liability because of "bodily injury" or "property damage" arising out of "your work" for that additional insured performed by you or for you . . .

(Colouris Ex. B, STPAUL 0000900) The 2003 Policy also contains the Additional Insured – Owners, Lessees or Contractors (Form B) form CG 20 10 10 93 (Colouris Ex. B, ST PAUL 0001034) and Additional Insured – Owners, Lessees or Contractors (Form B) form CG 20 10 11 85 (Colouris Ex. B, ST PAUL 0001037) which name "K.B. Homes South Bay its affiliates and subsidiaries" in the schedule. The endorsements provide: "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the schedule but only with respect to liability arising out of" either the named insureds' 'ongoing operations' or 'your work'."

The remaining Policies utilize the "Other Additional Insureds" endorsement form CG D1 44 01 96, "Additional Insured – Owners, Lessees or Contractors (Form B)" endorsement form CG T8 03; "Blanket Additional Insured (Contractors)" endorsement form CG D2 46 08 05; and/or "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement form CG 20 10 10 01. All of these endorsements require the named insured to have entered into either a written agreement or contract to name a party as an additional insured before that party qualifies for coverage. (Colouris Ex. A-B, ST PAUL 0001094; ST PAUL0001224; ST PAUL0001262; ST PAUL0001277; ST PAUL0001394.) In particular, Policy number TC2J-GLSA-118D2170-TIL-11 (eff. 11/1/11-11/1/12) ("2011-2012 Policy") contains Other Additional Insured endorsement form CG D1 44 01 96 which provides:

> 1. WHO IS AN INSURED (SECTION II) is amended to include as an insured any person or organization (called hereafter "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but:
>    a. Only with respect to liability because of "bodily injury" or "property damage" arising out of "your work" for that additional insured performed by you or for you; and
>    b. Subject to any limitations in the written contract regarding the scope of the additional insured status.

(Colouris Ex, B, ST PAUL0002175) The 2011-2012 Policy also contains Blanket Additional Insured (Contractors) form CG D2 46 08 05 which provides that:

> 1. WHO IS AN INSURED – (Section II) is amended to include any person or organization

that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:

a. Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
b. If, and only to the extent that, the injury or damage is caused by acts or omissions of your or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omission of such a person or organization.(Colouris, Ex. B, ST PAUL 0002185-86)

### B. The Underlying Construction Defect Action

Norcraft and KB entered into two subcontracts effective January 22, 2003 and February 5, 2003 to supply and install cabinets at homes within The Cove at Seaside Highlands and The Bluff at Seaside Highlands developments, respectively (the "Project") (Colouris Decl. ¶13, Ex. F). On February 8, 2012, 17 homeowners within the Project filed a lawsuit styled *Davis, et al. v. Kaufman & Broad Monterey Bay, Inc., et al.*, Monterey County Superior Court, case No. M116168 ("Davis Action"), alleging various construction defects to their homes manifested after the time of purchase. (RFJN Ex. A, ¶16.) KB filed a cross-complaint in the Davis Action on or about September 10, 2013 naming Norcraft as a cross-defendant. (RFJN Ex. F.)

### C. KB's Tender and Travelers' Acceptance

On July 6, 2012, KB, through its counsel Glaspy & Glaspy ("Glaspy Firm"), tendered its defense and indemnity as an additional insured under the Policies to Travelers, providing a copy of the Davis complaint, a homeowners' matrix, certificates of insurance, and additional insured endorsement forms related to the 2002-2004 Policies. (Colouris Decl. ¶8; KB Ex. 15.) On July 20, 2012, Pamela Colouris, the Senior Technical Specialist assigned by Travelers to KB's tender, reviewed the tender and acknowledged it, requesting copies of any contract between KB and Norcraft and information regarding the existence of any wrap policy for the Project in order to complete Travelers' investigation. (Colouris Decl. ¶10, Ex. D.) The Glaspy Firm did not respond to Ms. Colouris' request.

On October 29, 2012, after receiving no response to her request, Ms. Colouris emailed the Glaspy Firm, informing it that she still had not received any subcontracts. (Colouris Decl. ¶12, Ex. E.) Within 30 minutes, the Glaspy Firm provided Ms. Colouris with copies of the Norcraft subcontracts requiring that KB be added as an additional insured under the Policies and establishing that Norcraft performed work on the Davis homes. (Colouris Decl. ¶13, Ex. E.) At no point did KB or the Glaspy Firm indicate (1) it was

tendering the Davis Action under the 2002-2004 Policies; (2) it believed Travelers already had all information necessary to complete its investigation; or (3) Travelers was unnecessarily delaying its investigation. (Colouris Ex. F.)

Ms. Colouris reviewed the information provided by the Glaspy Firm and issued a letter on November 7, 2012, explaining, pursuant to the 2011-2012 Policy, "Travelers will defend KB subject to this coverage letter and the terms and conditions and defense of the referenced policy." (Colouris Ex. G.) Travelers' letter expressly reserved its rights included within the "Commercial General Liability Coverage Form CG 001 10/01 and the additional insured endorsement" of the 2011-2012 Policy. (Colouris Ex. G.)

Meanwhile, on July 6, 2012, KB also tendered its defense and indemnity to State Farm General Insurance Company ("State Farm") as an additional insured under policies issued to American Electrical Services, Inc. (Martin Ex. B.) On September 4, 2012, State Farm agreed to provide a defense to KB (Martin Ex. C.) Initially, State Farm was allocated 100% of KB's defense fees and costs, but after Travelers' accepted the defense, KB allocated its fees and costs equally amongst the carriers. (Martin, Ex. D) After agreeing to defend KB, both State Farm and Travelers paid defense fees and costs incurred by the Glaspy Firm on behalf of KB. (Colouris Decl. Ex. I; Martin Ex. F, McAlister Depo. 15:22-16:1.)

**D. Appointment of the Clapp Firm**

Travelers exercised its right to appoint counsel to defend KB on May 1, 2013. (Colouris Decl. ¶20.) That day, Ms. Colouris contacted Jennifer Wilhelmi of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley (the "Clapp Firm") and requested that she run a conflicts check as to the Davis Action. (Colouris Decl. ¶20, Ex. J.) Ms. Wilhelmi confirmed, via email, that the Clapp Firm had no conflicts. (Colouris Ex. J.) Based on this confirmation, on May 8, 2013, Travelers retained the Clapp Firm to represent KB and informed KB of the retention. (Colouris Decl. ¶22, Ex. K.)

It was not until June 5, 2013, that KB responded to the May 8, 2013 retention of the Clapp Firm, when Menter & Witkin, a firm representing KB, demanded additional information related to Travelers' retention of the Clapp Firm in the Davis Action and in a second matter entitled *Cha v. KB Coastal, Inc.* The letter demanded a list of all cases in which Travelers retained the Clapp Firm within the last five years, the results of conflicts checks, and litigation/billing guidelines. (Colouris Decl. ¶25, Ex. L.) The letter asserted: "if Travelers and/or Ms. Wilhelmi can demonstrate to KB's satisfaction that Ms. Wilhelmi is qualified and

competent to represent a residential developer in construction defect matters and is conflict-free and Travelers confirms in writing to KB that it will provide KB with a full and complete (100%) defense of these actions through their final conclusion, KB will further consider the Wilhelmi association." (Colouris Ex. L.) The letter did not provide any reason other than a "delay" and KB's unspecified "concerns" about the Clapp Firm for demanding the additional information. (Colouris Ex. L.)

That same day, Menter & Witkin wrote directly to Ms. Wilhelmi regarding the *Cha, et al. v. KB Coastal, Inc.* matter, noting KB's suspicion that the Clapp Firm may have one or more conflicts and requesting information regarding that firm's prior representations. (Martin Ex. G, Wilhelmi Depo. Ex. 513.) This letter was not copied to Travelers. Further, Ms. Wilhelmi did not discuss the additional demand with Travelers. (Martin Ex. G, Wilhelmi Depo. 173:11-14; 174:5-11; Colouris Decl. ¶25.)

Over the next three months, Ms. Wilhelmi and Menter & Witkin corresponded regarding the Clapp Firm qualifications and "potential conflicts" related to other litigation, including *Maxion, et al. v. KB South Bay, Inc.*, Contra Costa County Superior Court, case No. C11-00893 and *Aldrich v. Kaufman & Broad Monterey Bay, Inc. et al.* Monterey County Superior Court, case No. M94490. (Martin Ex. G, Wilhelmi Depo. 212:20-213:6; 254:8-255:6.) Ms. Wilhelmi did not recall any discussions with Travelers regarding her exchange with Menter & Witkin. (Martin Ex. G, Wilhelmi Depo. 263:12-20; 264:25-265:25.) More importantly, as a non-attorney entity, Travelers was not privy to the Clapp Firm's conflicts check procedures or provided anything other than the requested confirmation that no conflict existed.

**E. Appointment of the Collinsworth Firm**

It was not until February 21, 2014, that Ms. Wilhelmi informed Travelers that the Clapp Firm was unable to represent KB due to the fact that D.H. Smith Company, a former client of the Clapp Firm, was named as a cross-defendant in the Davis Action. (Colouris Decl. ¶26, Ex. M) Ms. Wilhelmi did not raise the *Maxion* or *Aldrich* cases, or her communications with Menter & Witkin. Ms. Colouris acknowledged Ms. Wilhelmi's letter and stated Travelers would retain new counsel for KB. (Colouris Decl. ¶26, Ex. N.)

Less than a week later, on February 25, 2014, Ms. Colouris contacted Scott Calkins, asking that he run a conflicts check to determine if Collinsworth Specht & Calkins, LLP (the "Collinsworth Firm") could represent KB in the Davis Action. (Colouris Decl. ¶27, Ex. O.) Mr. Calkins requested a copy of KB's cross-complaint, which Ms. Colouris provided. (Colouris Decl. ¶28, Ex. O.) Mr. Calkins then confirmed his firm

had no conflicts, so Travelers retained the Collinsworth Firm to represent KB in the Davis Action. (Colouris Decl. ¶28, Ex. O.) On March 26, 2014, Ms. Colouris informed KB that its defense was transferred to the Collinsworth Firm, effective February 26, 2014. (Colouris Ex. P.)

On March 25, 2014, Mark Collinsworth notified KB the Collinsworth Firm had been retained to represent KB in the Davis Action. (Martin Ex. J.) On May 20, 2014, Menter & Witkin and Newmeyer & Dillion, met with the Collinsworth Firm to discuss KB's alleged concerns regarding coverage litigation between Travelers and KB. (Martin Ex. I, Collinsworth Depo. 110-113.) By this date, the Collinsworth Firm had already provided KB with a firm resume. (Martin Ex. K, Calkins Depo. 34:16-35:18, 37:4-13.) During this meeting, KB requested the Collinsworth Firm withdraw its proposed association based solely on unrelated litigation to which the Collinsworth Firm is not party. (Martin Ex. I, Collinsworth Depo. 139:23 - 140:13.) Neither KB nor the Glaspy Firm made any further request for additional information from the Collinsworth Firm or identified any work by the Collinsworth Firm for other developers or subcontractors that would result in a conflict of interest in the Davis Action. (Martin Ex. K, Calkins Depo. 35:10-12.)

### F. Travelers Provides A Complete Defense to KB and Settles the Claims

Throughout the Davis Action, both Travelers and State Farm paid defense fees and costs incurred to defend KB based on the Glaspy Firm allocations. Under the Policies, Travelers paid $32,764.03 in defense fees and costs incurred between July 6, 2012 and May 8, 2013. (Colouris Ex. I.) After receiving notice of the Clapp Firm's stated conflict, Travelers issued additional payments to the Glaspy Firm for fees incurred between May 8, 2013 and February 26, 2014. (Colouris Ex. I.)

Since accepting KB's defense, State Farm has continued to pay all defense fees and costs allocated to it by the Glaspy Firm. (Martin Ex. F, McAlister Depo. 15:8-11.) On October 16, 2014, the homeowners released all claims against Norcraft and KB potentially arising from Norcraft's work. Based on this release, on October 20, 2014, Travelers withdrew its defense in the Davis Action. (Colouris Decl. ¶31, Ex. R and S.)

## III. <u>KB IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE KB FAILED TO ESTABLISH ALL ELEMENTS ENTITLING IT TO A JUDGMENT IN ITS FAVOR</u>

The party seeking summary judgment has both the initial burden of production and the burden of persuading the court that there is "no genuine issue of material fact and the moving party is ***entitled to judgment as a matter of law***." Fed. R. Civ. Proc. 56(c) (emphasis added). This "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v.*

*United States*, 799 F.2d 254, 259 (6th Cir. 1986).

The party seeking summary judgment bears a "heavy burden" because an order granting summary judgment is a "drastic device" cutting off a party's right to a jury trial. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999). The court must therefore view the evidence in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Ibid*. Moreover, where words or conduct may be interpreted in several ways, one supporting the motion and one controverting it, the motion should be denied. *Masson v. New Yorker Magazine. Inc.*, 111 S.Ct. 2419, 2435 (1991).

## IV. PRIOR RULING ESTABLISH TRAVELERS DID NOT BREACH THE POLICY

KB has the burden of establishing that, as a matter of law, Travelers' conduct breached the relevant Policies. However, there is already a presumption the alleged delay in responding to KB's tender and Travelers' appointment of the Clapp Firm are not breaches of the Policies, nor can they constitute bad faith. Pursuant to Cal. Code Civ. Proc. §1909:

> Other judicial orders of a Court or Judge of this State, or of the United States, create a disputable presumption, according to the matter directly determined, between the same parties and their representatives and successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity.

Thus, where there is a prior order issued by a court between KB and Travelers related to the rights and obligations of those parties, a presumption this prior determination is correct exists. In *Fidelity and Guaranty Insurance Company and Travelers Property Casualty Company of America, v. KB Coastal, Inc., et al.,* Cent. Dist. Case No. 5:13-cv-00946-JAK-DTB, Dkt. No. 55 (RFJN Ex. C.), the court held that a three month delay was neither unreasonable nor a breach of the Policies where Travelers acknowledged KB's tender of defense; requested additional information necessary to complete its investigation from KB; waited until it received such information; and KB was not damaged by the delay. *Id*. at 12. Further, the court found that Travelers' best practices guidelines were not controlling and, "where certain documents were not provided during the investigation, it is reasonable that it took more than a month to investigate the claim." *Ibid.*

As set forth above, in this action – just as in the prior action between the parties – Travelers acknowledged KB's tender, requested additional documents necessary to complete its coverage

investigation, including the subcontract, and then necessarily waited until after these documents were received to complete its coverage investigation. (Colouris Dec. ¶9.) Further, State Farm had accepted KB's defense and both State Farm and Travelers paid all defense fees and costs demanded by KB and the Glaspy Firm. Thus, this issue was "directly determined, between the same parties … litigating for the same thing under the same title and in the same capacity" and there is a rebuttable presumption that the alleged "delay" in agreeing to defend KB, after KB failed to provide the requested documents necessary to establish its right to coverage, is neither unreasonable nor a breach of the Policies.

The effect of this presumption is "to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." Cal. Evid. Code § 604; Fed. Rules of Evid., Rule 302. As set forth more fully below, KB has failed to set forth any evidence that could possibly rebut this presumption, and Travelers' conduct should be presumed to be both reasonable and not a breach of the Policies.

## V. <u>TRAVELERS FULFILLED ITS OBLIGATIONS UNDER THE POLICIES</u>

### A. <u>Travelers Did Not Delay In Providing a Defense</u>

#### 1. No Duty to Defend Was Triggered Before Pamela Colouris Could Determine Whether Coverage Existed

First and foremost, an entity must be an insured under the policy before the insurer owes a duty to defend. See *Alex Robertson Co v. Imperial Cas. & Indem. Co.,* 8 Cal. App. 4th 338, 343-44 (2001) (entity claiming coverage as an insured under Contractual Liability Coverage Endorsement was required to meet the requirements of that endorsement before triggering the insurer's duty to defend); *Bowie v. Home Ins. Co.*, 923 F.2d 705, 709 (9th Cir. 1991) (A "duty to defend" presumes the claims being tendered are against an insured under the policy; therefore, where the tendering party is not a named insured and fails to meet endorsement requirements, the duty is not triggered.) Thus, in order to establish the *potential* for coverage, an entity must establish that it is in fact an insured under the policy, including meeting limiting requirements dictated by the policy. *Id.* at 708-09.

KB has asserted that Travelers' duty to defend under the Policies was triggered the date it received KB's tender even though KB did not produce the subcontract, the prerequisite to coverage. However, where a person or entity claims it is covered as an additional insured, that putative insured must present evidence

that it meets the requirements of an additional insured endorsement in order to establish a potential for coverage under a policy. *Certain Underwriters at Lloyd's of London v. American Safety Ins. Services, Inc.*, 702 F.Supp.2d 1169, 1173-74 (C.D. Cal. 2010) (Plaintiff who failed to produce writing that required him to be named as an additional insured pursuant to the terms of the Blanket Endorsement, as a matter of law does not qualify as an additional insured). In fact, although "Courts frequently refer to the duty to defend as immediate . . . courts also recognize that an insurer has the right to conduct a reasonable investigation before assuming a duty to defend. Thus, where an insured tenders an underlying action but fails to provide the insurer with necessary information relevant to a coverage determination, then the insurer need not defend the action upon tender." *Travelers Property Cas. Co of America v. Centex Homes*, United States District Court, Case No. 11-3638-SC (N.D. Cal. April 8, 2013) [Dkt. No. 70] (RFJN Ex. E, pp. 5-6.) Thus Travelers had no obligation to defend KB until KB provided Travelers with the necessary information required by the policy.

KB tendered its defense and indemnity in the Davis Action to Travelers on July 6, 2012, during the 2011-2012 Policy period. In support of its tender KB provided (1) a copy of the Davis complaint that alleged property damage did not manifest until after the date of purchase for the homes; (2) a homeowner matrix indicating that the last date for the close of escrow on the homes was August 31, 2005; and (3) endorsements for policies that had expired as of November 2004. KB's tender did not include a subcontract.

The 2011-2012 Policy contains additional insured endorsement forms CG D1 44 01 96 and CG D2 46 08 05 that provide additional insured coverage to any organization that Norcraft agrees in a written contract or agreement to include as an additional insured. Ms. Colouris reviewed KB's documents, and on July 20, 2012, issued a letter indicating that, in order to complete her investigation as to whether KB was entitled to coverage under the Policies, she required a copy of the subcontract between KB and Norcraft. KB did not provide said subcontract for three months. Simply stated, KB failed to provide documents establishing that it was an "insured" entitled to any potential coverage under the relevant policy.

KB claims that Travelers did not require the subcontracts in order to make a coverage determination because the 2003-2004 Policy contained an additional insured endorsement specifically naming "KB Home South Bay, Inc." However, KB ignores the fact that the 2003-2004 Policy only provides coverage for property damage "that occurs during the policy period." (Colouris Ex. B.) California courts have made it clear that "For the purpose of determining whether there was coverage within the policy period it is well

established that the time of the relevant occurrence or accident is not when the wrongful act was committed but when the complaining party was actually damaged." *Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal.App.4th 1236, 1241(1992) (citing *Schrillo Co. v. Hartford Accident & Indemnity Co.*, 181 Cal. App. 3d 766, 773(1986)). The Davis complaint alleges that property damage manifested *after the time of the home purchase.* (RFJN Ex. A) According to documents *provided by KB*, the last home closed escrow August 31, 2005 – almost a year after the expiration of the 2003-2004 policy period. Given the allegations that the property damage occurred after 2005, there was no basis for Ms. Colouris to apply a policy that expired prior to any alleged damage. KB tendered a claim alleging property damage that occurred after 2005, thus, Travelers looked to the policy that was in effect at the time of tender to determine whether coverage had been triggered. Further, none of the Policies in effect after August 31, 2005 contained an endorsement specifically naming KB. Each required a written agreement or contract.

KB's assertion that because the Norcraft subcontracts had been provided to Travelers in relation to the *Aldrich* Action, Travelers should have immediately accepted KB's tender is absurd as a practical matter. Essentially, KB is arguing that each individual claim handler is obligated to research every claim Travelers has ever been tendered and instantaneously know what documents have previously been produced to Travelers. This is not possible. Debbie Taylor, a former named insured adjuster that handled Norcraft's tender of the Davis Action, estimates that she alone handled between 100-200 different claims under the Norcraft Policies. (Martin Ex. M, D. Taylor Depo. 19:1-23). Rochelle Ware, the Unit Manager and supervisor for Pamela Colouris, testified that unless the same adjuster handled a claim involving the same project, it is nearly impossible for that adjuster to know what documents were previously received. When asked if an adjuster had the ability to locate a subcontract provided to Travelers in a previous claim, Ms. Ware specifically testified that:

> A: They would have to manually go into hundreds of files to pull and look through these files to find any such contract if it existed. It's – it's – it's an overwhelming process. I mean it's – it's not – it's almost impossible. I mean it's – it's not that easy.
>
> Q: Okay. So it may not be easy, I understand what you're saying, it's possible? I mean you can find a contract that might satisfy your needs here by reviewing other claim files, would you agree with that? Not that it's easy or – or the best option.
>
> A: No, no. I wouldn't agree with that.
>
> . . . .
>
> Q: I'm not asking for that. What I'm asking for, can they sit there as one who's looking for the contract, go into a computer database and determine whether or not another claim has

> had that contract from that project in the past is that possible? That's what I'm trying to get at. Not whether it's the best option, whether it's possible.
>
> . . . .
>
> The Witness: No, not the database, the file notes. No, it's not. Believe me, I've done projects where I've – like that where I've – yeah, it's not possible for the adjuster to know unless they know that they're dealing with the same project and, yeah, there's no way to pull that information out of the database. (Martin Ex. L, R. Ware Depo 82:5-84:20)

An adjuster simply does not have instant access to a subcontract contained in a prior claim file. More importantly, unless the same adjuster handled the previous claim, it would be nearly impossible for the second adjuster to know what was in the earlier claim. In this case, KB is well aware the Pamela Colouris did not handle the *Aldrich* Action as it has indicated another adjuster, Patricia Dlugokenski, handled that file.

The burden is on KB, as the tendering party, to provide evidence that it meets the requirements of the additional insured endorsement, not Travelers. *Certain Underwriters at Lloyd's of London v. American Safety Ins. Services, Inc.*, 702 F.Supp.2d 1169, 1173-74 (C.D. Cal. 2010) (putative insured must present evidence that it meets the requirements of an additional insured endorsement). Further, KB's tendering counsel was clearly in possession of the requested subcontracts and chose not to provide them to Ms. Colouris until she made a second request. In fact, Mary Glaspy's declaration establishes that the Glaspy Firm represented KB in the *Aldrich* Action. (Glaspy Decl ¶15.) The fact that the Glaspy Firm and KB were able to provide the requested information immediately to Ms. Colouris, but simply chose not to, is even more evident based on the facts that the Glaspy Firm chose to provide it to Debbie Taylor, the named insured adjuster for Norcraft in July 2012, and were able to provide Ms. Colouris the same subcontracts within 30 minutes of her second request on October 29, 2012. (Colouris Ex F.) KB was in a position to provide the necessary contracts to meet its burden to establish the potential for coverage, but chose not to. KB's refusal to meet the requirements of the additional insured endorsement does not create a new obligation for Travelers or establish that Travelers failed to provide an immediate defense. For these reasons, KB's argument that KB had established its right to coverage as of the date of tender must fail.

**2. A Four Month Investigation Is Not a Breach as A Matter of Law**

Even if the Court were convinced Travelers had sufficient information on July 6, 2012 to make a coverage determination, a mere four month delay is not a breach of the Policies as a matter of law. See *Houck Construction, Inc. v. Zurich Specialties London Ltd.*, 2007 WL 1739711, *4 (C.D. Cal. 2007) (An insured that cannot provide evidence any delay resulted in injury is unable to maintain a claim for breach of

contract or bad faith based on an insurer's alleged failure to timely or adequately defend, even in the face of an insurer's over-12-month delay in providing a defense); *Horace Mann Ins. Co. v. Barbara B.*, 61 Cal.App.4th 158, 164 (1998) (an insured cannot maintain a breach of contract claim against a non-paying insurer if the insured is protected by the defense of another insurer.); see also, *Travelers Property Casualty Co v Centex Homes*, ("Centex II") (RFJN Ex. E at p. 16) (holding that Travelers fulfilled its duty to provide an "immediate defense" by accepting the defense within 5 months and appointing counsel within a year). In fact, courts have even found where the adjuster has taken five months to finalize an investigation in which the adjuster, not the tendering party, controls the information necessary to complete the investigation, a five month delay is not a breach. *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal. App. 4th 1450 (1994).

Moreover, during the alleged four month delay, State Farm agreed to defend KB and was billed the full amount of the Glaspy Firm's fees and costs. (Martin Ex. C - D.) KB has not provided any evidence State Farm refused to continue to defend it in the Davis Action. Further, once Travelers issued its reservation of rights letter, it issued payment for defense fees and costs incurred from the date of tender through its acceptance. (Colouris Ex. I.) These undisputed facts make it clear KB did not suffer any damages due to Travelers' alleged delay. Therefore, even assuming Travelers could have investigated the claim in less than the mere four months it actually took – a proposition which no evidence actually supports – as a matter of law, Travelers cannot be deemed to have breached the insurance policies because of the alleged delay.

**B. Travelers' Reservation of Rights Letter Was Proper**

Next, KB attempts to convince the Court that by reserving its right to supplement its initial reservation of rights letter or subsequently withdraw the defense if it is determined there is no longer coverage, Travelers breached the Policies. This position directly contradicts insurance coverage law. As a general rule:

> "An insurer may agree to defend a suit subject to a reservation of rights. (*Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 994, 59 Cal. Rptr 2d 529.) In this manner, an 'insurer meets its obligation to furnish a defense without waiving its right to assert coverage defenses against the insured at a later time.' (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶7:723, p. 7B-61) . . . An insurer can reserve its right to assert noncoverage unilaterally merely by giving notice to the insured. (Cf. *American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1356, 24 Cal. Rptr 2d 106, disapproved on other grounds in *Buss, supra*, 16 Cal.4th at p. 50, fn. 12, 65 Cal. Rptr. 2d 366, 939 P. 2d 766.) By accepting the insurer's defense under these circumstances, the insured is deemed to have accepted this condition." *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 497-498 (2001).

It is black letter law that an insurer may withdraw its defense upon the determination that there is no coverage under an insurance policy and that, by tendering its defense in the first place, the insured accepts these conditions. Further, Travelers' reservation of its right to contribution is a restatement of the law. This cannot be deemed a failure to provide a complete defense, nor can it be a breach of the Policies. As the Court detailed in *Blue Ridge*:

> "[A]s we stated in *Buss* the right to reimbursement is implied in law and need not be expressly stated in the policy. (*Buss, supra*, 16 Cal.4th at p. 51, fn 13, 65 Cal. Rptr. 2d 366, 939 P. 2d 766.) Moreover, as discussed above, such a reimbursement right is implicit in the policy terms which provide indemnification only for covered claims." *Blue Ridge, supra*, 25 Cal.4th at 509.

Therefore, KB's assertion that Travelers attempted to limit the defense it provided by reserving its rights to (1) amend the initial reservation of rights letter; (2) withdraw its defense once there is no longer potential for coverage under the policies; and (3) seek contribution for noncovered claims flies in the face of insurance law and cannot be deemed a breach of contract as a matter of law.

**C. <u>The Settlement of Claims Against Norcraft Was Proper</u>**

Next, KB claims the settlement of all liability potentially arising from the work of Norcraft was an incomplete defense of KB. Again, KB is either ignoring or misunderstanding the law. Travelers not only has the right to settle claims under the Policies, but in all instances, ***Travelers has the absolute right to control the settlement of the claims***. *New Plumbing Contractors, Inc. v. Edwards, Sooy & Byron*, 99 Cal. App. 4th 799, 802, (2002) (Under a policy provision giving an insurance company discretion to settle, the insurer is "entitled to control settlement negotiations without interference from the insured."). Indeed, an insurer may even settle a claim without informing the insured of the settlement, or over an insured's objection. *New Plumbing*, *supra*, 99 Cal. App. 4th at 802 ("Since Nationwide could settle without consulting New Plumbing and over its objection, counsel's recommendation of settlement was not a cause of any harm the contractor may have suffered."); *New Hampshire Ins. Co. v. Ridout Roofing Co.*, 68 Cal.App.4th 495, 505 (1998) ("The exercise of such an express grant cannot, in our view, be limited by the implied covenant of good faith and fair dealing"). The insurer may settle the claims even where there is some effect on the insured. See *Hurvitz v. St. Paul Fire & Marine Ins. Co.*, 109 Cal.App.4th 918 (2003) (finding insurer had unfettered right to settle claim even where settlement of frivolous claim prevented future malicious prosecution claim by insured). Thus, a settlement is not a breach of the Policies.

Moreover, "The defense duty arises upon tender of potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). In the seminal decision of *Buss v. Superior Court*, 16 Cal. 4th 35 (1997), the California Supreme Court held that although the duty to defend is generally discharged when the underlying action is concluded, the duty to defend may be extinguished earlier if it is shown that there is no coverage under the policy. *Id.* at 46. Applying this reasoning, courts have held that "even though the insurer agreed to defend the entire claim against the insured, its duty extended only to those claims arguably covered by the policy. Once the insurer settled and paid those claims, it had completely performed its contractual duty." *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W. 2d 411, 417 (Minn. 1997); see also *Travelers v. Centex* (E.D. Cal. July 30, 2014) Case No. 14-CV-217-LJO-GSA ("*Travelers I July 30* Order") (RFJN Ex. G) ("an insurer provides an entire defense where it defends an insured until its duty to defend ceases.") Once there is no longer any potential for coverage, the insurer's duty to defend has terminated. See *Fidelity and Guaranty Ins. Co. v. KB Home Coastal, Inc., supra*, RFJN Ex. F, fn. 2 (Settlement agreement resolved claims against KB, thus there was no further potential for liability requiring a defense.). The Policies only provide coverage for KB to the extent that its liability "arises out of the work" of Norcraft. KB's liability for claims potentially arising out of Norcraft's work was settled and released on October 16, 2014. (Colouris Decl.¶31, Ex. S.) Thus, Travelers' settlement fulfilled its contractual duty to defend KB against all claims arising out of the work of Norcraft. See *Fidelity and Guaranty Ins. Co. v. KB Home Coastal, Inc., supra,* RFJN Ex. D, fn. 2 (Settlement agreement resolved claims against KB, thus there was no further potential for liability requiring a defense.) This cannot be a breach of the Policies.

KB argues that the settlement in *Novak v. Low, Ball & Lynch*, 77 Cal.App.4th 278 (1999) is analogous to Travelers' actions in the present case. However, there are clear distinctions. The *Novak* case was a legal malpractice action addressing what duty, if any, an insurer's monitoring counsel owes an insured. *Id at* 280. In that case, the insured was represented by independent counsel and the insurance carrier also retained counsel to monitor independent counsel's defense of the insured. *Id. at* 281. Without advising the insured or independent counsel, of his actions, monitoring counsel negotiated a settlement directly with the plaintiffs. The court found that because the insurance company "agreed to employment of independent

counsel pursuant to section 2860" monitoring counsel and independent counsel were both required to participate in all aspects of the litigation – including disclosure of the settlement negotiations – pursuant to §2860 (f). *Id.* at 284-285. Thus monitoring counsel breached its duty to the insured.

This is not analogous to Travelers' settlement of Norcraft claims in the Davis Action. First, unlike *Novak*, KB is not being represented by independent counsel. In fact, Travelers filed this very action seeking a declaration that KB is not entitled to independent counsel.[1] Second, Travelers has not retained any counsel to "monitor" the Glaspy Firm. Third, and most importantly, counsel that negotiated the settlement of the Norcraft claims was The Aguilera Law Group, APLC – a law firm that has no attorney-client relationship with KB and owes no duty to KB. *Novak* turned on the fact that counsel retained to monitor the insured's defense conducted a negotiation without any disclosure or participation of its client. Travelers retained the Clapp Firm and the Collinsworth Firm to defend KB. Both would owe an ethical duty to KB and neither attempted any settlement negotiations on behalf of Travelers, KB, or Norcraft. The Aguilera Law Group, APLC was retained to pursue Travelers' declaratory relief action as Travelers' coverage counsel. It owes no ethical duty to KB. As explained above, Travelers has the absolute right to settle claims against its insured, even over an insured's objection. *New Plumbing Contractors, Inc., supra,* 99 Cal.App.4th at 802. Moreover, even if independent counsel were involved here (which it is not), "that control does not extend to preventing the insurer from exercising its contractual right to settle claims." *Novak, supra,* at 285.

### D. Travelers Properly Appointed Counsel

KB claims that Travelers failed to provide a "conflict-free defense" based solely on conflicts of the Clapp Firm of which Travelers was unaware; yet KB ignores the fact that when Travelers was advised of the conflict, it immediately attempted to replace the allegedly conflicted counsel. It was again KB's refusal that prevented its own "conflict free defense." KB cannot create a breach by failing to cooperate with Travelers.[2]

#### 1. Travelers Cannot Have Breached the Contract Because It Was Unaware of Any Clapp Moroney Conflict

KB has taken the position that because the Clapp Firm had an alleged conflict of interest, Travelers

---

[1] This issue is briefed in further detail in section VI of Travelers' Motion for Partial Summary Judgment filed November 3, 2014 [Dkt. No. 52, pp.16-21].

[2] Travelers contends that KB's failure to cooperate with the Collinsworth Firm was a breach of the cooperation clause of the Policies. As such, Travelers is relieved of any further duty to defend KB under the Policies. This issue is more fully briefed in section VII of Travelers' Motion for Partial Summary Judgment filed on November 3, 2014 [Dkt. No. 52, pp. 21-23].

must be in breach of the Policies. This is not the case. It is well-settled law in California that an attorney's violation of its ethical requirements may not be imputed to non-attorneys. Cal. Rules Prof. Con., Rule 1-100 ("The following rules are intended to regulate professional conduct of members of the State Bar"); *Alkow v. State Bar of Cal*., 38 Cal.2d 257, 263 (1952) ("One who is licensed to practice as an attorney in this state must conform to the professional standards in whatever capacity he may be acting in a particular matter").

"Moreover, a violation of the rules of Professional Conduct do not give rise to a cause of action for damages. These rules are not intended to create new civil causes of action." Cal. Rules Prof. Con., Rule 1-100. "There is no independent cause of action for the breach of a disciplinary rule. While the rules may provide standards of conduct for attorneys, they do not alone support a claim for damages." *Ross v. Creel Printing & Publ'g Co*., 100 Cal.App.4th 736, 746 (2002); *Mirabito v. Liccardo*, 4 Cal.App.4th 41, 45–46 (1992). As such, Travelers cannot be punished for any ethical violation by the Clapp Firm and therefore cannot have lost its right to control the defense.

Travelers did not breach the Policies because it was wholly unaware of the Clapp Firm's conflict. To the contrary, Travelers did all that it could with the expectation it was providing a conflict-free defense. It is the obligation of counsel to "conduct an adequate conflicts check upon accepting a new client. The client is under no such obligation." *State Farm Mut. Auto Ins. Co. v. Federal Ins. Co.*, 872 Cal. App. 4th 1422, 1435 (1999). Further, where an insurer has retained counsel to defend its insured, it "is entitled to expect counsel to fulfill the duty it has undertaken to the insurer." *Id.* at 1329. Travelers took every precaution to provide KB with proper counsel. Prior to retaining the Clapp Firm, Travelers specifically requested that Ms. Wilhelmi run a conflicts check. (Colouris Ex J.) As Ms. Wilhelmi testified at her deposition, the Clapp Firm ran a conflicts check. (Martin Ex. G, Wilhelmi Depo. 48:3-5; 48:24 -49:7.) Based on this conflicts check, Ms. Wilhelmi informed Ms. Colouris that the Clapp Firm had no conflicts of interest. (Martin Ex. G, Wilhelmi Depo. 109:10-110:10; Colouris Ex. J.) Neither Ms. Wilhelmi, nor anyone within the Clapp Firm informed Travelers that a conflict existed at the time of retention or anytime thereafter prior to February 21, 2014. (Colouris Decl. ¶26.) As such, Travelers could not have breached the contract because it was not aware of any alleged conflict, rather Travelers had every expectation that the Clapp Firm would fulfill its obligations. *State Farm Mut. Auto Ins. Co. v. Federal Ins. Co., supra*, 872 Cal App.4th at 1429.

**2. Travelers Immediately Remedied the Conflict Upon Notice**

Further, upon notification of the Clapp Firm conflict, Travelers took immediate steps to replace the Clapp Firm. On February 25, 2014, a mere four days after receiving notice of the Clapp Firm's conflict declaration, Travelers requested a conflicts check from the Collinsworth Firm. (Colouris Ex. J.) The Collinsworth Firm ran a conflicts check and Scott Calkins confirmed the firm had no conflicts of interest. Travelers then retained the Collinsworth Firm to provide a full and complete defense of KB; and issued further payment to the Glaspy Firm for additional fees incurred from the date the Clapp firm was retained through the date of the Collinsworth Firm retention. (Colouris Ex. I.)

Thus, KB was offered a full, complete, and conflict-free defense from Travelers under the Policies. See *Dynamic Concepts*, *supra*, at 1010 ("Truck did not breach any legal obligation to defend Dynamic when it offered to fully defend at its own expense through appointed counsel"). KB, however, refused to authorize the Collinsworth Firm to defend it the Davis Action. (Colouris Ex. Q.) Thus, Travelers did not solely offer KB "conflicted counsel." Rather, Travelers did in fact offer KB a conflict-free defense that KB refused. Therefore, Travelers could not have breached the Policies.

## VI. TRAVELERS DID NOT WAIVE ANY OF ITS RIGHTS UNDER THE POLICIES

KB further alleges that Travelers has forfeited its rights under the Policies through its alleged 'delay,' however no case or statutory authority supports this claim. As an initial matter, California law abhors forfeiture and does not permit such a finding absent a factual finding that an insurer acted wrongfully and in bad faith. In *Chase v. Blue Cross of California*, 42 Cal.App.4th 1142 (1996), the California court of appeal defined "forfeiture" as follows: "A deprivation or destruction of a right in consequence of the non-performance of some obligation or condition. (Black's Law Dict. (6th ed. 1990) p. 650.)" *Chase v. Blue Cross of California*, 42 Cal.App.4th at 1149. "Forfeitures, however, are not favored; hence, a contract and conditions in a contract, will, if possible be construed to avoid forfeiture. (Citations.) This is particularly true of insurance contracts." *W.D. O'Morrow v. Borad*, 27 Cal.2d 794, 800 (1946). Only in cases where "there is a wrongful refusal to defend" does "the insurer lose its right to control the litigation." *Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co.*, 33 Cal.App.3d 26, 45 (1973). As the court explained in *Chase*, an insurer may lose a contractual right based on the doctrine of forfeiture ***only when it breaches the duty of good faith and fair dealing by "engaging in bad faith conduct designed to mislead the insured."*** *Chase*, *supra*, at 1149 (emphasis added). Absent such a showing of bad faith, an insured is not entitled to use

the doctrine of forfeiture to eliminate an insurer's rights under an insurance contract. *Ibid.* Thus, a forfeiture of Travelers' right to control the defense can only occur when Travelers has acted in bad faith.

"In order to establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must show that benefits were denied and that the reason for the denial was unreasonable or without proper cause." *Perez-Encinas v. AmeriUs Life Ins. Co.*, 468 F.Supp.2d 1127, 1139 (N.D. Cal. 2006); See also *Love v. Fire Ins. Exch.*, 221 Cal.App.3rd 1136, 1151 (1990). KB's motion fails to establish that Travelers' conduct was either a denial of policy benefits, or "unreasonable."

First, KB has failed to establish it was denied any benefits under the Policies. The Policies provide that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage';" and that Travelers "will have the right and duty to defend any 'suit' seeking those damages." (Colouris Ex. A-B.) Thus, the benefits of the Policies "entail[] the rendering of a service, viz., mounting and funding a defense." *Buss v. Superior Court, supra,* 16 Cal.4th at 46. As explained above in sections V. A - C, Travelers provided KB with an immediate, complete and conflict-free defense of the Davis Action. Travelers accepted KB's defense of the claims in the Davis Action. Travelers initially defended KB through the Glaspy Firm by paying all amounts demanded from the date of tender until Travelers retained new counsel. Travelers then exercised its right to appoint counsel and sought to defend KB through the Clapp Firm and then through the Collinsworth Firm. Finally, Travelers paid amounts to settle claims arising out of Norcraft's work – the sole basis for KB's coverage as an additional insured under the Policies.

Second, KB has failed to provide any facts establishing that Travelers' conduct was unreasonable, i.e. in bad faith, which is required before Travelers can forfeit its rights under the policy – including the right to control KB's defense. *Chase, supra*, at 1149. First, KB contends Travelers failed to provide an immediate defense; however, it is clear from the above that Travelers accepted KB's defense within just days of obtaining the necessary information required by the subject insurance contact and did not delay unreasonably, or otherwise. Moreover, even if KB could establish a delay by Travelers, "mere delay" does not support a claim for bad faith as a matter of law. See *San Jose Production Credit Association v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703-704 (9th Cir. 1984) ("Thus, Old Republic's refusal to defend, without more, amounted only to a breach of contract, not a breach of the implied covenant"); *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 659 (1958) ("Where there is no opportunity to compromise the

claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs.").

Further, to the extent KB claims Travelers waived its rights under the Policies by committing bad faith in appointing 'conflicted' counsel, it is clear that Travelers was not aware of the conflict and immediately appointed new counsel upon learning of the conflict. A previous ruling between the parties has already held such an appointment is not bad faith as a matter of law. In *Fidelity and Guaranty Insurance Company and Travelers Property Casualty Company of America v. KB Home Coastal, Inc., et al.*, Central District, Case No. 5:13-cv-00946-JAK-DTB, Dkt. No. 55 (RFJN Ex. B.) the court addressed whether Travelers had breached insurance policies and covenant of good faith and fair dealing by appointing the Clapp Firm. The court held Travelers' appointment of the Clapp Firm, a firm with a separate conflict with KB of which Travelers was not aware, is not a breach of the covenant of good faith and fair dealing. (RFJN Ex. B, p 10-11.) The court reiterated this ruling two additional times in denying KB's motion for reconsideration reiterating its conclusion in a 17 page order (RFJN Ex. C [Dkt 95]) and in its 3 page order clarifying issues at trial, expressly stating: "the prior order . . . concluded that KB Home failed to show a genuine issue of material fact as to its claim for breach of the covenant of good faith and fair dealing. Thus there was no evidence of bad faith by Travelers through the designation of the Clapp Moroney firm as counsel for KB Home." (RFJN, Ex. D, p2 [Dkt 102]).

Travelers' appointment of the Clapp Firm in the Davis Action was not in bad faith. Further, Travelers' subsequent conduct evidences a diligent commitment to acting in good faith. Upon receipt of notice the Clapp Firm had a conflict, Travelers immediately appointed the conflict-free Collinsworth Firm. The Collinsworth Firm provided documentation and participated in in-person meetings with KB to address its concerns. KB has never indicated that beyond Collinsworth Firm's attempts to associate into cases on behalf of KB, there is any basis for an alleged conflict of interest that would prevent the Collinsworth Firm from representing KB. Further, Travelers has paid defense fees and costs demanded by KB in order to provide that defense from the date of tender through the appointment of the Collinsworth Firm. Thus, Travelers has not failed, delayed, or attempted to avoid providing KB a defense in the Davis Action.

Most importantly, at no point has KB been left without a defense or suffered anything more than

manufactured damages as a result of Travelers' delay or selection of counsel. An insured is entitled to only one full defense. See *San Gabriel Valley Water Co. v. Hartford Acc. & Indem. Co.*, 82 Cal.App.4th 1230, 1241 (2000). Thus, an insured fully defended by one insurer does not have damages to assert against a non-defending insurer; rather, it is the defending insurer who maintains the right to sue the non-defending insurers for sharing and/or contribution. *Ibid.* Where one of several potential insurers provides a defense, another insurer's alleged failure to defend does not damage the insured – the failure to defend does not "enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuit." *Ringler Associates, Inc., v. Maryland*, 80 Cal.App.4th 1165, 1188 (2000). As such, a failure to defend pursuant to one policy is of no consequence to the insured where a defense is being provided under another policy. *Ceresino v. Fires Insurance Exchange*, 215 Cal.App.3d 814, 823 (1989).

State Farm and Travelers are providing KB with a defense. (Colouris Ex. G; Martin Ex. L.) State Farm, which accepted KB's defense on September 4, 2012, is currently paying 1/3 of the defense fees and costs invoiced because that is the amount allocated to State Farm by KB. (Martin Ex. F, McAlister Depo. 15:22-16:1.) Prior to Travelers' acceptance of KB's tender, State Farm was allocated 100% of defense fees and costs. (Martin Ex. D.) The only reasons the amount was reduced was based on (1) KB informing State Farm that another insurance carrier is participating in the defense; and (2) KB only demanding it pay a limited share. (Martin Ex. F, McAlister Depo. 15:22-16:1; 26:11-15.) State Farm has testified it has and will pay the amounts demanded by KB. Thus, the only shortfall in KB's defense fees is due to its own allocations – not Travelers' alleged delay, appointment of counsel, or settlement of the Norcraft claims and subsequent withdrawal. State Farm was initially allocated 100% of the defense fees and costs when it was the only insurer defending KB, and it is simply now once again in that same position. Thus, KB has not been damaged by the Norcraft settlement and is still receiving a defense.

## VII. TRAVELERS' DUTY TO DEFEND KB TERMINATED WHEN ALL CLAIMS AGAINST KB POTENTIALLY ARISING OUT OF NORCRAFT'S WORK WERE RELEASED, THUS ENTITLING TRAVELERS TO REIMBURSMENT

Finally, KB's assertion that Travelers cannot assert a claim for unjust enrichment or equitable reimbursement because the Davis Action is still pending mischaracterizes of the law. To state a claim for equitable reimbursement, a plaintiff must plead that it: (1) defended the insured against the subject action in its entirety; (2) paid money to defend claims against the insured that are not potentially covered under the

insurance policies; and (3) reserved its right to seek reimbursement. *Buss v. Superior Court*, 16 Cal.4th 35, 47-50 (1997). Travelers has done all of those things. Travelers paid money to defend KB and reserved its right to reimbursement. (Colouris Ex. I.)

Travelers defended KB in the Davis Action in its entirety because it defended through the execution of a settlement releasing all derivative liability of KB potentially arising from the work of Norcraft. The California Supreme Court has made it expressly clear that an insurer's duty to defend continues only so long as the possibility of the duty to indemnify remains alive. Once that possibility is extinguished, the duty to defend ceases. *Ringler Associates, Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1192 (2000). "[I]n an action filed against the insured in which there is no potential that the insurer will have to provide indemnification, then, as a general rule, there is no duty to defend." *Downey Venture v. LMI Insurance Co.*, 66 Cal.App.4th 478, 507 (1998); see also, *Liberty Mutual Ins. Co. v. Superior Court*, 58 Cal.App.4th 617, 623 (1997). The termination of the duty to defend can take place at the time the underlying lawsuit is concluded or at any time when it can be shown that there is no potential for coverage under the particular policy or policies. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295-296 (1993); *American International Specialty Lines Ins. Co. v. Continental Casualty Insurance Company*, 142 Cal.App.4th 1342, 1370 (2006). Thus, where an insurer has provided a defense to an insured until its duty to defend ceased, it has defended the case in its entirety and that insurer is entitled to pursue a cause of action for reimbursement.

As explained above in section V.C, because KB was only entitled to coverage for liability "potentially arising out of" Norcraft's work and the Davis homeowners have expressly released all claims potentially arising out of Norcraft's work, as well as KB's derivative liability arising therefrom, Travelers' duty to defend KB has been terminated. (Colouris Ex. R –S.) Thus, as of October 16, 2014, Travelers' duty to defend KB terminated and Travelers' claim for equitable reimbursement is now ripe. See *Fidelity and Guaranty Ins. Co. v. KB Home Coastal, Inc., supra,* RFJN Ex. D, fn. 2 (Settlement agreement resolved claims against KB, thus there was no further potential for liability requiring a defense.)

KB's argument that Travelers cannot seek equitable reimbursement until the entire Davis Action is resolved, as opposed to seeking reimbursement upon the termination of its duty to defend, misinterprets the law. As the California Supreme Court noted in *Scottsdale Insurance Company v. MV Transportation,* 36 Cal.4th 643, "an insurer uncertain of its defense obligations might initially assume the defense, then seek to

'stop the bleeding' by obtaining a prompt, though prospective, 'extinguishment' of its duty to defend." *Id.* at 461. In applying this logic, the Court indicated that the *Buss* right to reimbursement permits an insurer to seek reimbursement for defense costs after it has been determined that the insurer has no duty to defend, "and in hindsight, it never owed." *Id.* at 656-57 (A determination that no potential for coverage, and thus no duty to defend, ever existed, permits an insurer who has reserved that right, to recover from the insured's costs it expended to provide a defense, which, under its contract of insurance, it was never obligated to furnish.) It is the termination or a lack of the duty to defend that permits an insurer to seek reimbursement – not the conclusion of a lawsuit. Thus, KB's argument fails as a matter of law.

**VIII. <u>KB'S REQUEST FOR LEAVE TO SUPPLEMENT ITS PAPERS SHOULD BE DENIED</u>**

Finally, the Court should deny KB's request that it be permitted to submit expert testimony in support of its motion. All expert reports were exchanged by October 22, 2014, almost two weeks prior to the filing of KB's motion. Further, none of the designated experts will provide any additional or new facts. KB's motion relies on the undisputed dates of KB's tender, Travelers' acceptance, Travelers' possession of information, and the existence of a settlement of the Norcraft claims. Expert testimony will not affect those facts, or the case law applied to those facts. However, should the Court grant KB leave to provide supplemental evidence based on expert testimony, Travelers requests an opportunity to respond to such supplemental evidence.

**IX. <u>CONCLUSION</u>**

For the foregoing reasons, Travelers respectfully requests that this Court deny KB's motion for partial summary judgment, as well as its request for leave to supplement its moving papers.

Dated: November 17, 2014

**THE AGUILERA LAW GROUP, APLC**

*/s/ Raymond E. Brown*

______________________________

A. Eric Aguilera
Jason Y. Chao
Raymond Brown
Attorneys for Plaintiff/Counter-Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA