**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera, Esq. (SBN 192390)
Raymond E. Brown (SBN 164819)
650 Town Center Drive, Suite 100
Costa Mesa, CA 92626
T: 714-384-6600 / F: 714-384-6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
Attorneys for Plaintiff/Counter-Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE BRANCH**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>KAUFMAN & BROAD MONTEREY BAY, INC., a California corporation, K&B BAKEWELL SEASIDE VENTURE, LLC, a California limited liability company, and KB HOME SOUTH BAY, INC., a California corporation, and DOES 1 through 10 inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 5:13-cv-04745 EJD-PSG<br>Hon. Edward J. Davila<br><br>**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Magistrate Judge Paul S. Grewal<br><br>Date: December 5, 2014<br>Time: 9:00 am<br>Courtroom: 4, 5th Floor<br><br>Complaint Filed: October 11, 2013<br>Counterclaim Filed: November 20, 2013 |

Plaintiff Travelers Property Casualty Company of America ("Travelers") hereby replies to Defendants Kaufman & Broad Monterey, Bay, K&B Bakewell Seaside Venture, LLC, and KB Home South Bay, Inc.'s (collectively "KB") opposition to Travelers' motion for partial summary judgment as follows:

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 2
II. PRESUMPTIONS ARE APPLICABLE AND SHIFT THE BURDEN TO KB ..... 4
III. KB IS NOT ENTITLED TO INDEPENDENT COUNSEL ..... 5
IV. TRAVELERS HAS NOT BREACHED THE POLICIES OR FORFEITED ITS RIGHTS ..... 5
A. Travelers Provided an Immediate Defense ..... 6
B. Travelers Provided a Complete Defense ..... 6
C. KB Breached the Contract by Preventing Travelers From Providing a Defense ..... 9
1. Any Conflict of the Clapp Firm Conflict Cannot be Imputed to Travelers ..... 9
2. There is No Evidence the Collinsworth Firm Has a Conflict ..... 11

V. TRAVELERS DID NOT ACT IN BAD FAITH AS A MATTER OF LAW .......... 13
VI. EVIDENTIARY OBJECTIONS .......... 15
A. Objections to the Declaration of John O'Hara and Attached Exhibits .......... 15
B. Objections to the Declaration of Mary Glaspy .......... 15

**TABLE OF AUTHORITIES**

**Cases**

*Alkow v. State Bar of Cal*., 38 Cal. 2d 257, 263 (1952) .......... 10
*Bank of America, N.A. v. Superior Court*, 212 Cal. App. 4th 1076 (2011) .......... 12
*Buss v. Superior Court*, 16 Cal.4th 35 (1997) .......... 7
*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* 2 Cal. 4th 342 (1992) .......... 16
*Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 41-42 (2013) .......... 3, 6
*Fiege v. Cooke*, 125 Cal.App.4th 1350, 1355-56 (2004) .......... 8
*Foley v. Interactive Data Corp.*, 47 Cal. 3d 653, 683 (1988) .......... 16
*Fox v. Pollack*, 181 Cal.App.3d 954, 959 (1986) .......... 13
*Hart v. Burnett*, 15 Cal. 530 (1860) .......... 5
*Horace Mann Ins. Co. v. Barbara B.*, 61 Cal.App.4th 158, 164 (1998) .......... 7
*Houck Construction, Inc. v. Zurich Specialties London Ltd*., 2007 WL 1739711 (C.D. Cal. 2007) .......... 7
*Meadowbrook, Inc. v. Tower Ins. Co., Inc*., 559 N.W. 2d 411, 417 (Minn. 1997) .......... 8
*Minich v. Allstate Ins. Co.* 193 Cal. App.4th 477, 493 (2011) .......... 15
*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223 (1999) .......... 13
*State Farm Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1435 (1999) .......... 10
*United States Fidelity & Guaranty Co v. Superior Court* (1988) 204 Cal. App. 3d 1513 .......... 15
*Waller v. Truck Ins. Exch., Inc.* 11 Cal. 4th 1 (1995) .......... 14,15
*Zenith Ins. Co. v. Cozen O'Conner*, 148 Cal. App. 4th 998 (2007) .......... 13

**Statutes**

California Civil Code §1909 .......... 5
California Civil Code § 2860(b) .......... 3, 5
California Evidence Code § 604 .......... 4
Federal Rules of Evidence, 350, 352, 400-403 .......... 16
Federal Rules of Evidence,400-403, 1200 .......... 16
Federal Rules of Evidence,701(3) .......... 16
Federal Rules of Evidence, 602 .......... 5

**Other Authorities**

Croskey, Heeseman, Imre & Ehrlich, CAL. PRAC. GUIDE: INSURANCE LITIGTAION (The Rutter Group 2014) §12:45 .......... 15
Morris, Mary Babb, 16 Cal.Jur.3d Courts §279 .......... 5

**Rules**

Cal. Rules Prof. Con., Rule 1-100 .......... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Travelers has not waived its right to seek the relief requested in its Notice of Motion for Partial Summary Judgment, which includes seven specific issues. KB asserts that there are genuine issues of material fact as to each issue, however no "facts" raised by KB contravene the abundant California authority dictating Travelers' right to judgment on each of the issues. Indeed, KB's opposition fails to provide any

*material* facts in dispute that could possibly negate any elements of Travelers' claims as a matter of law.

First, Travelers' conduct in handling KB's tender of the Davis Action was not a breach of the Norcraft Policies. Rather, Travelers provided an immediate defense upon receipt of all the documents necessary to establish KB's status as an additional insured; and thereafter attempted to provide a complete and conflict-free defense. KB improperly refused said defense, thereby breaching the contract. Further, since Travelers did not breach the contract, it cannot have committed bad faith as a matter of law.

Second, KB cannot establish any facts entitling it to independent counsel pursuant to Cal. Civ. Code §2860. The right to independent counsel is extremely limited, as the statute limits conflicts justifying independent counsel to those situations where (1) an insurer reserves its rights on a disputed issue, the resolution of which could determine whether the insurer's policy covers the claim, and (2) the outcome of that issue can actually be controlled by counsel in the underlying action. Cal. Civ. Code § 2860(b); *Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 41-42 (2013). Neither an alleged unreasonable delay, unknowingly appointing counsel with a conflict and immediately replacing them upon learning of the potential conflict, nor settling claims against an insured fall within those limits. None of those allegations describe a situation in which counsel retained to defend KB can control the outcome of coverage in the Davis Action. Thus, even if all of KB's allegations were true, they would not entitle KB to independent counsel.

Third, Travelers is not obligated to pay additional defense fees and costs incurred to defend KB after KB refused to cooperate with Travelers' appointed counsel, Collinsworth, Specht & Calkins, LLP (the "Collinsworth Firm"). The relevant insurance policies require that KB must "cooperate with and, when requested, assist [Travelers] in… [t]aking other reasonable steps to help us investigate or settle a claim or 'suit' or defend any insured against a 'suit'" (Colouris Ex. B.) Travelers retained the Collinsworth Firm to defend KB, but KB refused to cooperate. Courts have consistently held that an insured's failure to comply with the policy's cooperation clause constitutes a breach of the insurance contract. *Hall v. Travelers Ins. Cos.*, 15 Cal.App.3d 304, 308-309 (1971). Thus, KB's failure to cooperate was a breach of the policies and relieved Travelers of any duty to defend KB under the policies. See *Valladao v. Fireman's Fund Indemnity Co.*, 13 Cal.2d. 322, 328-329 (1939) (An insurer is ordinarily released from its contract by an insured's refusal to permit the insurer to make a defense.)

Finally, Travelers' duty to defend KB ceased once all claims potentially arising out of the work of

Travelers' named insured were released. The Policies only provide KB with coverage for liability arising out of the work of Norcraft. Thus, once any potential liability arising from Norcraft's work, including any and all potential derivative liability of KB arising therefrom, was settled and released, KB's right to coverage under the Policies terminated. Travelers is therefore entitled to a judgment as a matter of law as to its request for a declaration that KB is not entitled to independent counsel as well as its cause of action for breach of contract and KB's causes of action for breach of contract and bad faith.

## II. <u>PRESUMPTIONS ARE APPLICABLE AND SHIFT THE BURDEN TO KB</u>

The prior orders on matters between KB and Travelers create the rebuttal presumptions (1) KB is not entitled to independent counsel; (2) ethical conflicts of the Clapp Firm are not imputed to Travelers; and (3) the appointment of the Clapp Firm was not bad faith. KB has failed to provide any *facts* to rebut those presumptions. As explained in the motion, Cal. Code Civ. Proc. §1909 expressly states that "[o]ther judicial orders of a Court or Judge of this State, or of the United States, create a disputable presumption…" The effect of that presumption is "to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." Cal. Evid. Code § 604. The prior orders referenced by Travelers are "highly persuasive, of what may be the law correctly applicable in another case." Morris, Mary Babb, 16 Cal.Jur.3d Courts §279 (November 2014) (citing *Hart v. Burnett*, 15 Cal. 530 (1860)). Thus, each order is relevant and should be considered by this Court.

KB claims the federal cases referenced by Travelers hold no presumptive effect. However, each of those matters involves the same entities, KB and Travelers, and each of those cases addresses whether the parties' assertions were sufficient to establish either KB's right to independent counsel or Travelers' right to control the defense. Finally, in each case, the courts describe their reasoning related to KB's prior arguments for independent counsel. For example, in *Travelers Property Casualty Company v. KB Home Coastal, Inc., et al.*, California Central District case No. CV 12-7198-DSF (JCx), the court determined that the mere existence of lawsuits between an insured and an insurer on the issue of independent counsel does not create a conflict of interest establishing the insured's right to independent counsel. *Id.* at 3 (RJN Ex. C) Given that KB now argues that pending coverage disputes between KB and Travelers establish a conflict of interest or

bad faith, the prior rulings on this question are persuasive evidence that, unless KB can provide *additional* evidence, such facts do not establish a conflict of interest entitling KB to independent counsel.

Finally, the fact KB disputes an order does not diminish its presumptive effect. *Fidelity and Guaranty Insurance Company v. KB Home Coastal, Inc., et al.,* California Central District case No. LA CV 13-00946 JAK (DTBx), specifically examined the issue of whether the appointment of the Clapp Firm was in bad faith. In that case, the Court held the appointment of the "Clapp Firm" was not a breach of the implied covenant of good faith and fair dealing, and further reasoned: "This conflict of interest, unlike the kind described in *Cumis*, may have been remedied by Travelers' appointment of different counsel." *Id.* at 10 (RJN Ex. B). The orders referenced above are persuasive, and pursuant to Cal. Civ. Code §1909 and Fed. Rules. Evid. 602, since KB has presented no evidence to contradict the reasoning in those orders, this Court should reach the same conclusions.

## III. <u>KB IS NOT ENTITLED TO INDEPENDENT COUNSEL</u>

It is undisputed that KB is not entitled to independent counsel under Cal. Civil Code § 2860, as KB has failed to allege or provide evidentiary support for even a single conflict that would justify independent counsel. Instead, KB relies upon its claim that Travelers breached the contract to somehow justify the appointment of independent counsel. That, however, is not the law. Instead, an insured is entitled to independent counsel only where (1) an insurer reserves its rights on a disputed issue the resolution of which could determine whether the insurer's policy covers the claim and (2) the outcome of that issue can actually be controlled by counsel in the underlying action. Cal. Civ. Code § 2860(b); see also *Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 41-42 (2013). The undisputed facts set forth by Travelers establish no conflicts exist, and KB has made no attempt to allege any conflicts in discovery (Martin Ex. A.) or in its opposition to Travelers' motion. As a result, Travelers is entitled to a declaration KB is not entitled to independent counsel.

## IV. <u>TRAVELERS HAS NOT BREACHED THE POLICIES OR FORFEITED ITS RIGHTS</u>

KB asserts Travelers has forfeited its rights under the policies and its right to assert a claim for breach of contract because Travelers failed to provide an immediate defense and appointed counsel that had a conflict of interest with KB. However, the evidence establishes Travelers fulfilled its obligations under the Policies by providing KB with a defense. Additionally, the doctrine of forfeiture may not be applied to an insurer ***where it has not breached the covenant of good faith and fair dealing by "engaging in bad faith***

***conduct designed to mislead the insured."*** *Chase v. Blue Cross of California*, 42 Cal.App.4th 1142, 1149 (1996) (emphasis added). Absent such an extreme showing of bad faith, there can be no forfeiture. *Ibid.* KB has not – and cannot – establish Travelers acted in bad faith, so Travelers has not forfeited any rights under the Policies.

**A. <u>Travelers Provided an Immediate Defense</u>**

First and foremost, as explained more fully in section V.A. of Travelers' Opposition to KB's Motion for Partial Summary Judgment [Dkt. No. 87, pp. 11-14], it was KB's burden to establish it was entitled to coverage under the Norcraft Policies. Travelers was not obligated to mount a near impossible search of all previously submitted claims in order to locate documents necessary to prove KB qualified as an additional insured under the relevant Policy. Thus, until KB produced the subcontracts establishing that it was entitled to coverage as an additional insured, coverage was not triggered. Accordingly, KB's coverage was not triggered until October 29, 2012, when it provided the necessary documents to Travelers.

Further, even if the Court is convinced that there was a delay in Travelers' investigation, a mere four-month delay is not a breach as a matter of law. See *Houck Construction, Inc. v. Zurich Specialties London Ltd*., 2007 WL 1739711, *4 (C.D. Cal. 2007) (Even in the face of a 12-month delay, an insured that cannot show that delay resulted in injury cannot maintain a claim for breach of contract or bad faith); *Horace Mann Ins. Co. v. Barbara B.*, 61 Cal.App.4th 158, 164 (1998) (an insured cannot maintain a breach of contract claim against a non-paying insurer if the insured is defended by another insurer.); *FGIC v. KB Home Coastal*, *supra* at 11-12 (investigation of more than three months was reasonable as a matter of law)(RJN, Ex. D).

Further, KB ignores the fact that during this "delay," KB was fully defended by State Farm. (Martin Ex. F and G) Also, once Travelers' accepted KB's defense, it issued payments for all defense fees and costs from the date of tender through acceptance. (Colouris Decl. ¶40, Ex. I.) It is clear State Farm and Travelers paid all defense fees incurred on behalf of KB during the alleged delay, thus KB suffered no harm from the alleged delay. Because delay without damages cannot be a breach of contract or a breach of the covenant of good faith and fair dealing as matter of law, such delay cannot be a basis by which Travelers has forfeited its rights under that same policy.

**B. <u>Travelers Provided a Complete Defense</u>**

Further, Travelers provided KB with a complete defense by defending it against all claims potentially arising out of Norcraft's work for the duration of those claims, as required by the Policies. (Colouris Ex. A,

ST PAUL 0000720; and Colouris Ex. B, ST PAUL0001034; ST PAUL0001037; ST PAUL 0002175; ST PAUL0002185-86) The benefits of the Policies "entail the rendering of a service, viz., mounting and funding a defense." *Buss v. Superior Court*, 16 Cal.4th 35, 46 (1997). In *Buss*, the California Supreme Court held that although the duty to defend is generally discharged when the underlying action is concluded, the duty to defend may be extinguished earlier if it is shown that there is no coverage under the policy. *Id.* at 46. Applying this reasoning, courts have held that "even though the insurer agreed to defend the entire claim against the insured, its duty extended only to those claims arguably covered by the policy. Once the insurer settled and paid those claims, it had completely performed its contractual duty." *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W. 2d 411, 417 (Minn. 1997); see also *Travelers v. Centex* (E.D. Cal. July 30, 2014) Case No. 14-CV-217-LJO-GSA (RFJN Ex. G) ("an insurer provides an entire defense where it defends an insured until its duty to defend ceases.") Once there is no longer any potential for coverage, the insurer's duty to defend has terminated. See *Fidelity and Guaranty Ins. Co. v. KB Home Coastal, Inc., supra*, RFJN Ex. F, fn. 2 (Settlement agreement resolved claims against KB, thus there was no further potential for liability requiring a defense.). The Policies only provide coverage for KB to the extent that its liability "arises out of the work" of Norcraft. KB's liability for claims potentially arising out of Norcraft's work was settled and released on October 16, 2014. (Carrillo Ex. A.) Thus, Travelers' settlement fulfilled its contractual duty to defend KB against all claims arising out of the work of Norcraft and cannot be a breach of the Policies.

KB argues that Travelers' settlement negotiations – which limited KB's exposure to claims arising out of Norcraft's work – were an unreasonable limitation of its defense. That is not the case. As explained in section V.C. of Travelers' Opposition to KB's Motion for Partial Summary Judgment [Dkt. No. 87, pp 16-19], Travelers has the unfettered right to settle claims against its insureds. More importantly, Travelers' coverage counsel was under no obligation to disclose such settlement attempts to KB. Travelers has the absolute right to settle claims against its insured, even over an insured's objection. *New Plumbing Contractors, Inc., supra*, 99 Cal.App.4th at 802. Further, as KB has admitted, Travelers, as Norcraft's insurer, may execute a settlement agreement on its behalf. See *Fiege v. Cooke*, 125 Cal.App.4th 1350, 1355-56 (2004) (settlement agreement executed by insurer on behalf of its insured is valid and enforceable pursuant to Cal. Civ. Code §664.6.)

KB's argument that the settlement may not be enforceable because homeowners' counsel, and not

the homeowners, executed the Norcraft Settlement Agreement lacks merit. Cal. Code Civ. Proc. § 664.7 creates an exception to the rule that the signature of the actual litigants is required to enforce a settlement under section 664.6, with regard to construction defect actions. Section 664.7 reads as follows:

> (a) Notwithstanding Section 664.6, if parties to a pending construction defect action stipulate personally or, where a party's contribution is paid on its behalf pursuant to a policy of insurance, the parties stipulate through their respective counsel, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.
>
> (b) It is the intent of the Legislature that this section modify the holding of Levy v. Superior Court (1995), 10 Cal. 4th 578, regarding the authority of counsel in a construction defect action to bind a party to a settlement…

In enacting this legislation, the following description was set forth at 1998 Cal. Legis. Serv. Ch. 856 (A.B. 1950): This bill would authorize the court to also enter this judgment pursuant to the settlement of a pending construction defect action, as defined, if, where a party's contribution is paid on its behalf pursuant to a policy for insurance, the parties stipulate through their respective counsel.

There is little case law analyzing section 664.7, however, there is one case directly on point: *Walker v. Miles*, 2006 WL 1672864 No. A104267 (2006). In *Walker*, Ms. Walker was one of a group of homeowners of 44 lots, who each retained the defendant attorneys to represent them in a construction defect action against the developers/contractors of their homes. *Id*. While the other homeowners had apparently signed retainer agreements which set forth the attorneys' authority to enter into settlement agreements, Ms. Walker allegedly never signed such an agreement. *Id*. Ultimately, the attorneys reached an agreement to settle with the developers/contractors that complied with the settlement requirements set forth in the retainer agreements signed by the other homeowners. Ms. Walker refused to sign the settlement agreement. *Id*. The attorneys for the homeowners then sought entry of judgment based on the terms of the final settlement agreement, and Ms. Walker opposed the motion. The court granted the relief, noting that section 664.7 of the Code of Civil Procedure "authorizes attorneys in construction defect cases where settlements are funded by insurance companies to bind their clients by written settlement agreement or oral stipulation." *Id*. Thus, the court in the underlying construction defect matter took the position that in a construction defect matter, where the settlement is funded by insurance companies, all attorneys involved, including the attorneys for the homeowners, can sign the settlement agreement on behalf of the clients for purposes of enforcement under

section 664.7. Moreover, the court, while presumably acknowledging that the attorneys may not have had Ms. Walker's consent to enter into the settlement agreement, nonetheless enforced the settlement. *Id.* Thus, it is clear a settlement signed by the parties' attorneys in a construction defect action – just like the settlement here – is enforceable under section 664.7

Here, the Settlement Agreement contains a "Certification of Authority" stating that counsel "has the authority from each and every one of THE HOMEOWNERS in the COMPLAINT to enter into the above Scope of Work Settlement & Release Agreement and to execute same on their behalf." Accordingly, Milstein & Adelman has represented that it has obtained authority from each homeowner to enter into the subject settlement, thus binding the homeowners by its terms. The fact that KB wishes to challenge the representations made by the homeowners' counsel in this action does not negate the existence of the certification within the agreement itself. KB has failed to provide any evidence that the "Certificate of Authority" incorporated into the agreement is invalid. Further, KB's request for relief pursuant to Rule 56 (d) based solely on its own meritless challenge to a fully executed settlement should be denied, as KB has set forth no essential evidence it could obtain through additional discovery. Therefore, Travelers has provided KB with a complete defense.

**C. <u>KB Breached the Contract by Preventing Travelers From Providing a Defense</u>**

KB asserts that Travelers failed to provide it with a conflict-free defense in the Davis Action. However, KB ignores the fact that Travelers, as a non-attorney, took all necessary steps to retain conflict-free counsel, including retaining new counsel upon notification of the Clapp Firm's potential conflict. Further, Travelers took immediate steps to remedy any conflict by retaining the Collinsworth Firm. Thus Travelers' ability to provide KB with a conflict-free defense is based solely on KB's unjust refusal to accept counsel.

**1. Any Conflict of the Clapp Firm Conflict Cannot be Imputed to Travelers**

Although Travelers initially retained the Clapp Firm, which KB now argues had a conflict of interest based on the *Maxion* Action representation, any such conflict cannot be imputed to Travelers. California courts have made it clear that "it is the attorney who is charged with the responsibility of the conflict checks upon accepting a new client. The client is under no such obligation." *State Farm Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1435 (1999). Further, the Rules of Professional Conduct are applicable to attorneys – not their non-attorney clients. Cal. Rules Prof. Con., Rule 1-100 ("The following rules are intended to regulate professional conduct of members of the State Bar"); *Alkow v. State Bar of Cal*., 38 Cal.

2d 257, 263 (1952) ("***One who is licensed to practice as an attorney in this state*** must conform to the professional standards in whatever capacity he may be acting in a particular matter") (emphasis added). Thus, Travelers cannot be held liable for any failure by the Clapp Firm to conduct a proper conflict check.

KB's attempt to twist references to secondary sources and case law related to an attorney's general agency role in procedural matters does not establish that Travelers, a client, is responsible for the Clapp Firm's conflict check. That is an obligation that is the sole responsibility of counsel as a matter of law. In this instance, Travelers took every precaution to provide KB with a conflict-free defense. Prior to retaining the Clapp Firm, Travelers specifically requested that Jennifer Wilhelmi run a conflict check. (Colouris Ex M.) As Ms. Wilhelmi testified at her deposition, the Clapp Firm ran a conflict check. (Martin Ex. I, Wilhelmi Depo. 48:3-5; 48:24 -49:7.) Ms. Wilhelmi thereafter informed Ms. Colouris that the Clapp Firm had no conflicts of interest. (Martin Ex. I, Wilhelmi Depo. 109:10-110:10; Martin Ex. M.) Neither Ms. Wilhelmi nor anyone within the Clapp Firm informed Travelers that a conflict existed when it was retained.

KB's argument that Travelers should have had "inquiry notice" of the Clapp Firm conflict is equally without merit and a misapplication of the law. The cases cited by KB refer to an insurer's duty to investigate a claim tendered for defense – not an insurer's duty to investigate and confirm a conflict check performed by an attorney. As explained in Travelers' Opposition, there is no legal or practical basis by which a Travelers' adjuster can have knowledge of all previous claims – including which counsel was retained by Travelers in previous litigation. An adjuster simply does not have instant access to prior claim files, especially if it was a different adjuster handling the prior claim. (See Martin Decl. ISO Opposition Ex. L, R. Ware Depo. 82:5-84:20.) Thus, Pamela Colouris, the adjuster that retained the Clapp Firm in the Davis Action to defend KB, would not have knowledge of the Clapp Firm's prior activity in the *Aldrich* Action.

Accordingly, where, as here, Travelers had no knowledge of any conflict, it does not share in any conflict and has the ability to remedy the issue. As explained by the *Fidelity* court:

> "Here, in contrast, the conflict of interest was the result of Clapp Moroney's representation of a party with interests adverse to those of KB Home in an entirely separate action. This conflict of interest, unlike the kind described in *Cumis*, may have been remedied by Travelers' appointment of different counsel. This is a distinction that KB Home appears to recognize. . . KB Home cites no authority in support of the proposition that in circumstances other than ones in which the allege conflict cannot be remedied by different counsel it is entitled to independent counsel as defined by *Cumis.*" *Fidelity, supra*, RJN D, p11.

Thus, Travelers can and did remedy the Clapp Firm conflict by appointing the Collinsworth Firm to

represent KB upon notification of the potential Clapp Firm conflict.

**2. There is No Evidence the Collinsworth Firm Has a Conflict**

Travelers remedied any alleged conflict and provided a conflict-free defense by appointing the Collinsworth Firm within 5 days following receipt of notice from the Clapp firm that a potential conflict existed. Contrary to KB's arguments, there is no ***evidence*** that the Collinsworth Firm has any conflict that would prevent it from representing KB. The sole basis of KB's objection to the Collinsworth Firm is that it has objected to the Collinsworth Firm. This circular logic does not establish a conflict of interest. The Collinsworth Firm ran a conflict check, and Scott Calkins confirmed his office had no conflicts of interest. Travelers then retained the Collinsworth Firm to provide a full and complete defense of KB. Further, contrary to KB's assertions, and the fact that the insurance policies at issue don't require the same; the Collinsworth Firm did provide KB with a firm resume and met with KB to discuss its qualifications; its ability to handle construction defect actions on behalf of KB; and the unrelated litigation between KB and Travelers. (Martin Ex. N, Calkins Depo. 34:16-35:18, 37:4-13; Martin Ex. K, Collinsworth Depo. 110-113.) At no point after that meeting did KB make any further requests to the Collinsworth Firm regarding any theoretical conflict of interest or question its competency. (Martin Ex. N, Calkins Depo. 35:10-12.) KB has not provided any evidence that suggests, much less establishes, any conflict that would disqualify the Collinsworth Firm from representing KB.

KB argues that because it has refused the services of the Collinsworth Firm in other cases, as well as in the Davis Action, the Collinsworth Firm is now solely Travelers' "monitoring" counsel. That is incorrect. An insurer's appointment of counsel to defend its insured in litigation creates a tripartite relationship between the insurer, insured and attorney. See *Bank of America, N.A. v. Superior Court*, 212 Cal.App.4th 1076, 1090 ("Fidelity's retention of GKCJ to represent B of A is sufficient to establish a tripartite attorney-client relationship between Fidelity, B of A, and GKCJ.") California courts have explained:

> "In the insured-insurer relationship, the attorney characteristically is engaged and paid by the carrier to defend the insured. The insured and the insurer have certain obligations to the other, as previously noted, arising from the insurance contract. Both the insured and the carrier have a common interest in defeating or settling the third party's claim. If the matter reaches litigation, the attorney appears of record for the insured and at all times represents him in terms measured by the extent of his employment.
>
> In such a situation, the attorney has two clients whose primary, overlapping and common interest is the speedy and successful resolution of the claim and litigation." *Id.*

The tripartite relationship creates a situation in which the attorney has two clients with the same common interests – resolution of the claim against the insured. The purpose of the retention does not change because the insured is refusing to cooperate with the attorney. Rather, the insured is still a third-party beneficiary because both the attorney and the insurer intend the third party to be the beneficiary of legal services rendered by the attorney. *Zenith Ins. Co. v. Cozen O'Conner*, 148 Cal.App.4th 998, 1008 (2007). "The existence of a duty owed toward a third party is a question of law dependent upon 'a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. (Citation) The imposition of a duty of professional care toward non-clients has generally been confined to those situations wherein the non-client was an intended beneficiary of the attorney's services. . .'" *Id.* at 960; *Fox v. Pollack*, 181 Cal.App.3d 954, 959 (1986) ("Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal.")

The Collinsworth Firm was retained to represent KB in the Davis Action. (Colouris Decl. ¶39, Ex. CC.) Both Travelers and the Collinsworth Firm entered into the retention with the intent that all legal services were to benefit KB. The fact that KB breached the insurance contract by rejecting the Collinsworth Firm, and preventing it from acting on its behalf, does not negate KB's status as the intended beneficiary. Nor does the fact that the Collinsworth Firm submits bills to Travelers make Travelers the Collinsworth Firm's sole client. See Cal. Rules of Professional Conduct, Rule 3-310, Discussion ("subparagraph (C) (3) is not intended to apply with respect to the relationship between an insurer and a member when, in each matter, the insurer's interest is only as an indemnity provider and not as a direct party to the action.") The only reason the Collinsworth Firm has been unable to represent KB is because KB has breached the insurance contract by refusing the appointment; a right it ceded to Travelers in the insurance contract. KB's refusal to permit the Collinsworth Firm from representing KB does not make it Travelers' "monitoring" counsel.

KB references *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.App.4th 223 (1999), for the premise that because Travelers retained the Collinsworth Firm, its performance of legal services was solely as Travelers' counsel. However, KB misapplies the *Morrison* case. In *Morrison*, the insurance underwriters retained the Hancock Firm to represent it in coverage litigation against general contractor Morrison Knudsen ("Morrison") in the 1980s. The Hancock Firm was subsequently retained by the Contra Costa Water District ("District") to pursue a construction defect action against a Morrison

subsidiary, Centennial, related to dam construction in 1996. *Id.* at 228. The Hancock Firm notified Morrison of that retention, indicating that the representation would affect the Hancock Firm's ability to represent Morrison or its underwriters in any claim related to coverage of the Centennial claim. *Id.* Although Morrison expressly stated it would not waive any actual or potential conflict, the Hancock Firm advised that it did not believe the representation presented any ethical conflict and began representing the District. *Id.* at 229. It was under those facts that the *Morrison* court found that the Hancock Firm had obtained confidential information related to Morrison in the 1980s, while performing legal services exclusively for Morrison's underwriters, that created grounds for its disqualification from representing the District in the 1990s.

The Collinsworth Firm retention is a wholly separate matter. Collinsworth was retained to defend KB, thus KB, not Travelers, was the intended Collinsworth Firm client. Travelers has only retained the Collinsworth Firm to represent KB. Thus, Travelers retained conflict-free counsel for KB, but due to KB's refusal to accept the Collinsworth Firm, Travelers was prevented from fully performing its obligations.

**V. <u>TRAVELERS DID NOT ACT IN BAD FAITH AS A MATTER OF LAW</u>**

Finally, KB's claim that there is substantial evidence of "bad faith" is directly contradicted by the case law cited above. Each of the examples of bad faith identified by KB's expert witness has already been established by California law not to be "bad faith," as discussed above in section IV. In addition to the examples above, KB also asserts that Travelers' replacement of the Glaspy Firm, its alleged failure to pay fees incurred by the Glaspy Firm during the period the Clapp Firm was retained, and other coverage litigation disputing KB's right to independent counsel are all examples of bad faith. However, each of those examples is either incorrect or has already been deemed as a matter of law not to be "bad faith."

First, Travelers has the unfettered right to appoint counsel of its choosing to defend KB, including the right to replace the Glaspy Firm. This right was ceded to Travelers by KB in the subject insurance contract (cite the provision) Insurance policies are contracts and, as such, are subject to the statutory rules of contract interpretation. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). In the present case, the policies require that KB, as the insured, "[a]ssist [Travelers] upon our request" in enforcing its rights against any "organization which may be liable to the insured because of injury or damage to which this insurance may also apply." (Colouris Ex. A and B.) Such assistance would include providing Travelers with information requested by Travelers, including information related to the response of other insurance carriers who, like

Travelers, may also owe KB Home a duty to defend against the claims asserted in the Davis Action. Travelers requested information regarding other insurance carriers beginning on February 4, 2013. (Colouris Decl. ¶16) However, the Glaspy Firm did not respond until April 16, 2013. (Colouris Decl. ¶17.) Additionally, when Ms. Colouris made requests for other documents from the Glaspy Firm in relation to two other claims that were consolidated with the Davis Action, it took the Glaspy Firm at least two months to respond. A request for such information is well within Travelers' rights under the policies. The Glaspy Firm's failure to respond to requests is a failure to comply with the terms and conditions of the Norcraft Policies. Replacement of a non-compliant attorney is well within Travelers' rights under the Norcraft Policies – not an act of bad faith.

Second, contrary to the generalizations of KB's experts, Travelers did in fact issue payment in July 2014 for fees incurred by the Glaspy Firm for the period of time the Clapp Firm had been retained. (Colouris Decl., ¶40, Ex. J and I.) Thus, KB's characterization of Travelers' purported "refusal" is apropos of nothing.

Third, as a matter of law, Travelers filing of declaratory relief actions to determine whether KB is entitled to independent counsel is not an act of bad faith. California courts have held:

> "Prompt filing of a declaratory relief action is an appropriate procedure for determining the application of the *Cumis* principles in a given case. Once the obligation of the insurer to provide *Cumis* counsel is placed in issue by such an action, the insurer's duty can often promptly be adduced through summary judgment or a full trial of the declaratory relief action with its statutory calendar preference." *United States Fidelity & Guaranty Co v. Superior Court*, 204 Cal.App.3d 1513, 1526 (1988).

Travelers' filing of litigation to determine its right to control the defense of an insured when it arises is thus actually encouraged by the law – not an example of unreasonable conduct.

More importantly, contrary to KB's assertion, it is basic insurance law that "if the insurer did not breach the policy, it did not breach the implied covenant." Croskey, Heeseman, Imre & Ehrlich, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group 2014) §12:45; See *Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011) (Where insurer granted judgment as matter of law on insured's breach of contract claim, bad faith claim also fails."); *Waller v. Truck Ins. Exch., Inc.* 11 Cal.4th 1, 36 (1995) ("a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is [firmly] rooted.") (brackets in original). Thus, as Travelers fulfilled its obligation to provide KB with a full and complete defense, it cannot have breached the covenant of good faith and fair dealing.

KB refers the Court to *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342 (1992), for the proposition that the covenant of good faith and fair dealing can be breached by objectively unreasonable conduct. However, KB fails to note that the contract in *Carma* expressly provided that Marathon could "reasonably withhold" consent. The question was whether its withholding of its consent was reasonable or in bad faith. In either case, the *Carma* court, like other California courts, reasoned that "it is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* at 373 (citing *Foley v. Interactive Data Corp.*, 47 Cal.3d 653, 683 (1988)). Thus any breach of the implied covenant of good faith and fair dealing must be bound by the actual terms of the policies. Bad faith cannot exist where there is no breach of the actual policy.

**VI. <u>EVIDENTIARY OBJECTIONS</u>**

**A. <u>Objections to the Declaration of John O'Hara and Attached Exhibits</u>**

Travelers objects to Exhibits 1 and 6 to the Declaration of John O'Hara on the grounds that Ms. Peck and Mr. Henderson's reports are merely a hearsay recitation of facts and not relevant to the issues. (Fed. R. Evid., 350, 351 Travelers objects to paragraph 9, as such information is irrelevant to the issues raised by Travelers' motion and lacks foundation because there is no showing of personal knowledge by the declarant. (Fed. R. Evid., 350, 352, 400-403.)

**B. <u>Objections to the Declaration of Mary Glaspy</u>**

Travelers objects to paragraph 2, as it is hearsay, lacks foundation and is not the best evidence, as the actual documents referenced are available to KB. (Fed. R. Evid., 400-403, 1200, et seq., 1401.) Travelers objects to the part of paragraph 3 stating: "It is rare in construction defect litigation to see an insurer settle directly with the homeowners without notifying the builder and its counsel." This constitutes improper lay opinion testimony as KB has failed to designate or provide proper foundation establishing Ms. Glaspy as an expert witness. (Fed. R. Evid., 701(3).) Further, such statements are irrelevant. (Fed. R. Evid., 350, 351.)

Respectfully Submitted,

Dated: November 24, 2014

**THE AGUILERA LAW GROUP, APLC**

*<u>s/: Raymond E. Brown</u>*________________________
A. Eric Aguilera
Raymond E. Brown,
Attorneys for Plaintiff/Counter-Defendant
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA