UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION


TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,
                                CASE NO.  CV-13-4745-EJD

        PLAINTIFF,
                                SAN JOSE, CALIFORNIA

    VS.
                                APRIL 7, 2015
KAUFMAN & BROAD MONTEREY BAY,
INC., ET AL.,                   PAGES 1 - 73

        DEFENDANTS.




TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE


A-P-P-E-A-R-A-N-C-E-S


FOR THE PLAINTIFF:    THE AGUILERA LAW GROUP
                      BY:   RAYMOND E. BROWN
                      650 TOWN CENTER DRIVE, SUITE 100
                      COSTA MESA, CALIFORNIA 92626


FOR THE DEFENDANTS:   NEWMEYER & DILLION LLP
                      BY:   JOHN A. O'HARA
                            MICHAEL STUDENKA
                      895 DOVE STREET, 5TH FLOOR
                      NEWPORT BEACH, CALIFORNIA 92660


OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8074


    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
TRANSCRIPT PRODUCED WITH COMPUTER.

```
1    SAN JOSE, CALIFORNIA                    APRIL 7, 2015

2                    P R O C E E D I N G S

3         (COURT CONVENED AT 10:05 A.M.)

4              THE CLERK:  CALLING CASE NUMBER 13-4745,

5    TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA VERSUS

6    KAUFMAN & BROAD MONTEREY BAY, INC., ET AL.

7         ON FOR MOTIONS IN LIMINE AND FINAL PRETRIAL CONFERENCE.

8         COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

9              MR. BROWN:  GOOD MORNING, YOUR HONOR.  RAY BROWN

10   FROM THE AGUILERA LAW GROUP ON BEHALF OF TRAVELERS.

11             THE COURT:  THANK YOU.  GOOD MORNING.

12             MR. O'HARA:  GOOD MORNING, YOUR HONOR.  JOHN O'HARA

13   NEWMEYER & DILLION ON BEHALF OF THE KB ENTITIES.

14             THE COURT:  GOOD MORNING.

15             MR. STUDENKA:  GOOD MORNING, YOUR HONOR.  MIKE

16   STUDENKA ALSO APPEARING ON BEHALF OF KB.

17             THE COURT:  THANK YOU.  GOOD MORNING.  THIS IS ON

18   FOR, I BELIEVE, OUR PRETRIAL CONFERENCE AND TO HEAR CERTAIN

19   MOTIONS IN LIMINE.

20        WE ARE SET TO BEGIN JURY SELECTION, I THINK, BEGINS

21   APRIL 14TH AT 9:00 A.M., AND THEN WE HAVE YOU SCHEDULED FOR

22   TRIAL THE 14TH AND 15TH, THE 17TH, 21ST THROUGH THE 22ND, THE

23   24TH, THE 28TH, AND THE 29TH.

24        AND WE CURRENTLY SCHEDULED JURY DELIBERATIONS FOR MAY 1ST,

25   I THINK.  THAT'S OUR CURRENT SCHEDULE.
```

1       MR. O'HARA:  YES, YOUR HONOR.

2       MR. STUDENKA:  RIGHT.

3       THE COURT:  AND NOW I ALSO HAVE IN FRONT OF ME

4  VARIOUS MOTIONS IN LIMINE.  MANY OF THEM, I THINK, YOU HAVE

5  RECEIVED THE COURT'S ORDERS ON AND THE RULINGS ON.

6       THERE ARE SOME MOTIONS THAT ARE STILL PENDING.  LET ME

7  JUST GO THROUGH THE LIST THAT I HAVE.

8       I SHOW PLAINTIFF'S 4 IS STILL PENDING; PLAINTIFF'S 5 IS

9  STILL PENDING; PLAINTIFF'S 9; PLAINTIFF'S 14; PLAINTIFF'S 16;

10  PLAINTIFF'S 17; PLAINTIFF'S 18.  AND THEN I BELIEVE DEFENSE 4.

11  THOSE ARE PENDING.

12       AND WE RECEIVED CERTAIN OTHER MOTIONS THAT WERE FILED JUST

13  RECENTLY.  DOCKETS 187, 188 WERE FILED APRIL 6TH.  AND THIS IS

14  KB'S OPPOSITION TO TRAVELERS'S MOTION IN LIMINE NUMBER 17, AND

15  THAT'S DOCKET NUMBER 187; DOCKET 188 IS KB'S OPPOSITION TO

16  TRAVELERS'S MOTION IN LIMINE NUMBER 18.

17       AND THEN THERE WAS ANOTHER RECENT FILING, DOCKET 189, AND

18  THAT WAS FILED YESTERDAY AS WELL.  AND THIS IS DEFENDANT'S

19  REQUEST FOR CLARIFICATION REGARDING RULING ON TRAVELERS'S

20  MOTION IN LIMINE NUMBER 7.

21       I THINK THOSE ARE THE MOST RECENT FILINGS I HAVE AT LEAST

22  AS OF YESTERDAY.  DOES THAT COMPORT WITH YOUR MEMORY OF THINGS?

23       MR. BROWN:  I BELIEVE SO, YOUR HONOR.  ALTHOUGH I

24  DID WANT TO MENTION THAT TRAVELERS ALSO HAS THE TWO EX PARTES

25  WE FILED TO CONTINUE THE TRIAL WHICH WERE DEFERRED TO TODAY.

1          THE COURT:  THAT'S RIGHT.  THOSE ARE STILL PENDING

2     AS WELL IN FRONT OF THE COURT.

3          SO THERE ARE A COUPLE OF ISSUES THAT I WANTED TO TAKE UP.

4     FIRST OF ALL, THE MOTIONS I JUST MENTIONED, THE 189, THE 188,

5     AND THE 187, OF COURSE THOSE WERE FILED YESTERDAY OUTSIDE OF

6     THE TIME LIMIT.

7          I LOOKED TO SEE WHETHER OR NOT THERE WAS ANY REQUEST FROM

8     EITHER PARTY TO FILE A LATE MOTION.  I DIDN'T SEE ANY ATTACHED

9     TO THESE MOTIONS.

10          I CHECKED THE OTHER MOTIONS THAT I MENTIONED, AND I THINK

11     YOU KNOW THAT I RECOGNIZED AND CALLED OUT SOME DEFICIENCIES AS

12     TO SOME OF THE OTHER MOTIONS.

13          THERE WERE PLAINTIFF'S 4 EXCEEDS THE PAGE LIMIT I THINK BY

14     TWO PAGES; PLAINTIFF'S 11 EXCEEDS THE PAGE LIMIT BY

15     THREE PAGES; PLAINTIFF'S 14 WAS FILED LATE; PLAINTIFF'S 17 WAS

16     FILED LATE; PLAINTIFF'S 18 WAS FILED LATE.  AND I BELIEVE

17     DEFENSE 6 EXCEEDED THE PAGE LIMITS BY TWO PAGES.

18          AND I THINK YOU SAW IN A RECENT RELEASE OF MINE THAT ALSO

19     ON CALENDAR TODAY WAS A DISCUSSION ABOUT WHETHER OR NOT AND

20     WHAT ACTION THE COURT SHOULD TAKE VIS-A-VIS SANCTIONS AS TO THE

21     LATE FILINGS OR WHETHER OR NOT I SHOULD JUST STRIKE THOSE AS

22     BEING LATE FILED AND ALSO STRIKE THOSE AS BEING EXCESSIVE IN

23     LENGTH.

24          AND I'M HAPPY TO HEAR FROM YOU IN A MOMENT.  LET ME JUST

25     SAY I WAS SURPRISED TO SEE THE NUMBERS OF THE LATE FILINGS AND

1    THE EXCESSIVE PAGES, BECAUSE WE HAVE HAD THIS CONVERSATION

2    BEFORE, AT LEAST THROUGH PAPERS, IN REGARDS TO THE MOTIONS FOR

3    SUMMARY JUDGMENT, AND I KNOW YOU RECALL THAT.

4          AND SO I HAVE TO CONFESS, I WAS SOMEWHAT SURPRISED TO SEE

5    THE CONDUCT OCCUR AGAIN.  AND I THINK I MAY HAVE INDICATED IF

6    THE COURT WERE TO FIND SANCTIONS APPROPRIATE, THE COURT WOULD

7    CONSIDER IMPOSING SANCTIONS OF $500 PER MOTION AND THEN A

8    SANCTION OF $100 PER PAGE IN EXCESS OF THE LIMITATION.

9          BUT I'M HAPPY TO HEAR FROM YOU AS TO YOUR RESPONSE AS TO

10   THAT.  PERHAPS WE SHOULD GET THAT OUT OF THE WAY FIRST.  AND I

11   GUESS THE QUESTION IS I SHOULD HEAR YOUR RESPONSE ABOUT THE

12   SANCTIONS AND HEAR WHETHER OR NOT YOU WISH THOSE MOTIONS IN

13   LIMINE DO YOU EITHER WANT TO WITHDRAW THEM OR WHETHER YOU WISH

14   THEM TO REMAIN.  AND, IF SO, THEN WE CAN TALK ABOUT WHAT SHOULD

15   BE DONE ABOUT THAT.

16          SO MR. BROWN.

17              MR. BROWN:  WE WOULD LIKE THE MOTIONS TO REMAIN,

18   YOUR HONOR.  ONCE I GOT YOUR RULING YESTERDAY, AND I APOLOGIZE,

19   I HAD BEEN ENGAGED IN TRIAL AND WE'RE STILL ENGAGED IN TRIAL UP

20   IN SACRAMENTO, BUT I CALLED AROUND TO FIND OUT WHY DID WE DO

21   THIS.

22          AND WITH REGARD TO THE PAGE LIMITS, THERE WAS -- WHILE

23   BEING COGNIZANT OF THE COURT'S RULING REGARDING THE MOTION FOR

24   SUMMARY JUDGMENT, OUR OFFICE WENT BACK AND LOOKED AT THE LOCAL

25   RULES AND COMPARED.  AND MY UNDERSTANDING IS YOUR HONOR HAS

1    SINCE MODIFIED THE LOCAL RULES REGARDING MOTION FOR SUMMARY

2    JUDGMENT SO IT ACTUALLY SPECIFICALLY SAYS THE NOTICE IS

3    CONSIDERED IN DETERMINING THE PAGE LIMITS.

4        ON THE MOTIONS IN LIMINE IT DOES NOT SAY THAT.  SO MY

5    OFFICE TOOK THAT TO MEAN THAT, OKAY, WELL, SINCE IT'S NOT

6    SPECIFICALLY DELINEATED HERE, APPARENTLY IT DOESN'T.

7        SO THEY STILL TRIED IN AN ABUNDANCE OF CAUTION, AND WE

8    STILL TRIED WITHIN AN ABUNDANCE OF CAUTION TO GET IT WITHIN THE

9    PAGE LIMITS, BUT OBVIOUSLY IN TWO MOTIONS WE WENT OVER THAT

10   WITH REGARD TO THE NOTICE.  SO THAT WAS THE REASON, YOUR HONOR.

11             THE COURT:  OKAY.

12             MR. BROWN:  WITH REGARD TO THE LATE FILINGS, THERE

13   WERE THREE LATE FILINGS BY TRAVELERS.  ONE OF THEM, I BELIEVE,

14   WAS NUMBER 14, AND THAT WAS A CLERICAL ERROR.  IT WAS GIVEN TO

15   THE FILING PEOPLE TO FILE TIMELY AND THREE DAYS AFTER THE

16   FILING, I BELIEVE THE WEEKEND HAD GONE BY AND WE WERE NOTIFIED,

17   OOPS, I FORGOT TO FILE THIS ONE.

18       AND SO WE FILED IT IMMEDIATELY THEN.  AND IN RETROSPECT,

19   WE SHOULD HAVE FILED WITH IT SOME REQUEST FOR LEAVE TO FILE IT

20   LATE.

21       WITH REGARD TO THE OTHER TWO, 17 AND 18, THOSE WERE THE

22   MOTIONS IN LIMINE TO EXCLUDE THE TESTIMONY OF DEBBIE TAYLOR AND

23   DEBBI PAYNE.  ONE OF THOSE WAS SUBPOENAED AND RECEIVED A TRIAL

24   SUBPOENA AT HER HOME FROM KB HOME AFTER THE MOTION IN LIMINE

25   DEADLINE FILING.  SO WE DID NOT GET NOTICE THAT SHE HAD BEEN

1    SUBPOENAED UNTIL WELL AFTER THE MOTION IN LIMINE DEADLINE HAD

2    PASSED.  SO WE IMMEDIATELY FILED A MOTION IN LIMINE.

3         THE OTHER ONE WE DID GET NOTICE, AND I BELIEVE THAT WAS A

4    MOTION TO APPEAR THAT WENT TO OUR OFFICE.  BUT WE GOT IT, I

5    BELIEVE, THREE DAYS BEFORE THE MOTION IN LIMINE FILING DEADLINE

6    AND THE MOTION IN LIMINE -- THERE WAS NOT A DECISION TO FILE A

7    MOTION IN LIMINE AND PREPARATION OF A MOTION IN LIMINE BEFORE

8    THAT TIME PERIOD.  AND IN BOTH OF THOSE CASES WE SHOULD HAVE

9    INCLUDED A REQUEST TO FILE THEM UNTIMELY.

10             THE COURT:  OKAY.  THANK YOU.  MR. O'HARA, ANYTHING

11   YOU WISH TO SAY?

12             MR. O'HARA:  YES, YOUR HONOR.  I THINK WE, ON NUMBER

13   6, WE EXCEEDED THE PAGE LIMITATION, AND I APOLOGIZE TO THE

14   COURT FOR THAT.  THAT WAS MR. STUDENKA AND I HAD NEGOTIATIONS

15   ON TRYING TO STAY WITHIN THE PAGE LIMIT BUT WHEN IT GOT

16   PAGINATED IT BUMPED OVER TO THE NEXT PAGE.  AND IT GOT

17   FORMATTED, AND THAT'S OUR FAULT WE DIDN'T CHECK IT BEFORE IT

18   WENT OUT.

19             THE COURT:  AND DO YOU WISH THAT TO REMAIN OR WOULD

20   YOU CONSIDER THE COURT -- DO YOU WANT TO WITHDRAW THAT?

21             MR. O'HARA:  I WOULD LIKE IT TO REMAIN IF THE COURT

22   WOULD CONSIDER THAT.

23             THE COURT:  ALL RIGHT.  WHAT WOULD YOU LIKE ME TO

24   KNOW ABOUT AT LEAST MY EXPRESSED SANCTIONS THAT I WOULD IMPOSE?

25   I'M HAPPY TO HEAR FROM YOU IF YOU WISH TO BE HEARD ON THAT.

1    AND, AGAIN, WHAT I INDICATED IS PER MOTION I WAS

2    CONSIDERING $500 PER MOTION FILED LATE AND THEN $100 PER PAGE.

3              MR. O'HARA:  WE DON'T HAVE ANYTHING TO SAY ON THAT,

4    YOUR HONOR.

5              MR. BROWN:  YOUR HONOR, JUST NOTHING THAT I HAVEN'T

6    ALREADY SAID.  WE APOLOGIZE TO THE COURT WITH REGARD TO THE

7    PAGE LIMITS.  THERE WAS A GOOD FAITH BELIEF THAT BECAUSE IT DID

8    NOT SPECIFY THAT THE NOTICE WASN'T INCLUDED, BUT I DO

9    UNDERSTAND NOW AND HONESTLY BEING HERE BEFORE YOU I THINK IN

10   LIGHT OF THE MSJ RULING WE PROBABLY SHOULD HAVE ERRED ON THE

11   SIDE OF CAUTION ANYWAY, BUT IT WAS A GOOD FAITH MISTAKE ON MY

12   OFFICE'S PART.

13             THE COURT:  WELL, I APPRECIATE THAT.  THANK YOU.

14   AND I THINK YOUR PAGE LIMIT YOU WERE SPEAKING OF YOUR 11 -- WAS

15   IT PLAINTIFF'S 4 OR PLAINTIFF'S 11?  I THINK IT WAS YOUR 11.

16   THAT WAS THREE PAGES.

17             MR. BROWN:  ONE OF THEM WAS THREE PAGES AND ONE OF

18   THEM WAS TWO.

19             THE COURT:  RIGHT.  WELL, THANK YOU FOR YOUR

20   EXPLANATIONS.  I APPRECIATE THOSE.  YOU KNOW, I DON'T LIKE TO

21   ISSUE SANCTIONS.  THE BUSINESS OF OUR COURT IS TO HEAR CASES

22   AND TO LET THE COMMUNITY DECIDE CASES THAT OTHERWISE CAN'T BE

23   RESOLVED.

24        THE REASON WE HAVE THOSE RULES IS SO WE CAN HAVE SOME TYPE

25   OF ORDERLY FUNCTION OF THE EVIDENCE AND SO BOTH SIDES HAVE A

1   FAIR OPPORTUNITY TO HEAR AND RESPOND TO THE EVIDENCE THE OTHER

2   SIDE PRESENTS.

3          AND ALSO, CANDIDLY, THERE'S A SELFISH PART.  IT ALLOWS ME

4   AND OUR STAFF AN OPPORTUNITY TO TIMELY LOOK AT THE ISSUES THAT

5   ARE RAISED AND TIMELY ADDRESS THOSE ISSUES AND SOMEHOW CALENDAR

6   THOSE WITH THE PRESS OF WORK OF OTHER CASES THAT WE HAVE TO

7   ACCOMPLISH.

8          AND WHEN WE'RE DRAWN AND PULLED FROM OTHER CASES BECAUSE

9   OF A MISTAKE THAT UNNECESSARILY DISRUPTS OUR SCHEDULE, AND IT

10  CREATES CONFLICTS FOR US AS WELL.  AND IT INTERFERES WITH THE

11  SMOOTH OPERATION OF JUSTICE THAT WE LIKE TO DISPENSE IN OUR

12  COURTS, AND THAT'S WHY WE HAVE THE RULES.

13         SO AS I SAID, I WAS QUITE SURPRISED.  THE REMEDY THAT I

14  TOOK IN YOUR MSJ'S WAS QUITE SEVERE I THOUGHT AT THE TIME.  AND

15  AS YOU RECALL, I SAID WE'RE GOING TO STOP READING AT 25 PAGES

16  BECAUSE THAT'S THE PAGE LIMIT AND I THOUGHT THAT IS IT

17  DRACONIAN OR IS IT REALLY INTENDING TO SEND THE MESSAGE THAT

18  THE RULES MEAN SOMETHING?  AND I THINK IT WAS THE LATTER.

19         SO I THINK YOU CAN UNDERSTAND AND I APPRECIATE YOUR

20  RECOGNIZING THE DISAPPOINTMENT I HAD WHEN I LEARNED OF THE LATE

21  FILINGS AND THEN THE EXCESSIVE PAGES.

22         I NOTE THE MOTIONS FILED YESTERDAY IN RESPONSE.  I

23  UNDERSTAND LITIGATION AND I UNDERSTAND YOUR TWO CLIENTS ARE

24  SIGNIFICANTLY ADVERSE TO ONE ANOTHER, THE ISSUES OF YOUR CASES.

25         AND WHEN I READ THE PLEADINGS, AND I'M NOT BEING CRITICAL

1    OF YOUR PLEADINGS, WHEN I READ YOUR POSITIONS, THIS IS A CASE

2    WHERE EACH SIDE IS MORE THAN VITRIOLIC AS TO THE OTHER.  AND

3    IT'S A CASE THAT IS GOING TO PROBABLY HAVE TO BE TRIED.  I KNOW

4    WE HAVE SENT YOU TO SETTLEMENT CONFERENCES NUMEROUS TIMES, AND

5    I HOPE YOU HAVE GIVEN YOUR BEST EFFORTS AT RESOLVING EVERYTHING

6    SO YOU CAN MOVE ON.

7        BUT I RECOGNIZE THAT THIS CASE IS PROBABLY UNLIKE MANY

8    THAT I'VE SEEN WHERE THE PARTIES' BOOTS ARE SO DEEP IN THE

9    EARTH THAT THEY CAN'T BE REMOVED.  AND THEY'RE NOT IN THE

10   EARTH, THEY'RE IN CEMENT.  AND YOU'RE EXPERIENCED TRIAL

11   LAWYERS.  YOU KNOW WHAT HAPPENS WHEN THAT OCCURS.

12       I HOPE THAT THIS ISN'T A TRIAL NOT ON THE ISSUES THAT YOU

13   PRESENT IN YOUR PLEADINGS.  I HOPE IT'S SOMETHING ON THAT AS

14   OPPOSED TO A TRIAL ABOUT PRINCIPLE.  AND I WORRY SOMETIMES THAT

15   THAT'S WHERE THIS CASE MIGHT BE HEADED IN ALL OF THE LEGAL

16   NUANCES AND THE ISSUES THAT YOU'VE RAISED HAVE BEEN LOST, AND

17   THAT NOW THE REAL ISSUE THAT IS GOING TO BE PUT BEFORE THIS

18   JURY IS ONE OF PRINCIPLE.  AND I THINK YOU KNOW, YOU'RE

19   EXPERIENCED TRIAL LAWYERS, AND YOU KNOW THAT NOBODY WINS WHEN

20   THE ISSUE IS PRINCIPLE.

21       WELL, LET ME -- ANYTHING FURTHER, COUNSEL?

22           MR. BROWN:  NO, YOUR HONOR.

23           MR. O'HARA:  NO, YOUR HONOR.

24           THE COURT:  ALL RIGHT.  LET ME INDICATE THIS THEN:

25   IN REGARDS TO THE MOTIONS AND THE LATE FILED MOTIONS, LET ME

1   SAY THIS, ALL YOU HAVE TO DO IF YOU'RE GOING TO FILE SOMETHING

2   LATE IS JUST INDICATE THAT IN A PLEADING, "WE'D LIKE PERMISSION

3   TO FILE SOMETHING LATE AND HERE'S THE REASONS WHY."  NOT

4   BECAUSE "WE WANT TO FILE THIS LATE" BUT BECAUSE "WE THINK WE'LL

5   WIN ON THIS, AND YOU SHOULD KNOW THIS, JUDGE."

6        IT'S BECAUSE WE JUST FOUND A NEW CASE.  IT'S BECAUSE THIS

7   RAISES AN ISSUE THAT WE HAVEN'T BEEN ABLE TO PRESENT, AND WE

8   WOULD LIKE TO PRESENT IT TO YOU AFTER WE TALK WITH COUNSEL TO

9   SUGGEST A BRIEFING SCHEDULE.  WE'D LIKE TO HAVE PERMISSION TO

10  KNOW HOW WE CAN DO THIS AS OPPOSED TO...

11       I DIDN'T CHECK THE CLOCK TO SEE WHAT TIMES THESE WERE

12  FILED IN THE EVENING, BUT WE JUST FINISHED A TRIAL AND I SHOULD

13  TELL YOU I WAS IMPATIENT IN THAT TRIAL IN THAT I STOPPED

14  CHECKING ECF AT 11:30 P.M. AND HAD I STAYED ON ECF UNTIL 11:41

15  I WOULD HAVE REALIZED THAT ADDITIONAL PLEADINGS WERE FILED AND

16  MOTIONS WERE FILED AT 11:40.  SO I WAS RATHER IMPATIENT IN THIS

17  CASE, AND I SHOULD HAVE STAYED UP TO MIDNIGHT AND FOLLOWED THE

18  FILINGS IN THAT CASE.

19       THAT WAS ANOTHER CASE AND THAT WAS ANOTHER CONVERSATION,

20  BUT WE WON'T HAVE THAT CONVERSATION IN THIS CASE I'M QUITE

21  CONFIDENT.

22            MR. BROWN:  YOUR HONOR, COULD I ASK A POINT OF

23  CLARIFICATION JUST SO --

24            THE COURT:  YES.

25            MR. BROWN:  -- IF WE DO HAVE A LATE FILING, WOULD

1    YOU PREFER A SEPARATE MOTION REQUESTING LEAVE?

2              THE COURT:  YES, YES.

3              MR. BROWN:  OKAY.  RATHER THAN IN THE SAME MOTION?

4              THE COURT:  THAT'S RIGHT.  YOU SHOULD ASK PERMISSION

5    TO FILE A LATE PLEADING.  YOU CAN PREPARE THE LATE PLEADING AND

6    THEN INDICATE THAT YOU HAVE IT PREPARED AND YOU'RE READY TO

7    FILE IT.  THIS IS THE PAGE -- THESE ARE THE PAGES AND THESE ARE

8    THE ISSUES THAT IT DISCUSSES.  IT'S IMPORTANT -- WE THINK IT'S

9    IMPORTANT THAT THE COURT HEAR THIS FOR THE FOLLOWING REASONS.

10   THAT CAN BE ACCOMPLISHED IN A PAGE OR TWO.

11       AND THAT ALLOWS US THEN TO, YOU KNOW, TO ASSESS WHAT IS

12   GOING ON.  IS IT SOMETHING THAT SOMEBODY MISSED A FLIGHT?  IS

13   IT THE MACHINES BROKE DOWN?  OR -- THOSE THINGS HAPPEN.

14             MR. BROWN:  UNDERSTOOD, YOUR HONOR.

15             THE COURT:  OKAY.  SO IN REGARDS TO THE -- LET ME

16   LOOK AT PAGE -- EXCUSE ME -- PLAINTIFF'S 11, THE PAGE LIMIT.  I

17   WILL ACCEPT THE EXPLANATION.  IT SEEMS LIKE THERE WAS SOME

18   AMBIGUITY IN THE RULES AS FAR AS EXPLANATION, AND I'LL ACCEPT

19   THAT EXPLANATION AND I'M NOT GOING TO ISSUE SANCTIONS FOR THE

20   EXCESSIVE PAGES AS I INDICATED $100 PER PAGE AS TO PLAINTIFF.

21       I WILL, HOWEVER, IMPOSE A SANCTION OF $500 PER LATE

22   FILING, WHICH WERE FILED WITHOUT PERMISSION OF THE COURT TO

23   FILE.  THAT SPEAKS TO PLAINTIFF'S 14, PLAINTIFF'S 17,

24   PLAINTIFF'S 18.  AND, AGAIN, THESE WERE FILED, I SHOULD

25   INDICATE FOR THE RECORD -- EXCUSE ME -- PLAINTIFF'S 14 WAS

1    FILED MARCH 23RD, 2015, THE DEADLINE WAS MARCH 19, 2015;

2    PLAINTIFF'S 17 WAS FILED MARCH 30TH, 2015, AND THE DEADLINE WAS

3    MARCH 22; AND PLAINTIFF'S 18 WAS FILED MARCH 30TH, AND THE

4    DEADLINE WAS MARCH 19TH, BOTH 2015.

5         SO AS TO THOSE FILINGS I'LL ORDER SANCTIONS OF $500 PER

6    FILING.  AS TO EACH OF THOSE, THOSE WILL REMAIN, MEANING I'LL

7    CONSIDER THEM.

8         I'M NOT GOING TO IMPOSE, AGAIN, SANCTIONS BECAUSE OF THE

9    AMBIGUITY AS ARTICULATED BY COUNSEL.

10        MR. O'HARA, I KNOW YOUR PAGE LIMIT EXCEEDED IT, TOO.  BUT

11   I THINK MR. BROWN, YOU CAN THANK MR. BROWN HERE.  HE

12   ARTICULATED A DEFENSE FOR YOU IN THE CASE, AND I THINK IT'S

13   ONLY FAIR TO ALLOW YOU, IF IT'S AMBIGUOUS FOR MR. BROWN AND I

14   DON'T THINK IT'S FAIR, FOR ME TO SAY IT WILL BE AMBIGUOUS FOR

15   YOU.  SO I WON'T IMPOSE ANY SANCTION FOR EXCEEDING THE PAGE

16   LIMIT IN THAT REGARD.

17            MR. O'HARA:  THANK YOU, YOUR HONOR.

18            THE COURT:  WELL, LET'S MOVE ON TO THE MERITS OF

19   YOUR MOTIONS THEN, SHALL WE?  I DID WANT TO SPEAK ABOUT THEM.

20   I DO HAVE SOME QUESTIONS AND ACTUALLY A THOUGHT AS TO ALLOW YOU

21   AN OPPORTUNITY TO PRESENT SOME ADDITIONAL BRIEFING AS TO

22   SEVERAL OF THESE MOTIONS BECAUSE I THINK THEY TOUCH ON THINGS.

23        AND I'LL BE VERY CANDID WITH YOU, IT LOOKS LIKE THESE

24   ISSUES MAY HAVE BEEN COVERED IN YOUR MOTION FOR SUMMARY

25   JUDGMENT ACTUALLY AND TOUCHED ON IN THE PAGES THAT EXCEEDED THE

1   PAGE LIMIT.

2       SO I'M NOT PILING ON WHEN I SAY THIS, BUT THIS IS ANOTHER

3   EXAMPLE OF HOW WE GET -- CREATE ADDITIONAL WORK FOR OURSELVES

4   BECAUSE I'M GOING TO GIVE YOU ANOTHER BRIEFING SCHEDULE AS TO

5   CERTAIN ISSUES HERE.  MY SENSE IS IT MAY HAVE BEEN, THESE

6   ISSUES MAY HAVE BEEN RESOLVED IN SUMMARY JUDGMENT HAD THEY BEEN

7   ADDRESSED WITHIN THE PAGE LIMITS.

8       AS TO -- LET'S TALK ABOUT THE TRIAL SCHEDULE.  I

9   UNDERSTAND THAT THERE'S A TRIAL IN THE STATE COURT IN

10  SACRAMENTO COUNTY THAT IS -- HAS THAT STARTED YET OR IT BEGINS

11  TOMORROW I TAKE IT?

12          MR. BROWN:  THE JURY TRIAL PHASE BEGINS TOMORROW,

13  YOUR HONOR.

14          THE COURT:  I SEE.  AND WAS THAT -- WERE WE MADE

15  AWARE OF THAT SCHEDULE WHEN WE SET OUR SCHEDULE HERE FOR TRIAL?

16  WHAT WAS THE DISCONNECT, I GUESS?

17          MR. BROWN:  WELL, THE SACRAMENTO TRIAL WAS

18  ORIGINALLY SCHEDULED TO START FEBRUARY 2ND AND THEN DID START

19  FEBRUARY 2ND.

20      DURING THE COURSE OF LITIGATING THE MATTER, IT WAS

21  DETERMINED BY THE COURT, WITH THE AGREEMENT OF THE PARTIES,

22  THAT THERE SHOULD BE A BIFURCATED TRIAL AND WE WOULD JUST TRY

23  THE BENCH PHASE FIRST FOLLOWED BY THE JURY PHASE.

24      THE BENCH PHASE WAS TRIED ESSENTIALLY THROUGHOUT FEBRUARY.

25  AFTER THE COMPLETION OF THAT, THE COURT INDICATED THAT IT

1    NEEDED SOME -- TO TAKE SOME TIME TO ANALYZE THE ISSUES, REVIEW

2    THE BRIEFS BEFORE ISSUING A RULING.

3         THE INTENTION OF THE COURT WAS ORIGINALLY TO DO THAT IN I

4    THINK -- IT DID TAKE TWO WEEKS AND THEN TO START THE TRIAL IN

5    MID-MARCH.

6         MR. FERRENTINO, WHO IS TRIAL COUNSEL FROM NEWMEYER &

7    DILLION, INDICATED THAT WOULDN'T WORK FOR HIM BECAUSE HE WAS

8    GOING TO BE OUT OF TOWN THE LATTER PART OF MARCH, I BELIEVE, AT

9    HIS DAUGHTER'S FIELD HOCKEY TOURNAMENT OR SOMETHING ALONG THOSE

10   LINES.

11        SO AT THAT POINT THE COURT DETERMINED TO CONTINUE THE JURY

12   PHASE UNTIL APRIL 6TH.  SO AS SOON AS THAT HAPPENED WE

13   IMMEDIATELY WENT IN WITH THE EX PARTE.

14             THE COURT:  I SEE.  AND WAS THE GOOD JUDGE NOTIFIED

15   OF YOUR CONFLICT HERE WITH THIS CASE?

16             MR. BROWN:  YES.  AND WE NOTIFIED THEM THAT THE

17   OPPOSING COUNSEL, NEWMEYER & DILLION IN THAT CASE, IS OPPOSING

18   COUNSEL IN THIS CASE AS WELL, AND I THINK THE HOPE WAS THAT

19   SINCE IT IS THE SAME OPPOSING COUNSEL IN BOTH CASES, THAT THEY

20   WOULD BE AGREEABLE TO CONTINUE THIS ONE.

21             THE COURT:  I SEE.  WAS THERE AN EFFORT MADE TO

22   CONTINUE THAT CASE IN FAVOR OF THIS?

23             MR. BROWN:  THERE WAS NOT, YOUR HONOR, JUST IN LIGHT

24   OF THE FACT THAT IT WAS SUPPOSED TO GO FEBRUARY 2ND, AND THEN

25   MID-MARCH, AND THEN IT WAS CONTINUED AGAIN DUE TO THE CONFLICT

1      BY NEWMEYER'S COUNSEL.

2              THE COURT:  AND IS THIS IN SACRAMENTO PROPER, IS IT?

3              MR. BROWN:  IT IS, YOUR HONOR.

4              MR. O'HARA:  IT IS.

5              THE COURT:  SUPERIOR COURT?  IS THIS ON THE COMPLEX

6      TRIAL?

7              MR. BROWN:  IT IS COMPLEX, YES.

8              THE COURT:  AND WHO IS THE TRIAL JUDGE?

9              MR. BROWN:  IT IS JUDGE CULHANE, C-U-L-H-A-N-E.

10             THE COURT:  ALL RIGHT.  THANK YOU.  SO WHAT ARE YOUR

11     THOUGHTS ABOUT STARTING TRIAL NEXT WEEK THEN?

12             MR. BROWN:  THAT'S PROBABLY NOT A GOOD IDEA, YOUR

13     HONOR.  I AM LEAD TRIAL COUNSEL IN BOTH CASES.

14             THE COURT:  I SEE.

15             MR. O'HARA:  YOUR HONOR, WE'RE PREPARED TO START

16     NEXT WEEK OBVIOUSLY.

17             THE COURT:  ALL RIGHT.  WELL, IF COUNSEL IS ENGAGED

18     IN ANOTHER TRIAL, I JUST DON'T THINK IT'S APPROPRIATE FOR ME

19     TO, NOTWITHSTANDING THE CIRCUMSTANCES, TO ALLOW THIS TRIAL TO

20     GO FORWARD.

21         AND I KNOW, MR. O'HARA, YOU WANT A FAIR TRIAL FOR YOUR

22     CLIENT AS WELL AND YOU WOULD EXPECT ONLY TO HAVE THE BEST

23     ADVOCACY ON THE OTHER SIDE AS TO THESE ISSUES THAT ARE GOING TO

24     BE PUT IN FRONT OF A JURY.

25         SO WHAT WE CAN DO IS I'VE IDENTIFIED A SCHEDULE THAT WILL

1    FIT US, OUR TRIAL SCHEDULE, AND THAT WOULD BE TO BEGIN JURY

2    SELECTION ON JUNE 2ND, JUNE 2ND, AND THE TRIAL WOULD THEN

3    COMMENCE JUNE 2ND.  WE'D BE IN TRIAL JUNE 2ND AND 3RD,

4    JUNE 10TH, JUNE 12TH, JUNE 16TH AND 17TH, JUNE 19TH, AND

5    JUNE 22ND.

6         AND DELIBERATIONS -- JURY DELIBERATIONS WE WOULD IDENTIFY

7    JUNE 23RD THROUGH THE 24TH FOR THOSE DELIBERATIONS.  THAT IS

8    THE TIME THAT WE HAVE AVAILABLE TO TRY THE CASE.  WE'RE IN

9    TRIAL IN ABOUT TWO WEEKS, AND WE'LL BE IN TRIAL ALL OF MAY ON

10   ANOTHER CASE.

11              MR. O'HARA:  YOUR HONOR, CAN I GRAB A CHEAT SHEET?

12              THE COURT:  PLEASE.  LOOK AT YOUR CALENDARS.

13        I ALSO NOTE, WHILE YOU'RE CHECKING, THAT TRAVELERS

14   ANTICIPATES THAT THE TRIAL WILL LAST THREE COURT DAYS, FULL

15   COURT DAYS, AND I THINK KB ANTICIPATES MAYBE DOUBLE THAT.

16   THAT'S WHAT MY NOTES TELL ME.

17              MR. O'HARA:  CORRECT.  I WANT TO JOT DOWN ALL OF THE

18   DATES.

19              THE COURT:  SURE.  LET ME GIVE YOU THE DATES AGAIN.

20   JUNE 2ND FOR JURY SELECTION; WE THEN WOULD BE IN THE TRIAL

21   JUNE 2 AND 3; WE'D NEXT MEET AGAIN JUNE 10TH; AND THEN

22   JUNE 12TH, JUNE 16TH, AND 17TH; JUNE 19TH AND JUNE 22ND.

23        JURY DELIBERATIONS WOULD BE IDENTIFIED FOR JUNE 23RD AND

24   24.

25              AND I KNOW THAT KB ASKED TO START THE TRIAL ON MAY 11TH,

1    BUT WE'RE JUST NOT AVAILABLE.  WE'LL BE ENGAGED IN A CRIMINAL

2    TRIAL THEN.

3              MR. O'HARA:  UNDERSTOOD, YOUR HONOR.

4              MR. STUDENKA:  YOUR HONOR, IN OUR PLEADINGS AS TO

5    THE CONTINUANCE JUNE 15TH THROUGH THE 19TH I HAVE TO BE IN

6    RHODE ISLAND UNDER MILITARY ORDER AS A RESERVIST IN THE MARINE

7    CORPS.

8              THE COURT:  I KNOW THAT, AND I RECOGNIZE THAT.  AND

9    I SHOULD SAY I RECOGNIZED THAT IN THE PLEADINGS, AND, OF

10   COURSE, WE ALL APPRECIATE YOUR SERVICE.

11        THIS WAS THE SCHEDULE THAT, THAT I COULD ONLY PUT TOGETHER

12   TO ACCOMMODATE YOUR REQUESTS.

13             MR. O'HARA:  UNDERSTOOD, YOUR HONOR.

14             MR. STUDENKA:  IT APPEARS THAT THAT IMPACTS AT LEAST

15   THE 16TH, 17TH, AND 19TH.  SO THREE TRIAL DAYS AT LEAST ON THE

16   SCHEDULE THAT YOU GAVE, YOUR HONOR.

17             THE COURT:  RIGHT.

18             MR. STUDENKA:  UNDERSTANDING THAT THE DATES, IF I

19   FIND MYSELF IN A POSITION WHERE I JUST CAN'T DO ANYTHING ABOUT

20   THAT, MAY IT PLEASE THE COURT IF I WERE NOT TO BE HERE THOSE

21   THREE DAYS?

22             THE COURT:  OF COURSE.  OF COURSE.  AND I WANTED TO

23   GIVE THE SCHEDULE TO YOU IN ADVANCE SO THAT YOU AND MR. O'HARA

24   CAN WORK OUT ANYTHING THAT YOU THINK SHOULD BECOME AN ISSUE.

25             MR. STUDENKA:  RIGHT.

1          MR. O'HARA:  YOUR HONOR, MAY I INQUIRE?  IF

2    HYPOTHETICALLY IF WE DIDN'T GO WITH THE SCHEDULE, WHAT WOULD

3    THE NEXT SLOT BE?

4          THE COURT:  PROBABLY --

5          MR. STUDENKA:  I THINK THAT WORKS OTHER THAN

6    MR. STUDENKA'S CONFLICTS.  I'M LOOKING AT MY NOTES WITH RESPECT

7    TO THE WITNESSES AND OTHER THINGS.  I'M NOT SAYING NO TO IT.

8          THE COURT:  RIGHT.  NO, I APPRECIATE THAT.  I GUESS

9    I COULD SAY, WELL, MAYBE WE CAN FIND SOMETHING IN 2017 FOR YOU.

10         MR. O'HARA:  OKAY.  THAT'S WHAT I WAS AFRAID OF.

11         THE COURT:  NO, I'M BEING FACETIOUS.  I HAVEN'T

12   LOOKED THAT FAR.  I KNOW WE DO HAVE OTHER TRIALS SCHEDULED IN

13   THE FALL.

14         MR. O'HARA:  I THINK I'M GOING TO SAY, UNLESS

15   MR. STUDENKA TRUMPS ME, THAT'S ACCEPTABLE TO US BECAUSE IT JUST

16   DOESN'T LOOK GOOD FOR US AFTER THAT ANYWAY WITH OUR WITNESS

17   ISSUES, AND IT'S WORSE THAN HIS SCHEDULE.

18         THE COURT:  SURE.  ALL RIGHT.  THEN LET ME THEN

19   VACATE, MS. GARCIA, WE'LL VACATE THE APRIL TRIAL SCHEDULE

20   PREVIOUSLY IN PLACE FOR THIS TRIAL AND WE'LL ENTER THE REVISED

21   TRIAL SCHEDULE AS I'VE ARTICULATED JUNE 2ND THROUGH 3RD;

22   JUNE 10TH AND 12TH; JUNE 16TH AND 17, JUNE 19TH; JUNE 22ND.

23   JURY DELIBERATIONS WILL BE IDENTIFIED FOR JUNE 23RD AND 24.

24         COUNSEL, DOES THAT GIVE YOU SUFFICIENT TIME TO TRY THIS

25   CASE?

1          MR. O'HARA:  I THINK SO, YOUR HONOR, FROM OUR

2     PERSPECTIVE.

3          MR. BROWN:  IT'S OBVIOUSLY MORE THAN DOUBLE WHAT WE

4     THINK IT WILL TAKE TO TRY THE CASE, YOUR HONOR.

5          THE COURT:  ALL RIGHT.  NOW, LET ME MOVE TO THE IN

6     LIMINE MOTIONS HERE, THOSE THAT REMAIN.

7          I DID WANT ASK A QUESTION ABOUT PLAINTIFF'S IN LIMINE

8     MOTION NUMBER 4 AND TO THAT KB RESPONDS THAT THIS ISSUE IS

9     MOOT.

10         IS THAT RIGHT, SIR?

11         MR. O'HARA:  YES, YOUR HONOR -- WOULD YOU LIKE ME TO

12    SPEAK?

13         THE COURT:  YES.  YES.

14         MR. O'HARA:  WE HAD PLED IN OUR PLEADINGS AN

15    INDEPENDENT COUNSEL THEORY, AND WE ALSO HAVE AN EXPERT WHO IS

16    PREPARED TO OPINE ON THAT, BUT WE'RE WITHDRAWING THAT THEORY

17    AND THAT ARGUMENT AND THAT'S A THEORY BASED ON THE CUMIS 2860,

18    YOUR HONOR.  AND IT SAID THAT THE PANEL COUNSEL CHOSEN BY AN

19    INSURANCE COMPANY CAN CONTROL THE OUTCOME OF COVERAGE.

20         WE'RE NOT GOING TO BE TRYING THAT ISSUE, AND SO THAT'S WHY

21    WE SAID IT WAS MOOT.  WE'RE TRYING A DIFFERENT ISSUE, WHICH IS

22    AN ETHICAL CONFLICT UNDER THE RULES OF PROFESSIONAL CONDUCT, BY

23    THE COUNSEL THAT THEY APPOINTED.  IT'S NOT A CUMIS ABILITY TO

24    CONTROL COVERAGE.

25         THE COURT:  OKAY.  SO IT SEEMS LIKE THE MOTION

1    SHOULD BE GRANTED THEN.

2            MR. BROWN:  THE ONLY THING THAT I NOTE, YOUR HONOR,

3    IS THAT THE FACT THAT KB SAYS THAT THEY'RE WITHDRAWING THAT

4    THEORY DOESN'T CHANGE THE FACT THAT TRAVELERS'S FIRST CAUSE OF

5    ACTION IS FOR DECLARATORY RELIEF REGARDING KB'S RIGHT TO

6    INDEPENDENT COUNSEL UNDER 2860.

7        SO IF KB IS WITHDRAWING THAT THEORY, I GUESS TRAVELERS

8    JUST WINS ON THAT SO.

9            MR. O'HARA:  WELL, IF WE'RE GOING TO TRY A

10   DECLARATORY RELIEF, THEN, YOU KNOW, WE'RE PREPARED TO DEAL WITH

11   THAT ISSUE OF DECLARATORY RELIEF.  AND I WOULDN'T WITHDRAW IT.

12       I WAS ASSUMING THAT IT WOULD BE OUT OF THE CASE.  IF

13   TRAVELERS WANTS TO KEEP IT IN THE CASE UNDER A DECLARATORY

14   RELIEF BASIS, AND WE WOULD BE PREPARED TO PUT ON THE EVIDENCE.

15           THE COURT:  SO THAT BRINGS US TO PLAINTIFF'S 5 AND

16   THAT IS ACTUALLY, I THINK, PLAINTIFF'S REQUEST TO BIFURCATE

17   BECAUSE THERE IS A DEC RELIEF ACTION HERE AND REQUEST, WHICH IS

18   EQUITABLE IN NATURE, AND THE COURT CAN LOOK AT THAT SEPARATE

19   FROM THE LEGAL ISSUES HERE.

20       MY SENSE IS THAT THIS MAY HAVE BEEN COVERED IN THE MSJ, I

21   DON'T KNOW.  BUT WHAT I THOUGHT I WOULD DO ON THIS AND SOME OF

22   THE OTHER MOTIONS IS TO GIVE YOU -- I MENTIONED IN MY PREAMBLE

23   MAYBE A BRIEFING SCHEDULE ON THIS, AND I WAS THINKING MAYBE

24   GIVING YOU 20 DAYS TO PREPARE SOMETHING AS TO THE LEGAL ASPECT

25   OF THE DEC RELIEF REQUEST AND THE NATURE OF IT.

1           AND THIS IS YOUR REQUEST, MR. BROWN?

2               MR. BROWN:  CORRECT, YOUR HONOR.

3               THE COURT:  AND YOU CAN ARTICULATE THOSE REASONS.

4     AND I THOUGHT 20 DAYS WOULD -- I WOULDN'T WANT TO GO MUCH

5     LONGER THAN THAT BECAUSE IT PRESSES OUR JUNE TRIAL DATE.

6           AND I THOUGHT WE MIGHT BE ABLE TO ACCOMPLISH THAT IN

7     PERHAPS 12 PAGES.  I MIGHT BE CONVINCED TO ALLOW YOU TO GO NO

8     MORE THAN 15, BUT MY THOUGHT IS THAT THE 12 PAGES MIGHT BE

9     SUFFICIENT.  BUT I'M HAPPY TO HEAR FROM YOU AS TO THE PAGE

10    LIMIT.

11              MR. BROWN:  THE PARTIES HAVE BRIEFED THIS NUMEROUS,

12    NUMEROUS TIMES, YOUR HONOR.

13          WE ACTUALLY DID A -- I DID A TRIAL AGAINST

14    NEWMEYER & DILLION REGARDING THE RIGHT TO INDEPENDENT COUNSEL

15    IN TULARE LATE LAST YEAR AND WE DID CLOSING BRIEFS IN THAT

16    WHICH WERE ROUGHLY 60 PAGES FOR EACH PARTY.

17          CERTAINLY WE CAN CONDENSE IT A LOT, BUT IF WE CAN GO TO

18    15, I THINK THAT WOULD BE HELPFUL, YOUR HONOR.

19              THE COURT:  OKAY.  LET'S DO 15.

20              MR. O'HARA:  YOUR HONOR, IF I COULD INQUIRE OF YOU

21    ON THIS ISSUE, OF YOU AND COUNSEL?

22              THE COURT:  YES.

23              MR. O'HARA:  I'M TRYING TO GET MY HEAD AROUND.  EVEN

24    THOUGH TRAVELERS SUED US FIRST AND THEY'RE TECHNICALLY THE

25    PLAINTIFF, WE ARE ASKING FOR DAMAGES FOR BREACH OF CONTRACT AND

1    WE'RE ASKING FOR DAMAGES FOR BAD FAITH, AND THOSE CLAIMS THAT

2    WE'RE MAKING SUBSUME A LOT OF THE DECLARATORY RELIEF REQUESTS

3    BY THE PARTIES.

4         SO TO THE EXTENT THAT THE JURY OPINES ON THOSE ISSUES,

5    THEY'VE RESOLVED THE CONTROVERSY BETWEEN THE PARTIES.  THAT'S

6    WHY WE SAID IT WAS MOOT.  IF WE WIN ON OUR BREACH OF CONTRACT

7    CLAIM THAT THEY BREACHED THE CONTRACT BY APPOINTING CONFLICTING

8    COUNSEL, THE INDEPENDENT COUNSEL ISSUE IS MOOT.  IT'S SORT OF

9    REDUNDANT.  THAT MAY BE ANOTHER THEORY UNDER WHICH WE CAN GET

10   THEM TO -- GET THE COURT TO RULE THAT THEY HAVE AN OBLIGATION

11   TO PAY OUR FEES OR OF OUR LAWYERS SELECTED BY KB, BUT IT WOULD

12   BE A REDUNDANT REMEDY.

13        SO IN THAT SENSE IT'S MOOT.  AND IN THAT SENSE I'M NOT

14   SURE WE NEED TO HAVE AN INDEPENDENT COUNSEL FOR DECLARATORY

15   RELIEF.  SO MY QUESTION IS CAN I BRIEF THAT AS WELL OR --

16             THE COURT:  RIGHT.  SO THIS IS PLAINTIFF ASKING THIS

17   COURT TO MAKE A LEGAL DECISION AS TO WHETHER OR NOT THEY'RE

18   ENTITLED TO DEC RELIEF ON THIS PARTICULAR ISSUE, AND THEY'RE

19   ASKING THE COURT TO DO THAT.

20             MR. O'HARA:  CORRECT.

21             THE COURT:  NOW, IF THEY'RE -- AND I CAN MAKE, THE

22   COURT CAN MAKE A LEGAL DETERMINATION IF YOU'RE GOING TO -- IF

23   THERE ARE FACTUAL DISPUTES THAT COME UP THAT MIGHT BE DEPENDENT

24   ON THE DETERMINATION OF A LEGAL ISSUE, THAT'S A JURY QUESTION,

25   ISN'T IT?

1    MR. O'HARA:  YES.

2    THE COURT:  AND I DON'T KNOW IF THAT'S WHAT YOU'RE

3  REFERENCING, MR. O'HARA.

4    MR. O'HARA:  WELL, I BELIEVE THAT A CAUSE OF ACTION

5  FOR A DECLARATORY RELIEF, RE.

6    YOU HAVE TO HAVE AN ACTUAL CONTROVERSY THAT STILL EXISTS.

7  AND I'M SAYING THERE WON'T BE ONE ANYMORE AFTER THE JURY DOES

8  ITS THING ON THE BREACH OF CONTRACT CLAIM.  THERE WON'T BE ANY

9  CONTROVERSY BETWEEN US ON THAT ISSUE.

10    THE COURT:  WELL, LET'S HEAR WHAT MR. BROWN SAYS

11  ABOUT THAT.

12    MR. BROWN:  YEAH, I TOTALLY DISAGREE ON THAT, YOUR

13  HONOR.  AND THIS IS THE SAME ARGUMENT THAT NEWMEYER & DILLION

14  MADE IN THE TRIAL IN SACRAMENTO WHERE WE TRIED THE RIGHT TO

15  INDEPENDENT COUNSEL, DESPITE THE FACT THAT THEY SAID THEY WERE

16  WITHDRAWING IT.

17    BECAUSE MR. O'HARA'S BELIEF IS THAT WHAT HAPPENED WAS

18  TRAVELERS APPOINTED COUNSEL.  KB SAID, NO, WE DON'T WANT THEM

19  FOR UNSPECIFIED REASONS.

20    AND LATER THEY LEARNED ABOUT THIS CONFLICT OF INTEREST.

21  THEY NOTIFIED US.  ONCE WE DETERMINED THAT THERE WAS A

22  POTENTIAL CONFLICT, WE THEN REPLACED THE COUNSEL THAT WE HAD

23  APPOINTED WITH NEW COUNSEL.  KB'S THEORY IS THAT -- AND WHEN KB

24  INITIALLY REJECTED THE COUNSEL WE APPOINTED, THEY SAID WE HAVE

25  A RIGHT TO INDEPENDENT COUNSEL.

1          KB'S THOUGHT IS THAT BECAUSE THE COUNSEL WE ENDED UP

2     APPOINTING INITIALLY TURNED OUT TO HAVE A CONFLICT, WE'RE DONE.

3     I DON'T THINK THAT'S THE LAW.  WE HAD NO KNOWLEDGE OF THAT

4     CONFLICT.  WE DON'T LOSE THE RIGHT TO CONTROL THE DEFENSE.

5          THE COURT IN THE KB CASE IN THE CENTRAL DISTRICT ALREADY

6     RULED ON THIS EXACT ISSUE AND SAID IF YOU APPOINT COUNSEL WITH

7     A CONFLICT, THE REMEDY IS THE INSURER GETS TO APPOINT DIFFERENT

8     COUNSEL THAT DOESN'T HAVE A CONFLICT.  THAT'S WHAT WE DID.

9          SO REGARDLESS OF WHETHER OR NOT THEY HAD A CONFLICT, AS

10    LONG AS WE DIDN'T KNOW ABOUT IT -- AND WE ACTED TO REMEDY IT --

11    THE VALIDITY OF KB'S INITIAL CLAIM THAT THEY HAD A RIGHT TO

12    INDEPENDENT COUNSEL IS STILL IN PLAY.  AND OUR POSITION IS THAT

13    KB BREACHED THE CONTRACT WHEN KB REFUSED THE COUNSEL WE

14    APPOINTED AND REFUSED TO ALLOW US TO CONTROL THE DEFENSE BASED

15    ON ITS CLAIM OF RIGHT TO INDEPENDENT COUNSEL.

16          THE COURT:  SO IT'S INTERESTING THAT THE RELIEF YOU

17    SEEK MAY NOT HAVE MSJ, SHALL WE SAY, RESULTS.  IF THE COURT

18    RULES YOUR WAY, THIS ISSUE COULD STILL EXIST.

19          I THINK I UNDERSTAND WHAT YOU'RE SAYING, MR. O'HARA, BUT

20    IN A MORE LIMITED WAY.

21          MR. O'HARA:  RIGHT.  THE CASE THAT IS BEFORE THE

22    COURT HERE IS BASED ON THIS UNDERLYING DAVIS CONSTRUCTION

23    DEFECT CASE WHERE TRAVELERS APPOINTED A LAWYER THAT HAD A

24    CONFLICT, IN OUR VIEW, AND WE'RE NOT OBLIGATED TO ACCEPT A

25    LAWYER THAT HAS A CONFLICT.  WE DISAGREE ABOUT THAT,

1    APPARENTLY, STILL.

2    THERE ARE A COUPLE OF PATHS OR LEGAL THEORIES BY WHICH KB

3    CAN OBTAIN A REMEDY OR RELIEF.  ONE IS TO JUST PROVE THAT THEY

4    DIDN'T PROVIDE A CONFLICT-FREE DEFENSE BASED ON THE RULES OF

5    PROFESSIONAL CONDUCT AND IN WHICH CASE THEY BREACH AND IN WHICH

6    CASE WE WIN THAT ARGUMENT.

7    ANOTHER WAY TO PROVE IT WOULD BE TO SAY THAT THAT COUNSEL

8    THAT THEY APPOINTED CAN CONTROL THE OUTCOME OF COVERAGE SO THAT

9    TRAVELERS FOR ANOTHER -- FOR THAT OTHER REASON ALSO HAD TO PAY

10    THE KB LAWYER.

11    BUT IF WE WIN THE FIRST ONE, WE DON'T NEED THE SECOND ONE.

12    IF WE WIN THE FIRST ONE, THERE'S REALLY NO CASE OR CONTROVERSY

13    LEFT SO THE COURT IS REALLY IN AN ADVISORY OPINION ROLE AT THAT

14    POINT ON A DECLARATORY RELIEF.  THERE'S NO CASE OR CONTROVERSY

15    LEFT.

16    NOW, I AGREE IF THE PARTIES DIDN'T HAVE ANY OTHER CAUSE OF

17    ACTION AND THEY JUST SAID YOUR HONOR DECIDE DECLARATORY RELIEF

18    ON THESE INDEPENDENT COUNSEL ISSUES, YOU KNOW, WHO WINS, WHO

19    LOSES, AND HERE'S THE FACTS.  BUT THAT WON'T BE THE SITUATION

20    HERE.  WELL, WE'RE GOING TO TRY ALL OF THOSE ISSUES BEFORE THE

21    JURY.

22    THE COURT:  WELL -- GO AHEAD, MR. BROWN.

23    MR. BROWN:  CERTAINLY, YOUR HONOR.  WELL, I JUST

24    WANTED TO TEE UP FOR YOUR HONOR, I THINK THIS IS ONE POINT OF

25    FUNDAMENTAL DIFFERENCE BETWEEN THE PARTIES.

1          WHAT MR. O'HARA JUST SAID IS THAT IF HE SHOWS THAT COUNSEL

2     APPOINTED BY TRAVELERS HAD A CONFLICT, TRAVELERS BREACHED THE

3     POLICY YET WE DON'T BELIEVE THAT'S THE LAW.  AND, IN FACT, THE

4     COURT IN THE CENTRAL DISTRICT IN THE OTHER KB CASE, THE COHENS

5     CASE, SPECIFICALLY SAID THAT'S NOT THE LAW.  THE REMEDY IS THAT

6     WE GET TO APPOINT DIFFERENT COUNSEL.

7          SO THAT'S THE FUNDAMENTAL POINT OF DISAGREEMENT, I THINK,

8     NOT JUST ON THIS ISSUE BUT A LOT OF ISSUES.

9               THE COURT:  AND IS THAT A LEGAL ISSUE?

10              MR. BROWN:  I BELIEVE IT IS, YOUR HONOR.

11              THE COURT:  AS OPPOSED TO AN ISSUE THAT REQUIRES

12    FACTUAL DETERMINATIONS BY A JURY?

13              MR. BROWN:  YES.  AND, IN FACT, IT CAME TO OUR

14    ATTENTION THAT IT WAS AN ISSUE WHEN WE GOT THE PROPOSED JURY

15    INSTRUCTIONS FROM KB AND WE SAID, YEAH, THIS IS NOT WHAT WE

16    THINK THE LAW IS.

17              MR. O'HARA:  WELL, WE'RE BLEEDING INTO A LITTLE BIT

18    DIFFERENT AREA, BUT I THINK THERE'S BRIEFING BY TRAVELERS.

19    IT'S BEEN VERY DIFFICULT TO FIGURE OUT WHAT TRAVELERS'S

20    POSITION IS ON THIS -- LET'S CALL IT THE ETHICAL CONFLICT AS

21    OPPOSED TO THE CUMIS CONFLICT BECAUSE SOMETIMES THEY MIX THEM

22    TOGETHER.

23         ON THE ETHICAL CONFLICT ISSUE THERE'S BRIEFING BY

24    TRAVELERS EQUIVALENT TO A JUDICIAL ADMISSION THAT THEY MUST

25    PROVIDE CONFLICT-FREE COUNSEL TO SATISFY THEIR DUTY TO DEFEND.

1    I THINK MR. BROWN WILL CONCEDE THAT, THAT THE LAW REQUIRES

2    TRAVELERS TO SATISFY ITS DUTY TO DEFEND TO PROVIDE

3    CONFLICT-FREE COUNSEL.

4    SO IF YOU DON'T PROVIDE IT, THEN YOU'VE BREACHED THAT

5    DUTY.  AND THAT'S ALL WE'RE TALKING ABOUT ON THE ETHICAL

6    CONFLICTS SIDE.  IT HAS NOTHING TO DO WITH CUMIS, AND IT HAS

7    NOTHING TO DO WITH 2860, AND NOTHING TO DO WITH THE OUTCOME OF

8    COVERAGE.  IT'S COMPLETELY DIFFERENT.

9    THAT HAS NEVER BEEN TRIED BETWEEN TRAVELERS AND ANY OTHER

10   ONE FROM OUR OFFICE BECAUSE THEY'RE DIFFERENT FACTS.  THOSE

11   FACTS ARE NOT IN THE TRIALS THAT THEY'VE CONDUCTED.  THEY'VE

12   HAD INDEPENDENT COUNSEL DISCUSSIONS EXCLUSIVELY.  SO THIS IS A

13   DIFFERENT SITUATION.

14   AND I'M NOT QUITE SURE WHAT THEIR ARGUMENT IS THAT IF WE

15   PROVE THAT THEY ASSIGNED CONFLICTED COUNSEL AND BREACHED,

16   THAT'S AN ISSUE FOR THE JURY TO DECIDE, DID THEY BREACH THE

17   CONTRACT?

18   THE COURT:  RIGHT.  THAT'S A FACTUAL DETERMINATION

19   THAT THE JURY WILL HAVE TO MAKE.

20   MR. O'HARA:  THAT CONDUCT CAN ALSO FORM THE BASIS

21   FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

22   AMONG OTHER CONDUCT.

23   THE COURT:  SO THIS IS WHY I'M GOING TO ASK YOU TO

24   DO THIS BRIEFING, AND YOU CAN EXPLAIN THAT IN THE BRIEFING YOUR

25   POSITIONS.

1    I THINK IF THERE'S A -- IF MR. BROWN HAS ASKED FOR DEC

2    RELIEF FROM THIS COURT, WHICH IS A LEGAL CONSIDERATION, THEN

3    YOUR BRIEFING WILL TOUCH ON WHY YOU FEEL IT IS A LEGAL

4    QUESTION, THIS PARTICULAR ISSUE AND YOUR REQUEST, MR. BROWN,

5    WHY YOU FEEL IT'S A LEGAL ISSUE.

6    AND THEN, I SUPPOSE, MR. O'HARA, YOU'LL TELL ME WHY YOU

7    THINK IT'S DEPENDENT ON FACTUAL ISSUES OR IT'S MOOT OR THE

8    COURT CAN'T MAKE THIS FINDING ABSENT THE JURY MAKING CERTAIN

9    FACTUAL DETERMINATIONS IS WHAT I THINK I HEAR YOU SAYING AND

10   SUGGESTING.

11          MR. O'HARA:  YES.

12          THE COURT:  SO YOU'LL BE HELPFUL TO PROVIDE THAT TO

13   ME.

14   AND I'M ALSO GOING TO HAVE SIMILAR REQUESTS FOR ADDITIONAL

15   BRIEFING AS TO YOUR, LET'S SEE, IT'S PLAINTIFF'S 9, WHICH I

16   THINK MIRRORS WITH D4.

17   PLAINTIFF'S 9 IS TO EXCLUDE PLAINTIFF'S CLAIMS AND

18   EVIDENCE FOR BRANDT LEGAL FEES RELATING TO THE DAVIS ACTION.

19   AND D4 IS TO EXCLUDE EVIDENCE OF REFERENCES RELATING TO

20   ALLEGED BILLING FRAUD OR MISREPRESENTATION BY DEFENDANT'S

21   COUNSEL.

22   DOES THAT ALSO RELATE TO THE BRANDT FEE ISSUE?

23          MR. O'HARA:  I DON'T THINK WE WOULD -- I WOULD SAY

24   THEY'RE NOT RELATED.

25          MR. BROWN:  I THINK THEY'RE MORE NOT RELATED THAN

1     THEY ARE RELATED.

2          THE COURT:  OKAY.  WELL, AS TO P9, I THINK I WOULD

3     ALSO LIKE TO HEAR YOUR THOUGHTS AS TO THE BRANDT ISSUE ALSO.

4          MR. O'HARA:  YES.

5          THE COURT:  AND THEN IT WILL BE AN ADDITIONAL

6     SEPARATE BRIEF.

7          MR. BROWN:  BRIEF?

8          THE COURT:  RIGHT.  ON THAT WITH THE SAME

9     GUIDELINES, 20 PAGES -- 15 PAGES.  EXCUSE ME, 15 PAGES.

10         MR. BROWN:  AND WHAT -- JUST SO I HAVE THAT

11    SPECIFICALLY, YOUR HONOR, WHEN YOU SAY 20 DAYS, IS THAT THE

12    26TH, OR I'M SORRY, THE 27TH?

13         THE COURT:  SO 20 DAYS FROM TODAY'S DATE.

14         MR. BROWN:  OKAY.

15         THE COURT:  NOT INCLUDING TODAY.

16         MR. BROWN:  YOUR HONOR, IF I COULD MAKE A

17    SUGGESTION, AND I REALIZE I'M GOING OUTSIDE THE BOX OF WHAT

18    WE'RE SUPPOSED TO BE HERE TO TALK ABOUT TODAY, BUT I WOULD

19    SUGGEST AND THINK IT ALSO MIGHT BE HELPFUL TO THE COURT IF WE

20    ALSO BRIEFED THIS WHOLE ISSUE OF -- BECAUSE IT SEEMS TO ME IT'S

21    A FUNDAMENTAL POINT OF DISAGREEMENT BETWEEN THE PARTIES.  IT'S

22    A LEGAL ISSUE THAT THE COURT WILL NEED TO DECIDE, WHETHER IT

23    DOES IT AHEAD OF TIME OR AT THE JURY INSTRUCTION PHASE, WHETHER

24    THE APPOINTMENT OF CONFLICT OF COUNSEL IN AND OF ITSELF

25    CONSTITUTES A BRIEF OR CAN CONSTITUTE A BRIEF AND WHETHER THE

1    APPOINTMENT OF COUNSEL WITHOUT ANY KNOWLEDGE BY THE INSURANCE

2    CARRIER CAN CONSTITUTE BAD FAITH BECAUSE KB'S POSITION THERE IS

3    THAT COUNSEL IS AN AGENT OF THE INSURER.  SO IF THE COUNSEL DID

4    A POOR CONFLICT CHECK, THE INSURER CAN BE HELD LIABLE FOR BAD

5    FAITH.  AND WE DISAGREE ON THAT AND I THINK IT'S, IT'S A MAJOR

6    ISSUE IN THE CASE RIGHT NOW.

7          THE COURT:  AND THIS SOUNDS LIKE IT WOULD BE PART OF

8    A MOTION FOR SUMMARY JUDGMENT I SUPPOSE AS TO THOSE LEGAL

9    ISSUES, RIGHT?

10         AND I GUESS IT WOULD BE HELPFUL TO THE TRIAL IF THOSE

11   ISSUES WERE RESOLVED PRIOR TO THE TRIAL SO WE WOULD KNOW WHAT

12   IS LEFT FOR THE ACTUAL TRIAL.

13         MR. O'HARA, ANY OBJECTION?

14         MR. O'HARA:  NO OBJECTION TO ADDITIONAL BRIEFING,

15   ESPECIALLY IF THE COURT WOULD FIND IT HELPFUL.

16         THE COURT:  SO DO YOU UNDERSTAND THE ISSUES THAT

17   MR. BROWN JUST ARTICULATED FOR YOUR BRIEF?

18         MR. O'HARA:  I DO.  JUST TO MAKE SURE, THERE ARE

19   REALLY TWO DIFFERENT ISSUES.  THERE'S A BREACH OF CONTRACT

20   ISSUE AND THEN THERE'S A BREACH OF IMPLIED COVENANT ISSUE, AND

21   THOSE ARE SEPARATE CAUSES OF ACTION AND SEPARATE STANDARDS OF

22   PROOF AND SEPARATE CONSEQUENCES.

23         THE COURT:  AND THE FINAL PREMISES IS WHETHER OR NOT

24   APPOINTING CONFLICTED COUNSEL RESULTS IN SOME TYPE OF A LEGAL

25   DETERMINATION AND YOUR OTHER ISSUE WAS WHETHER OR NOT YOU WERE

1    AWARE OF THE CONFLICT.

2              MR. BROWN:  ESSENTIALLY, YES, WHETHER WE CAN BE HELD

3    LIABLE FOR BAD FAITH IN THE ABSENCE OF ANY KNOWLEDGE THAT THERE

4    WAS A CONFLICT.

5              MR. O'HARA:  THE ONLY CLARIFICATION ON THAT IS THAT

6    THE LAW IS SOMETIMES MURKY ON AREAS.  BUT THIS AREA I THINK IS

7    PRETTY CLEAR IS THAT WHEN THERE IS BAD FAITH, BREACH OF IMPLIED

8    COVENANT, YOU LOOK AT THE TOTALITY OF THE CIRCUMSTANCES OF THE

9    INSURER'S CLAIMS HANDLING FROM THE DATE THE CLAIM STARTED UP

10   UNTIL TODAY.  YOU'RE ALLOWED TO LOOK -- UNDER THE WHITE VERSUS

11   WESTERN TITLE CASE, YOU CAN LOOK AT WHAT HAPPENS DURING

12   LITIGATION IF IT'S RELEVANT.  AND SO YOU LOOK AT THIS TOTALITY

13   OF CIRCUMSTANCES LANGUAGE THAT THEY USE.

14        SO ONE CIRCUMSTANCE WAS THEIR APPOINTMENT OF CONFLICTED

15   COUNSEL AND THEIR KNOWLEDGE AND AWARENESS OF IT, THE WAY THEY

16   REACTED TO IT, THE WAY THEY CUT OFF PAYMENTS.

17        BUT THAT'S NOT THE ONLY EVIDENCE THAT WE HAVE BAD FAITH BY

18   TRAVELERS RELATED TO THIS CLAIM.  SO I'M NOT SURE THAT BRIEFING

19   THAT -- I THINK WHAT TRAVELERS WOULD LIKE TO DO IS PRETEND

20   THAT'S THE ONLY EVIDENCE OF BAD FAITH THAT WE HAVE AND IF THEY

21   CONVINCE THE COURT THAT THEY DIDN'T HAVE KNOWLEDGE OR THEY

22   MIGHT NOT HAVE HAD KNOWLEDGE OR THEY HAD TO PROVE THAT THEY HAD

23   KNOWLEDGE AND THE CASE IS OVER, AND I JUST DON'T THINK THAT'S

24   THE CASE UNDER EXISTING LAW.

25        SO BRIEFING IT, I'M NOT OPPOSED TO IT, BUT IT'S NOT GOING

1  TO RESOLVE THE ISSUE OF THE SUM TOTAL OF THEIR CLAIMS HANDLING

2  AND THE TOTALITY OF THE CIRCUMSTANCES.

3          THE COURT:  THERE MIGHT BE OTHER FACTUAL ISSUES

4  YOU'RE SUGGESTING THAT WOULD ALLOW FOR THE CASE TO GO FORWARD

5  TO A JURY.

6          MR. O'HARA:  CORRECT, CORRECT.

7          MR. BROWN:  IF I COULD RESPOND BRIEFLY, YOUR HONOR.

8  I DON'T WANT TO GO INTO ARGUMENT BECAUSE YOUR HONOR HAS NOT

9  REQUESTED THAT, BUT WHITE VERSUS WESTERN TITLE IS A FIRST PARTY

10  CASE.  IT DOES NOT APPLY IN THIS THIRD PARTY ARENA.  IT'S

11  TALKING ABOUT A DENIAL OF BENEFITS.

12      WHAT HAPPENED IN WHITE V. WESTERN TITLE IS THERE'S A FIRST

13  PARTY CLAIM FOR DAMAGES BY THE INSURED TO THE INSURER.  THE

14  INSURER DENIED THE CLAIM AND DURING TRIAL MADE LOW-BALL

15  SETTLEMENT OFFERS.  SO STILL DENYING BENEFITS UNDER THE POLICY.

16  AND THE COURT SAID THOSE OFFERS, BECAUSE THOSE CONSTITUTE A

17  DENIAL OF BENEFITS, THEY COME IN AS EVIDENCE OF BAD FAITH.

18      IT DOESN'T APPLY IN THE THIRD PARTY ARENA.  YOU DON'T LOOK

19  AT THE TOTALITY OF CIRCUMSTANCES.

20      FOR BAD FAITH IN THE THIRD PARTY ARENA, THERE ARE TWO WAYS

21  YOU CAN GET BAD FAITH:  A REFUSAL TO DEFEND AND A REFUSAL TO

22  INDEMNIFY.  THAT'S IT.

23          MR. O'HARA:  I THINK IT WAS CLEAR.

24          THE COURT:  WELL, I -- ALL I CAN SAY IS I EAGERLY

25  AWAIT YOUR PAPERS.

1          MR. STUDENKA:  IF I MAY, YOUR HONOR?

2          THE COURT:  YES.

3          MR. STUDENKA:  THE MOTION WAS FILED LAST NIGHT -- OR

4     I'M SORRY, NOT THE MOTION -- BUT THE REQUEST FOR CLARIFICATION

5     ASKS ABOUT CASES THAT UNDERLIE THE DECISION BY TRAVELERS IN THE

6     DAVIS CASE, WHICH IS THE UNDERLYING CASE IN THIS CASE.  THE

7     KNOWLEDGE GAINED AND THE THINGS KNOWN IN THOSE UNDERLYING

8     CLAIMS HANDLING THAT RELATE TO THE SAME ETHICALLY CONFLICTED

9     FIRM, THE CLAPP MORONEY FIRM, AND IN THAT WE ASKED FOR THE

10    COURT'S PERMISSION, OR JUST TO BE CLEAR, IF WE'RE ALLOWED TO

11    GET INTO THAT FOR THE PURPOSES OF DESCRIBING THAT AWARENESS OR

12    MAKING IT CLEAR TO THE JURY.

13         I GUESS I WOULD ASK THE SAME FOR THIS BRIEFING.  IN ORDER

14    TO TELL THAT STORY, WE WOULD NEED TO NECESSARILY GET INTO THAT.

15         AND IF YOU WANT TO RESERVE THAT UNTIL WE GET TO THAT ISSUE

16    SPECIFICALLY, I JUST WANT TO MAKE THE COURT IS AWARE THAT WOULD

17    BE PART OF THAT BRIEFING.

18         THE COURT:  AND THAT'S PLAINTIFF'S 7, I THINK.  I

19    THINK IT RELATES TO PLAINTIFF'S 7.

20         MR. O'HARA:  YES.

21         MR. BROWN:  CAN I GRAB MY NOTES VERY QUICKLY?

22         THE COURT:  YES.  SURE.  GO RIGHT AHEAD.

23         THIS IS SOMEWHAT TANGENTIALLY RELATED TO -- I DON'T WANT

24    TO INCREASE THE SPIDER WEB HERE, BUT THIS IS SOMEWHAT

25    TANGENTIALLY RELATED TO PLAINTIFF'S 17, MS. TAYLOR AND

1    MS. PAYNE'S TESTIMONY AS WELL, HOW BROAD THIS GOES.  AND LET ME

2    TALK ABOUT THOSE FOR A MOMENT.

3        I GUESS -- WILL THEY BE CALLED, MS. TAYLOR AND MS. PAYNE,

4    ARE THEY BEING CALLED TO GIVE OPINION TESTIMONY?  IS THAT --

5            MR. O'HARA:  NO, YOUR HONOR.  NO.

6            THE COURT:  ARE THEY -- ARE YOU GOING TO DECLARE

7    THEM AND TRY TO HAVE THEM FOUND AS EXPERTS?

8            MR. O'HARA:  NO.  MS. PAYNE WAS AN ADJUSTOR FOR

9    TRAVELERS.  SHE ADJUSTED A CLAIM IMMEDIATELY BEFORE THE DAVIS

10   CASE AND IN A CASE CALLED COLLINS.  SHE IS UNREACHABLE BY

11   SUBPOENA IN THIS CASE, AND SHE'S IN IDAHO.  WE DEPOSED HER BY

12   VIDEOTAPE, AND WE PROPOSE THAT HER TESTIMONY WOULD COME IN BY

13   VIDEOTAPE.

14           THE COURT:  AND WHAT IS THE RELEVANCE OF HER

15   TESTIMONY?

16           MR. O'HARA:  SHE DID -- THE FIRST APPOINTMENT BY

17   TRAVELERS OF THE CLAPP MORONEY FIRM WAS IN HER CASE IN JANUARY

18   OF 2013.  AND SHE MADE THE FIRST ASSESSMENT AS TO WHETHER OR

19   NOT THEY HAD A CONFLICT.  THERE'S E-MAILS FROM HER TO THE CLAPP

20   MORONEY FIRM.  THERE'S CLAIMS NOTES, AGAIN, HER THINKING.

21       AND WE DEPOSED HER AND ASKED HER WHAT SHE WAS THINKING

22   BECAUSE THERE WERE E-MAILS BACK AND FORTH BETWEEN HER AND THE

23   CLAPP MORONEY FIRM SAYING I DON'T KNOW IF I HAVE A CONFLICT IN

24   SOUTHERN CALIFORNIA, BUT I MIGHT HAVE ONE IN NORTHERN

25   CALIFORNIA, BUT LET'S SEE IF KB FIGHTS ABOUT IT.  THAT WAS THE

1    SUBSTANCE OF THE E-MAIL.  SHE TOOK THAT E-MAIL AND SAID I'LL

2    JUST GIVE IT A WHIRL, IN HER OWN WORDS, AND LET'S SEE IF WE CAN

3    BLOW IT BY KB.  SO THAT STARTED THE CLAPP APPOINTMENT.

4         SO THEN THERE WERE A BUNCH OF CLAPP APPOINTMENTS ON SIX,

5    EIGHT OTHER CASES RIGHT AROUND THAT TIME, ONE WHICH WAS DAVIS

6    IN MAY.  AND THERE ARE A LOT OF MEETINGS IN THE CLAIMS NOTICE

7    BETWEEN THE MANAGEMENT AND THE LEGAL TIME FROM TRAVELERS IN THE

8    JANUARY TO MAY PERIOD BUT THEY KEPT APPOINTING CLAPP, DESPITE

9    THE FACT THAT WE'RE REJECTING AND DESPITE THE FACT THAT WE'RE

10   WRITING LETTERS.

11              THE COURT:  SO THE NATURE OF HER TESTIMONY WILL BE

12   THAT SHE WAS EMPLOYED BY TRAVELERS AND SHE CONTINUALLY

13   APPOINTED CLAPP?

14              MR. O'HARA:  AND SHE HAD KNOWLEDGE AND AWARENESS OF

15   POTENTIAL CONFLICTS WITH CLAPP AND IGNORED THEM AND STILL

16   APPOINTED THEM AND WAS IN MEETINGS WITH MANAGERS REGARDING IT

17   AND MEETINGS WITH THE LEGAL DEPARTMENT AT TRAVELERS REGARDING

18   IT.

19        SO THE CLAIM WE DISAGREE ON THE FACTUAL BASIS WHETHER THEY

20   HAD KNOWLEDGE AND AWARENESS AND THEY SAY THEY DON'T, AND THAT'S

21   FOR THE JURY TO DECIDE.  WE HAVE A LOT OF EVIDENCE THAT THEY

22   DO.

23              THE COURT:  AND WHAT ABOUT MS. PAYNE'S TESTIMONY?

24              MR. O'HARA:  THAT'S MS. PAYNE.

25              THE COURT:  MS. TAYLOR?

1          MR. O'HARA:  SHE WOULD BE VERY LIMITED.  I THINK SHE

2     WAS WHAT THEY CALL THE "NAMED INSURED ADJUSTOR" ON THE DAVIS

3     CASE.

4          SO QUICKLY, YOUR HONOR.  WHEN YOU HAVE THE SUBCONTRACTOR,

5     NORCRAFT, AND THE NAMED INSURED IS NORCRAFT, AND WE'RE THE

6     ADDITIONAL INSURED.  AND SO THEY HAVE AN ADJUSTOR FOR NORCRAFT

7     AND AN ADJUSTOR FOR US.

8          DEBBIE TAYLOR WAS THE NAMED INSURED ADJUSTOR FOR NORCRAFT

9     IN THE ACTUAL DAVIS CASE.  AND THEN PAM COULORIS WAS THE

10     ADJUSTOR FOR KB.  AND WE DEPOSED HER, AND SHE HAS INFORMATION

11     ABOUT THE CONTRACTS AND THE GLASPY FIRM THAT ORIGINALLY GAVE

12     THE APPOINTMENT AND WHETHER THEY WERE COMPETENT.

13          THE COURT:  SHE IS GOING TO TESTIFY THAT THEY WERE

14     COMPETENT?

15          MR. O'HARA:  YES.  SHE APPOINTED THEM FOR TEN YEARS.

16          THE COURT:  SO WHEN I LOOKED AT THIS JUST MY

17     30,000-FEET QUESTION WAS, FIRST OF ALL, THE RELEVANCE AND

18     WHETHER IT'S OPINION TESTIMONY AND PROPER OPINION TESTIMONY IF

19     SHE'S GOING TO SAY IF SHE'S QUALIFIED TO GIVE AN OPINION AS TO

20     WHETHER OR NOT SOMEONE IS ETHICALLY CHALLENGED OR NOT, I DON'T

21     KNOW.

22          IS SHE GOING TO GIVE AN OPINION AS TO WHO SHE FELT WAS A

23     GOOD LAW FIRM VIS-A-VIS A POOR LAW FIRM OR CAN SHE TESTIFY

24     ABOUT WHAT SHE DID?

25          MR. O'HARA:  NO, YOUR HONOR.  SHE DOESN'T HAVE A LOT

1    OF INFORMATION ON THE CLAPP APPOINTMENT.  AT HER DEPOSITION, I

2    SHOULD ADD, WHEN SHE WAS DEPOSED SHE HAD JUST LEFT TRAVELERS.

3    SO SHE DIDN'T HAVE A LOT OF THINGS TO SAY ABOUT ANYTHING -- BUT

4    SHE SAID A FEW THINGS THAT ARE RELEVANT TO THE CASE, I THINK.

5        BUT HER TESTIMONY WOULD LAST -- WOULD BE VERY BRIEF AS

6    WOULD DEBBI PAYNE'S TESTIMONY.  THIS IS RELEVANT ON CORE ISSUES

7    IN THE CASE, BUT IT'S NOT GOING TO TAKE A LOT OF TIME.

8            MR. BROWN:  YOUR HONOR, I DON'T KNOW IF YOUR HONOR

9    HAS HAD A CHANCE TO READ KB'S OPPOSITION THAT THEY FILED

10   YESTERDAY.  I ACTUALLY ONLY LOOKED AT THEM THIS MORNING ON MY

11   PHONE.  SO I HAVE REVIEWED THEM VERY BRIEFLY.

12       BUT ESSENTIALLY IF I UNDERSTOOD THEIR OPPOSITION TO

13   TRAVELERS MOTION IN LIMINE NUMBER 17 AS TO DEBBIE TAYLOR, THEY

14   BASICALLY SAID THE TESTIMONY THAT SHE WOULD OFFER WAS THAT

15   GLASPY WAS DOING A GOOD JOB, BASICALLY TO COUNTER OR TO SUPPORT

16   THEIR BELIEF THAT TRAVELERS SHOULD NEVER REPLACE GLASPY.

17       BUT IF TRAVELERS HAS A RIGHT TO CONTROL THE DEFENSE, WHICH

18   I REALIZE IS AN ISSUE, BUT IF THEY DO, THEN THE REASON THAT

19   TRAVELERS DECIDED TO CHANGE FIRMS IS NOT RELEVANT.  THEY COULD

20   CHANGE FIRMS FOR NO REASON.

21       THE OTHER THING THAT THEY SAID WAS -- THE OTHER RELEVANT

22   INFORMATION THEY SAID DEBBIE TAYLOR WOULD HAVE WOULD BE WITH

23   REGARD TO THE SETTLEMENT NEGOTIATIONS, HOW THEY'RE NORMALLY

24   CONDUCTED, THE FACT THAT SHE WASN'T INCLUDED IN THEM, WHICH

25   NONE OF THAT IS RELEVANT.  THERE WAS A SETTLEMENT.  TRAVELERS

1    HAS A RIGHT TO SETTLE.

2           MR. O'HARA:  SO TWO ISSUES, BUT IT COMES BACK TO THE

3    SAME THING.  EVEN TRAVELERS'S EXPERT ON INSURANCE AND BAD

4    FAITH, MR. COLE, ULTIMATELY ADMITTED, HE STARTED TO SAY IN HIS

5    REPORT IN HIS DEPOSITION WE HAVE AN UNFETTERED ABSOLUTE RIGHT

6    TO CONTROL THE DEFENSE.  IT'S UNFETTERED AND IT'S ABSOLUTE.

7           AND I SAID LET'S TALK ABOUT UNFETTERED.  THAT'S A STRONG

8    WORD, "UNFETTERED."  UNCONSTRAINED, UNLIMITED.  DO YOU REALLY

9    MEAN IT'S UNFETTERED, YOU COULD DO ANYTHING YOU WANT?  YOU CAN

10   ASSIGN COUNSEL ONCE A WEEK FOR A YEAR?

11          WELL, WELL, YES, WE CAN.  AND EVENTUALLY HE BACKED OFF AND

12   SAID WE WOULD NEVER DO THAT.

13          SO IT'S NOT UNFETTERED.  IT'S CONSTRAINED AND LIMITED BY

14   THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.  YOU HAVE

15   TO DO IT IN A REASONABLE MANNER.  YOU HAVE THAT RIGHT.  WE

16   DON'T DENY THAT RIGHT.  THAT'S A RIGHT IN THE POLICY.

17          THEY SAY WE DENY IT.  NO, THEY HAVE THE RIGHT TO CONTROL

18   THE DEFENSE BUT IT HAS TO BE EXERCISED IN A REASONABLE MANNER

19   CONSISTENT WITH THE IMPLIED COVENANT OF GOOD FAITH AND FAIR

20   DEALING.

21          SO IF YOU KICK DEBBI PAYNE OR THE GLASPY FIRM OFF FOR NO

22   REASON, IS THAT GOOD FAITH?

23          THE COURT:  SO I THINK I HEAR YOUR CLOSING ARGUMENTS

24   HERE.  BUT GETTING BACK TO THE ISSUE ABOUT WHETHER OR NOT THESE

25   WITNESSES CAN TESTIFY AND WHAT CAN THEY TESTIFY ABOUT, WHEN I

1    READ THIS I THOUGHT IT SOUNDED TO ME LIKE OPINION TESTIMONY,

2    AND THAT'S WHAT I WAS CONCERNED WITH WHETHER OR NOT THEIR

3    OPINIONS WERE RELEVANT IF THEY'RE NOT 702 EXPERTS.

4         IF THEY HAVE -- I SUPPOSE WHAT I WOULD SAY IS BASED ON

5    WHAT YOU TOLD ME HERE, MR. O'HARA, THERE MIGHT BE SOME

6    RELEVANCE TO THIS BUT SUCH THAT I WOULDN'T GRANT THE MOTION NOW

7    TO EXCLUDE THEM.  BUT I DO HAVE SOME CONCERNS ABOUT WHAT

8    THEY'RE GOING TO BE ABLE TO SAY.  I'M NOT GOING TO ALLOW THEM

9    TO GIVE AN OPINION WITHOUT PROPER FOUNDATION --

10              MR. O'HARA:  UNDERSTOOD, YOUR HONOR.

11              THE COURT:  -- THIS WAS UNETHICAL, THIS WAS A GOOD

12   LAWYER, ET CETERA, ET CETERA.

13              MR. O'HARA:  ABSOLUTELY, ABSOLUTELY.  THAT WAS NEVER

14   IN OUR MIND, AND I SEE HOW THE COURT COULD HAVE PICKED THAT UP.

15   IT WAS REALLY MORE OF FACTS WHAT HAPPENED ON THIS DATE AND WHAT

16   DID YOU KNOW ON THIS DATE.

17              THE COURT:  SHE CAN COME IN AND THESE WITNESSES CAN

18   SAY I WAS EMPLOYED, PART OF MY JOB WAS X, AND IN FURTHERANCE OF

19   MY JOB I DID THIS.  WHAT ARE YOUR DUTIES AND OBLIGATIONS?  X.

20   WHAT DID YOU DO?  DID YOU RECEIVE THIS DOCUMENT?  YES.  WHAT

21   DID YOU DO WITH IT?  Y.

22              MR. O'HARA:  CORRECT.

23              THE COURT:  I MEAN, THAT'S A JOB DESCRIPTION, I

24   SUPPOSE.  BUT GOING FURTHER TO OFFER ANYTHING ELSE ABOUT

25   OPINIONS ABOUT THINGS, THEY CAN'T TESTIFY ABOUT OPINIONS.

1          MR. O'HARA:  I AGREE, YOUR HONOR, AND THAT WAS NOT

2     OUR INTENTION.  WE WOULD NOT DO THAT.

3          THE COURT:  DO YOU WANT TO BE HEARD ON THIS?

4          MR. BROWN:  YES, YOUR HONOR.  ALSO WITH REGARD TO

5     DEBBI PAYNE, I DID NOT ADDRESS HER.  BUT DEBBI PAYNE WAS THE

6     ADDITIONAL INSURED ADJUSTOR IN ANOTHER CASE, THE COLLINS CASE.

7          AND WHAT MR. O'HARA IS TALKING ABOUT IN TERMS OF A

8     CONFLICT THAT WAS BROUGHT TO HER ATTENTION BY KB, THAT WAS

9     EVALUATED AND DETERMINED THERE WAS NO CONFLICT.

10         ULTIMATELY, IN THAT COLLINS CASE KB BROUGHT UP ANOTHER

11    CONFLICT, WHICH WAS THE MAXION CASE, WHICH IS THE SAME CONFLICT

12    THAT THEY RAISED IN THIS.  AND THEY RAISE THAT AT THE SAME TIME

13    IN BOTH DAVIS AND COLLINS.

14         NOW, BASED ON THE ALLEGATION THAT THERE WAS A CONFLICT IN

15    THE MAXION CASE, KB SUED WITH REGARD TO COLLINS AND CLAIMED BAD

16    FAITH.  AND THE CENTRAL DISTRICT GRANTED SUMMARY JUDGMENT TO

17    TRAVELERS AND SAID AS A MATTER OF LAW THERE'S NO BAD FAITH.

18         EVEN IF THERE WAS A CONFLICT, TRAVELERS HAS A RIGHT TO

19    CONTROL THE DEFENSE, AND THEY CAN CURE THAT BY APPOINTING NEW

20    COUNSEL.

21         SO THEY WANT TO GET HER TESTIMONY IN TO BASICALLY

22    RELITIGATE ISSUES THAT WERE ALREADY LITIGATED IN THE COLLINS

23    ACTION AGAINST THEM.

24          THE COURT:  SO YOU'RE SAYING THAT HER TESTIMONY IN

25    THIS CASE IS NOT RELEVANT?

1        MR. BROWN:  CORRECT, YOUR HONOR.

2        MR. O'HARA:  WELL, LET'S IDENTIFY AN ISSUE.

3    KNOWLEDGE AND AWARENESS.  HE SAID THAT WAS AN ISSUE, DID THEY

4    HAVE KNOWLEDGE AND AWARENESS?  SHE HAD KNOWLEDGE AND AWARENESS

5    BASED ON E-MAILS SHE EXCHANGED WITH THE CLAPP ATTORNEY IN 2013.

6        ONE THING I HAVEN'T TOLD THE COURT YET, IN ADDITION, IN

7    MARCH SHE SEEMED TO HAVE SOME DOUBTS ABOUT THAT APPOINTMENT IN

8    JANUARY, AND THERE WAS ANOTHER CASE THAT CAME AROUND AND SHE

9    WANTED TO APPOINT THE CLAPP ATTORNEY AGAIN AND SHE SAID MAYBE I

10   SHOULDN'T APPOINT AND MAYBE I SHOULD JUST GET SOMEBODY ELSE.

11   AND THEY WERE TALKING ABOUT CONFLICTS.  SHE SAID MAYBE THERE

12   ARE TOO MANY PROBLEMS, AND I SHOULD GET SOMEONE ELSE.

13       SHE ULTIMATELY DECIDED NOT TO, AND SHE WENT WITH CLAPP

14   AGAIN.  MULTIPLE CLAPP APPOINTMENTS.  SO THERE'S E-MAILS,

15   CLAIMS NOTES, AND TESTIMONY FROM DEBBI PAYNE ON THE DIRECT

16   ISSUE OF WHAT SHE KNEW, AND WHAT TRAVELERS KNEW, WHEN THEY KNEW

17   IT, AND WHAT THE MANAGEMENT KNEW, AND WHAT THE LEGAL GROUP

18   KNEW.

19       AND THERE IS GOING TO BE TESTIMONY THAT THE LEGAL GROUP IS

20   BROUGHT IN OFTEN IN THESE CASES TO LOOK AT DECISIONS ON

21   COUNSEL, LOOK AT THIS ISSUE, SHOULD WE GO WITH CLAPP?  SHOULD

22   WE NOT GO WITH CLAPP?

23       SO THAT'S ALL SHE WOULD TESTIFY TO.  IT'S FACTUAL ISSUES

24   BASED ON THE E-MAILS AND THE CLAIMS NOTES.

25           THE COURT:  OKAY.  WELL, LET ME INDICATE THAT I'M

1    NOT GOING TO, AS TO PAYNE AND TAYLOR, I WON'T ENTIRELY EXCLUDE

2    THEM AT THIS POINT BUT PRIOR TO THEIR TESTIMONY WE'LL PROBABLY

3    HAVE ANOTHER DISCUSSION ABOUT WHAT IS IT THAT YOU INTEND TO

4    EXAMINE THEM ON?

5              MR. O'HARA:  YES, YOUR HONOR.  AND MS. PAYNE WILL BE

6    BY VIDEO DEPO SO WE'LL BOTH TRY TO AGREE ON EXCERPTS AND THEN

7    PRESENT THAT TO THE COURT.

8              THE COURT:  OKAY.  AND I'LL -- WE'LL HAVE A

9    DISCUSSION AS TO THE NATURE AND TYPE OF TESTIMONY THAT YOU'RE

10   SEEKING TO ELICIT FROM THEM, AND THEN I'LL MAKE A RULING AS TO

11   WHETHER OR NOT THAT'S RELEVANT AT THE TIME OR ANY OTHER

12   OBJECTIONS.  SO I GUESS THIS IS RESERVED THEN FOR THE TRIAL AS

13   TO TAYLOR AND PAYNE.

14        I THINK I EXPRESSED MY CONCERN ABOUT THAT.  AND I THINK

15   YOU UNDERSTAND THAT.

16        THERE WAS ANOTHER MOTION GOING FROM THE TOP AGAIN.  LET'S

17   SEE, THE BRANDT FEES YOU'RE GOING TO -- PLAINTIFF'S 14 WAS THE

18   DURACITE, I THINK IT WAS, PRECLUDE EVIDENCE REGARDING

19   DEFENDANT'S TENDER OF ITS DEFENSE UNDER POLICIES ISSUED TO

20   DURACITE.

21        AND WHAT IS THE RELEVANCE OF THIS INFORMATION?  MR. BROWN,

22   THIS IS YOUR MOTION.

23              MR. BROWN:  CORRECT, YOUR HONOR.  AND OUR ARGUMENT

24   IS THERE IS NO RELEVANCE.  THIS COURT SPECIFICALLY PROHIBITED

25   ANY DISCOVERY AS TO THE DURACITE TENDERS BECAUSE THE CLAIM --

1    THERE IS NO CLAIM DIRECTED TO THE DURACITE POLICIES IN THIS

2    ACTION.

3         AND AS I UNDERSTAND KB'S ARGUMENT, IT IS THAT THE WHOLE

4    WHITE VERSUS WESTERN TITLE THAT YOU THINK YOU LOOK AT THE

5    TOTALITY AND REGARDLESS OF THE FACT THAT THE DURACITE TENDER IS

6    NOT AT ISSUE IN THIS LITIGATION, YOU SHOULD LOOK AT THIS.  THE

7    JURY SHOULD LOOK AT THIS.

8         MR. O'HARA:  I THINK THE DISPUTE WE HAVE HERE IS

9    THAT THE COURT'S DISCOVERY RULING WAS I'M NOT GOING TO LET YOU

10   TAKE SOME DEPOSITIONS AND DO SOME ADDITIONAL QUESTIONING ON THE

11   DURACITE ISSUE.  I THINK YOU HAVE ENOUGH INFORMATION ALREADY IN

12   YOUR FILE.  I THINK THAT WAS THE GIST OF THE RULING.

13        AND I THINK THAT WAS PROBABLY CORRECT.  SO WE DIDN'T -- WE

14   WEREN'T ALLOWED TO ASK ABOUT THE DURACITE, AND WE DIDN'T.

15        BUT TO TAKE THAT RULING ON THE DISCOVERY ISSUE AND

16   LIMITING THE QUESTIONING OF THE DEPOS AND SAY, THE COURT SAID,

17   JUDGE GREWAL SAID DURACITE IS OUT FOR THE TRIAL.  AND I THINK

18   THAT'S AN OVERBROAD INTERPRETATION.  THAT'S THE BASIS FOR OUR

19   OPPOSITION.

20        I DON'T SEE DURACITE BEING A BIG ISSUE, YOUR HONOR.  I

21   DON'T SEE IT TAKING UP ANY TIME, BUT IT MAY BE NECESSARY TO

22   MAKE THINGS MAKE SENSE TO THE JURY TO EXPLAIN WHO DURACITE IS

23   AND IF IT COMES UP IN THE DOCUMENT.  BUT IT'S NOT A FOCUS OF

24   THE CASE, AND IT'S NOT A BIG ISSUE.

25        THE COURT:  IT SEEMS TO ME THAT IF I LOOK AT 403

THEN IT MIGHT RAISE ISSUES THAT COULD CONFUSE A JURY IN MATTERS

THAT ARE NOT INVOLVED IN THIS CASE, IT JUST SOUNDS LIKE IT'S

SOME TANGENTIAL MATTER.  AND I'M INCLINED TO GRANT THE MOTION

UNDER 403 INDICATING THAT THE TIME THAT IT WOULD CONSUME AND

THE CONFUSION IT WOULD IMPART ON THE JURY FAR OUTWEIGHS ANY

PROBATIVE VALUE THAT THIS EVIDENCE MIGHT HAVE.

     MR. O'HARA:  I UNDERSTAND THE COURT'S THINKING ON

THAT.  AND I UNDERSTAND THAT IT WOULD GO BOTH WAYS, THOUGH.  SO

THEY'RE BRINGING THE MOTION TO PRECLUDE ANY DURACITE EVIDENCE

SO THEY CAN'T BRING ANY DURACITE EVIDENCE IN EITHER.

     THE COURT:  I THINK THAT'S USUALLY HOW IT WORKS.

     MR. BROWN:  YEAH.

     MR. O'HARA:  OKAY.  JUST CONFIRMING.

     THE COURT:  OKAY.  SO I'LL GRANT PLAINTIFF'S 14.

LET'S SEE.  PLAINTIFF'S 16 IS EFFORTS TO SETTLE THE DAVIS

ACTION.  AND I THINK THE PLAINTIFF IS SEEKING TO PRECLUDE

EVIDENCE AND ARGUMENTS CITING PLAINTIFF'S EFFORTS TO SETTLE THE

DAVIS ACTION.  AND I THINK YOUR RESPONSE WAS THAT YOU HAVEN'T

-- PLAINTIFF HASN'T IDENTIFIED ANY SPECIFIC EVIDENCE THAT

THEY'RE SEEKING TO LIMIT.

AND I THINK, MR. BROWN, DO YOU WANT TO HELP US WITH THIS?

     MR. BROWN:  YEAH, YOUR HONOR.  I MEAN, ESSENTIALLY

AS WE'VE BEEN GOING THROUGH THE MEET AND CONFER PROCESS LEADING

UP TO THE PRETRIAL CONFERENCE IT BECAME OBVIOUS, AND ALSO IN

THE SACRAMENTO CASE THAT I'M IN, THAT ONE OF THE ARGUMENTS

1    NEWMEYER & DILLION IS ADVANCING IS THAT REGARDLESS OF THE FACT

2    THAT THE COURT HAS ALREADY FOUND THAT WE HAD THE RIGHT TO

3    SETTLE, WE DID SETTLE, IT TERMINATED THE DUTY TO DEFEND.  THE

4    WAY WE SETTLED CAN STILL BE A BASIS OF LIABILITY, AND WE

5    TOTALLY DISAGREE WITH THAT.

6        I MEAN, TRAVELERS EXERCISING A RIGHT IT HAD UNDER THE

7    CONTRACT, DOING IT VALIDLY AND TERMINATING THE DUTY TO DEFEND

8    CANNOT BE A BASIS FOR LIABILITY AGAINST TRAVELERS.

9        AND IF I UNDERSTAND KB WANTS TO PRESENT EVIDENCE ABOUT

10    SETTLEMENT NEGOTIATIONS BACK AND FORTH BETWEEN TRAVELERS AND

11    THE HOMEOWNERS' COUNSEL AND WHETHER THE OFFER THAT TRAVELERS

12    MADE OR THE AMOUNT IT ULTIMATELY PAID WAS TOO MUCH.  ALL OF

13    THAT IS IRRELEVANT.

14        THE COURT:  IS THIS SEEKING -- WHAT I HEAR MR. BROWN

15    SAYING IS THAT YOU'RE SEEKING TO TEST THE MERITS OF THE

16    SETTLEMENT.

17        MR. O'HARA:  NO, YOUR HONOR.  THE CLAIMS HANDLING

18    PRACTICES AND PROCEDURES, THE GENERALLY ACCEPTED CLAIMS

19    HANDLING PRACTICES AND PROCEDURES.

20        ARE THEY CONSISTENT WITH TRAVELERS'S OBLIGATIONS IN THE

21    COMMUNITY WHEN IT'S GENERALLY ACCEPTED?  ARE THEY CONSISTENT

22    WITH THEIR OWN INTERNAL POLICIES AND GUIDELINES?

23        THE COURT:  SO WHAT WOULD BE THE EVIDENCE THAT --

24        MR. O'HARA:  I'LL GIVE YOU A FLAVOR FOR SOME OF IT.

25        THE COURT:  YEAH.

1          MR. O'HARA:  IT GOES FROM THE DATE THE CLAIM STARTS

2     UNTIL, YOU KNOW, THE COURT HAS ORDERED THAT THEY SETTLED.  IT'S

3     A LONG PERIOD OF TIME.

4          WE HAVE EVIDENCE THAT BEFORE WE EVEN TENDERED THE DEFENSE,

5     THEY WERE TRYING TO SETTLE IT OUT AS A PREEMPTIVE MEASURE SO

6     THAT THEY DIDN'T HAVE TO DEFEND US.  AND THEY WERE OFFERING

7     THREE TO FOUR TIMES THE VALUE OF THE ULTIMATE SETTLEMENT THAT

8     THEY SETTLED FOR.  THEY'RE THROWING MONEY AT THE PLAINTIFF'S

9     LAWYER SECRETLY WITH NO NOTICE TO ANYONE AND TRYING TO SETTLE

10    OUT THE CLAIMS SO THAT THEY DIDN'T HAVE A DUTY TO DEFEND US.

11         NOW, I'M NOT SAYING THAT THEY DON'T HAVE THE RIGHT AND

12    DUTY TO SETTLE.  OBVIOUSLY THEY DO, JUST LIKE THEY HAVE A RIGHT

13    TO CONTROL THE DEFENSE, BUT IT HAS TO BE EXERCISED IN A

14    REASONABLE MANNER CONSISTENT WITH CLAIMS HANDLING.

15         SO THEIR HEAD OF THE NATIONAL CLAIMS BOARD, AND HE'S ON

16    VIDEO DEPO, THAT THE DUTY TO DEFEND IS BROADER THAN THE DUTY

17    INDEMNIFY.  THE DUTY TO DEFEND IS MORE IMPORTANT THAN THE DUTY

18    TO INDEMNIFY.

19              THE COURT:  IS THIS THE EVIDENCE THAT THIS SPEAKS

20    TO, THIS WITNESS?

21              MR. O'HARA:  YES.  HE WILL TESTIFY THAT -- HE WILL

22    ADMIT THAT INSUREDS WHEN THEY GET INSURED UNDER A TRAVELERS'S

23    POLICY, THE MOST IMPORTANT THING FOR THEM IS THE DEFENSE.  IT

24    OFTEN PALES IN COMPARISON TO THE INDEMNITY PAYMENT.  IT'S PART

25    OF THE RISK MANAGEMENT PROGRAM TO GET THE INSURANCE THROUGH

1    NORCRAFT.  THAT WAS KB'S PROGRAM BECAUSE THESE CASES ARE COMING

2    AT, THESE CONSTRUCTION DEFECT CASES ARE COMING AT YOU AND YOU

3    KNOW THEY'RE COMING AT YOU.

4         THE COURT:  WHAT IS THE EVIDENCE HERE?  WHAT IS IT?

5    WHO ARE YOU GOING TO CALL?  ARE YOU CALLING WITNESSES?

6         MR. O'HARA:  WELL, WE WOULD CALL MR. KEITH ANDERSON

7    IS THE HEAD OF NATIONAL CONSTRUCTION DEFECT CLAIMS FOR

8    TRAVELERS.  AND HE HAS TESTIFIED ON VIDEO, AND HE WOULD SAY

9    THAT THE DUTY TO DEFEND IS BROAD, THAT THE DUTY -- THE DEFENSE

10   COSTS ARE OFTEN ARE MUCH LARGER THAN THE INDEMNITY PAYMENTS.

11        WE'LL HAVE AN E-MAIL THAT WAS NOT PRODUCED IN DISCOVERY BY

12   TRAVELERS BUT THAT WE WERE ABLE TO GET FROM ANOTHER SOURCE IN

13   ANOTHER CASE THAT SHOWS THAT TRAVELERS WAS TRYING TO SETTLE THE

14   DAVIS CASE SECRETLY THROUGH COMMUNICATIONS WITH THE PLAINTIFF'S

15   LAWYER WITHOUT ANY NOTICE TO KB, KB'S LAWYER, TRAVELERS'S

16   ADJUSTOR, NO ONE.  IT WAS ONLY THE LAWYERS FOR TRAVELERS AND

17   PLAINTIFF'S COUNSEL COMMUNICATING.  EVERYONE ELSE WAS CUT OUT

18   OF THE LOOP.

19        AND THEY WERE TRYING TO DO THAT BEFORE WE EVEN TENDERED.

20   UNSUCCESSFUL AT THAT TIME.  BUT WE'LL SHOW GUIDELINES FROM

21   TRAVELERS THAT SAY UNMERITORIOUS CLAIMS SHOULD NOT BE PAID.

22   WE'LL SHOW GUIDELINES FROM TRAVELERS SAYING CASES SHOULD BE

23   INVESTIGATED TO DETERMINE WHAT THEY'RE WORTH BECAUSE WHEN YOU

24   GET INSURANCE, YOU GET INSURANCE FOR CLAIMS AGAINST GROUNDLESS,

25   FALSE, FRAUDULENT CLAIMS THAT YOU HAVE A DEFENSE, YOU GET A

1       DEFENSE AGAINST THOSE CLAIMS.  SO YOU SHOULDN'T PAY OUT CLAIMS

2       UNLESS YOU INVESTIGATE THEM AND FIND OUT IF THERE IS SOME MERIT

3       TO THEM.

4            NOW, YOU CAN BALANCE --

5            THE COURT:  SO YOU'RE GOING TO PUT ON -- YOUR

6       EVIDENCE IS GOING TO BE TRAVELERS, WHATEVER, THEIR CLAIMS

7       MANUAL, WHATEVER IT IS, THEIR INTERNAL PROCEDURES, THEIR

8       TRAINING MATERIALS?

9            MR. O'HARA:  YES.

10           THE COURT:  AND YOU'RE ALSO, FOR PURPOSES OF THIS IN

11      LIMINE MOTION, YOU'RE GOING TO CALL ANOTHER WITNESS WHO WILL

12      TESTIFY ABOUT ONE OTHER CASE, THE DAVIS CASE, AND HOW TRAVELERS

13      ALLEGEDLY DID NOT FOLLOW THEIR MANUALS AND TRAINING AND

14      PROTOCOLS?

15           MR. O'HARA:  CORRECT.  WE'LL PUT THE -- WE CAN GET

16      THIS THROUGH MR. CREERS, THE REGIONAL MANAGER; AND WE CAN GET

17      IT THROUGH PAM COULORIS, WHO IS THE ADJUSTOR ON THE DAVIS CASE;

18      AND MR. ANDERSON, WHO IS THE HEAD OF CLAIMS.

19           THE COURT:  SO THEY'RE GOING TO TESTIFY, IN ESSENCE,

20      ABOUT THE DAVIS SETTLEMENT, IS THAT IT?  OR THE FACT THAT THE

21      DAVIS LAWYERS FROM TRAVELERS WERE TRYING TO SETTLE THE DAVIS

22      CASE OUTSIDE OF THE KNOWLEDGE OF ANYONE ELSE?  IS THAT WHAT

23      THEY'RE GOING TO SAY?

24           MR. O'HARA:  WELL, WE HAVE THE E-MAIL THAT WE GOT

25      THROUGH ANOTHER CASE THAT WASN'T PRODUCED IN OUR CASE THAT

1   SHOWS THAT NEGOTIATIONS WERE GOING ON SECRETLY BEFORE THE

2   TENDER.  SO WE HAVE THAT E-MAIL AS EVIDENCE.

3       WE HAVE THE TESTIMONY OF MR. ANDERSON I TOLD YOU ABOUT.

4   WE HAVE THE TESTIMONY, WHICH WILL BE CORROBORATED BY

5   MR. CREERS, THAT, YEAH, WE SHOULDN'T REALLY PAY OUT CLAIMS

6   BEFORE WE KNOW WHAT IS GOING ON.  WE SHOULD AT LEAST SEE THE

7   DEFECT LIST, GET SOME EXPERT INPUT, AND FIND OUT IF THERE IS

8   MERIT TO THE CLAIMS.

9       SO WE HAVE TESTIMONY FROM TRAVELERS'S OWN PEOPLE ABOUT HOW

10  TO HANDLE A CLAIM PROPERLY AND HOW TO SETTLE A CLAIM PROPERLY.

11          THE COURT:  RIGHT.  RIGHT.

12          MR. O'HARA:  AND WE CAN SHOW THAT THEY DIDN'T FOLLOW

13  THEIR OWN PROCEDURES.

14          THE COURT:  THAT'S THE SECOND PART.  I UNDERSTAND

15  YOU HAVE DOCUMENTATION AND YOU'VE GOT WITNESSES THAT WILL

16  TESTIFY TO TRAVELERS'S PROTOCOL AND WHAT THEY'RE SUPPOSED TO

17  DO.  AND THE SECOND PART IS THE BREACH, I SUPPOSE, AND THE LACK

18  OF FOLLOWING UP.

19      WHAT IS THAT EVIDENCE?  THAT'S THE PHONE?

20          MR. O'HARA:  THE E-MAIL IS ACTUALLY FROM MR. BROWN'S

21  FIRM TO THE PLAINTIFF'S LAWYER TRYING -- TALKING ABOUT TRYING

22  TO SETTLE THE CLAIM BEFORE WE EVEN TENDERED IT.

23          THE COURT:  IS MR. BROWN A SIGNATORY TO THE E-MAIL?

24  IS HIS NAME ON ANY OF THESE?

25          MR. O'HARA:  NO, HE WAS NOT.

```
 1          THE COURT:  THAT RAISES A QUESTION I WANT TO TALK
 2   ABOUT AS TO WHETHER OR NOT EITHER OF YOUR FIRMS ARE GOING TO BE
 3   WITNESSES IN THIS CASE.  THAT LOOMS LARGE IN MY MIND HERE.
 4          MR. O'HARA:  I'M HOPING NOT.
 5          THE COURT:  LET'S FINISH THIS CONVERSATION.
 6       MR. BROWN.
 7          MR. BROWN:  THIS IS EXACTLY WHAT I SAID THE MOTION
 8   WAS ABOUT, AND THESE ARE ALL IRRELEVANT, ALL OF THESE ISSUES.
 9          THERE IS NO -- WHAT WE'RE TRYING, WITH REGARD TO KB'S
10   CLAIMS FOR DAMAGES, ARE BREACH OF CONTRACT AND BAD FAITH.
11          YOU CAN'T HAVE BAD FAITH WITHOUT A BREACH OF CONTRACT.
12          THERE IS NO POLICY BENEFIT THAT KB GETS TO APPROVE OR
13   PARTICIPATE IN SETTLEMENT NEGOTIATIONS.  THERE'S NO POLICY
14   BENEFIT THAT SAYS THAT WE CANNOT HAVE SETTLEMENT NEGOTIATIONS
15   DIRECTLY WITH PLAINTIFF'S COUNSEL OR THAT WE CANNOT SETTLE.
16          WE HAVE THE RIGHT UNDER THE POLICY AND UNDER CALIFORNIA
17   LAW TO SETTLE.  WE DID SETTLE AND TERMINATED THE DUTY TO
18   DEFEND.
19          AND KB KEEPS CHARACTERIZING IT AS THESE SECRET SETTLEMENT
20   NEGOTIATIONS BEHIND KB'S BACK, AND THAT'S JUST WRONG.
21          IT'S SETTLEMENT NEGOTIATIONS THAT THEY WEREN'T A PARTY TO.
22   IT'S NO DIFFERENT FROM IF I GET IN A CAR ACCIDENT, TENDER IT TO
23   MY INSURANCE CARRIER, AND THE INSURANCE CARRIER NEGOTIATES WITH
24   THE OTHER SIDE AND SETTLES.  THEY DON'T INCLUDE ME IN THAT.
25          THE COURT:  LET ME -- PARDON ME FOR INTERRUPTING,
```

1    MR. BROWN.  LET ME ASK THIS, DO YOU FEEL THAT YOUR BRIEFINGS AS

2    TO THE IN LIMINE MOTIONS ON PLAINTIFF'S 16, BOTH YOUR

3    AFFIRMATIVE AND RESPONSIVE BRIEFINGS, ARE SUFFICIENT?

4          MR. BROWN:  I THINK SO, YOUR HONOR.  BUT IF IT

5    WOULD --

6          THE COURT:  DO YOU NEED TO ADD ANYTHING ELSE?  DO

7    YOU WISH TO ADD ANYTHING ELSE?

8     WHAT I'M LEARNING HERE IS A LITTLE BIT THE SCOPE OF THIS

9    EVIDENCE THAT YOU'RE INTENDING TO OFFER --

10         MR. O'HARA:  RIGHT.

11         THE COURT:  -- AGAIN, IT'S NOT OPINION TESTIMONY,

12    IT'S FACTUAL TESTIMONY ABOUT CERTAIN THINGS THAT HAPPENED.

13     THE QUESTION THAT I HAVE IS WHETHER OR NOT THAT'S LEGALLY

14    RELEVANT TAKING MR. BROWN'S POINT?

15         MR. O'HARA:  RIGHT.

16         THE COURT:  AND I WANT TO DO SOME -- I'M GOING TO

17    RESERVE THIS, AND I WANT TO LOOK AT THIS SOME MORE TO SEE

18    WHETHER OR NOT IT IS.

19         MR. O'HARA:  UNDERSTOOD.  CAN I JUST BRIEFLY RESPOND

20    ON THE LAST POINT?

21         THE COURT:  SURE.

22         MR. O'HARA:  I THINK MR. BROWN WAS SAYING THAT IT'S

23    NOT RELEVANT BECAUSE TRAVELERS CAN SETTLE WHEREVER THEY WANT

24    SECRETLY, NOT SECRETLY, AND WE'RE JUST MISCHARACTERIZING IT.

25     BUT WE PUT IN THE TESTIMONY OF DEBBIE TAYLOR HERE AND I

1    SUMMARIZED IT FOR YOUR HONOR.  SHE WAS WITH TRAVELERS FOR

2    37 YEARS.  SHE'S BACK AT TRAVELERS NOW.  SHE WAS THE NORCRAFT

3    ADJUSTOR FOR THE LAST SIX YEARS.  SHE WAS INVOLVED IN EVERY

4    SINGLE NORCRAFT.

5              THE COURT:  I GET IT.  I UNDERSTAND.

6              MR. O'HARA:  AND SHE SAID IT'S UNPRECEDENTED.  SHE

7    SAID I WAS INVOLVED IN EVERY SINGLE SETTLEMENT.  I'M THE

8    ADJUSTOR.  I'M THE POINT PERSON.  THERE'S NEVER BEEN A NORCRAFT

9    CASE THAT HAS SETTLED WITHOUT MY INVOLVEMENT.

10         AND I SAID WOULD YOU BE SURPRISED TO LEARN THAT THERE HAVE

11   BEEN SETTLEMENTS WITHOUT YOUR INVOLVEMENT?

12         SHE SAID I DON'T THINK THAT HAS HAPPENED.

13         WELL, I HAVE EVIDENCE IT IS.  WOULD THAT SURPRISE YOU?

14         AND SHE SAID NOTHING SURPRISES ME ANYMORE.

15         SO IT WAS A NEW PROCESS AND IT WAS A NEW APPROACH THAT

16   TRAVELERS TOOK CUTTING OUT THEIR OWN ADJUSTORS, NAMED INSURED,

17   ADDITIONAL INSURED ADJUSTOR, AND CUTTING OUT THE LAWYER FOR KB,

18   AND CUTTING OUT EVERYONE.

19              THE COURT:  I THINK FROM THE FLAVOR OF THE MOTIONS

20   I'VE READ AND YOUR VARIOUS PLEADINGS, MY SENSE IS THAT YOUR

21   POSITION, MR. O'HARA, IS THAT I DON'T WANT TO USE THE WORD

22   "CONSPIRACY," BUT AT LEAST THERE'S BEEN A SIGNIFICANT CHANGE IN

23   POLICIES AND PROCEDURES SUCH THAT IT AFFECTS AND ERRS TO THE

24   DETRIMENT OF YOUR CLIENT.  AND YOU HAVE SUSPICIONS ABOUT THAT.

25   SO I APPRECIATE THAT.

1      D4.  I THINK -- LET ME MOVE TO D4.  I THINK WE TALKED

2      ABOUT THIS ALREADY.  THIS WAS RELATED TO PLAINTIFF'S 9, I

3      THINK, IF I'M NOT MISTAKEN.

4              MR. O'HARA:  THIS IS THE BILLING FRAUD.

5              THE COURT:  YES.  AND YOU'RE GOING TO INCLUDE THAT

6      IN THE DISCUSSION, I THINK, ON THE BRIEFS I THINK.  THAT'S WHAT

7      YOU'RE GOING TO DO WITH PLAINTIFF'S 9.

8          BUT I THINK I ASKED YOU IF THIS WAS RELATED AND YOU SAID

9      IT WASN'T, I THINK.

10             MR. O'HARA:  I DON'T THINK IT IS RELATED, THE BRANDT

11     FEES.

12             MR. BROWN:  VERY TANGENTIALLY, YOUR HONOR.  I THINK

13     IT REALLY ISN'T.

14             THE COURT:  OKAY.  SO WHAT IS THE NATURE OF THIS

15     MOTION THEN, MR. O'HARA?

16             MR. O'HARA:  YOUR HONOR, THERE'S AN ALLEGATION BY

17     TRAVELERS THAT FOUR YEARS AGO IN A CASE INVOLVING A DIFFERENT

18     CLIENT, CENTEX HOME, NOT KB HOME, THAT ONE OF THE LAWYERS IN

19     OUR OFFICE HAD TWO SETS OF BILLS AND ENGAGED IN BILLING FRAUD

20     IN A DIFFERENT ACTION FOUR YEARS AGO.

21         AND WE -- I COULD GIVE YOU A LONG DISCUSSION ABOUT WHY

22     THAT IS INCORRECT AND WHY THERE'S NOTHING INAPPROPRIATE, BUT

23     THAT'S THE ALLEGATION THAT THEY'RE MAKING.  AND THEY WANT TO

24     MAKE THAT ALLEGATION, I BELIEVE, IN THIS CASE IN FRONT OF THE

25     JURY.

1    AND IT'S SO REMOVED IN TIME, SPACE, AND RELEVANCE, AND

2    IT'S ATTACKING ME AND MR. STUDENKA AND OUR FIRM THAT WE THINK

3    ITS PROBATIVE VALUE IS GREATLY OUTWEIGHED BY THE PREJUDICE.

4    AND THAT'S THE BASIS FOR THE MOTION.

5              THE COURT:  OKAY.

6              MR. BROWN:  YOUR HONOR, FIRST, THAT'S A MISSTATEMENT

7    OF WHAT HAPPENED AND WHAT THE FACTS WOULD SHOW.  THERE ARE

8    THREE TYPES OF FRAUD THAT TRAVELERS DISCOVERED.

9         FIRST, IN 2007 THAT NEWMEYER & DILLION HAD SYSTEMICALLY

10   ENGAGED IN OVER A PERIOD OF TEN YEARS OVER HUNDREDS OF CASES.

11   ONE IS THAT THEY PREPARED TWO SETS OF BILLS.  ONE THAT WOULD GO

12   TO THE DEVELOPER/CLIENT AND ONE THAT WOULD GO TO THE INSURERS.

13   THE DEVELOPER/CLIENT GOT CHARGED ONE RATE.  BASICALLY IT WAS

14   ENTERED AS A LINE ITEM DISCOUNT.  THEY WOULD REDUCE ALL OF THE

15   ATTORNEY RATES DOWN TO 225 AN HOUR.

16        NOW, INSURANCE IS INDEMNITY BASED SO OUR OBLIGATION IS TO

17   PAY FEES THAT THE INSURED WOULD OTHERWISE HAVE TO PAY.  SO WE

18   SHOULD HAVE BEEN GETTING THOSE BILLS WITH THAT DISCOUNT.  WE

19   WEREN'T.

20        WE WERE GETTING BILLS UPWARDS OF TWO AND A HALF TIMES

21   THOSE RATES, AND THIS IS NOT JUST TRAVELERS.  EVERY INSURER IN

22   CALIFORNIA WAS GETTING THOSE BILLS FOR OVER TEN YEARS, AND WE

23   DISCOVERED IT IN 2011.

24        ADDITIONALLY, WE FOUND THAT AT LEAST IN ONE CASE

25   NEWMEYER & DILLION DID THIS THING WHERE THEY -- THERE WERE

1    EIGHT SHARES.  THERE WERE EIGHT ADDITIONAL INSURED CARRIERS WHO

2    HAD AGREED TO DEFEND AND THE FEES, THE DEFENSE FEES WERE BEING

3    SPLIT EQUALLY.  SO IT SHOULD HAVE BEEN SPLIT ONE-EIGHTH FOR

4    EACH CARRIER.

5         INSTEAD, NEWMEYER REACHED A SIDE DEAL, WHICH IS WHAT THEY

6    CALLED IT IN THEIR E-MAIL, WITH ONE OF THE CARRIERS THAT HAD

7    THREE SHARES AND THEY BILLED THEM FOR THREE SHARES AT A LOWER

8    RATE.  AND THEY CONCEALED THEIR EXISTENCE FROM THE OTHER

9    CARRIERS AND TOLD THE OTHER CARRIERS YOU GUYS PAY ONE-FIFTH

10   EACH.  AND NEWMEYER & DILLION COLLECTED MORE THAN 100 PERCENT

11   OF ITS FEES AT THE HIGHER FRAUDULENT RATE.  SO THEY BILLED OUT

12   ROUGHLY 130 PERCENT OF THEIR FEES, COLLECTED MORE THAN

13   100 PERCENT.

14        AND THEN THERE'S ONE OTHER TYPE OF FRAUD THAT WE

15   DISCOVERED ALL AROUND THE SAME TIME WHICH IS THAT WITH REGARD

16   TO THERE ARE IN SOME OF THESE CASES WHAT ARE CALLED WRAP HOMES

17   AND NON-WRAP HOMES.  AND WITHOUT GOING INTO THAT IN TOO MUCH

18   DETAIL, WHAT HAD HAPPENED WAS THE WRAP CARRIER HAD SAID

19   NEWMEYER & DILLION ORIGINALLY THROUGH THEIR THIRD PARTY

20   ADJUSTOR WHO SENDS OUT THEIR BILLING SAID, OKAY, THESE ARE THE

21   RESPONSIBILITY OF THE WRAP CARRIER, THESE ARE THE

22   RESPONSIBILITY OF THE NON-WRAP CARRIER.  AND THEY ONLY TENDERED

23   THE NON-WRAP HOMES TO TRAVELERS.

24        THE WRAP CARRIER SAID WE'RE NOT PAYING THIS.  WE'RE ONLY

25   GOING TO PAY 75 PERCENT OF IT.  SO IN E-MAILS BACK AND FORTH

1  BETWEEN THE THIRD PARTY ADJUSTOR AND NEWMEYER & DILLION THEY

2  SAID, ALL RIGHT, WE'LL JUST BILL THE OTHERS TO THE NON-WRAP

3  CARRIER.  WE'LL JUST BILL THAT OTHER 25 PERCENT THAT YOU'RE

4  REFUSING BACK TO THE NON-WRAP CARRIERS WHOM WE NEVER TENDERED

5  THESE HOMES TO.

6      SO GIVEN THAT BACKGROUND, THERE ARE TWO AREAS IN WHICH

7  THIS INFORMATION IS RELEVANT.  ONE IS WITH REGARD TO THE BRANDT

8  FEES, THE REASONABLENESS OF NEWMEYER & DILLION'S CLAIMED FEES.

9      THE SECOND AREA IS THAT NEWMEYER & DILLION -- THIS

10  ACTUALLY GOES BACK TO TRAVELERS'S MOTION IN LIMINE 17 WITH

11  REGARD TO DEBBIE TAYLOR THAT NEWMEYER & DILLION IS CLAIMING

12  THAT TRAVELERS SHOULD NOT HAVE FIRED THE GLASPY FIRM, THAT IT

13  WAS UNREASONABLE TO DO SO.

14      WELL, WHAT TRAVELERS DID WAS ONCE IT DISCOVERED THIS

15  PERVASIVE FRAUD BY NEWMEYER & DILLION, THEY SAID, OKAY, WHAT

16  DEVELOPERS DIRECTLY RETAIN NEWMEYER & DILLION?  KB HOME,

17  CENTEX, A COUPLE OF OTHER DEVELOPERS.  OKAY.  WE DON'T TRUST

18  ANY FIRMS THAT ARE DOING BUSINESS WITH THESE DEVELOPERS BECAUSE

19  THESE DEVELOPERS DO BUSINESS WITH NEWMEYER & DILLION.

20      SO WITH REGARD TO THOSE DEVELOPERS, WHICH INCLUDES KB

21  HOME, WE'RE REPLACING WHOEVER THEY PICKED BECAUSE GIVEN WHAT

22  NEWMEYER & DILLION DID, WE DON'T TRUST ANYBODY THESE GUYS

23  CHOSE.

24      SO IF NEWMEYER & DILLION WANTS TO MAKE A BIG DEAL ABOUT

25  OUR DECISION TO REPLACE GLASPY, THEN WE NEED TO BE ABLE TO GO

1  INTO WHY WE DECIDED TO REPLACE GLASPY.

2  THE COURT:  YOU KNOW, I FREQUENTLY SAY THERE'S A

3  DIFFERENCE BETWEEN TURNING THE KNOB AND OPENING THE DOOR, AND

4  THIS IS, AGAIN, ONE OF THOSE CIRCUMSTANCES, MR. O'HARA.

5  IT SOUNDS LIKE IF THE DOOR IS OPEN, THEN THIS EVIDENCE

6  MIGHT HAVE SOME RELEVANCE.

7  IF THE KNOB IS JUST TURNED, RELEVANCE IS DIMINISHED.

8  MR. O'HARA:  SO THE DOOR -- I'M NOT SURE WHAT DOOR

9  HE WAS TALKING ABOUT BEING OPENED, BUT THE DOOR THAT WE WOULD

10  LIKE TO TALK ABOUT, AND IT WON'T TAKE A LOT OF TIME AND IT

11  WON'T TAKE A LOT OF EVIDENCE, AND WE'VE GIVEN THE COURT AN

12  EXAMPLE OF SOME OF THE DEMONSTRATIVES IS SIMPLY THE FACT THAT

13  THREE OR FOUR YEARS AGO THEY DECIDED TO SUE US EVERY TIME WE

14  ASKED FOR A DEFENSE.  IT'S A SIMPLE FACT.

15  THE COURT:  RIGHT.  IS THIS EVIDENCE, IF THEY WERE

16  TO SAY, WELL, THAT IS TRUE, WE DID SUE YOU AND THE REASONS WE

17  SUED WAS WHAT WE BELIEVED TO BE CONDUCT THAT WE BELIEVE WAS NOT

18  IN OUR BEST INTEREST.  IS THAT -- WOULD THAT THEN MAKE THAT

19  RELEVANT AND IS THAT --

20  MR. O'HARA:  IT MIGHT, YOUR HONOR.  I HAVE TO SAY IT

21  MIGHT.  IT MIGHT.  AND THEN WHERE YOU DRAW THE LINE ON A CASE

22  WITHIN A CASE.

23  THE COURT:  AND GETTING -- PARDON ME FOR

24  INTERRUPTING YOU -- AND THEN IT GETS INTO MY QUESTION THAT IS

25  REALLY IS THE ELEPHANT IN THE ROOM IS DOES THAT THEN REQUIRE,

1    DOES THE JURY, IF MEMBERS OF THE COMMUNITY ARE GOING TO HEAR

2    THIS, AND THEY HEAR DIRTY LAUNDRY, IT DOESN'T MATTER WHO SOILED

3    IT, IT'S DIRTY LAUNDRY, IS THERE AN EXPECTATION, IN THE SPIRIT

4    OF FAIRNESS FOR YOUR CLIENTS, THAT A REPRESENTATIVE OF ONE OF

5    YOUR FIRMS OR MORE TESTIFY AS TO THAT LAUNDRY AND THAT BECOMES

6    AN ISSUE ABOUT WHETHER OR NOT YOUR FIRM SHOULD BE IN THIS CASE

7    OR WHETHER OR NOT THERE SHOULD BE OTHER LAW FIRMS IN THIS CASE

8    REPRESENTING YOUR INTERESTS?

9        YOU KNOW THIS.  NOBODY -- I JUST CAN'T IMAGINE A SITUATION

10   WHERE I WOULD PERMIT A LAWYER TO TESTIFY IN THEIR OWN CASE

11   PARTICULARLY WHEN THERE ARE THREE TYPES OF ALLEGATIONS, WHICH

12   ARE SERIOUS, BOTH SIDES.

13       BOTH OF YOUR CROSS-ALLEGATIONS ARE SERIOUS AS TO THE

14   CONDUCT OF TRAVELERS AND WHETHER OR NOT THERE WAS A

15   CONSPIRACY -- MY WORD NOT YOURS -- BUT A CONSPIRACY TO SOMEHOW

16   PREJUDICE AND HURT YOUR COMPANY.  THAT'S SERIOUS, YOU KNOW.

17   THERE ARE REGULATIONS, AS YOU KNOW, IN THE INSURANCE CODE THAT

18   SPEAK TO REGULATING INSURANCE COMPANIES.

19       THE OTHER SIDE, WAS THERE COLLUSION AMONGST THE LAWYERS,

20   THE LAW FIRM?  AND I'M NOT SAYING THAT I AGREE WITH IT OR NOT.

21   I'M JUST STATING IT FOR THE RECORD.  YOU UNDERSTAND THAT,

22   COUNSEL?

23         MR. O'HARA:  UNDERSTOOD, YOUR HONOR.

24         THE COURT:  BUT THERE ARE ALLEGATIONS THAT PERHAPS

25   LAW FIRMS COLLUDED WITH OTHERS TO INCREASE THEIR BILLINGS AND

1    ACTUALLY TAKE MONEY AND FEES THAT THEY WERE NOT ENTITLED TO.

2    THAT'S A VERY SERIOUS ALLEGATION THAT COULD COST SOMEBODY.  IF

3    THE STATE BAR WERE INVOLVED AND THEY DID AN INDEPENDENT

4    INVESTIGATION, IF THEY WERE EXONERATED AND FOUND THAT CONDUCT

5    AND THE RISKS ARE GREAT THERE, AND THOSE ARE SERIOUS

6    ALLEGATIONS.  AND TO DEFEND THOSE ALLEGATIONS APPROPRIATELY IN

7    A COURT OF LAW, I WOULD THINK THE LAW FIRM REPRESENTATIVES

8    WOULD WANT TO GET UP AND TESTIFY.

9         AND ALSO -- PARDON ME.  AND ALSO, LET ME JUST SAY THIS,

10   AGAIN, THIS IS IN THE ABSTRACT, WE'RE TALKING THEORETICAL AND I

11   KNOW THAT'S WHY THESE ARE IN LIMINE MOTIONS.

12        BUT FROM A JUDICIAL OFFICER, I HAVE FIFTH AMENDMENT

13   CONCERNS ABOUT ALLOWING SOMEONE TO TESTIFY WHERE THERE ARE

14   ALLEGATIONS THAT MIGHT INVOLVE CRIMINAL CONDUCT AND CRIMINAL

15   INVESTIGATION BOTH AT A STATE AND A FEDERAL LEVEL.  AND I HAVE

16   TO RESPECT PEOPLE'S FIFTH AMENDMENT RIGHTS.

17        SO I HAVE SOME CONCERNS ABOUT WHERE THE CASE IS GOING AND

18   HOW BROAD DO WE MAKE THE CASE.  AND IF IT DOES BROADEN OUT

19   BECAUSE IT MIGHT BE NECESSARY TO CAPTURE ALL OF THIS CONDUCT

20   AND THEN, GENTLEMEN, I THINK, I THINK WE NEED TO REFOCUS ON

21   WHERE THE TRIAL IS GOING.

22        I HAVE NO DESIRE -- I KNOW YOU SHARE MY CONCERNS HERE.  I

23   HAVE NO DESIRE TO PUT ANY OF YOU ON THE SPOT OR THE LAW FIRMS

24   ON THE SPOT IN ANY PARTICULAR WAY OTHER THAN TO REPRESENT YOUR

25   CLIENTS AND PRODUCE EVIDENCE BEFORE A JURY.

1    I HAVE SOME CONCERNS, I HAVE TO TELL YOU.

2         MR. O'HARA:  AND I UNDERSTAND THE CONCERNS FROM

3    READING THE PAPERS, AND WE HAVE THOUGHT LONG AND HARD ABOUT IT

4    FOR A LONG TIME.  IT'S OUR SINCERE BELIEF THAT THE FRAUDULENT

5    BILLING ALLEGATION IS A PRETEXT TO EXPLAIN CONDUCT, AND IF THE

6    COURT DECIDES THAT WE NEED TO TAKE IT ON AND THAT WE HAVE

7    OPENED THE DOOR, WE'RE PREPARED TO DEFEND IT.

8         I WOULD HATE TO BECOME A CASE WITHIN A CASE BECAUSE IT'S

9    REALLY -- THERE IS A DIFFERENT DEVELOPER AND, YOU KNOW, WE

10   WEREN'T THE FIRM DEFENDING THIS CASE.  IT WAS THE GLASPY FIRM.

11   AND THE OTHER CASE, WE WERE DEFENDING THAT CASE.  AND I'M NOT

12   SURE THE COURT NEEDS ME TO GO CHAPTER AND VERSE TO EXPLAIN.

13        THE COURT:  LET ME JUST TELL YOU -- I'M SORRY --

14   THAT I THINK -- I'M SUGGESTING THAT WE EXERCISE SOME CAUTION

15   ABOUT THINGS THAT WE TALK ABOUT, THAT OTHER CONDUCT, BECAUSE I

16   REALLY DO HAVE SOME CONCERNS.

17        AGAIN, I'M NOT MAKING ANY JUDGMENTS ABOUT THE VERACITY OF

18   THE ALLEGATIONS.  BUT JUST OUT OF AN ABUNDANCE OF CAUTION, I

19   WONDER IF WE NEED TO STEP BACK AND LOOK AT THIS COLLECTIVELY,

20   MEANING ME AND YOU.

21        AND IS THERE SOME WAY THAT THIS CASE, THE ISSUES INVOLVED

22   IN THIS CASE CAN BE TRIED SUCH THAT THESE OTHER, EXCUSE ME,

23   OTHER ISSUES DON'T COME IN TO SOMEHOW INFECT THE CASE IN A

24   MANNER THAT WOULD REQUIRE TESTIMONY FROM COUNSEL?

25        AND IF THAT MEANS NARROWING THE CASE DOWN IF YOU CAN, IT

1   SOUNDS LIKE YOU HAVE ALREADY DONE THIS ANALYSIS, BUT I'M

2   TELLING YOU I HAVE SOME CONCERNS ABOUT WHETHER OR NOT THE CASE

3   CAN BE TRIED THE WAY IT IS WITH THE ISSUES THE WAY IT IS, WITH

4   THE EVIDENCE THAT I HEAR BOTH OF YOU WANTING TO GET IN.  YOU'RE

5   GOING TO PUT YOURSELVES AT RISK.  AND I DON'T WANT TO DECLARE A

6   MISTRIAL IN THE MIDDLE OF THE TRIAL BECAUSE ALL OF A SUDDEN ONE

7   LAWYER SHOWS UP AND CAN'T PARTICIPATE ANY LONGER AND HAS

8   COUNSEL FOR THEMSELVES.  THAT DOESN'T SERVE ANYBODY.

9        NOW, MAYBE I'M GOING TOO FAR OUT HERE, BUT THAT'S WHAT I

10  GET PAID TO DO.

11            MR. O'HARA:  UNDERSTOOD.  I DON'T SEE THAT HAPPENING

12  ON OUR END SO --

13            THE COURT:  WELL, WE JUST HAD A CONVERSATION ABOUT

14  THIS IN LIMINE MOTION AND WHEN I TALKED TO YOU ABOUT OPENING

15  DOORS AND THINGS, I THINK IF THAT ISSUE COMES UP, I THINK, AS

16  YOU SAID, YOU KNOW, I THINK TRAVELERS MIGHT VERY WELL BE ABLE

17  TO SAY THIS IS WHY WE STOPPED DOING WHAT WE DID BECAUSE WE MADE

18  THIS DISCOVERY.

19       AND I JUST CAN'T IMAGINE A SITUATION, MR. O'HARA, WHERE I

20  WOULD ALLOW A LAWYER TO HAVE HIS OR HER LAW FIRM PUT IN THAT

21  SITUATION WHEN YOU'RE IN THE MIDDLE OF TRIAL.

22       WHAT IS THE REMEDY FOR THAT?

23            MR. O'HARA:  WELL, WHAT IF THE ALLEGATIONS ARE VERY

24  SUSPECT AND THERE'S NOT A LOT OF EVIDENCE BEHIND THEM?  THEN

25  YOU LOOK AT IT DIFFERENTLY AND SAY, WELL, WOW, WHY DID THEY SAY

1 THAT IF THEY CAN'T PROVE THAT? WHY DID THEY SAY THAT IF IT'S

2 NOT TRUE? WHY DO THEY SAY THAT IF THEY'RE DOING THE SAME

3 THINGS THEY'RE ACCUSING US OF?

4 THE COURT: EXACTLY. THAT'S WHAT THIS JURY IS GOING

5 TO HEAR IS A SOAP OPERA. AND I GUESS WHAT I'M ASKING IS THAT

6 IS THERE ANY WAY TO TRY THIS CASE WITHOUT GETTING INTO THAT

7 INFORMATION? I DON'T KNOW THE ANSWER TO THAT QUESTION. IF

8 THERE IS, I WOULD SUGGEST THAT'S THE WAY TO TRY A CLEAN CASE AS

9 OPPOSED TO TRY A CASE THAT IS GOING TO HAVE ALL OF THESE OTHER

10 ISSUES COME UP.

11 MR. STUDENKA: YOUR HONOR, IT SOUNDS LIKE FROM

12 TRAVELERS'S PERSPECTIVE IS BECOMES RELEVANT IF ONE OF TWO

13 THINGS OCCUR: ONE IS IF WE GET INTO THE TERMINATION OF GLASPY

14 AS A PRETEXT PART OF OUR CASE, AND THAT WOULD THEN OPEN THE

15 DOOR FOR A REASON OTHER THAN THE PRETEXT THAT WE BELIEVE IT TO

16 BE; AND, TWO, EVEN THOUGH THEY SAID IT DIDN'T HAVE ANYTHING TO

17 DO WITH THE FEES OF NEWMEYER & DILLION BEING SOUGHT AS DAMAGES,

18 AND HE DID SAY SOMEWHAT AS IT MAY RELATE TO THE REASONABLENESS

19 OF THE FEES. THAT SECOND REASON SEEMS ONLY TO BE AN

20 EXPERT-DRIVEN ISSUE WITHOUT -- I MEAN, I THINK THE 403 ANALYSIS

21 THERE TO DETERMINE WHETHER OUR FEES ARE BILLS AT ISSUE IN THIS

22 CASE ARE REASONABLE OR NOT, THAT DOESN'T HAVE TO GO TO THE JURY

23 IT SEEMS UNDER A 403 BALANCING WHEN AN EXPERT OPINES AS TO IT'S

24 REALLY AN ALLOCATION ISSUE, IT'S NOT AN AMOUNT ISSUE THAT WE

25 ARE TALKING ABOUT WHEN WE TALK ABOUT REIMBURSEMENT AND BUSS.

1    SO IT SEEMS THAT IF WE WERE TO NOT GET INTO THE PRETEXT

2    ISSUE WITH GLASPY, ACCORDING TO WHAT TRAVELERS JUST SAID, THEN

3    WE DON'T GET INTO THE BILLING FRAUD ISSUE.

4        THE COURT:  WELL, I'M SEEKING TO AVOID THAT AND I'M

5    COMING TO THE CONCLUSION AS WE GET CLOSE TO THE NOON HOUR HERE

6    THAT I MAY NEED TO ASK YOU TO CLARIFY AND WORK A LITTLE HARDER

7    FOR ME AND TO PREPARE PERHAPS IN A NEW PRETRIAL STATEMENT, TO

8    CLARIFY EXACTLY THE ISSUES THAT ARE AT ISSUE AND THOSE THINGS

9    THAT ARE AT ISSUE FOR THIS PARTICULAR TRIAL AND THE PROOF THAT

10   RELATES TO THEM.

11   AND I THINK THAT WOULD BE HELPFUL FOR ALL OF US, AND I'D

12   INVITE YOU TO MEET AND CONFER ABOUT THAT.  AND IF YOU CAN

13   PREPARE A JOINT LIST, THAT WOULD BE HELPFUL.  IF YOU HAVE

14   ISSUES THAT ARE -- THAT YOU THINK ARE IN DISPUTE LIKE THE ISSUE

15   THAT WE JUST TALKED ABOUT, THAT WOULD BE INTERESTING TO

16   HIGHLIGHT ALSO AND HELPFUL TO HIGHLIGHT.

17   I'M JUST TELLING YOU I HAVE SOME GRAVE CONCERN ABOUT THAT,

18   I REALLY DO.  AND WE GET INTO THE HEAT OF BATTLE, AND I'M NOT

19   POINTING FINGERS, GENTLEMEN, AND PARTICULARLY IN THIS CASE.

20   YOU KNOW WHAT I MEAN.  AND I'VE READ YOUR PLEADINGS.  THIS CASE

21   HAS A TAIL BEHIND IT, MANY OTHER CASES AROUND.  I RECOGNIZE

22   THAT.

23   AND I JUST CAN'T HOW IMAGINE HOW THE EMOTION THAT IS

24   ATTACHED TO THIS CASE IS GOING TO DO ANYTHING BUT BRING ALL OF

25   THOSE OTHER FACTORS IN.

1    AND I DON'T KNOW, AS I SIT HERE RIGHT NOW, I'M NOT SURE

2  AND I NEED TO THINK ABOUT THIS, I'M NOT SURE HOW TO CORRAL THAT

3  AND HOW TO FENCE THOSE THINGS OFF SO A JURY CAN HEAR JUST THE

4  EVIDENCE THAT IT NEEDS TO HEAR JUST ABOUT YOUR REQUEST IN YOUR

5  PLEADINGS.  I'VE GOT SOME PROBLEMS.

6         MR. STUDENKA:  TO BE CLEAR, YOUR HONOR, YOU WANT US

7  TO BRIEF THAT SUCH THAT WE CAN WALK OUT WITH A CLEAN LINE OF

8  WHERE THE DOOR IS?  OBVIOUSLY NO ONE WANTS TO GO INTO TRIAL

9  THINKING THE DOOR IS NOT OPEN AND SOMEHOW TRIGGER THAT IF THAT

10 WAS THE INTENT OF THE PARTIES TO BRIEF IT.

11        THE COURT:  WELL, I DON'T KNOW IF I NEED A BRIEF

12 REGARDING ANY LEGAL ISSUES ON IT.  I THINK WHAT WOULD BE

13 HELPFUL FOR ME, AND I SUGGEST FOR YOU, TOO, IF YOU'LL PARDON MY

14 PRESUMPTION, BASICALLY A STATEMENT OF WHAT IS AT ISSUE AND WHAT

15 IS THE PROOF THAT YOU INTEND TO ELICIT FOR THOSE ISSUES.

16     AND I THINK IF YOU -- YOU KNOW, WE'VE GOT YOUR PLEADINGS,

17 I UNDERSTAND THAT.  BUT I'M CONCERNED ABOUT, YOU KNOW, WHAT ARE

18 THE ISSUES?  WHAT IS REALLY AT ISSUE?  AND WHAT IS THE EVIDENCE

19 THAT IS GOING TO DRIVE THAT?

20     AND IF IT'S THIS -- YOU KNOW, I'LL JUST USE THE COLLUSION

21 ISSUE.  IF IT'S THE COLLUSION ISSUE ABOUT COVERAGE, HOW FAR

22 DOWN ARE WE GOING TO DRILL DOWN ON THAT?  IT MAY BE, IF I LOOK

23 AT THAT AND WE HAVE ANOTHER CONVERSATION, AND I THINK THIS IS

24 INTRACTABLE AND THERE'S NO WAY THAT WE CAN DO THIS, YOU'RE

25 GOING TO HAVE TO GO GET LAWYERS.

1    IT COULD BE THAT.  IT COULD BE THAT YOU'RE GOING TO HAVE

2    TO LIMIT THIS CASE AND IT'S MOVED FROM A LARGE CONTAINER TO A

3    SHOE BOX, AND THAT'S WHAT WE'RE GOING TO TRY.  AND I THINK I DO

4    NEED TO CONTROL THAT.  AND I HAVE SOME CONCERNS.  AND I

5    APPRECIATE YOU RECOGNIZE THEY'RE OUT THERE.

6         MR. O'HARA:  THEY ARE OUT THERE.

7         THE COURT:  AND I DON'T WANT TO PUT ANYBODY IN ANY

8    SITUATION SUCH THAT THEY'RE AT RISK FOR THE THINGS THAT I

9    TALKED ABOUT INCLUDING FIFTH AMENDMENT ISSUES.

10   I'M NOT SUGGESTING, YOU UNDERSTAND, I'M NOT SUGGESTING IN

11   ANY WAY THAT ANYBODY IS CONDUCTING THEMSELVES IN ANY MANNER

12   THAT PRESENTS ITSELF THAT THAT WOULD BE REQUIRED.  BUT I'M JUST

13   SPEAKING AS A PROPHYLACTIC MEASURE HERE.  I DON'T THINK IT'S

14   APPROPRIATE TO HAVE A LAWYER GO FORWARD WHERE THEY MIGHT EVEN

15   HAVE THAT RISK.

16        MR. O'HARA:  I APPRECIATE THE COURT'S CONCERNS, AND

17   WE'LL TAKE IT TO HEART, AND WE'LL DISCUSS IT.  AND WE HAVE

18   DISCUSSED IT QUITE A BIT WITH OUR CLIENT WITHIN THE FIRM, AND

19   WE HAVE MADE EFFORTS TO RESOLVE MATTERS WITH TRAVELERS.

20   BUT IF WHAT I'M SAYING IS CORRECT THAT THEY EVERY TIME WE

21   ASK THEM TO DEFEND THEY'RE GOING TO SUE US, AND THAT'S THEIR

22   PLAN, THAT'S THEIR SCHEME, AND THEN WHEN WE COMPLAIN ABOUT IT

23   THEY SAY YOU COMMITTED BILLING FRAUD AND WE DON'T THINK IT'S

24   VALID, THOSE ARE KIND OF THE ISSUES IN THE CASE AND IT DOES

25   RAISE ALL OF THE CONCERNS THAT THE COURT HAS RIGHTFULLY RAISED.

```
 1    AND SO WE HAVE THOUGHT CAREFULLY ABOUT THE CONSEQUENCES OF THAT

 2    AND HOW DOES THAT EVIDENCE COME IN AND WHO HAS TO TESTIFY.

 3          THE COURT:  AND IF IT'S THAT KIND OF TRIAL THAT YOU

 4    JUST INDICATED, MR. O'HARA, YOU KNOW, IT MIGHT BE THAT

 5    DIFFERENT LAWYERS NEED TO TRY THIS CASE.  THAT'S JUST AN

 6    OBSERVATION.  BUT YOU CAN, YOU KNOW, WHEN YOU LOOK AT YOUR

 7    "WHAT-IS-AT-ISSUE LIST," YOU'LL ALSO BE, HOPEFULLY, THINKING

 8    ABOUT THAT.  IS THAT GOING TO BE -- IS THIS JUDGE GOING TO GET

 9    US OFF THE CASE BECAUSE HE THINKS WE'RE CONFLICTED AND RATHER

10    HAVE YOU SECURE COUNSEL OR SOMETHING ELSE?  I HOPE I'VE MADE

11    MYSELF CLEAR ABOUT THAT.

12        SO WHEN SHOULD I EXPECT THAT FROM YOU?

13        YOU'RE IN TRIAL, MR. BROWN.

14          MR. BROWN:  I AM IN TRIAL.  I REALIZE WE HAVE THE

15    JUNE 2ND DATE OUT THERE, YOUR HONOR.  SO AS MUCH TIME AS YOU

16    CAN GIVE US, BUT I UNDERSTAND.

17          THE COURT:  WELL, WE'LL COME BACK -- I'VE MADE SOME

18    RULINGS ON IN LIMINE MOTIONS, AND I'VE RESERVED ON SOME OTHERS.

19    SO I WONDER IF THE WEEK OF, LET'S SEE, MAY 18TH -- WHEN DO YOU

20    THINK YOU'LL BE DONE WITH YOUR TRIAL?

21          MR. BROWN:  I BELIEVE THE LATEST ESTIMATE I BELIEVE

22    IS MAY 5TH.

23          THE COURT:  YOU'LL BE FINISHED?

24          MR. BROWN:  CORRECT.

25          THE COURT:  SO MAYBE I CAN HAVE SOMETHING MAY 18TH
```

1    FROM YOU.  THAT GIVES YOU A WEEK FOLLOWING YOUR TRIAL TO --

2              MR. BROWN:  THAT WOULD BE FINE, YOUR HONOR.

3              THE COURT:  -- TO MEET AND CONFER.  AND IF YOU COULD

4    HAVE SOMETHING TO ME IN THAT REGARD BY CLOSE OF BUSINESS MAY

5    18TH.

6              MR. BROWN:  HOW MANY PAGES, YOUR HONOR?

7              THE COURT:  WELL, I'M GOING TO GIVE YOU 25 PAGES FOR

8    THIS.  I THINK THIS IS VERY IMPORTANT.

9              MR. BROWN:  YOUR HONOR, IS IT YOUR EXPECTATION THAT

10   WE WOULD EACH FILE A SEPARATE BRIEF OR A JOINT STATEMENT?

11             THE COURT:  I SUGGEST THAT YOU MEET AND CONFER IF

12   YOU CAN AND PREPARE WHAT YOU CAN AS TO WHAT AGREED ISSUES ARE.

13   AND THEN I'M SURE THERE'S GOING TO BE SOMETHING WHERE THERE ARE

14   DISPUTES ABOUT WHAT THE ISSUES ARE.  BUT I'D LIKE YOU TO MEET

15   AND CONFER JUST SO THAT WE CAN GET, AS WE GET CLOSER TO THE

16   TRIAL DATE, YOU CAN TELL ME WHAT YOU AGREE ON.

17        AND THEN IN THE BALANCE OF YOUR -- EACH OF YOUR PLEADINGS,

18   YOU CAN TELL ME WHAT YOU DISAGREE ON.  YOU KNOW THE ISSUES I'M

19   CONCERNED ABOUT.

20        I'M THINKING WE SHOULD GET TOGETHER AGAIN.  AND,

21   MS. GARCIA, IS ANYTHING -- WHAT IS AVAILABLE IN MAY?  THAT WEEK

22   OF THE 18TH?  ARE WE IN TRIAL WITH WONG ON THAT WEEK?  WE ARE.

23             THE CLERK:  YES.

24             THE COURT:  AND DID WE GIVE UP ANY THURSDAY

25   AFTERNOON?

1           THE CLERK:  THE 21ST YOU HAVE A SENTENCING IN THE

2   BARAJAS MATTER.

3           THE COURT:  MAYBE 3:00 O'CLOCK ON THE 21ST.

4           MR. STUDENKA:  YOUR HONOR, YOU SAID 3:00 O'CLOCK.

5           MR. BROWN:  YOUR HONOR, I KNOW WE'RE RUNNING SHORT

6   ON TIME AND THERE WERE THREE ISSUES THAT I WANTED TO ADDRESS

7   QUICKLY IF I COULD.

8           THE COURT:  SURE.

9           MR. BROWN:  THE MOTION THAT KB FILED YESTERDAY, I

10  WASN'T SURE WHAT WE WERE DOING WITH THAT.

11          THE COURT:  WAS THAT -- LET'S SEE.  WAS THAT DOCKET

12  189?

13          MR. BROWN:  I BELIEVE SO, YOUR HONOR.

14          THE COURT:  CLARIFICATION OF NUMBER 7 I THINK IT

15  WAS.

16          MR. BROWN:  I DID, AS A PRELIMINARY MATTER, AND I

17  DON'T MEAN TO BE PETTY, BUT I WANTED TO FIND OUT WHETHER KB WAS

18  BEING SANCTIONED FOR THAT LATE FILING?

19          THE COURT:  WELL, I DIDN'T INDICATE THAT IN THE

20  PREVIOUS ORDER.  SO I DIDN'T GIVE THEM NOTICE FOR THAT.  AND

21  I -- AGAIN, IT IS A LATE FILING, AND I THINK THEY'RE ENTITLED

22  TO NOTICE OF THE COURT'S INTENTION TO FILE A SANCTION.  AND,

23  AGAIN, TO BE CONSISTENT I THINK I WOULD, IF YOU WISH ME TO

24  CONSIDER THIS, I WOULD INDICATE -- I WOULD FIND THAT IT WAS

25  LATE FILED AND ISSUE A $500 SANCTION AS TO THIS, MR. O'HARA.

1    BUT I CAN DEFER THAT UNTIL OUR MEETING ON THE 21ST SO YOU COULD

2    BE HEARD ON THAT IF YOU WISH.  YOU'RE ENTITLED TO NOTICE OF THE

3    SANCTIONS.

4         MR. O'HARA:  I BELIEVE WE'RE GOING TO RE-BRIEF THIS,

5    YOUR HONOR.  SO IF THE COURT WAS INCLINED, I WOULD WITHDRAW IT

6    AND JUST INCLUDE IT IN THE BRIEFING.

7         THE COURT:  ALL RIGHT.  IT'S WITHDRAWN.

8         MR. O'HARA:  THANK YOU.

9         THE COURT:  YOU'RE WELCOME.

10        MR. BROWN:  GIVEN OUR DISCUSSION TODAY THERE WAS --

11   I WANTED TO GIVE YOUR HONOR A HEADS UP, AND WE WILL FILE A

12   MOTION FOR LEAVE TO FILE A LATE FILING.  BUT WE WOULD LIKE TO

13   FILE A MOTION FOR CLARIFICATION -- AND I APOLOGIZE, YOUR HONOR.

14   I AM LOSING MY VOICE A LITTLE -- A MOTION FOR CLARIFICATION

15   REGARDING KB'S MOTION IN LIMINE NUMBER 6, I BELIEVE IT IS,

16   REGARDING MS. VINACCIA.  SO I JUST WANTED TO GIVE YOUR HONOR A

17   HEADS UP THAT WE DO INTEND TO FILE THAT.

18        THE COURT:  MS. VINACCIA IS EXPERT TESTIMONY?

19        MR. BROWN:  YES.

20        THE COURT:  THERE WAS SOME -- AND I SUPPOSE I WAS

21   CURIOUS WHETHER OR NOT IS THIS A DAUBERT TYPE OF SITUATION?  I

22   LOOKED AT IT AND THOUGHT, IS THIS DAUBERT?  IS THAT THE

23   APPROPRIATE ANALYSIS OR NOT?

24       I THINK SHE INDICATED, DIDN'T SHE, THAT SHE DIDN'T FOLLOW

25   CERTAIN NORMAL -- I CAN'T REMEMBER THE LANGUAGE, PARDON ME.

1    MR. BROWN:  WELL, IN CERTAIN REGARDS SHE DOESN'T AND

2    IN CERTAIN REGARDS SHE DOES.  IF KB IS CORRECT IN THEIR

3    ANALYSIS THAT YOU HAVE TO DO A STRICT ANALYSIS UNDER BUSS AS TO

4    WHAT FEES ARE NOT RELATED TO THE, POTENTIALLY RELATED TO THE

5    DEFENSE OF THE NAMED INSURED, WHAT SHE DID WAS INITIALLY SHE

6    DIVIDES INTO CATEGORIES.  ONE CATEGORY IS THAT.  SO SHE DOES DO

7    THAT ANALYSIS.

8         BUT THEN SHE WENT BEYOND THAT.  SO THERE'S A CATEGORY THAT

9    SHE SAYS THESE ARE NOT RELATED TO THE DEFENSE OF THE WORK OF

10   TRAVELERS NAMED INSURED BUT THEN BEYOND THAT AS TO THE REST SHE

11   APPORTIONS LIABILITY.

12        SO I UNDERSTAND THEIR MOTION IN LIMINE WAS TO KEEP OUT HER

13   TESTIMONY IN GENERAL, BUT THE MOTION FOR CLARIFICATION THAT WE

14   WOULD BE FILING WOULD BE ARGUING ESSENTIALLY THAT EVEN IF YOU

15   ACCEPT THEIR RULING, IT SHOULDN'T KEEP OUT ALL OF HER TESTIMONY

16   BECAUSE SHE DOES SPECIFICALLY IDENTIFY FEES THAT UNDER BUSS ARE

17   RECOVERABLE BECAUSE THEY'RE NOT RELATED TO THE DEFENSE OF

18   WORK -- POTENTIALLY RELATED TO THE WORK OF TRAVELERS NAMED

19   INSURED.

20             THE COURT:  MR. O'HARA.  LIMITING -- IN OTHER WORDS,

21   IF THE COURT WERE TO LIMIT THAT TESTIMONY, AND I THINK WE ALL

22   REMEMBER AT LEAST THE TESTIMONY THAT WENT A LITTLE BEYOND THE

23   BUSS FACTORS, LET ME PUT IT THAT WAY.

24             MR. O'HARA:  RIGHT.  WE HAD A HARD TIME FIGURING OUT

25   WHAT HER OPINION WAS GOING TO BE AND THE BASIS FOR THE OPINION

1   AND THE METHODOLOGY.  BUT IT SEEMED TO BE MOSTLY BASED ON A

2   PURE FORMULA OF SAYING LET ME TAKE THIS DEFECT LIST, AND I'LL

3   APPLY IT TO THE FEES .23 PERCENT AND THAT'S WHAT YOU GET.  AND

4   I DON'T THINK ANYONE SAYS THAT YOU CAN DO THAT, AND THAT SEEMS

5   TO BE WHAT SHE WAS GOING TO SAY.

6        SO I WOULD POINT TO A POTENTIAL AGREEMENT BETWEEN US, YOUR

7   HONOR.  TRAVELERS IS PROPOSING THAT THIS GETS TRIED TO THE

8   COURT AS AN EQUITABLE ISSUE.  WE WOULD AGREE WITH THAT.  SO THE

9   BUSS REIMBURSEMENT ISSUE AND IN OUR VIEW WE WOULD AGREE WITH

10  TRAVELERS IT WOULD GET TRIED TO THE COURT.  SO THAT TAKES AWAY,

11  ONCE WE CAN SEE THAT, IT TAKES AWAY MY CONCERNS AND YOU CAN

12  ASSESS HER TESTIMONY AND HER REPORT AS TO WHETHER IT'S VALID OR

13  NOT.

14          THE COURT:  OKAY.  WELL, THAT SOUNDS FAIR.  AND I

15  THINK THE EXTRANEOUS TESTIMONY IS NOT RELEVANT AND WON'T BE

16  ELICITED MY SENSE IS.

17          MR. O'HARA:  RIGHT.

18          THE COURT:  I DON'T THINK YOU --

19          MR. BROWN:  THE LAST MATTER I WANTED TO ADDRESS,

20  YOUR HONOR, WAS JUST TO MAKE SURE THAT I HAVE DOWN EVERYTHING

21  THAT IS DUE TO YOUR HONOR.  I DON'T KNOW IF YOU WOULD BE -- IF

22  YOUR INTENTION IS TO ISSUE A SPECIFIC MINUTE ORDER THAT THESE

23  ARE THE BRIEFS THAT YOU'RE EXPECTING, AND I JUST WANTED TO MAKE

24  SURE THAT I DIDN'T MISS ONE.

25          THE COURT:  SO WHY DON'T I GET AN ORDER OUT THIS

1    AFTERNOON FOR YOU.  I THINK CLARIFICATION IS MORE IMPORTANT IN

2    THIS CASE, AND SO I'LL GET SOMETHING OUT TO YOU THAT EXPRESSES

3    THAT.

4            MR. BROWN:  THAT WOULD BE GREAT, YOUR HONOR.

5            THE COURT:  OKAY.  ANYTHING FURTHER?

6            MR. O'HARA:  YOUR HONOR, IT'S 9:00 TO NOON AND 1:30

7    TO 4:30?

8            THE COURT:  YES, RIGHT.

9            MR. O'HARA:  AND 15 MINUTE BREAKS IN THE MORNING AND

10   AFTERNOON?

11           THE COURT:  CORRECT.  AND I THINK WHAT WE'LL DO IS

12   ON THE 21ST WHEN WE MEET AGAIN, THE NEXT DATE WE MEET AGAIN

13   I'LL GO OVER SOME OF THOSE THINGS AS WELL WE DIDN'T GO OVER

14   TODAY.  AND THERE'S A LOT MORE TO TALK ABOUT.

15           MR. O'HARA:  OKAY.  THANK YOU VERY MUCH.

16           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

17           MR. O'HARA:  THANK YOU, YOUR HONOR.

18           THE COURT:  YOU'RE WELCOME.

19        (COURT CONCLUDED AT 11:57 A.M.)

20

21

22

23

24

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16                      _____
                        IRENE RODRIGUEZ, CSR, CRR
                        CERTIFICATE NUMBER 8076
17

18
                        DATED:  APRIL 10, 2015
19

20

21

22

23

24

25